TARA K. MCGRATH
United States Attorney
CALEN A. BENNETT
Assistant U.S. Attorney
California State Bar No. 340211
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-9619
calen.bennett@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL GORDON DOUGLAS, <br><br> Defendant. | Case No.: 23-MJ-4483-MSB <br><br> **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION (ECF NO. 18)** |

Beginning around October 3, 2023, Defendant MICHAEL GORDON DOUGLAS, a previously convicted sex offender with a violent criminal history, distributed substantial amounts of child sexual abuse material to an undercover agent and repeatedly expressed his desire and intention to meet that agent and rape her eight-year-old daughter. *See* ECF No. 1. Defendant was subsequently charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1). He was arrested on December 12, 2023, after attempting to flee and brandishing a grenade once surrounded by law enforcement. ECF No. 2. At his detention hearing, this Court weighed the applicable detention factors under 18 U.S.C. § 3142(g) and determined that Defendant presents both a serious risk of flight and a danger to the community. It ordered him detained. ECF No. 13, at 13.

Defendant now moves this Court to reconsider its detention order without presenting any new material information, effectively seeking a second bite at the apple. *See* ECF No. 20.

The Court should deny the motion. As a threshold matter, reconsideration is unwarranted because there has been no change in the controlling law that this Court relied on, and Defendant's material circumstances remain unchanged. *See* 18 U.S.C. § 3142(f). But even if this Court were to reconsider its detention order, the factors continue to support detention: Defendant remains both a danger to the community and serious flight risk. And the Court rightly determined that no condition or combination of conditions could reasonably assure community safety and the Defendant's appearance as required when it ordered him detained on December 19, 2023.

## BACKGROUND

On October 3, 2023, an undercover agent (UCA) in West Palm Beach, Florida—assuming the persona of a twenty-nine-year-old female with an eight-year-old daughter while acting in an undercover capacity—began receiving private communication from Defendant. *See* ECF No. 2. Over the next few months, Defendant electronically sent UCA several videos and photos of child sexual abuse material. *See id.* Defendant also openly expressed his desire and intent to rape UCA's eight-year-old daughter, discussing plans to visit the two and describing in detail how he would use specific sex toys and a speculum on the child before engaging in intercourse. *See* ECF 13, at 3.

On December 12, 2023, Defendant was set to make specific arrangements to meet with UCA and her daughter at a hotel in Carlsbad, near Legoland—an area where Defendant suggested they meet. *See id.* at 4. That same day, Homeland Security Investigations ("HSI") agents encountered Defendant driving with a female in the front passenger seat. By then, Defendant had been charged with Distribution of Child Pornography (seven counts), in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1), in the Southern District of Florida and was the subject of an active arrest warrant. After observing Defendant commit several traffic infractions while attempting to flee law enforcement

2

surveillance,[1] HSI agents eventually executed a stop on Defendant's vehicle after activating emergency lights and sirens. *See* ECF 13, at 4-5. Once Defendant's vehicle was surrounded, HSI agents, wearing vests displaying "HSI" and "POLICE," immediately provided police announcements and order Defendant not to move. But Defendant disobeyed. He ducked behind the dash of his vehicle and reappeared displaying a grenade in his hand. At the same time, the female in the front passenger seat of Defendant's vehicle threw herself out of the vehicle onto the pavement and began frantically screaming: "HE IS GOING TO KILL US," "HE IS CRAZY" and "GRENADE." *See id.* at 5.

More than a minute passed as HSI agents, with weapons drawn on Defendant, attempted to clear the surrounding area while commanding Defendant to surrender. Finally, Defendant placed the hand grenade on the dashboard and exited the vehicle. Only after a bomb squad was deployed were HSI agents ultimately able to determine that the grenade was in fact a replica. *See id.* After Defendant was handcuffed, a search incident to arrest revealed, among other personal belongings, multiple knives on his person. *See id.* at 7.

During Defendant's initial appearance the next day, the United States moved to detain based on danger to the community and serious risk of flight. *See* ECF No. 3. Defendant requested time to prepare and so the Court scheduled a detention hearing the following week. On December 19, 2024, Defendant was indicted on seven counts for violating 18 U.S.C. § 2252A(a)(2) & (b)(1)—mirroring the charges in the complaint. At the Defendant's detention hearing later that day, the United States noted the applicable presumption of detention under 18 U.S.C. § 3143(e)(3)(E) and expressed its concern with the facts and circumstances surrounding this case case—namely, Defendant's violent criminal history (including both a prior conviction for distribution of harmful material to a minor and an attempt to evade arrest), the circumstances surrounding Defendant's arrest, the lengthy period of incarceration if convicted (Defendant is facing a 15-year mandatory

---

[1] Defendant's vehicle was equipped with aftermarket emergency lights and Defendant was driving in an erratic nature, passing through intersections against traffic signals and traveling over the speed limit.

3

minimum for each one of the seven indicted counts), and the strength of the evidence (although the least important factor). ECF No. 13, at 2-9. Finally, the Unites States highlighted that Defendant lacked stable employment and admitted using methamphetamine and cocaine within the week before his arrest. *Id.* at 8.

Defendant, on the other hand, sought a $50,000 real property bond. *Id.* at 9. Defendant proffered that his mother and aunt were willing to post the bond using the "family home." *Id*. Defendant indicated helps take care of his aging aunt and mother and works with the homeless community in the Escondido area. *Id.* Defendant disputed that he knowingly fled from law enforcement before his arrest, arguing that the grenade he displayed was not operational and that "[s]imply carrying a knife is not a crime." *Id.* at 10. Finally, Defendant noted that he successfully completed a five-year term of probation for his prior conviction for distribution of harmful material to a minor. *Id.*

Before the Court was also Pre-trial Services' report and recommendation. The report provided information on Defendant's physical health, including reported medical issues with Defendant's knee, neck, and back. Pre-trial Services recommended detention, concluding that there were no conditions or combinations of conditions to reasonably assure community safety or the Defendant's appearance in future court proceedings as required.

Ultimately, the Court granted the United States' motion to detain after finding that Defendant is a danger to the community (by clear and convincing evidence) and a serious flight risk (by preponderance a preponderance of the evidence). In a written detention order, the Court listed the following reasons for detention after weighing the 18 U.S.C. § 3142(g) factors:

- Weight of evidence against the defendant is strong, but is the least important factor;
- Subject to lengthy period of incarceration if convicted;
- Prior criminal history;
- History of violence or use of weapons;

4

- Lack of stable employment;
- Lack of significant community or family ties to Florida, the charging district;
- Prior attempt(s) to evade law enforcement; and
- Prior sex offense conviction.

ECF No. 10, at 1. Defendant's motion for reconsideration followed. ECF Nos. 18, 20.

## DISCUSSION

**I.  Reconsideration of the detention order is not warranted because the same material facts and circumstances exist now as they did on December 19, 2023.**

A court may reconsider an order of detention only if it finds that "information exists that *was not known to the movant at the time of the hearing* and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added). In other words, merely rearguing a previous position with information that was available at the initial detention hearing cannot support reconsideration. *See Schueneman v. Arena Pharms., Inc.*, No. 10-CV-1959-CAB, 2018 WL 11437824, at *2 (S.D. Cal. May 11, 2018); *see also United States v. Ward*, 63 F. Supp. 2d 1203, 1206-07 (C.D. Cal. 1999) (stating detention hearing should not be reopened to consider evidence available at the time of the original hearing).

Defendant raises three new factual assertions, none of which has any material bearing on whether conditions of release can reasonably assure community safety or Defendant's appearance as required. First, Defendant's asserts that his aunt, who has fallen on two previous occasions, fell sometime after Defendant's last appearance in court, "br[eaking] her eye socket" and "sustain[ing] a brain bleed." ECF No. 18, at 2; *see* ECF No. 20, at 2. Defendant essentially argues that because his aunt recently fell, and he was caring for his aunt and mother while living in the family home before his arrest, he is less likely a flight risk. Tellingly, Defendant fails to explain how this third fall would change the Court's analysis under 18 U.S.C. § 3142(g). Indeed, this Court was informed during

5

| | |
|---|---|
| 1 | the detention hearing that Defendant cared for both his elderly mother and aunt.  *See* ECF |
| 2 | No. 13 at 9.  And still, it ordered Defendant detained.  Moreover, Defendant's role as |
| 3 | caretaker for his aging mother and aunt did not stop Defendant from attempting to flee law |
| 4 | enforcement on December 12, 2024.  Nor did it stop Defendant from obtaining a passport |
| 5 | and traveling to the United Kingdom in 2022.  Finally, it did not stop Defendant from |
| 6 | sending the UCA child sexual abuse material and planning to visit the UCA Florida so |
| 7 | Defendant could rape the UCA's eight-year-old daughter. |
| 8 |       Second, Defendant asserts that he has been "physically assaulted three times while |
| 9 | in custody." ECF No. 18, at 7; *see* ECF No. 20, at 2.  However, the Bureau of Prisons |
| 10 | could not find anything in Defendant's record to corroborate these allegations.  No matter, |
| 11 | Defendant again fails to explain how these alleged assaults have any relevance to the |
| 12 | Court's analysis under 18 U.S.C. § 3142(g).  That is because it is immaterial to whether |
| 13 | there are conditions of release that will reasonably assure community safety or Defendant's |
| 14 | appearance.  Besides, Defendant is facing charges in Southern District of Florida, and not |
| 15 | in this District.  So, once remove, he will be housed at a different facility, thousands of |
| 16 | miles away from MCC. |
| 17 |       Third, Defendant's claims that his "most recent medical evaluation" on January 10, |
| 18 | 2024, revealed that "he will need surgery to protect his thinning spinal cord in a year to |
| 19 | eighteen (18) months to avoid paralysis." ECF No. 18, at 8; *see* ECF No. 20, at 1-2. |
| 20 | Because of this alleged diagnosis, Defendant warns this Court that it "is in effect |
| 21 | condemning him to at least paralysis" unless it grants bond Defendant because he "will not |
| 22 | receive adequate medical care while in custody." ECF No. 18, at 8.  Notably, however, |
| 23 | Defendant fails to provide any substantiation to his claim that he "will not receive adequate |
| 24 | medical care while in custody." *See id.*  And Defendant's medical records contradict his |
| 25 | representations to this Court.  *See* Defendant's Medical Records, Exhibit 1 (Sealed) at 1-3. |
| 26 | Yet again, Defendant fails to explain how his medical condition will have any relevance to |
| 27 | the Court's analysis under 18 U.S.C. § 3142(g).  Additionally, Defendant admits that he |
| 28 | knew about his back issues and the eventual need for surgery before his arrest.  *See* ECF |

No. 20, at 1-2.  So, notwithstanding his back issues, Defendant attempted to flee law enforcement on December 12, 2023, by driving in an erratic nature at high speeds while carrying weapons; he was also making plans to visit the UC and her child in Florida to commit egregious acts.

Defendant's motion otherwise merely rehashes arguments that Defendant made (or could have made) at the time of the detention hearing.  Accordingly, the same facts and circumstances exist now as they did at the time of Defendant's initial appearance on December 19, 2023.  Because reconsideration is not a vehicle to "ask the Court to rethink what it has already thought through," *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998), Defendant's motion should be denied without reaching the merits,

**II.    If the Court where to consider the merits, the 3142(g) factors still support detention.**

Defendant's motion does not provide any basis for the Court to change its mind as to the reasons supporting detention.  The Court properly held a detention hearing under the applicable 3142(g) factors and determined that no conditions or combination of conditions can be set to reasonably assure community safety or Defendant's future appearance as required.  At bottom, each of the 3142(g) factors that the Court weighed in favor of detention continues to support detention and the circumstances remain the same as the day of the detention hearing.  The Court should therefore deny Defendant's motion.

## CONCLUSION

The United States respectfully asks this Court to deny Defendant's motion to reconsider the Court's detention order.

DATED: January 24, 2024                    Respectfully submitted,

                                           TARA K. MCGRATH
                                           United States Attorney

                                           /s/ *Calen A. Bennett*
                                           CALEN A. BENNETT
                                           Assistant United States Attorney

7