```
                     UNITED STATES DISTRICT COURT

                FOR THE SOUTHERN DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,    )    No. 23-mj-4483-MSB
                             )
                  Plaintiff, )    Thursday, January 25, 2024
     vs.                     )
                             )    Removal/ID and Bond Hearing
MICHAEL GORDON DOUGLAS,      )
                             )
                  Defendant. )
                             )


                 REPORTER'S TRANSCRIPT OF PROCEEDINGS

              BEFORE THE HONORABLE MICHAEL S. BERG
                  UNITED STATES MAGISTRATE JUDGE

                          PAGES 1 - 16

APPEARANCES:

For Plaintiff:       UNITED STATES ATTORNEY'S OFFICE
                     880 Front Street, Suite 6293
                     San Diego, California   92101
                     By: CALEN A. BENNETT, AUSA


For Defendant:       LAW OFFICES OF JOHN D. KIRBY, APC
                     101 West A Street, Suite 1150
                     San Diego, California   92101
                     By: JOHN D. KIRBY, Esq.



Transcribed By:

Anne Roldan, RMR, CRR, Cal. CSR #13095
Official Court Reporter
U.S. District Court, Southern District of California
333 West Broadway, Suite 420
San Diego, California   92101

Recorded electronically; transcribed by stenotype.
```

```
 1              THURSDAY, JANUARY 24, 2024, 1:49 - 2:27 P.M.
 2                                 ***
 3         THE CLERK:  Calling Matter No. 3, 23-mj-4483, United
 4    States of America vs. Michael Gordon Douglas.
 5         MR. KIRBY:  Good afternoon, your Honor.  John Kirby on
 6    behalf of Mr. Douglas.  He is present in custody.
 7         THE COURT:  Thank you.  Good afternoon.
 8         MR. BENNETT:  Good afternoon, your Honor.  Calen
 9    Bennett for the United States.
10         THE COURT:  Okay.  And is that a -- is there a
11    stipulation?
12         MR. KIRBY:  Your Honor, I'd previously given your clerk
13    the stipulation for --
14         THE COURT:  Got it.
15         MR. KIRBY:  -- for the hearing.
16         THE COURT:  Got it.
17         Mr. Douglas, today is the date set for your identity
18    hearing.  A warrant -- an arrest warrant and indictment were
19    filed against you in the Southern District of Florida charging
20    you with 7 counts of 18 USC Sections 2252A(a)(2) and (b)(1).
21    You have a right to a hearing to determine if, in fact, you are
22    the Michael Douglas Gordon that is wanted -- is it "Michael
23    Douglas Gordon" or "Michael Gordon Douglas"?
24         THE DEFENDANT:  Michael Gordon Douglas.
25         THE COURT:  Okay.  This is -- the warrant of removal is
```

1    wrong, so we need to change that.
2            -- to determine if you are the Michael Gordon Douglas
3    that is wanted in that district.  At that hearing you would have
4    the right to cross-examine and confront any witnesses that would
5    testify against you, the right to subpoena to court any
6    witnesses to testify on your behalf, the right for you to
7    personally testify or remain silent, and the right to an
8    attorney, which you have.
9            Do you understand those rights?
10           **THE DEFENDANT:**  Yes, your Honor.
11           **THE COURT:**  And are you willing to give up those rights
12   and admit that you are, in fact, Michael Gordon Douglas, the
13   individual that is wanted in the Southern District of Florida?
14           **THE DEFENDANT:**  Yes, your Honor.
15           **THE COURT:**  Okay.  And you concur, Mr. Kirby?
16           **MR. KIRBY:**  Yes, your Honor.
17           **THE COURT:**  Let me just make this interlineation on
18   the --
19           **MR. BENNETT:**  Apologies, your Honor.
20           **THE COURT:**  No need.
21           Okay.  I will accept that.  And do we have a date -- we
22   don't have a date; correct?  For his appearance there.
23           **MR. BENNETT:**  No, your Honor.
24           **THE COURT:**  So at some point in the next couple weeks,
25   you will -- well, you wanted to have a bond hearing; right?

1     **MR. KIRBY:**  Yes, your Honor.

2     **THE COURT:**  Okay.  So let's do that, and then we'll go
3  on with your appearance date.

4     What did you want to present, Mr. Kirby?

5     **MR. KIRBY:**  Well, your Honor, first I want to present
6  is -- I want to sort of frame this issue.  What we're talking
7  about are that there are no conditions that will assure his
8  appearance or assure the safety of the community reasonably.
9  And I'd like to start with what is new here.  What is new here
10 is he does have stable employment.

11    **THE COURT:**  He what?

12    **MR. KIRBY:**  He does have stable employment.  I've
13 spoken to his potential employer.  He runs an estate liquidation
14 business, and he wishes to hire Mr. Douglas to work on it, an
15 estate.  I think it's about a quarter of a million dollars.  He
16 estimates it will take approximately one year to liquidate.  So
17 he does have stable employment.

18    I don't think it was mentioned the last time that he
19 does have relatives in Florida, not particularly close
20 relatives, but he does have contacts in Florida.

21    I believe, though, the inquiry is whether there are
22 contacts in the jurisdiction.  He -- obviously, his mother and
23 his aunt, who are both here today.  His aunt just had a --

24    **THE COURT:**  I think they've been here at every
25 appearance, if I'm not mistaken.

```
 1            MR. KIRBY:  That is correct, your Honor.
 2            THE COURT:  Thank you for being here.
 3            MR. KIRBY:  And his aunt did suffer a fall after the
 4   last court, but she's back, well enough to make it here.  So her
 5   medical condition, I guess, is new, though ongoing.
 6            As far as my client's medical condition, I saw the
 7   records that the Government produced from the MCC.  All I can
 8   tell you, your Honor, is as is se forth in the declaration that
 9   my client filed, he was told at UCSD -- and we don't have those
10   medical records because I can't get those quickly enough,
11   obviously -- that he does have a (inaudible) at the spine in the
12   cervical region.  If he does not get surgery within a year or
13   18 months, he will be paralyzed at the very least.
14            That's not going to happen.  Real life, your Honor,
15   that's not going to happen in custody.  And your Honor knows
16   that as well as I do.  I mean, common sense.
17            He has been assaulted while in custody.  The Government
18   said there's no record of that.  I have -- I honestly emailed
19   the MCC about a -- an assault that I was made aware of, and they
20   emailed me back.  So I'm not sure why there's no record that
21   there was a reported assault because I did, in fact, email them
22   to that effect.
23            He has been assaulted, basically, based upon the
24   charges in this case.  And given his medical condition, another
25   assault could be, at the very least, catastrophic to his health.
```

6

1   So he's waiting for that to happen.  He is waiting for one more
2   assault, one more jostling.
3           And obviously, your Honor -- and again, this is a
4   commonsense matter.  If he is sent via the -- via the Marshals,
5   he is going to be jostled.  He is going to be jostled around
6   just by the very nature of him being moved from one part of the
7   country to the other.
8           As far as fleeing, I mean, I think the whole issue with
9   him fleeing from law enforcement, I think that's nebulous.  They
10  didn't have marked vehicles.  They didn't put on their sirens.
11  They didn't put on their lights.
12          **THE COURT:**  Well, I was just curious.  I saw your
13  argument.  If none of those things were present, why did he pull
14  over?
15          **MR. KIRBY:**  Because he was boxed in by the agents.
16          **THE COURT:**  Gotcha.
17          **MR. KIRBY:**  He had no choice.
18          **THE COURT:**  Okay.
19          **MR. KIRBY:**  So in any event, that is part of it.  He
20  does take care of his mother -- not so much his mother.  His
21  mother is 73.  She can pretty much get around.
22          His aunt is 78.  She does have these episodes of
23  falling.  She has -- and I don't want to go into the medical
24  diagnosis because I don't have that, but it sounds like aphasia.
25  She doesn't pay attention; she falls down.  His mom cannot lift

1  her, cannot really manhandle her when she needs to be.  He can,
2  and so he helps with her.
3          **THE COURT:**  What would he do if he were incarcerated in
4  Florida?
5          **MR. KIRBY:**  Well, again, your Honor, I'd like him to
6  get bond.  I'm going to argue for bond in Florida as well
7  because he needs to be able to take care of his aunt.  We're
8  talking about being on bond right here, and then I'll deal with
9  Florida when that comes.  But right now I'm dealing with here.
10         Your Honor, he is willing to wear a GPS.  He is willing
11 to be in home confinement.  As far as fleeing, he really doesn't
12 have anywhere to go.  If you look at his medical condition, you
13 look at the responsibilities he has, he is not going to flee.
14 He doesn't have ties anywhere else to flee to.
15         And he is willing to wear a GPS.  He is willing to do
16 home confinement --
17         **THE COURT:**  I don't use GPS's anymore after the last
18 two individuals last week cut them off.  So I no longer order
19 GPS.  Either detained or bond, I don't use GPS as a condition.
20 It's just not worth it, quite frankly.
21         **MR. KIRBY:**  You can order home confinement as well,
22 your Honor, to keep him from fleeing, from being a danger.
23 There are conditions short of him being incarcerated where he
24 can get medical treatment, where he can -- he can take care of
25 his aunt, where he can be -- be working, not just sitting in

1  jail, not just subject to assault that could cause him serious
2  injury and even death.
3  　　　　And so, your Honor, I've had my investigator work on
4  potential bond packages.  And it looks like there's upwards --
5  sort of a maximum of a hundred thousand dollars equity in the
6  aunt's home.  She herself has probably signed a signature bond
7  of approximately $70,000.  And I would urge the Court to allow
8  him to be out on bond.
9  　　　　Again, if I have to fight this fight in Florida, I
10 would.  But I think if he is on bond here, that makes that
11 argument a lot easier for me.  And I think it's the just thing
12 in this case.
13 　　　　**THE COURT:**  Okay.  Mr. Bennett.  And I know the facts
14 of the case.  I've had it for quite some time.
15 　　　　**MR. BENNETT:**  Yeah.  I'll just address some points
16 Defense Counsel raised, and if your Honor has any questions
17 about the United States' response, I'd be more than happy to
18 answer them.
19 　　　　As far as the alleged assault on Defendant while in
20 custody, the United States *(inaudible)* reached out yesterday.
21 Defendant was in the hospital.  When he was brought back to MCC,
22 he was secured in a safe area along with his belongings.  He was
23 interviewed this morning and asked to go back to -- and
24 requested to come back to his original housing unit, and he
25 claims that he was not in fear of his safety.

1              And so again, the United States was not able to obtain
2     any records on his assault or harassment, but Defendant was sent
3     to a safe area and requested to go back to his housing unit.  He
4     did request, if possible, a different cellmate, and that request
5     has been granted.
6              As to the aunt's condition, the aunt's -- the
7     defendant's aunt, it is awful that she had this fall.  And it
8     seemed that she had falls previously.  But, your Honor, that did
9     not stop Defendant from taking a vacation in 2022 to the
10    United Kingdom, and he had been planning to travel to Florida to
11    visit the undercover.
12             As to the unsubstantiated claims that he would not
13    receive adequate medical care, the Government's exhibit that was
14    filed under seal shows the contrary.  Immediately upon noting
15    neck pain after he was playing while in custody, the doctors
16    sent Defendant to the ER, and he received an MRI.  And those MRI
17    results on the 12th indicated that there was no -- nothing
18    urgent.  There was no -- there was no evidence or nothing to
19    substantiate the claims that he would not receive adequate
20    medical care.  And records show the contrary.
21             Otherwise, he sent -- I will also note that in
22    Defendant's motion, he mentions not having taken any drugs in
23    over 15 years.  However, Defendant, in his interview with
24    Pretrial Services, reported *(inaudible)* that in the last week,
25    he had used methamphetamine and cocaine.

```
 1              Otherwise, the United States will rest on its brief
 2   unless the Court has any questions.
 3              THE COURT:  I don't.
 4              MR. BENNETT:  Thank you, your Honor.
 5              THE COURT:  I just want to trail this for one minute.
 6              MR. KIRBY:  Yes, your Honor.  Of course.
 7              THE COURT:  I'm going to just call another matter in
 8   the meantime.
 9         (The matter trailed.)
10              THE CLERK:  Recalling Matter No. 3, 23-mj-4483, United
11   States of America vs. Michael Gordon Douglas.
12              THE COURT:  Okay.  Was there anything else that anybody
13   wanted to add?  I don't think there was.  Correct?
14              MR. KIRBY:  No, your Honor.
15              MR. BENNETT:  Your Honor, if I may briefly.  I just
16   think it's worth noting that the Court already considered the
17   vast majority of what Defense Counsel included in their briefing
18   and the reasons for wanting --
19         (Interruption in proceedings.)
20              THE COURT:  Can you guys hold up one second?  Just one
21   second.  Sorry.  I just want to finish this one up, and then
22   I'll do that.  Sorry.  Okay.  Go ahead.
23              MR. BENNETT:  That is all to say this is not -- this is
24   not a detention hearing.  This is a motion to reconsider a
25   detention order.
```

1         **THE COURT:** Right.

2         **MR. BENNETT:** And that requires that there be new
3 information that was not known to the movant at the time of the
4 hearing and that that new information has a material bearing on
5 the issue of whether there are conditions of release that will
6 reasonably ensure the defendant's appearance in court, as well
7 as reasonably ensure community safety. And the United States
8 feels strongly that none of these new factual assertions move
9 the needle whatsoever.

10         **THE COURT:** Okay.

11         **MR. KIRBY:** Your Honor --

12         **THE COURT:** I don't need anything further, Mr. Kirby.
13 I took the new information as the illness to his mother and his
14 back/neck injury. So I am reconsidering, and I am going to set
15 bond in this case. He has now admitted his identity, and I will
16 set bond in the following manner.

17     I will set bond in the amount of $100,000, secured by a
18 trust deed to the United States. I will also allow expanded
19 travel to the state of Florida.

20     If you are released, you're to actively seek or
21 maintain full-time employment, schooling, or a combination.
22 You're to reside with a family member, a surety, or a residence
23 approved by Pretrial Service.

24     You are to surrender your passport or any travel
25 documents to Pretrial Service and not attempt to obtain a new

```
 1   one while this case is pending.
 2              You are to avoid all contact with any alleged victim of
 3   this crime or any witnesses.
 4              You are to submit to mental health treatment or
 5   counseling at the discretion of Pretrial Service.
 6              You are to participate in the computer monitoring
 7   program, not to access any computer or Internet device without
 8   monitoring software installed and approved by pretrial service.
 9              Do you understand?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  You are to not access any social networking
12   sites such as Facebook.
13              You are not to access any website or possess any
14   material of adult or minors engaged in sexually explicit
15   conduct.
16              You are not to access any online computer service or
17   devices without -- with Internet capabilities at any location at
18   any time.
19              No direct or indirect contact with children under the
20   age of 18 unless accompanied and supervised by an adult who is
21   aware of your charges.  You're to report to Pretrial Service
22   within 8 hours of any unauthorized contact with any person under
23   the age of 18.
24              Do not engage in any paid or volunteer service that
25   allows direct or indirect exposure to children under the age of
```

1  18.  Do not frequent or loiter in any place where children under
2  the age of 18 congregate.
3        You are to notify Pretrial Service, Mr. Kirby, the day
4  before the bond submission paperwork so that he is transported
5  the following business day from custody to Pretrial Service
6  beforehand.
7        Is there a location monitoring service, Ms. Duarte,
8  that you approve of other than ankle monitoring?
9        **MS. DUARTE:**  Your Honor, with -- given that the Adam
10 Walsh condition -- or Adam Walsh Act applies, we would recommend
11 that location monitoring be imposed either with GPS or with RF
12 technology.
13       **THE COURT:**  And that's by phone; right?  I just think
14 these ankle monitors --
15       **MS. DUARTE:**  That would be with an ankle --
16       **THE COURT:**  I just think these ankle monitors --
17       **MS. DUARTE:**  That would be with an ankle bracelet.
18       **THE COURT:**  Don't we have a different type we can do?
19 I just had a few people cut them off.
20    *(Inaudible crosstalk.)*
21       **THE COURT:**  That's not even your case, Ms. Irwin.
22       I've had others, and so I just find that it's
23 worthless, honestly.
24       **MS. DUARTE:**  We do have Smartlink technology.  However,
25 given the Adam Walsh conditions, the Adam Walsh Act requires

```
1    that it would be either GPS technology or -- or RF technology,
2    and that would be with a bracelet.
3             THE COURT:  All right.  I'll impose that even though I
4    don't think it's worth doing.  But -- honestly.
5             Anything else from anybody?
6             MR. BENNETT:  Yes, your Honor.  The United States would
7    request a 48-hour stay so we can appeal to --
8             THE COURT:  Sure.  Honestly, I don't even need the
9    stay, but it's going to take at least that amount of time to get
10   all this bond and trust deed together anyway.  But I'll stay it
11   for 48 hours.
12            MR. BENNETT:  Thank you, your Honor.
13            THE COURT:  And I need a -- I need a date here, Margot,
14   for a status conference so we can get a date if the bond is not
15   stayed, a report date in Florida.
16            THE CLERK:  We can have a status hearing on the 29th at
17   1:30.
18            THE COURT:  The 29th.  Does that work?  Of February or
19   January?
20            THE CLERK:  January, Monday.
21            THE COURT:  January 29th at 1:30 for status.
22            MR. KIRBY:  Thank you, your Honor.
23            MR. BENNETT:  That works for the Government,
24   your Honor.
25            THE COURT:  Anything further from anybody?
```

```
 1            MS. DUARTE:  Yes, your Honor.  Our office would also
 2   recommend, given the recent drug use, for drug testing to be
 3   imposed.
 4            THE COURT:  Sure.
 5            MS. DUARTE:  And for clarification, did your Honor set
 6   the component for the location monitoring?
 7            THE COURT:  I'll leave it at Pretrial's discretion.
 8            MS. DUARTE:  Your Honor, the component has to be set by
 9   the Court.  We would recommend home detention.
10            THE COURT:  Okay.  Home detention it is.
11            Anything else?
12        (No response.)
13            THE COURT:  All right.
14            MR. KIRBY:  Thank you, your Honor.
15            MR. BENNETT:  Thank you, your Honor.
16            THE COURT:  Good luck.  Thank you.
17        (End of recorded proceedings.)
18                               ***
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2         I certify that the foregoing is a true and correct
      transcript, to the best of my ability, of the above pages of
 3    the official electronic sound recording provided to me by the
      U.S. District Court, Southern District of California, of the
 4    proceedings taken on the date and time previously stated in the
      above matter.  I further certify that I am neither counsel for,
 5    related to, nor employed by any of the parties to the action in
      which this hearing was taken, and further that I am not
 6    financially nor otherwise interested in the outcome of the
      action.
 7
      Date:  January 26, 2024
 8

 9    _____
      Anne Roldan, RMR, CRR, CSR 13095
10
```