Warrant of Removal

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 23-MJ-4483-MSB** |
| **Plaintiff,** | **Charging District's** |
| | **Case No. 23-CR-80219** |
| **v.** | |
| **MICHAEL GORDON DOUGLAS,** | **WARRANT OF REMOVAL** |
| **Defendant.** | |

*2024 JAN 30 AM* — U.S. MARSHALS — RECEIVED

FILED BY ___MP___ D.C.

**Feb 2, 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**To:  United States Marshal**

An arrest warrant and indictment having been filed in the United States District Court for the Southern District of Florida, charging Defendant **MICHAEL GORDON DOUGLAS** with: Distribution of Child Pornography (7 counts), in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1), and the above-named defendant having been arrested in this district and, after waiving an Identity Hearing pursuant to Rule 5(c) of the Federal Rules of Criminal Procedure, having been committed by a United States Magistrate Judge to your custody pending his removal to that district,

You are hereby commanded to commit the above-named defendant forthwith to the Southern District of Florida and there deliver him to the United States Marshal for that district or to some other officer authorized to receive him.

(SEAL)

_____
**HONORABLE MICHAEL S. BERG**
**United States Magistrate Judge**

Dated at San Diego, California, this __29th__ day of __January__, 2024.

### RETURN

Southern District of Florida

Received the within warrant of removal the _____ day  of _____, 2024, and executed same.

_____
U. S. Marshal

_____
By:  Deputy Marshal

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11   United States of America,              Case No.: 23MJ4483-MSB

12                          Plaintiff,      **ORDER**

13   v.

14   Michael Gordon Douglas,

15                          Defendant.

16

17      Under federal law, including Rule 5(f) of the Federal Rules of Criminal Procedure,

18   *Brady v. Maryland*, 373 U.S. 83 (1963), and all applicable decisions from the Supreme

19   Court and the Ninth Circuit interpreting *Brady*, the government has a continuing

20   obligation to produce all information or evidence known to the government relating to

21   guilt or punishment that might reasonably be considered favorable to the defendant's case,

22   even if the evidence is not admissible so long as it is reasonably likely to lead to admissible

23   evidence. *See United States v. Price*, 566 F.3d 900,913 n.14 (9th Cir. 2009). Accordingly,

24   the court orders the government to produce to the defendant in a timely manner all such

25   information or evidence.

26      Information or evidence may be favorable to a defendant's case if it either may help

27   bolster the defendant's case or impeach a prosecutor's witness or other government

28   evidence. If doubt exists, it should be resolved in favor of the defendant with full

disclosure being made.

If the government believes that a required disclosure would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, the government may apply to the Court for a modification of the requirements of this Disclosure Order, which may include *in camera* review and/or withholding or subjecting to a protective order all or part of the information.

This Disclosure Order is entered under Rule 5(f) and does not relieve any party in this matter of any other discovery obligation. The consequences for violating either this Disclosure Order or the government's obligations under *Brady* include, but are not limited to, the following: contempt, sanction, referral to a disciplinary authority, adverse jury instruction, exclusion of evidence, and dismissal of charges. Nothing in this Disclosure Order enlarges or diminishes the government's obligation to disclose information and evidence to a defendant under *Brady*, as interpreted and applied under Supreme Court and Ninth Circuit precedent. As the Supreme Court noted, "the government violates the Constitution's Due Process Clause 'if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.'" *Turner v. United States*, 137 S. Ct. 1885, 1888 (2017), quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012).

Dated: 12/13/2023

Honorable Michael S. Berg
United States Magistrate Judge

23MJ4483-MSB

**FILED**

DEC **1 9** 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ~~KYLE~~ DEPUTY

UNITED STATES DISTRICT COURT
for the
Southern District of California

United States of America )
v. )
)
Michael Douglas )
_____ )
Defendant

Case No. 23 mj 4483-msb

## DETENTION ORDER

### Part I - Eligibility for Detention

Upon motion of: the Government, in a case involving an **enumerated offense**, 18 U.S.C. § 3142(f)(1); or the Government or Court, in a case involving a **serious flight risk**, 18 U.S.C. § 3142(f)(2)(A); or the Government or Court, in a case involving **serious obstruction risk**, 18 U.S.C. § 3142(f)(2)(B), the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II – Analysis under Section 3142(g) and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the Defendant must be detained pending trial because it finds:

☒ by clear and convincing evidence that the Defendant is a danger and that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.

☒ by a preponderance of the evidence that there is a serious risk the Defendant would flee if released pending trial and that no condition or combination of conditions of release would reasonably assure the Defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong, but is the least important factor
☒ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history ~~or immigration history~~
☐ Participation in criminal activity while on probation, parole, or supervision
☒ History of violence or use of weapons
☐ History of alcohol or substance abuse
☒ Lack of stable employment
☐ Lack of stable residence
☐ Lack of financially responsible sureties
☒ Lack of significant community or family ties ~~in this District of United States~~  *to Florida, the Charging District*
☐ Significant family or other ties outside the United States
☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure(s) to appear in court as ordered
☒ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents

OTHER REASONS OR FURTHER EXPLANATION:

+ Poor Sex offense conviction

## Part III - Directions Regarding Detention

The defendant is remanded to the custody of the United States Marshal or their designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding. This order is entered without prejudice.

Dated: 12/19/23

Hon. Michael S. Berg
United States Magistrate Judge

**CASSIDY A. HEVERLING**
California State Bar No. 352216
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Cassidy_Heverling@fd.org

Attorneys for Defendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 23mj4483-MSB |
| Plaintiff, | |
| v. | **NOTICE OF ATTORNEY APPEARANCE** |
| MICHAEL GORDON DOUGLAS, | |
| Defendant. | |

Pursuant to the CM/ECF procedures in the United States District Court for the Southern District of California, Cassidy A. Heverling, Federal Defenders of San Diego, Inc., hereby gives notice is lead counsel in the above-captioned case.

Respectfully submitted,

Dated: December 22, 2023          *s/ Cassidy A. Heverling*
                                  CASSIDY A. HEVERLING
                                  Federal Defenders of San Diego, Inc.
                                  Attorneys for Defendant
                                  Email: Cassidy_Heverling@fd.org

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF CALIFORNIA | **TRANSCRIPT ORDER**<br>**Please use one form per case**<br>*Please read instructions on next page* | COURT USE ONLY<br>**DUE DATE:** |
|---|---|---|

| **1a.** CONTACT PERSON FOR THIS ORDER<br><br>Thomas Wilson | **2a.** CONTACT PHONE NUMBER<br><br>(619) 546-9955 | **3a.** CONTACT EMAIL ADDRESS<br><br>Thomas.Wilson@usdoj.gov |
|---|---|---|
| **1b.** ATTORNEY NAME (if different)<br><br>Calen A. Bennett | **2b.** ATTORNEY PHONE NUMBER<br><br>619-559-4398 | **3b.** ATTORNEY EMAIL ADDRESS<br><br>Jason.Gorn@usdoj.gov |

| **4.** MAILING ADDRESS (INCLUDE LAW FIRM NAME, IF APPLICABLE)<br><br>U.S. Attorney's Office, S. Dist. of CA<br>880 Front Street<br>San Diego, CA 92101 | **5.** CASE NAME<br><br>US v. Michael Gordon Douglas | **6.** CASE NUMBER<br><br>23-MJ-04483-MSB |
|---|---|---|

**7.** TRANSCRIPT(S) REQUESTED (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested), format(s) & quantity and delivery type:

| | | | | SELECT FORMAT(S) *(NOTE: ECF access is included with purchase of PDF, text, paper or condensed.)* | | | | | | DELIVERY TYPE (Choose one per line) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **a.** HEARING(S) (OR PORTIONS OF HEARINGS) | | | | **b.** | | | | | | **c.** | | | | | |
| DATE | JUDGE (initials) | TYPE (e.g. CMC) | PORTION<br>If requesting less than full hearing, specify portion (e.g. witness or time) | PDF (email) | TEXT/ASCII (email) | PAPER | CONDENSED (email) | CM/ECF ACCESS (web) | CD ($31) | ORDINARY (30-day $3.65 pp) | 14-DAY ($4.25 pp) | EXPEDITED (7-day $4.85 pp) | 3-DAY ($5.45 pp) | DAILY (Next Day $6.05 pp) | HOURLY (2 hrs $7.25 pp) |
| 12/27/29 | MSB | DET | | ⊙ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ⊙ | ⊙ | ○ |
| | | | | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |
| | | | | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |
| | | | | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |
| | | | | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |
| | | | | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |

**8.** ADDITIONAL COMMENTS, INSTRUCTIONS, QUESTIONS, DCN #, ETC.

(CD# 12/19/2023 MSB 3:14-3:29)
DCN: R24CAS11497

| ORDER & CERTIFICATION (9. & 10.)  By signing below, I certify that I will pay all charges (deposit plus additional).<br>**9.** SIGNATURE<br><br>s/ Calen Bennett | **10.** DATE<br><br>12/27/2023 |
|---|---|

(Rev. 01-27-2020) CASD Transcript Order Form | Page 1

**INSTRUCTIONS**

Use this form to order the transcription of a record of proceedings.

1. Complete a separate order form for each case number for which transcripts are ordered.

2. Complete Items 1-10. Keep a copy of your completed order form for your records.

3. E-file this form in the U.S. District Court CM/ECF system. *Exceptions to e-filing:* (a) sealed cases/proceedings; (b) non-parties; (c) pro se parties who are not e-filers.

4. Next, the court reporter/supervisor will contact you to confirm estimated costs and delivery options. Deliver payment to the court reporter/supervisor promptly. Upon receipt of the deposit, the transcriber will begin work on the transcript.

5. Unless prepayment is waived, delivery time is computed from the date the transcriber receives the deposit, authorized CJA 24 Form, authorization from Federal Public Defender's Office or, for transcripts ordered by the U.S. government, from the date of receipt of the DCN number.

6. The deposit fee is an estimate. Any overage will be refunded; any shortage will be due from you.

**ITEM-BY-ITEM INSTRUCTIONS (ITEMS 1-10):**

Items 1-3: In fields 1a, 2a & 3a, please provide the contact name and information for the person responsible for ordering the transcript. In a law office, this is usually a paralegal or administrative assistant, not the attorney. In fields 1b, 2b & 3b, provide the attorney name and contact info, if the attorney is not the contact person.

Items 5-6: Only one case number may be listed per order.

Item 7a: List specific date(s) of the proceedings for which transcript is requested. A transcript of only a portion of a proceeding may be ordered, if the description is clearly written to facilitate processing. Under "type," indicate briefly what type of proceeding it was, such as "motion," "sentencing," or "CMC."

Item 7b: Select desired FORMAT(S) for transcript. There is an additional charge for each format ordered. Visit cand.uscourts.gov/transcripts/rates for details. Unlock ECF/web access is included at no extra charge with each of the other formats.

Item 7c: There are 7 DELIVERY TYPES to choose from (times are computed from date of receipt of the deposit fee or DCN number). NOTE: Full price may be charged only if the transcript is delivered within the required time frame. For example, if an order for expedited transcript is not completed and delivered within 7 calendar days, the 14-day delivery rate would be charged.

TRANSCRIPT DELIVERY TIMES:
- ORDINARY - 30 calendar days.
- 14-DAY - 14 calendar days.
- EXPEDITED - 7 calendar days.
- 3-DAY - 3 calendar days
- DAILY (NEXT DAY) - Following adjournment and prior to the normal opening hour of the court on the following morning whether or not it actually is a court day.
- HOURLY (SAME DAY) - within two (2) hours.

Item 9: Sign in this space to certify that you will pay all charges (the deposit plus any additional charges.) An electronic or conformed (/s/) signature is acceptable.

Item 10: Enter the date of signing the order and certification.

JOHN D. KIRBY (CSB 149496)
ATTORNEY AT LAW
401 W. A Street, Suite 1150
San Diego, California 92101
(619) 557-0100 (Phone)
jkirby@johnkirbylaw.com
Attorney for Michael G. Douglas

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
## (HONORABLE MICHAEL S. BERG)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL G. DOUGLAS,<br><br>Defendant. | CASE NO. 23-mj-4483-MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOND**<br><br>Date: January 25, 2024<br>Time: 10:45 a.m. |

## I.
## THE CHARGES

Mr. Michael G. Douglas ("Mr. Douglas") is charged with violation of Title 18, U.S.C., Sections 2252A(a)(2) & (b)(1).

//

//

//

//

## II.

## **FACTS RELEVANT FOR BOND**

Mr. Douglas has resided in Escondido since his family moved to the San Diego area in 1990. Prior to his arrest he lived with his mother, Linda Douglas, and his aunt Patricia. Mr. Douglas' mother Linda is seventy-three (73) years old, and along with Mr. Douglas cares for Linda's sister Patricia Douglas, who is seventy-eight (78) and suffers from several health issues including non-alcoholic cirrhosis of the liver, congestive heart failure and several other maladies. Patricia Douglas has also recently fallen a total of three times, the most recent after Mr. Douglas' last court appearance. During this last fall, Patricia broke her eye socket and sustained a brain bleed. Prior to his arrest, Mr. Douglas was instrumental in Patricia Douglas' care. Mr. Douglas regularly drove her to the store and also to medical appointments, and also helped her around the home, as her sister Linda is not strong enough to lift her. Without Mr. Douglas' assistance, his mother is having difficulty caring for her sister.

The undersigned has also spoken with Mr. Steven Woods, who owns an estate liquidation business in the Escondido area. Mr. Woods confirmed that upon his release Mr. Douglas has a full-time job with Mr. Woods' company liquidating

a large estate, to include several luxury vehicles. Mr. Woods estimates that it will take Mr. Douglas approximately one year to liquidate that particular estate.

Mr. Douglas has reported illicit drug use from 2008 through 2011. However, Mr. Douglas has not used any illicit drugs since 2011.

Mr. Douglas has prior California state convictions. Mr. Douglas HAS made all of his court appearances in those cases. He successfully completed probation on those cases without incident.

Last year, Mr. Douglas also opened a 501(c) corporation to assist the homeless in the Escondido area. On the night of his arrest, he was travelling on Interstate 15 with a homeless individual, Crystal LNU, who had recently been incarcerated at the Las Colinas detention center. Crystal LNU told Mr. Douglas that she had angered an individual at Las Colinas who she believed was connected to a drug gang, and that she was worried that members of the drug gang would try to do her harm.

Mr. Douglas, as he was driving down Interstate 15, noticed that he was being followed by two late-model SUVs, and believed that these vehicles might belong to members of the drug gang that was after Crystal LNU. These vehicles then attempted to stop Mr. Douglas' vehicle. The vehicles did not use any red-and-blue flashing lights or sirens to identify them as law enforcement. Mr.

Douglas, fearing that the occupants of the vehicles might harm him, flashed a two-dollar plastic hand grenade at the occupants. Once the occupants identified themselves as law enforcement officers, Mr. Douglas surrendered peacefully.

Mr. Douglas vehemently denies all of the allegations contained in the complaint. He is willing to waive his right to an identity hearing to fight the charges in this case. Due to his own medical problems and those of his aunt Patricia, he wishes to fight these charges while on bond.

## III.

## <u>RELEVANT LAW RELATED TO BOND</u>

As a general principle, pretrial detention is anathema to our justice system. <u>See</u> <u>United States v. Motamedt</u>, 767 F.2d 1403, 1405 (9th Cir. 1985). Indeed, "federal law has traditionally provided that a person arrested for a non-capital offense <u>shall be admitted to bail</u>." <u>Id</u>. (emphasis added). To this end, the Bail Reform Act "mandates release of a person facing trial under the least restrictive condition that will reasonably assure the appearance of the person as required." <u>Id</u>. And pretrial release can be denied only if "the court 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'"

United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(e)).

Moreover, all [d]oubts regarding the propriety of release should be resolved in favor of the defendant," "[o]nly in rare circumstances should release be denied," and the government always bears the "burden of proof." Motamedt, 767 F.2d at 1405-06. Ultimately, because "[a] crucial liberty interest is at stake," the district court "should always [its] discretion with the recognition that [] pretrial detention [] may restrict for a significant time the liberty of a presumably innocent person." United States v. Delker, 757 F.2d 1390, 1398-00 (3rd Cir. 1985). The Ninth Circuit has emphasized that, given "the presumption of innocence," a defendant's "right to bail should be denied only for the strongest of reasons." Motamedt, 767 F.2d at 1407.

## III.

## ARGUMENT

## THIS COURT CAN IMPOSE CONDITIONS THAT WILL REASONABLY ASSURE MR. DOUGLAS' APPEARANCE AND THE COMMUNITY'S SAFETY

A. Mr. Douglas is Not a Flight Risk:

Mr. Douglas is a forty-eight (48) year old United States citizen who has lived in Escondido since his family moved to the area in 1990. He lives with his mother and aunt and will continue to do so while on pretrial release. His ties to

this community are strong. Mr. Douglas also has family members residing in the Florida area.

Mr. Douglas has a full-time job waiting for him once he is released. This full-time job involves the liquidation of a large estate, and it will likely take Mr. Douglas at least one year to accomplish this task. Presuming he done a good job on this project, there may be more work for him with this company.

Mr. Douglas suffers from myriad health problems, including a serious spinal condition and knee issues that would keep him from fleeing to Mexico or elsewhere, even if he had the desire and wherewithal to do so. Mr. Douglas has had criminal matters in the past and has never failed to show up for court as required.

Mr. Douglas initially fled from arresting agents in this case because he erroneously believed, based upon information supplied by the passenger in his vehicle, that the individuals following him may have been drug criminals. It is of note that the arresting agents did not sound a siren or flash red-and-blue lights normally associated with law enforcement when initially trying to apprehend him. Once Mr. Douglas realized that the individuals stopping him were law enforcement agents, he surrendered peacefully.

Mr. Douglas' aunt, Patricia, has resources for bond and has agreed to act as a surety on his behalf.

**B.** <u>Mr. Douglas is Not a Danger to the Community</u>

Mr. Douglas is not a danger to the community. Aside from one aspect of the unproven charges against him contained in the complaint, which he vehemently denies, there is nothing in the record to indicate that Mr. Douglas presents any danger to the community. Such unproven charges do not constitute a sufficient basis for determining by "clear and convincing evidence" that Mr. Douglas is a danger to the community. Moreover, there are other means, including GPS monitoring, that could be used to ameliorate both the danger of flight and the risk of harm to the community that fall short of the extreme remedy of detention without bond.

C. <u>Mr. Douglas is in Danger While in Custody</u>

Mr. Douglas suffers from a thinning of his spinal court in the cervical region of his spine. This thinning of his spinal cord will necessitate surgery for Mr. Douglas to avoid paralysis or even death. This condition could also result in paralysis or death if Mr. Douglas is jostled or assaulted. Mr. Douglas, due to the nature of the charges against him, has already been physically assaulted three times while in custody. Any further physical assault could potentially be deadly.

In addition, should Mr. Douglas be transported via the Marshals' system from southern California to Florida, he will inevitably be subjected to jostling and bumps along the way, any one of which could cause paralysis or even death. He

is in no danger of this if he is allowed to travel to Florida of his own accord to answer the charges in this case.

Further, Mr. Douglas will not receive adequate medical care while in custody. Putting aside the care he needs for his knees, according to his most recent medical evaluation he will need surgery to protect his thinning spinal cord in a year to eighteen (18) months to avoid paralysis. He is very unlikely to receive this surgery while in custody. Thus, holding him without bond is in effect condemning him to at least paralysis.

**III.**

**<u>CONCLUSION</u>**

In sum, Mr. Douglas is not a risk of flight. He has strong ties to this community and is needed by his relatives. He also needs surgery to forestall the progress of his own medical condition. He is not a danger to the community, but is in danger of paralysis or death while in custody due to continued assaults against him, or due to the inevitable bumping and jostling that will accompany his travel in Marshals' custody to Florida.

Given all of these facts, this Court should grant Mr. Douglas bond, along with GPS monitoring, to allow him to live and care for his relatives, receive his own needed medical care, and travel to and from Florida to fight the charges pending against him.

Dated:  January 22, 2024

Respectfully submitted,

s/ JOHN D. KIRBY
JOHN D. KIRBY
Attorney for Defendant
MICHAEL G. DOUGLAS
Email: jkirby@johnkirbylaw.com

9

JOHN D. KIRBY (CA Bar No. 149496)
110 W A Street, Suite 1100
San Diego, CA 92101
Tel (619)557-0100 Fax (619)557-0123

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 21-MR-04833-JLB-CAB |
| Plaintiff, | ) | |
| vs. | ) | |
| MICHAEL G. DOUGLAS, | ) | **PROOF OF SERVICE** |
| Defendant, | ) | |
|  | ) | |

I, the undersigned, hereby declare as follows:

1. I am over 18 years of age, a resident of the County of San Diego, State of California, counsel for the Defendant and that my address is 401 West A Street, Suite 1150, San Diego, CA 92101;

2. That today I served the Motion for Bail on opposing counsel by causing to be delivered by e-file to the Office of the Clerk; and that I mailed a copy to Defendant.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: January 22, 2024                    /S/John D. Kirby
                                           John D. Kirby

JOHN D. KIRBY
CA Bar No. 149496
Law Office of John D. Kirby
401 West A Street, Suite 1150
San Diego, CA 92101
Jkirby@johnkirbylaw.com
Tel (619)557-0100
Attorney for Michael G. Douglas

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**(HONORABLE MICHAEL S. BERG)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     vs.<br><br>MICHAEL G. DOUGLAS<br><br>          Defendant | Case No. 23-mj-4483-MSB<br><br>**DECLARATION OF MICHAEL G. DOUGLAS** |

I, Michael G. Douglas, Declare:

1. I have personal knowledge of the facts stated in this Declaration and, if called as a witness, would testify to these facts.

2. On January 10, 2024, I was transported to the U.C.S.D. Medical Center for a medical evaluation.

3. While at the Medical Center, I was seen by a physician.

4. I had previously been told by my physician that my spinal cord in the cervical area was thinning, and that I would at some point need my vertebrae fused to protect my spinal cord.

5. During my examination at U.C.S.C. Medical Center on January 10, 2024, the examining physician told me that my spinal cord was thinning at a

rapid rate, and that I would need surgery within one year to eighteen months or that I might become paralyzed or even die.

6. The examining physician also told me that I could become paralyzed or even die if subjected to extreme jostling or any hard jolts.

7. I have been subject to regular physical and verbal harassment while at housed at the Metropolitian Correctional Center (MCC) in San Diego, to include being shoved and on one occasion, on January 19, 2024, hit hard in the cheekbone area. I have been physically assaulted a total of three times while at the MCC.

8. Since I was punched in the cheekbone on January 9, I have had tingling and numbness in my fingers and toes.

9. I have also been hindered from climbing into my bunk by the pain in my knees. Prior to my arrest I had been receiving regular injections in my knees to assist me in walking and otherwise remaining ambulatory. I have not received any of my injections since I have been incarcerated.

10. My mother, Linda Douglas, is currently seventy-three (73) years old. Prior to my arrest, I assisted her in caring for my aunt, Patricia, who is seventy-eight (78) and suffers from diabetes, heart failure, has fallen three times (breaking bones each time). I assist Patricia in getting around the house, going to the store, and with general issues getting around. My mother, due to her age, is unable to assist Patricia in some of these activities.

11. I have not used any illicit drugs since 2011.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>January 22, 2024</u>          Respectfully submitted,

_____
John D. Kirby          *Michael G.*
Attorney for Defendant          *Douglas*
Michael G. Douglas

*Declaration of Michael G. Douglas*

*U.S. v. Douglas 23-mj-4483-MSB*

1 TARA K. MCGRATH
  United States Attorney
2 CALEN A. BENNETT
  Assistant U.S. Attorney
3 California State Bar No. 340211
  United States Attorney's Office
4 880 Front Street, Room 6293
5 San Diego, CA 92101
  (619) 546-9619
6 calen.bennett@usdoj.gov
7

8 Attorneys for the United States

9       **UNITED STATES DISTRICT COURT**

10      **SOUTHERN DISTRICT OF CALIFORNIA**

11 UNITED STATES OF AMERICA,  Case No.: 23-MJ-4483-MSB

12     Plaintiff,

13   v.       **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION**
14 MICHAEL GORDON DOUGLAS, **(ECF NO. 18)**

15     Defendant.

16

17

18    Beginning around October 3, 2023, Defendant MICHAEL GORDON DOUGLAS,

19 a previously convicted sex offender with a violent criminal history, distributed substantial

20 amounts of child sexual abuse material to an undercover agent and repeatedly expressed

21 his desire and intention to meet that agent and rape her eight-year-old daughter. *See* ECF

22 No. 1. Defendant was subsequently charged with Distribution of Child Pornography, in

23 violation of 18 U.S.C. § 2252A(a)(2) & (b)(1). He was arrested on December 12, 2023,

24 after attempting to flee and brandishing a grenade once surrounded by law enforcement.

25 ECF No. 2. At his detention hearing, this Court weighed the applicable detention factors

26 under 18 U.S.C. § 3142(g) and determined that Defendant presents both a serious risk of

27 flight and a danger to the community. It ordered him detained. ECF No. 13, at 13.

28

Defendant now moves this Court to reconsider its detention order without presenting any new material information, effectively seeking a second bite at the apple. *See* ECF No. 20.

The Court should deny the motion. As a threshold matter, reconsideration is unwarranted because there has been no change in the controlling law that this Court relied on, and Defendant's material circumstances remain unchanged. *See* 18 U.S.C. § 3142(f). But even if this Court were to reconsider its detention order, the factors continue to support detention: Defendant remains both a danger to the community and serious flight risk. And the Court rightly determined that no condition or combination of conditions could reasonably assure community safety and the Defendant's appearance as required when it ordered him detained on December 19, 2023.

## BACKGROUND

On October 3, 2023, an undercover agent (UCA) in West Palm Beach, Florida—assuming the persona of a twenty-nine-year-old female with an eight-year-old daughter while acting in an undercover capacity—began receiving private communication from Defendant. *See* ECF No. 2. Over the next few months, Defendant electronically sent UCA several videos and photos of child sexual abuse material. *See id.* Defendant also openly expressed his desire and intent to rape UCA's eight-year-old daughter, discussing plans to visit the two and describing in detail how he would use specific sex toys and a speculum on the child before engaging in intercourse. *See* ECF 13, at 3.

On December 12, 2023, Defendant was set to make specific arrangements to meet with UCA and her daughter at a hotel in Carlsbad, near Legoland—an area where Defendant suggested they meet. *See id.* at 4. That same day, Homeland Security Investigations ("HSI") agents encountered Defendant driving with a female in the front passenger seat. By then, Defendant had been charged with Distribution of Child Pornography (seven counts), in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1), in the Southern District of Florida and was the subject of an active arrest warrant. After observing Defendant commit several traffic infractions while attempting to flee law enforcement

surveillance,[1] HSI agents eventually executed a stop on Defendant's vehicle after activating emergency lights and sirens. *See* ECF 13, at 4-5. Once Defendant's vehicle was surrounded, HSI agents, wearing vests displaying "HSI" and "POLICE," immediately provided police announcements and order Defendant not to move. But Defendant disobeyed. He ducked behind the dash of his vehicle and reappeared displaying a grenade in his hand. At the same time, the female in the front passenger seat of Defendant's vehicle threw herself out of the vehicle onto the pavement and began frantically screaming: "HE IS GOING TO KILL US," "HE IS CRAZY" and "GRENADE." *See id.* at 5.

More than a minute passed as HSI agents, with weapons drawn on Defendant, attempted to clear the surrounding area while commanding Defendant to surrender. Finally, Defendant placed the hand grenade on the dashboard and exited the vehicle. Only after a bomb squad was deployed were HSI agents ultimately able to determine that the grenade was in fact a replica. *See id.* After Defendant was handcuffed, a search incident to arrest revealed, among other personal belongings, multiple knives on his person. *See id.* at 7.

During Defendant's initial appearance the next day, the United States moved to detain based on danger to the community and serious risk of flight. *See* ECF No. 3. Defendant requested time to prepare and so the Court scheduled a detention hearing the following week. On December 19, 2024, Defendant was indicted on seven counts for violating 18 U.S.C. § 2252A(a)(2) & (b)(1)—mirroring the charges in the complaint. At the Defendant's detention hearing later that day, the United States noted the applicable presumption of detention under 18 U.S.C. § 3143(e)(3)(E) and expressed its concern with the facts and circumstances surrounding this case case—namely, Defendant's violent criminal history (including both a prior conviction for distribution of harmful material to a minor and an attempt to evade arrest), the circumstances surrounding Defendant's arrest, the lengthy period of incarceration if convicted (Defendant is facing a 15-year mandatory

---

[1] Defendant's vehicle was equipped with aftermarket emergency lights and Defendant was driving in an erratic nature, passing through intersections against traffic signals and traveling over the speed limit.

minimum for each one of the seven indicted counts), and the strength of the evidence (although the least important factor). ECF No. 13, at 2-9. Finally, the Unites States highlighted that Defendant lacked stable employment and admitted using methamphetamine and cocaine within the week before his arrest. *Id.* at 8.

Defendant, on the other hand, sought a $50,000 real property bond. *Id.* at 9. Defendant proffered that his mother and aunt were willing to post the bond using the "family home." *Id.* Defendant indicated helps take care of his aging aunt and mother and works with the homeless community in the Escondido area. *Id.* Defendant disputed that he knowingly fled from law enforcement before his arrest, arguing that the grenade he displayed was not operational and that "[s]imply carrying a knife is not a crime." *Id.* at 10. Finally, Defendant noted that he successfully completed a five-year term of probation for his prior conviction for distribution of harmful material to a minor. *Id.*

Before the Court was also Pre-trial Services' report and recommendation. The report provided information on Defendant's physical health, including reported medical issues with Defendant's knee, neck, and back. Pre-trial Services recommended detention, concluding that there were no conditions or combinations of conditions to reasonably assure community safety or the Defendant's appearance in future court proceedings as required.

Ultimately, the Court granted the United States' motion to detain after finding that Defendant is a danger to the community (by clear and convincing evidence) and a serious flight risk (by preponderance a preponderance of the evidence). In a written detention order, the Court listed the following reasons for detention after weighing the 18 U.S.C. § 3142(g) factors:

- Weight of evidence against the defendant is strong, but is the least important factor;
- Subject to lengthy period of incarceration if convicted;
- Prior criminal history;
- History of violence or use of weapons;

- Lack of stable employment;
- Lack of significant community or family ties to Florida, the charging district;
- Prior attempt(s) to evade law enforcement; and
- Prior sex offense conviction.

ECF No. 10, at 1.  Defendant's motion for reconsideration followed.  ECF Nos. 18, 20.

## DISCUSSION

I.     **Reconsideration of the detention order is not warranted because the same material facts and circumstances exist now as they did on December 19, 2023.**

A court may reconsider an order of detention only if it finds that "information exists that *was not known to the movant at the time of the hearing* and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f) (emphasis added).  In other words, merely rearguing a previous position with information that was available at the initial detention hearing cannot support reconsideration.  *See Schueneman v. Arena Pharms., Inc.*, No. 10-CV-1959-CAB, 2018 WL 11437824, at *2 (S.D. Cal. May 11, 2018); *see also United States v. Ward*, 63 F. Supp. 2d 1203, 1206-07 (C.D. Cal. 1999) (stating detention hearing should not be reopened to consider evidence available at the time of the original hearing).

Defendant raises three new factual assertions, none of which has any material bearing on whether conditions of release can reasonably assure community safety or Defendant's appearance as required.  First, Defendant's asserts that his aunt, who has fallen on two previous occasions, fell sometime after Defendant's last appearance in court, "br[eaking] her eye socket" and "sustain[ing] a brain bleed."  ECF No. 18, at 2; *see* ECF No. 20, at 2. Defendant essentially argues that because his aunt recently fell, and he was caring for his aunt and mother while living in the family home before his arrest, he is less likely a flight risk.  Tellingly, Defendant fails to explain how this third fall would change the Court's analysis under 18 U.S.C. § 3142(g).  Indeed, this Court was informed during

the detention hearing that Defendant cared for both his elderly mother and aunt. *See* ECF No. 13 at 9. And still, it ordered Defendant detained. Moreover, Defendant's role as caretaker for his aging mother and aunt did not stop Defendant from attempting to flee law enforcement on December 12, 2024. Nor did it stop Defendant from obtaining a passport and traveling to the United Kingdom in 2022. Finally, it did not stop Defendant from sending the UCA child sexual abuse material and planning to visit the UCA Florida so Defendant could rape the UCA's eight-year-old daughter.

Second, Defendant asserts that he has been "physically assaulted three times while in custody." ECF No. 18, at 7; *see* ECF No. 20, at 2. However, the Bureau of Prisons could not find anything in Defendant's record to corroborate these allegations. No matter, Defendant again fails to explain how these alleged assaults have any relevance to the Court's analysis under 18 U.S.C. § 3142(g). That is because it is immaterial to whether there are conditions of release that will reasonably assure community safety or Defendant's appearance. Besides, Defendant is facing charges in Southern District of Florida, and not in this District. So, once remove, he will be housed at a different facility, thousands of miles away from MCC.

Third, Defendant's claims that his "most recent medical evaluation" on January 10, 2024, revealed that "he will need surgery to protect his thinning spinal cord in a year to eighteen (18) months to avoid paralysis." ECF No. 18, at 8; *see* ECF No. 20, at 1-2. Because of this alleged diagnosis, Defendant warns this Court that it "is in effect condemning him to at least paralysis" unless it grants bond Defendant because he "will not receive adequate medical care while in custody." ECF No. 18, at 8. Notably, however, Defendant fails to provide any substantiation to his claim that he "will not receive adequate medical care while in custody." *See id.* And Defendant's medical records contradict his representations to this Court. *See* Defendant's Medical Records, Exhibit 1 (Sealed) at 1-3. Yet again, Defendant fails to explain how his medical condition will have any relevance to the Court's analysis under 18 U.S.C. § 3142(g). Additionally, Defendant admits that he knew about his back issues and the eventual need for surgery before his arrest. *See* ECF

No. 20, at 1-2.  So, notwithstanding his back issues, Defendant attempted to flee law enforcement on December 12, 2023, by driving in an erratic nature at high speeds while carrying weapons; he was also making plans to visit the UC and her child in Florida to commit egregious acts.

Defendant's motion otherwise merely rehashes arguments that Defendant made (or could have made) at the time of the detention hearing.  Accordingly, the same facts and circumstances exist now as they did at the time of Defendant's initial appearance on December 19, 2023.  Because reconsideration is not a vehicle to "ask the Court to rethink what it has already thought through," *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998), Defendant's motion should be denied without reaching the merits,

## II.    If the Court where to consider the merits, the 3142(g) factors still support detention.

Defendant's motion does not provide any basis for the Court to change its mind as to the reasons supporting detention.  The Court properly held a detention hearing under the applicable 3142(g) factors and determined that no conditions or combination of conditions can be set to reasonably assure community safety or Defendant's future appearance as required.  At bottom, each of the 3142(g) factors that the Court weighed in favor of detention continues to support detention and the circumstances remain the same as the day of the detention hearing.  The Court should therefore deny Defendant's motion.

## CONCLUSION

The United States respectfully asks this Court to deny Defendant's motion to reconsider the Court's detention order.

DATED: January 24, 2024                    Respectfully submitted,

TARA K. MCGRATH
United States Attorney

/s/ *Calen A. Bennett*
CALEN A. BENNETT
Assistant United States Attorney

7

TARA K. MCGRATH
United States Attorney
CALEN BENNETT
Assistant U.S. Attorney
California. Bar No. 340211
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9619
Calen.Bennett@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>MICHAEL GORDON DOUGLAS.<br><br>                    Defendant. | Case No:   23-MJ-4483-MSB<br><br>**NOTICE OF DISTRICT COURT JUDGE'S ORDER GRANTING TEMPORARY STAY OF RELEASE OF DEFENDANT ON BOND** |

COMES NOW, the United States of America, through its undersigned counsel, and notices this Court of the District Court Judge's Order Granting Temporary Stay of Release of Defendant on Bond.

//

//

//

//

//

1    DATED: January 26, 2024.

2                                    Respectfully submitted,

3                                    TARA K. MCGRATH
                                     United States Attorney
4

5                                    *s/Calen Bennett*

6                                    CALEN BENNETT
                                     Assistant U.S. Attorney
7                                    Attorneys for Plaintiff
                                     United States of America
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

United States of America,

Plaintiff,

v.

Michael Gordon Douglas,

Defendant.

Case No.: 23MJ4483-MSB

**ORDER**

Under federal law, including Rule 5(f) of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), and all applicable decisions from the Supreme Court and the Ninth Circuit interpreting *Brady*, the government has a continuing obligation to produce all information or evidence known to the government relating to guilt or punishment that might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence. *See United States v. Price*, 566 F.3d 900,913 n.14 (9th Cir. 2009). Accordingly, the court orders the government to produce to the defendant in a timely manner all such information or evidence.

Information or evidence may be favorable to a defendant's case if it either may help bolster the defendant's case or impeach a prosecutor's witness or other government evidence. If doubt exists, it should be resolved in favor of the defendant with full

1

disclosure being made.

If the government believes that a required disclosure would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, the government may apply to the Court for a modification of the requirements of this Disclosure Order, which may include *in camera* review and/or withholding or subjecting to a protective order all or part of the information.

This Disclosure Order is entered under Rule 5(f) and does not relieve any party in this matter of any other discovery obligation. The consequences for violating either this Disclosure Order or the government's obligations under *Brady* include, but are not limited to, the following: contempt, sanction, referral to a disciplinary authority, adverse jury instruction, exclusion of evidence, and dismissal of charges. Nothing in this Disclosure Order enlarges or diminishes the government's obligation to disclose information and evidence to a defendant under *Brady*, as interpreted and applied under Supreme Court and Ninth Circuit precedent. As the Supreme Court noted, "the government violates the Constitution's Due Process Clause 'if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.'" *Turner v. United States*, 137 S. Ct. 1885, 1888 (2017), quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012).

Dated:  12/13/2023

Honorable Michael S. Berg
United States Magistrate Judge

23MJ4483-MSB

CLOSED,BRADY,SEALDC

# U.S. District Court
## Southern District of California (San Diego)
## CRIMINAL DOCKET FOR CASE #: 3:23-mj-04483-MSB-1

Case title: USA v. Douglas

Date Filed: 12/13/2023

Date Terminated: 01/30/2024

Assigned to: Magistrate Judge Michael S. Berg

**<u>Defendant (1)</u>**

| | |
|---|---|
| **Michael Gordon Douglas**<br>*TERMINATED: 01/30/2024*<br>10354506 | represented by **Federal Defenders**<br>Federal Defenders of San Diego<br>225 Broadway<br>Suite 900<br>San Diego, CA 92101-5008<br>(619)234-8467<br>Fax: (619)687-2666<br>Email: cassd_ecf@fd.org<br>*TERMINATED: 12/14/2023*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community Defender Appointment* |

**Cassidy Ann Heverling**
Federal Defenders of San Diego, Inc.
225 Broadway
Suite 900
San Diego, CA 92101
619-234-8467
Email: cassidy_heverling@fd.org
*TERMINATED: 01/04/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**John David Kirby**
John D. Kirby, Attorney at Law
401 West A Street
Suite 1150
San Diego, CA 92101
619-557-0100
Fax: 619-915-6065
Email: jkirby@johnkirbylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

Leila W Morgan
Federal Defenders of San Diego
225 Broadway
Suite 900
San Diego, CA 92101-5008
(619)234-8467
Fax: (619)687-2666
Email: Leila_Morgan@fd.org
*TERMINATED: 01/04/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| 18:2252A(a)(2), 2252A(b)(l) - Distribution of Child Pornography | |

---

**Plaintiff**

**USA**                                        represented by **U S Attorney CR**
U S Attorneys Office Southern District of
California
Criminal Division
880 Front Street
Room 6293
San Diego, CA 92101
(619)557-5610
Fax: (619)557-5917
Email: Efile.dkt.gc2@usdoj.gov
*TERMINATED: 12/19/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States Attorney*

**Calen A. Bennett**
DOJ-USAO
880 Front Street
Room 6293
San Diego, CA 92101
619-546-9619

Email: calen.bennett@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/12/2023 | | Arrest of Michael Gordon Douglas. (no document attached) (mef) (Entered: 12/13/2023) |
| 12/13/2023 | 1 | OUT OF DISTRICT COMPLAINT as to Michael Gordon Douglas. (Attachments: # 1 Info Sheet) (mef) (Main Document 1 replaced on 12/13/2023) (mef). (Main Document 1 replaced on 12/14/2023 to unseal) (jpp). (Entered: 12/13/2023) |
| 12/13/2023 | 2 | Set/Reset Duty Hearings as to Michael Gordon Douglas: Initial Appearance - ODC set for 12/13/2023 before Magistrate Judge Michael S. Berg. (no document attached) (fjp) (Entered: 12/13/2023) |
| 12/13/2023 | 3 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg: Government oral motion to unseal the case is granted. Initial Appearance - Out of District Complaint as to Michael Gordon Douglas held on 12/13/2023. Oral proffer confirmed. Federal Defenders appointed for Michael Gordon Douglas on behalf of defendant. Government oral motion to detain (Flight/Danger). ( Detention Hearing - RF/DC set for 12/19/2023 01:30 PM before Magistrate Judge Michael S. Berg. Removal/ID Hearing set for 12/26/2023 01:30 PM before Magistrate Judge Michael S. Berg.)Rule 5 advisement provided. (Sealed Clerk Notified) (CD# 12/13/2023 MSB 23-1:3:15;3:21-3:25). (Plaintiff Attorney Amanda Griffith AUSA). (Defendant Attorney Nina Papachristou FD-S/A). (no document attached) (aje) (CD# 12/13/2023 MSB 23-1:3:15;3:21-3:25). (Plaintiff Attorney Amanda Griffith AUSA). (Defendant Attorney Nina Papachristou FD-S/A). (no document attached) (aje) (Entered: 12/13/2023) |
| 12/13/2023 | 4 | ***English. No Interpreter needed as to Michael Gordon Douglas (no document attached) (aje) (Entered: 12/13/2023) |
| 12/13/2023 | 5 | Oral MOTION to Detain (Flight/Danger) by USA as to Michael Gordon Douglas. (no document attached) (aje) (Entered: 12/13/2023) |
| 12/13/2023 | 6 | ORDER as to Michael Gordon Douglas: The Court orders the United States to comply with the continuing duty to disclose evidence which is favorable to the defendant as required by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. Upon finding that the government has failed to comply with this order, the Court may, as appropriate, order the production of such information, grant a continuance, impose evidentiary sanctions, or, in extreme cases, dismiss charges.. Signed by Magistrate Judge Michael S. Berg on 12/13/23. (aje) (Entered: 12/14/2023) |
| 12/14/2023 | 7 | NOTICE OF ATTORNEY APPEARANCE: Leila W Morgan appearing for Michael Gordon Douglas (Morgan, Leila)Attorney Leila W Morgan added to party Michael Gordon Douglas(pty:dft) (ggv). (Entered: 12/14/2023) |
| 12/19/2023 | 8 | NOTICE OF ATTORNEY APPEARANCE Calen A. Bennett appearing for USA. (Bennett, Calen)Attorney Calen A. Bennett added to party USA(pty:pla)(stn). (Entered: 12/19/2023) |
| 12/19/2023 | 9 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg: Detention Hearing as to Michael Gordon Douglas held on 12/19/2023. USA oral motion for detention; motion granted as to Michael Gordon Douglas. Defendant ordered detained without prejudice. Order of detention to be filed by Court. Defense counsel request to continue Removal/ID Hearing; granted. Removal/ID Hearing continued to 12/28/2023 at 1:30 PM before Magistrate Judge Michael S. Berg. (CD# 12/19/2023 MSB 3:14-3:29). (Plaintiff Attorney Amanda Griffith, AUSA). (Defendant Attorney Cassidy Heverling, FD S/A for Leila Morgan). (no document attached) (mxl) (Entered: 12/19/2023) |
| 12/19/2023 | 10 | ORDER OF DETENTION as to Michael Gordon Douglas. Signed by Magistrate Judge Michael S. Berg on 12/19/2023. (cxl) (Entered: 12/20/2023) |

| 12/22/2023 | 11 | NOTICE OF ATTORNEY APPEARANCE: Cassidy Ann Heverling appearing for Michael Gordon Douglas (Heverling, Cassidy)Attorney Cassidy Ann Heverling added to party Michael Gordon Douglas(pty:dft) (ggv). (Entered: 12/22/2023) |
|---|---|---|
| 12/27/2023 | 12 | TRANSCRIPT ORDER - For hearing(s) on 12/19/23 by USA (Bennett, Calen) (rxc). (Entered: 12/27/2023) |
| 12/27/2023 | 13 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Detention Hearing as to Michael Gordon Douglas held on December 19, 2023, before Judge Michael S. Berg. Court Reporter/Transcriber: Amanda M. LeGore. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/17/2024. Redacted Transcript Deadline set for 1/29/2024. Release of Transcript Restriction set for 3/26/2024. (alg) (jrd) (Entered: 12/27/2023) |
| 12/28/2023 | 14 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg: Removal/ID Hearing as to Michael Gordon Douglas not held on 12/28/2023. Defense counsel request to continue hearing; granted. Removal/ID Hearing continued to 1/4/2024 at 1:45 PM before Magistrate Judge Michael S. Berg. (CD# 12/28/2023 MSB 1:44-1:49). (Plaintiff Attorney Calen Bennett, AUSA). (Defendant Attorney Leila Morgan & Cassidy Heverling, FD). (no document attached) (mxl) (Entered: 12/29/2023) |
| 01/04/2024 | 15 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg: Removal/ID Hearing as to Michael Gordon Douglas held on 1/4/2024. Removal/ID Hearing set for 1/25/2024 01:30 PM before Magistrate Judge Michael S. Berg. Attorney Cassidy Ann Heverling and Leila W Morgan relieved in case as to Michael Gordon Douglas. (CD# 1/4/2024 MSB 24 2:24-2:30). (Plaintiff Attorney Calen Bennett, AUSA). (Defendant Attorney John Kirby, RET). (no document attached) (bas1) (Entered: 01/05/2024) |
| 01/04/2024 | 16 | MOTION to Substitute Attorney by Michael Gordon Douglas. (stn) (Entered: 01/05/2024) |
| 01/04/2024 | 17 | MINUTE ORDER granting 16 Motion to Substitute Attorney. Added attorney John David Kirby as to Michael Gordon Douglas (1). IT IS SO ORDERED by Magistrate Judge Michael S. Berg on 1/4/2024.(no document attached) (mxl) (Entered: 01/08/2024) |
| 01/22/2024 | 18 | MOTION for Bond by Michael Gordon Douglas. (Kirby, John) (rxc). (Entered: 01/22/2024) |
| 01/23/2024 | 19 | NOTICE OF HEARING as to Defendant Michael Gordon Douglas. Motion Hearing set for 1/25/2024 01:30 PM before Magistrate Judge Michael S. Berg. (no document attached) (acc) (Entered: 01/23/2024) |
| 01/23/2024 | 20 | SUPPLEMENTAL DOCUMENT by Michael Gordon Douglas re 18 MOTION for Bond (Attachments: # 1 Proof of Service)(Kirby, John) (stn). (Entered: 01/23/2024) |
| 01/24/2024 | 21 | RESPONSE in Opposition by USA as to Michael Gordon Douglas re 18 MOTION for Bond (Bennett, Calen) (rxc). (Entered: 01/24/2024) |
| 01/25/2024 | 26 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg:Bond Hearing as to Michael Gordon Douglas held on 1/25/2024. Defense counsel request for bond reconsideration; granted. Bond set at $100,000 P/S secured by trust deed to the United States. Travel is extended to the state of Florida. Removal/ID Hearing as to Michael Gordon Douglas held on 1/25/2024. Defendant admits identity. Waiver of rule 5 filed. Defendant ordered transferred to the Southern District of Florida. Status hearing set for 1/29/2024 at 1:30 PM before Magistrate Judge Michael S. Berg. (CD# 1/25/2024 MSB 1:49-2:02; 2:20-2:27). (Plaintiff Attorney Calen Bennett, AUSA). (Defendant Attorney John Kirby, RET). (PTSO: Thalia Duarte)(no document attached) (mxl) (Entered: 01/26/2024) |
| 01/25/2024 | 29 | ORDER Setting Conditions of Release. Bond set for Michael Gordon Douglas (1) $100,000 P/S secured by trust deed to the United States. Travel is extended to the state of Florida. Signed by |

| | | Magistrate Judge Michael S. Berg on 1/25/2024. (rxc) (Entered: 01/26/2024) |
|---|---|---|
| 01/25/2024 | 30 | WAIVER of Rule 5 Hearings by Michael Gordon Douglas (rxc) (Entered: 01/26/2024) |
| 01/25/2024 | 31 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Removal/ID and Bond Hearing as to Michael Gordon Douglas held on 1/25/2024, before Judge Michael S. Berg. Court Reporter/Transcriber: Anne Roldan. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 2/16/2024. Redacted Transcript Deadline set for 2/26/2024. Release of Transcript Restriction set for 4/25/2024. (dim)(jrd) (Entered: 01/26/2024) |
| 01/26/2024 | 25 | NOTICE *OF DISTRICT COURT JUDGE ORDER GRANTING TEMPORARY STAY OF RELEASE OF DEFENDANT ON BOND* by USA (Attachments: # 1 DISTRICT COURT JUDGE ORDER GRANTING TEMPORARY STAY OF RELEASE OF DEFENDANT ON BOND) (Bennett, Calen) (stn). (Entered: 01/26/2024) |
| 01/26/2024 | 27 | TRANSCRIPT ORDER - For hearing(s) on 1/25/2024 by USA (Bennett, Calen) (stn). (Entered: 01/26/2024) |
| 01/26/2024 | 28 | NOTICE OF HEARING as to Defendant Michael Gordon Douglas. Status Hearing set for 1/29/2024 01:30 PM before Magistrate Judge Michael S. Berg. (no document attached) (mxl) (Entered: 01/26/2024) |
| 01/29/2024 | 34 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg: Removal/ID Hearing as to Michael Gordon Douglas held on 1/29/2024. Warrant of removal filed. Defendant ordered transferred to the Southern District of Florida. (CD# 1/29/2024 MSB 1:30-1:32). (Plaintiff Attorney Calen Bennett, AUSA). (Defendant Attorney John Kirby, RET). (no document attached) (mxl) (Entered: 01/30/2024) |
| 01/30/2024 | 32 | WARRANT of Removal to the Southern District of Florida Issued as to Michael Gordon Douglas. (rxc) (Entered: 01/30/2024) |
| 01/30/2024 | 33 | NOTICE to Receiving District: **(Southern District of Florida)**, of Case Removal, as to Michael Gordon Douglas. The following documents are available on the public docket: 11 Notice of Attorney Appearance - Defendant, 12 Transcript Order, 8 Notice of Attorney Appearance - USA, 20 Supplemental Document, 16 MOTION to Substitute Attorney, 25 Notice (Other), 10 Order of Detention, 30 Waiver of Rule 5 Hearings, 27 Transcript Order, 6 Order re Rule 5(f) Advisal - Brady Advisal,, 21 Response in Opposition, 29 Order Setting Conditions of Release (Pretrial Release Order), 7 Notice of Attorney Appearance - Defendant, 18 MOTION for Bond . Additional documents will be sent via Email. To request additional transfer information and/or to submit acknowledgment re receipt of transfer, please email InterdistrictTransfer_CASD@casd.uscourts.gov.. (rxc) (Entered: 01/30/2024) |

1   UNITED STATES DISTRICT COURT

2   FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

UNITED STATES OF AMERICA,    )   No. 23-mj-4483-MSB

4                       )

            Plaintiff,  )   Thursday, January 25, 2024

5      vs.              )

                    )   Removal/ID and Bond Hearing

6   MICHAEL GORDON DOUGLAS,   )

                    )

7            Defendant.  )

   _____)

8

9   REPORTER'S TRANSCRIPT OF PROCEEDINGS

10

BEFORE THE HONORABLE MICHAEL S. BERG

11   UNITED STATES MAGISTRATE JUDGE

12   PAGES 1 - 16

13   APPEARANCES:

14   For Plaintiff:      UNITED STATES ATTORNEY'S OFFICE
                   880 Front Street, Suite 6293

15                   San Diego, California  92101
                  *By: CALEN A. BENNETT, AUSA*

16

17   For Defendant:      LAW OFFICES OF JOHN D. KIRBY, APC
                   101 West A Street, Suite 1150

18                   San Diego, California  92101
                  *By: JOHN D. KIRBY, Esq.*

19

20

21   Transcribed By:

22   Anne Roldan, RMR, CRR, Cal. CSR #13095
   Official Court Reporter

23   U.S. District Court, Southern District of California
   333 West Broadway, Suite 420

24   San Diego, California  92101

25   Recorded electronically; transcribed by stenotype.

1     ***THURSDAY, JANUARY 24, 2024, 1:49 - 2:27 P.M.***

2                                    ***

3          **THE CLERK:** Calling Matter No. 3, 23-mj-4483, United

4     States of America vs. Michael Gordon Douglas.

5          **MR. KIRBY:** Good afternoon, your Honor.  John Kirby on

6     behalf of Mr. Douglas.  He is present in custody.

7          **THE COURT:** Thank you.  Good afternoon.

8          **MR. BENNETT:** Good afternoon, your Honor.  Calen

9     Bennett for the United States.

10         **THE COURT:** Okay.  And is that a -- is there a

11    stipulation?

12         **MR. KIRBY:** Your Honor, I'd previously given your clerk

13    the stipulation for --

14         **THE COURT:** Got it.

15         **MR. KIRBY:** -- for the hearing.

16         **THE COURT:** Got it.

17         Mr. Douglas, today is the date set for your identity

18    hearing.  A warrant -- an arrest warrant and indictment were

19    filed against you in the Southern District of Florida charging

20    you with 7 counts of 18 USC Sections 2252A(a)(2) and (b)(1).

21    You have a right to a hearing to determine if, in fact, you are

22    the Michael Douglas Gordon that is wanted -- is it "Michael

23    Douglas Gordon" or "Michael Gordon Douglas"?

24         **THE DEFENDANT:** Michael Gordon Douglas.

25         **THE COURT:** Okay.  This is -- the warrant of removal is

1   wrong, so we need to change that.

2          -- to determine if you are the Michael Gordon Douglas

3   that is wanted in that district.  At that hearing you would have

4   the right to cross-examine and confront any witnesses that would

5   testify against you, the right to subpoena to court any

6   witnesses to testify on your behalf, the right for you to

7   personally testify or remain silent, and the right to an

8   attorney, which you have.

9          Do you understand those rights?

10         **THE DEFENDANT:**  Yes, your Honor.

11         **THE COURT:**  And are you willing to give up those rights

12  and admit that you are, in fact, Michael Gordon Douglas, the

13  individual that is wanted in the Southern District of Florida?

14         **THE DEFENDANT:**  Yes, your Honor.

15         **THE COURT:**  Okay.  And you concur, Mr. Kirby?

16         **MR. KIRBY:**  Yes, your Honor.

17         **THE COURT:**  Let me just make this interlineation on

18  the --

19         **MR. BENNETT:**  Apologies, your Honor.

20         **THE COURT:**  No need.

21         Okay.  I will accept that.  And do we have a date -- we

22  don't have a date; correct?  For his appearance there.

23         **MR. BENNETT:**  No, your Honor.

24         **THE COURT:**  So at some point in the next couple weeks,

25  you will -- well, you wanted to have a bond hearing; right?

1        **MR. KIRBY:**  Yes, your Honor.

2        **THE COURT:**  Okay.  So let's do that, and then we'll go

3  on with your appearance date.

4        What did you want to present, Mr. Kirby?

5        **MR. KIRBY:**  Well, your Honor, first I want to present

6  is -- I want to sort of frame this issue.  What we're talking

7  about are that there are no conditions that will assure his

8  appearance or assure the safety of the community reasonably.

9  And I'd like to start with what is new here.  What is new here

10  is he does have stable employment.

11        **THE COURT:**  He what?

12        **MR. KIRBY:**  He does have stable employment.  I've

13  spoken to his potential employer.  He runs an estate liquidation

14  business, and he wishes to hire Mr. Douglas to work on it, an

15  estate.  I think it's about a quarter of a million dollars.  He

16  estimates it will take approximately one year to liquidate.  So

17  he does have stable employment.

18        I don't think it was mentioned the last time that he

19  does have relatives in Florida, not particularly close

20  relatives, but he does have contacts in Florida.

21        I believe, though, the inquiry is whether there are

22  contacts in the jurisdiction.  He -- obviously, his mother and

23  his aunt, who are both here today.  His aunt just had a --

24        **THE COURT:**  I think they've been here at every

25  appearance, if I'm not mistaken.

1    **MR. KIRBY:**  That is correct, your Honor.

2    **THE COURT:**  Thank you for being here.

3    **MR. KIRBY:**  And his aunt did suffer a fall after the

4    last court, but she's back, well enough to make it here.  So her

5    medical condition, I guess, is new, though ongoing.

6           As far as my client's medical condition, I saw the

7    records that the Government produced from the MCC.  All I can

8    tell you, your Honor, is as is se forth in the declaration that

9    my client filed, he was told at UCSD -- and we don't have those

10   medical records because I can't get those quickly enough,

11   obviously -- that he does have a *(inaudible)* at the spine in the

12   cervical region.  If he does not get surgery within a year or

13   18 months, he will be paralyzed at the very least.

14          That's not going to happen.  Real life, your Honor,

15   that's not going to happen in custody.  And your Honor knows

16   that as well as I do.  I mean, common sense.

17          He has been assaulted while in custody.  The Government

18   said there's no record of that.  I have -- I honestly emailed

19   the MCC about a -- an assault that I was made aware of, and they

20   emailed me back.  So I'm not sure why there's no record that

21   there was a reported assault because I did, in fact, email them

22   to that effect.

23          He has been assaulted, basically, based upon the

24   charges in this case.  And given his medical condition, another

25   assault could be, at the very least, catastrophic to his health.

1    So he's waiting for that to happen.  He is waiting for one more

2    assault, one more jostling.

3          And obviously, your Honor -- and again, this is a

4    commonsense matter.  If he is sent via the -- via the Marshals,

5    he is going to be jostled.  He is going to be jostled around

6    just by the very nature of him being moved from one part of the

7    country to the other.

8          As far as fleeing, I mean, I think the whole issue with

9    him fleeing from law enforcement, I think that's nebulous.  They

10   didn't have marked vehicles.  They didn't put on their sirens.

11   They didn't put on their lights.

12         *THE COURT:*  Well, I was just curious.  I saw your

13   argument.  If none of those things were present, why did he pull

14   over?

15         *MR. KIRBY:*  Because he was boxed in by the agents.

16         *THE COURT:*  Gotcha.

17         *MR. KIRBY:*  He had no choice.

18         *THE COURT:*  Okay.

19         *MR. KIRBY:*  So in any event, that is part of it.  He

20   does take care of his mother -- not so much his mother.  His

21   mother is 73.  She can pretty much get around.

22         His aunt is 78.  She does have these episodes of

23   falling.  She has -- and I don't want to go into the medical

24   diagnosis because I don't have that, but it sounds like aphasia.

25   She doesn't pay attention; she falls down.  His mom cannot lift

1    her, cannot really manhandle her when she needs to be.  He can,

2    and so he helps with her.

3         **THE COURT:**  What would he do if he were incarcerated in

4    Florida?

5         **MR. KIRBY:**  Well, again, your Honor, I'd like him to

6    get bond.  I'm going to argue for bond in Florida as well

7    because he needs to be able to take care of his aunt.  We're

8    talking about being on bond right here, and then I'll deal with

9    Florida when that comes.  But right now I'm dealing with here.

10        Your Honor, he is willing to wear a GPS.  He is willing

11   to be in home confinement.  As far as fleeing, he really doesn't

12   have anywhere to go.  If you look at his medical condition, you

13   look at the responsibilities he has, he is not going to flee.

14   He doesn't have ties anywhere else to flee to.

15        And he is willing to wear a GPS.  He is willing to do

16   home confinement --

17        **THE COURT:**  I don't use GPS's anymore after the last

18   two individuals last week cut them off.  So I no longer order

19   GPS.  Either detained or bond, I don't use GPS as a condition.

20   It's just not worth it, quite frankly.

21        **MR. KIRBY:**  You can order home confinement as well,

22   your Honor, to keep him from fleeing, from being a danger.

23   There are conditions short of him being incarcerated where he

24   can get medical treatment, where he can -- he can take care of

25   his aunt, where he can be -- be working, not just sitting in

1    jail, not just subject to assault that could cause him serious

2    injury and even death.

3            And so, your Honor, I've had my investigator work on

4    potential bond packages. And it looks like there's upwards --

5    sort of a maximum of a hundred thousand dollars equity in the

6    aunt's home. She herself has probably signed a signature bond

7    of approximately $70,000. And I would urge the Court to allow

8    him to be out on bond.

9            Again, if I have to fight this fight in Florida, I

10   would. But I think if he is on bond here, that makes that

11   argument a lot easier for me. And I think it's the just thing

12   in this case.

13           **THE COURT:** Okay. Mr. Bennett. And I know the facts

14   of the case. I've had it for quite some time.

15           **MR. BENNETT:** Yeah. I'll just address some points

16   Defense Counsel raised, and if your Honor has any questions

17   about the United States' response, I'd be more than happy to

18   answer them.

19           As far as the alleged assault on Defendant while in

20   custody, the United States *(inaudible)* reached out yesterday.

21   Defendant was in the hospital. When he was brought back to MCC,

22   he was secured in a safe area along with his belongings. He was

23   interviewed this morning and asked to go back to -- and

24   requested to come back to his original housing unit, and he

25   claims that he was not in fear of his safety.

1        And so again, the United States was not able to obtain

2    any records on his assault or harassment, but Defendant was sent

3    to a safe area and requested to go back to his housing unit.  He

4    did request, if possible, a different cellmate, and that request

5    has been granted.

6        As to the aunt's condition, the aunt's -- the

7    defendant's aunt, it is awful that she had this fall.  And it

8    seemed that she had falls previously.  But, your Honor, that did

9    not stop Defendant from taking a vacation in 2022 to the

10   United Kingdom, and he had been planning to travel to Florida to

11   visit the undercover.

12       As to the unsubstantiated claims that he would not

13   receive adequate medical care, the Government's exhibit that was

14   filed under seal shows the contrary.  Immediately upon noting

15   neck pain after he was playing while in custody, the doctors

16   sent Defendant to the ER, and he received an MRI.  And those MRI

17   results on the 12th indicated that there was no -- nothing

18   urgent.  There was no -- there was no evidence or nothing to

19   substantiate the claims that he would not receive adequate

20   medical care.  And records show the contrary.

21       Otherwise, he sent -- I will also note that in

22   Defendant's motion, he mentions not having taken any drugs in

23   over 15 years.  However, Defendant, in his interview with

24   Pretrial Services, reported *(inaudible)* that in the last week,

25   he had used methamphetamine and cocaine.

1          Otherwise, the United States will rest on its brief

2 unless the Court has any questions.

3         **THE COURT:** I don't.

4         **MR. BENNETT:** Thank you, your Honor.

5         **THE COURT:** I just want to trail this for one minute.

6         **MR. KIRBY:** Yes, your Honor. Of course.

7         **THE COURT:** I'm going to just call another matter in

8 the meantime.

9      *(The matter trailed.)*

10         **THE CLERK:** Recalling Matter No. 3, 23-mj-4483, United

11 States of America vs. Michael Gordon Douglas.

12         **THE COURT:** Okay. Was there anything else that anybody

13 wanted to add? I don't think there was. Correct?

14         **MR. KIRBY:** No, your Honor.

15         **MR. BENNETT:** Your Honor, if I may briefly. I just

16 think it's worth noting that the Court already considered the

17 vast majority of what Defense Counsel included in their briefing

18 and the reasons for wanting --

19      *(Interruption in proceedings.)*

20         **THE COURT:** Can you guys hold up one second? Just one

21 second. Sorry. I just want to finish this one up, and then

22 I'll do that. Sorry. Okay. Go ahead.

23         **MR. BENNETT:** That is all to say this is not -- this is

24 not a detention hearing. This is a motion to reconsider a

25 detention order.

1          **THE COURT:**  Right.

2          **MR. BENNETT:**  And that requires that there be new

3     information that was not known to the movant at the time of the

4     hearing and that that new information has a material bearing on

5     the issue of whether there are conditions of release that will

6     reasonably ensure the defendant's appearance in court, as well

7     as reasonably ensure community safety.  And the United States

8     feels strongly that none of these new factual assertions move

9     the needle whatsoever.

10          **THE COURT:**  Okay.

11          **MR. KIRBY:**  Your Honor --

12          **THE COURT:**  I don't need anything further, Mr. Kirby.

13    I took the new information as the illness to his mother and his

14    back/neck injury.  So I am reconsidering, and I am going to set

15    bond in this case.  He has now admitted his identity, and I will

16    set bond in the following manner.

17          I will set bond in the amount of $100,000, secured by a

18    trust deed to the United States.  I will also allow expanded

19    travel to the state of Florida.

20          If you are released, you're to actively seek or

21    maintain full-time employment, schooling, or a combination.

22    You're to reside with a family member, a surety, or a residence

23    approved by Pretrial Service.

24          You are to surrender your passport or any travel

25    documents to Pretrial Service and not attempt to obtain a new

1    one while this case is pending.

2          You are to avoid all contact with any alleged victim of

3    this crime or any witnesses.

4          You are to submit to mental health treatment or

5    counseling at the discretion of Pretrial Service.

6          You are to participate in the computer monitoring

7    program, not to access any computer or Internet device without

8    monitoring software installed and approved by pretrial service.

9          Do you understand?

10          **THE DEFENDANT:**  Yes, your Honor.

11          **THE COURT:**  You are to not access any social networking

12    sites such as Facebook.

13          You are not to access any website or possess any

14    material of adult or minors engaged in sexually explicit

15    conduct.

16          You are not to access any online computer service or

17    devices without -- with Internet capabilities at any location at

18    any time.

19          No direct or indirect contact with children under the

20    age of 18 unless accompanied and supervised by an adult who is

21    aware of your charges.  You're to report to Pretrial Service

22    within 8 hours of any unauthorized contact with any person under

23    the age of 18.

24          Do not engage in any paid or volunteer service that

25    allows direct or indirect exposure to children under the age of

18.  Do not frequent or loiter in any place where children under the age of 18 congregate.

You are to notify Pretrial Service, Mr. Kirby, the day before the bond submission paperwork so that he is transported the following business day from custody to Pretrial Service beforehand.

Is there a location monitoring service, Ms. Duarte, that you approve of other than ankle monitoring?

MS. DUARTE:  Your Honor, with -- given that the Adam Walsh condition -- or Adam Walsh Act applies, we would recommend that location monitoring be imposed either with GPS or with RF technology.

THE COURT:  And that's by phone; right?  I just think these ankle monitors --

MS. DUARTE:  That would be with an ankle --

THE COURT:  I just think these ankle monitors --

MS. DUARTE:  That would be with an ankle bracelet.

THE COURT:  Don't we have a different type we can do?  I just had a few people cut them off.

(Inaudible crosstalk.)

THE COURT:  That's not even your case, Ms. Irwin.

I've had others, and so I just find that it's worthless, honestly.

MS. DUARTE:  We do have Smartlink technology.  However, given the Adam Walsh conditions, the Adam Walsh Act requires

1    that it would be either GPS technology or -- or RF technology,

2    and that would be with a bracelet.

3         *THE COURT:*  All right.  I'll impose that even though I

4    don't think it's worth doing.  But -- honestly.

5         Anything else from anybody?

6         *MR. BENNETT:*  Yes, your Honor.  The United States would

7    request a 48-hour stay so we can appeal to --

8         *THE COURT:*  Sure.  Honestly, I don't even need the

9    stay, but it's going to take at least that amount of time to get

10   all this bond and trust deed together anyway.  But I'll stay it

11   for 48 hours.

12        *MR. BENNETT:*  Thank you, your Honor.

13        *THE COURT:*  And I need a -- I need a date here, Margot,

14   for a status conference so we can get a date if the bond is not

15   stayed, a report date in Florida.

16        *THE CLERK:*  We can have a status hearing on the 29th at

17   1:30.

18        *THE COURT:*  The 29th.  Does that work?  Of February or

19   January?

20        *THE CLERK:*  January, Monday.

21        *THE COURT:*  January 29th at 1:30 for status.

22        *MR. KIRBY:*  Thank you, your Honor.

23        *MR. BENNETT:*  That works for the Government,

24   your Honor.

25        *THE COURT:*  Anything further from anybody?

|    |    |
|----|----|
| 1  | **MS. DUARTE:** Yes, your Honor. Our office would also |
| 2  | recommend, given the recent drug use, for drug testing to be |
| 3  | imposed. |
| 4  | **THE COURT:** Sure. |
| 5  | **MS. DUARTE:** And for clarification, did your Honor set |
| 6  | the component for the location monitoring? |
| 7  | **THE COURT:** I'll leave it at Pretrial's discretion. |
| 8  | **MS. DUARTE:** Your Honor, the component has to be set by |
| 9  | the Court. We would recommend home detention. |
| 10 | **THE COURT:** Okay. Home detention it is. |
| 11 | Anything else? |
| 12 | *(No response.)* |
| 13 | **THE COURT:** All right. |
| 14 | **MR. KIRBY:** Thank you, your Honor. |
| 15 | **MR. BENNETT:** Thank you, your Honor. |
| 16 | **THE COURT:** Good luck. Thank you. |
| 17 | *(End of recorded proceedings.)* |
| 18 | *** |
| 19 |  |
| 20 |  |
| 21 |  |
| 22 |  |
| 23 |  |
| 24 |  |
| 25 |  |

1              C E R T I F I C A T E

2       I certify that the foregoing is a true and correct
   transcript, to the best of my ability, of the above pages of
3  the official electronic sound recording provided to me by the
   U.S. District Court, Southern District of California, of the
4  proceedings taken on the date and time previously stated in the
   above matter.  I further certify that I am neither counsel for,
5  related to, nor employed by any of the parties to the action in
   which this hearing was taken, and further that I am not
6  financially nor otherwise interested in the outcome of the
   action.

7
   Date:  January 26, 2024

8

9       _____

10  Anne Roldan, RMR, CRR, CSR 13095

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3  UNITED STATES OF AMERICA,    )
                          )  No. 3:23-MJ-4483-MSB

4          Plaintiff,     )
                          )

5  v.                    )  December 19, 2023
                          )

6  MICHAEL GORDON DOUGLAS,    )
                          )  Courtroom 2A

7          Defendant.     )
  _____)  San Diego, California

8

9         TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

10               (Detention Hearing)

11    BEFORE THE HONORABLE MICHAEL S. BERG, MAGISTRATE JUDGE

12

13  APPEARANCES:
    FOR THE PLAINTIFF:      AMANDA GRIFFITH
14                       Assistant U.S. Attorney
                       U.S. Attorney's Office
15                       Southern District of California
                       880 Front Street, Room 6293
16                       San Diego, CA  92101-8893
                       (619)557-5610
17

18  FOR THE DEFENDANT:      CASSIDY HEVERLING
                       Assistant Federal Defender
19                       Federal Defenders of San Diego
                       225 Broadway, Suite 900
20                       San Diego, CA  92101-5008
                       (619)234-8467
21

22

23  COURT REPORTER:         AMANDA M. LeGORE
                       RDR, CRR, CRC, FCRR, CACSR
24                       U.S. District Court
                       333 West Broadway, Suite 420
25                       San Diego, CA 92101
                       amanda_legore@casd.uscourts.gov

```
 1                (Tuesday, December 19, 2023; 3:14 p.m.)

 2

 3                     P R O C E E D I N G S

 4

 5           THE CLERK:  Calling matter number six, 23-MJ-4483,

 6   United States of America versus Michael Gordon Douglas.

 7           ATTORNEY GRIFFITH:  Good afternoon, your Honor.

 8   Amanda Griffith appearing on behalf of the United States.

 9           ATTORNEY HEVERLING:  Good afternoon, your Honor.

10   Cassidy Heverling from Federal Defenders, on behalf of the

11   person charged.  That's Michael Douglas.

12           THE COURT:  And that is you, sir?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Good afternoon.

15           Okay.  And this is set for a detention hearing?

16           ATTORNEY GRIFFITH:  Yes, your Honor.

17           THE COURT:  And it's going forward?

18           MS. GRIFFITH:  Yes, your Honor.

19           THE COURT:  Okay.  Go ahead.

20           ATTORNEY GRIFFITH:  Your Honor, we're moving on risk

21   of flight and danger to the community.

22           We would note that the complaint alleges a case that

23   carries presumption of detention.  I would also note for the

24   Court, and I've shared it with defense counsel, that

25   Mr. Douglas was just recently indicted this afternoon in the
```

1    Southern District of Florida.  So he is now no longer just

2    facing a complaint but an actual Indictment that mirrors the

3    charges in the complaint.

4         The facts and circumstances surrounding this case,

5    your Honor -- I know that the complaint was lengthy.  So your

6    Honor is aware --

7         THE COURT:  I actually read it.

8         ATTORNEY GRIFFITH:  I understand.  And the general

9    information is there.

10        I would note that the complaint ceases communication

11   at least a week before we were able to actually arrest

12   Mr. Douglas.  And the communications in that week continued in

13   fervor, as Mr. Douglas was anticipating meeting with the

14   undercover agent -- or he didn't know they were undercover at

15   the time -- and her eight-year-old child.

16        He repeatedly, in those continued communications --

17   which were not detailed in the complaint -- talked about his

18   excitement at wanting to meet the child, the circumstances and

19   what he was going to do with the child.  There was specific

20   discussions about specific sex toys and the use of a speculum.

21        There was also a video that was transmitted to the

22   undercover of Mr. Douglas masturbating and ejaculating on

23   lingerie, which will be significant here in a second.

24        So the facts and the circumstances regarding this

25   case, I think, clearly establish that he poses a danger to the

1   community.

2           Regarding the specific arrest, Mr. Douglas was set to

3   make arrangements to meet with what he thought was the child

4   and her mother at a hotel in Carlsbad, at Legoland; an area

5   that he suggested they meet.

6           Attempts were made to set up that meet at different

7   points in time.  Mr. Douglas was, at the time of his arrest, in

8   the accompaniment of an adult woman who we believe is unhoused

9   at that particular time, and he was providing services to her

10  in an attempt to get her hotels.

11          He remained in contact with the undercover, making it

12  clear that he was being delayed but he had every intention of

13  meeting at the hotel and wanted to meet.  We even have a

14  recorded phone call where he makes it clear that he very much

15  wants to meet with this child, and do the things that he has

16  promised to do.

17          At some point in time, Mr. Douglas must have realized

18  that there was something amiss, and he engaged in a chase with

19  HSI when they attempted to make contact with him.

20          For some reason, he was driving his aunt's vehicle.

21  She's present in the court, as well as the defendant's mother.

22  And those are the individuals with whom Mr. Douglas lives.

23          But they contain aftermarket lights.  So Mr. Douglas

24  engaged those lights and engaged in a chase with agents.

25  Certainly giving the appearance that he had the right and the

1    licenses, as a law enforcement officer or something, to engage
2    in this particular chase.

3              When the --
4              THE COURT:  But he had law enforcement lights?
5              ATTORNEY GRIFFITH:  He had lights.  I don't think
6    they were red and blue.  But they certainly were lights that
7    gave people reason to believe -- my agents described it as
8    potentially construction lights, as yellow and orange.  But
9    during the chase, he engaged them himself in an effort to --
10             THE COURT:  Move traffic.
11             ATTORNEY GRIFFITH:  -- move traffic around, or make
12   it clear that he had the right of passage.

13             When, ultimately, he was able to be stopped or he
14   stopped in a parking lot, HSI agents boxed him in, commanded he
15   get out.  Mr. Douglas then proceeded to display a grenade.
16   While this adult woman was in the car, she apparently fell out
17   of the car, screaming, "He's going to kill us.  He's going to
18   kill us all."

19             It took him a lengthy period of time, while weapons
20   were drawn on him, to let go of the grenade and get out of the
21   vehicle.  They were ultimately able, after bomb squad was
22   called out, to determine that the grenade was in fact a
23   replica.  But that wasn't made clear until they were actually
24   able to put their hands on it and realize that it was not an
25   M-67-type grenade.

6

1      Those are the facts and the circumstances surrounding
2  it, that I think clearly demonstrate that his attempts to
3  engage with law enforcement were not well received and pose a
4  danger.

5      With respect to the -- this particular case,
6  Mr. Douglas has a criminal history, as noted in the Pretrial
7  Services report, including a prior for distribution of harmful
8  material to a minor.

9      Similar, he was engaged in an undercover sting that
10  led to that particular conviction.  Because of that prior, he
11  is now facing a 15-year mandatory minimum for each one of the
12  seven counts that he has been indicted on as of this afternoon.

13      I would also note that he does have criminal history
14  for DUI.  He also has an evading arrest.  He was able to
15  successfully complete his probation, and no longer has to
16  register on the sex offender registry because he was determined
17  to be a low risk to recidivate.  But I think the circumstances
18  and the facts surrounding his arrest today bear something
19  different.

20      I would also note that a search incident to the
21  arrest involving the vehicle revealed that there was a bag in
22  place that contains a teddy bear, as Mr. Douglas had promised
23  the undercover he was going to provide; a speculum that he was
24  going to use on the 8-year-old to stretch her out, were his
25  words; various sex toys, including anal beads and a bullet,

1   which were referenced in the chat; and the lingerie, which the

2   video was sent to the undercover, was also recovered in that

3   same bag.  So it leads to the strength of the evidence of

4   Mr. Douglas being the person who was communicating in the

5   undercover chats to be very strong.

6        I would note that he does admit to drug use of

7   methamphetamine and cocaine.  He admits he's an infrequent

8   user.  But, by his own admission, he had used both of those off

9   and on in the last week.

10       With respect to risk of flight, he has no ties to

11   Florida, your Honor.  He has no reason to show up, to go there,

12   or to face the charges there.

13       I appreciate that he is employed in a not-for-profit

14   that he runs, and makes approximately -- by his own

15   admission -- $50 a month.  But he has no other source of

16   income, and relies on his aunt and his mother.  Doesn't

17   contribute rent.

18       So the lack of employment is a concerning thing.

19   Doesn't give us reassurance that he's going to otherwise stick

20   around.

21       Make sure -- there was no other grenades found in the

22   vehicle, but there was a number of knives that were found as

23   well.

24       The woman -- the adult woman who he was in custody --

25   or company with all week -- or during that day.  Excuse me,

1　your Honor.  Not all week.  Was interviewed by law enforcement,

2　and she confirmed that Mr. Douglas had expressed his

3　frustration with her that they were unable to successfully find

4　a place for her to go because Ms. -- she was making Mr. Douglas

5　late for the very important date that he had.

6　　　　　So I think, your Honor, with the facts and

7　circumstances surrounding the case; the strength of the

8　evidence; the mandatory minimums on which this particular

9　defendant is facing; his criminal history, including a prior

10　for exactly the same conduct; his admission to methamphetamine

11　and cocaine use; not having any stable employment; no ties to

12　Florida, does not give this Court -- should not give this Court

13　any confidence that he will otherwise appear and be available

14　and not pose a risk of flight or danger to the community.

15　　　　　And unless the Court has any other specific

16　questions, I would submit.

17　　　　　THE COURT:  What are his guidelines, just out of

18　curiosity?

19　　　　　ATTORNEY GRIFFITH:  Your Honor, I believe, when

20　speaking with my colleague -- I have not run his specific

21　guidelines.  But I think he could be looking at up to the 210

22　to 240 range, depending on some of the facts and the

23　circumstances.

24　　　　　I don't have the full summary of all of the images

25　that he was accused of distributing child pornography for.  But

1  a conservative assessment would probably put it at 210 to 240,

2  based on my familiarity with 2G2.2.  And he is facing a 40-year

3  statutory maximum.

4       He also could be facing additional charges as well,

5  your Honor, related to enticement.  He is not going to be

6  facing any charges -- at least here, for right now -- regarding

7  his conduct in the escape or the threatened use of the grenade.

8       THE COURT:  Okay.  Thank you.

9       ATTORNEY HEVERLING:  Thank you, your Honor.

10      In this case, we are asking the Court to set

11 conditions of release to be secured by a property bond in the

12 amount of $50,000, which would be secured by the family home.

13      I've spoken with his mother and his aunt of --

14 (indiscernible) Patricia, who are here in the courtroom today.

15      THE COURT:  Thank you for being here.

16      ATTORNEY HEVERLING:  And they have agreed and believe

17 in my client, and -- and have agreed they're willing to post

18 that bond if it were to be granted.

19      I want to begin by addressing the flight in this

20 case.  I believe my client is not a serious risk of flight.  He

21 currently lives in Escondido with his mother and his aunt.

22      As they're getting older, he has been taking on

23 additional duties in the home, including helping with meals and

24 cleaning around the house.  So he is an asset to their

25 household.

1        With the property bond set in this case, my client

2   would not consider fleeing, and putting his mother and aunt at

3   risk of homelessness and losing their home.

4        As to the alleged flight from the officers, there are

5   factual questions at issue as to whether there were -- these

6   were marked cruisers or that he was aware that these were

7   police officers that were chasing him at that moment in time.

8        And, additionally, as Government counsel noted, the

9   grenade in this case was not operational.  The knives found in

10  the car -- you know, my client was not prepared to be arrested

11  that day.  Simply carrying a knife is not a crime.

12       In addition, he has demonstrated that he can comply

13  with court orders, as he has successfully completed five years

14  of probation for a prior conviction from 2011.  And, in fact,

15  was deemed to be rehabilitated in 2021 from those charges.  And

16  based on that information, I don't believe he's a flight risk

17  in this case.

18       In addition, he has been working in his free time to

19  set up --

20       THE COURT:  You said he what?

21       ATTORNEY HEVERLING:  Sorry.  He's been working in his

22  free time to set up a nonprofit; which works with the homeless,

23  to help find housing in the Escondido area, as well as connect

24  them to other resources in the community.  So he is quite

25  connected to his community here in Escondido.

1    And as your Honor knows, community ties need -- need
2  not be to the district where the conduct is charged.  It needs
3  just to be a community within the United States.  And, here,
4  his -- he does have quite strong ties to the Escondido area.

5    And while the weight of the evidence is the least
6  important factor, we would also like for the Court to consider
7  that there was another individual, which the Government is
8  aware of, that was living -- living in the household with my
9  client and his family during the time that -- that this conduct
10 was alleged, who had access to his devices.  So there is a
11 potential defense there, and my client is eager to litigate
12 that further.

13   And my client's mother has also informed me that that
14 individual is no longer living in that home.  So if he were to
15 be released to the home, that individual would no longer be in
16 contact with them.

17   In addition, if your Honor is not satisfied by the
18 property bond, my client has also indicated he's willing to
19 comply with additional conditions that your Honor would set,
20 including home detention or GPS monitoring, or whatever would
21 make your Honor feel comfortable in this case.  And if bond
22 were to be granted, he would be living at home with his mother
23 and his aunt, back in Escondido.

24   And unless your Honor has any other questions, I'll
25 submit.

1         THE COURT:  I don't.

2         ATTORNEY HEVERLING:  Thank you.

3         ATTORNEY GRIFFITH:  And, your Honor, just to address

4 a couple of things.  Is even though the grenade was fake, that

5 wasn't a determination that was made until after it was

6 released from the defendant's custody, and before he threatened

7 individuals.

8         The other individual adult that was living in the

9 house with Mr. Douglas and his mother and his aunt was somebody

10 that was invited there by Mr. Douglas.  It sounds like they

11 actually had a relationship with each other and had been there

12 at the consent of everybody there.

13          I would note, as alleged in the complaint, that we

14 have a number of -- a number of photos -- self-identifying

15 photos of Mr. Douglas engaged in masturbatory acts that he sent

16 to the undercover right around the same time he was sending

17 child pornography as well.  So I appreciate he might have

18 another defense with respect to the actual underlying charges;

19 the concern about Mr. Douglas being the one who is daddy breed

20 spam (phonetic) and Michael, which is the aliases alleged in

21 the complaint and were used to communicate.

22         We do believe the weight of the evidence remains

23 strong.

24         THE COURT:  Thank you.

25         Anything further?

1          ATTORNEY HEVERLING:  Nothing further, your Honor.

2          THE COURT:  Okay.  Looking at the 3142 factors, sir,

3    those factors that would weigh in favor of setting bond, as

4    opposed to those that would weigh in favor of detaining you, I

5    do believe the Government has met their burden by both clear

6    and convincing evidence as to danger to the community and

7    preponderance of the evidence that you would be a serious risk

8    of flight if you were released.

9          So, unfortunately, sir, I am going to detain you

10   during the pendency of these charges.  However, you should note

11   that if at some future point in time you either admit or

12   identity is proved against you -- and I'm not saying one way or

13   the other.  But if either of those were to happen, you would

14   have the opportunity to raise bond again in the District of

15   Florida.

16         Your next court date is set for December 26th, at

17   1:30, for removal I.D. hearing.

18         ATTORNEY GRIFFITH:  Your Honor, in communicating, I

19   didn't have a chance to check with defense counsel.

20         Is there any way we could continue it to that

21   Thursday, the 28th?

22         Would that be a problem?

23         ATTORNEY HEVERLING:  Yeah, that should be fine, your

24   Honor.

25         ATTORNEY GRIFFITH:  In speaking with the case agent,

1   my colleague, Mr. Bennett, is going to be handling it.  But the

2   case agent is going to be out on leave on the 26th.  So that

3   will give us enough time to make sure that defense counsel has

4   copies of discovery, to deal with any potential identity

5   issues.

6          THE COURT:  Is that all right with you, sir?  If we

7   put that over until the 28th?

8          THE DEFENDANT:  Yes, your Honor.  (Indiscernible due

9   to not speaking into microphone) number one (indiscernible)

10  home.

11         THE COURT:  I -- I, unfortunately, have made the bond

12  determination already.  So --

13         THE DEFENDANT:  (Indiscernible.)

14         THE COURT:  I understand.  But your attorney has done

15  an admirable job today.  And I just think it's best if you --

16         THE DEFENDANT:  (Indiscernible.)

17         THE COURT:  -- don't make any other statements at

18  this point in time.  Okay?

19         THE DEFENDANT:  (Indiscernible.)

20         THE COURT:  I understand your frustration.  So

21  your -- your ID removal hearing will be set for -- is it

22  Thursday, December 28th?

23         UNIDENTIFIED SPEAKER:  Yes, at 1:30.

24         THE COURT:  Okay.  1:30.

25         ATTORNEY GRIFFITH:  Thank you, your Honor.

15

1              THE COURT:  Thank you.

2              (Conclusion of proceedings.)

3                        --oOo--

4    I certify, by signing below, that the foregoing is a correct
     stenographic transcript, to the best of my ability, of the
5    digital recording of the audio proceedings had in the
     above-entitled matter this 27th day of December, 2023.  A
6    transcript without an original signature or conformed signature
     is not certified.  I further certify that the transcript fees
7    and format comply with those prescribed by the Court and the
     Judicial Conference of the United States.

8
              /S/ Amanda M. LeGore
9             _____

10       AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25