## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

             Plaintiff,

    v.

MICHAEL GORDON DOUGLAS,

             Defendant.

Case No.:  23-CR-80219-AMC

**UNITED STATES' OMNIBUS MOTION *IN LIMINE***

COMES NOW the United States, by and through the undersigned Assistant United States Attorney, and hereby files the following motions *in limine* pursuant to the Court's Trial Order [ECF No. 20, 26]: (1) a motion *in limine* and notice of its intent to introduce evidence of other child-molestation conduct as inextricably intertwined evidence and pursuant to Federal Rules of Evidence 414 and 404(b); (2) a motion *in limine* on the admissibility of summaries of data pursuant to Federal Rule of Evidence 1006; (3) and a motion *in limine* to publish child pornography to the jury.

## I. FACTUAL BACKGROUND

A.  Facts Alleged In The Superseding Indictment

The defendant has been charged with crimes based on his involvement in using an online social networking application and texting to solicit and entice a purported 8-year-old child (Child1) to engage with in illegal sexual activity, and distribute child pornography. He did so after meeting a person purporting to be a 28-year-old mother of the child in the online application Kik. The defendant described in great detail the sexual activity he would like to engage in with (Child1), either traveling to the Southern District of Florida to do so, or having the mother and her child travel to the Southern District of California (where the defendant lived) to do so. Over the course

of their 10-weeks of communication, the defendant distributed many images and videos of child pornography to the mother to entice the child to want to engage in sexual activity with the defendant. As charged, the defendant also established a "group chat" in which he invited other Kik users, including the 28-year-old mother to plan a sex party that would include minors and wherein he distributed child pornography. At all times of the distribution and enticement, the 28-year-old mother was in the Southern District of Florida. The mother is in fact an undercover Homeland Security Investigations (HSI) Special Agent (UCA) and the 8-year-old child is in fact notional.

B.  Other Bad Acts Evidence

### 1.  Prior 2011 Conviction

This motion comes to offer in evidence two types of "other bad acts." First, the government would seek to admit the facts of the Defendant's 2011 State of California conviction after a Jury found the defendant guilty of three counts of distributing matter containing sexual conduct of a minor, possession of matter containing sexual conduct of a minor, and attempting to send harmful matter to a minor with the intent of seducing the minor. The court sentenced Douglas to prison for twenty-eight months, suspended execution of the sentence and granted Douglas five years' formal probation conditioned on him serving 180 days in county jail. He was also required to register as a sex offender. He was subsequently removed from the registry in 2021 by a California Court. The government would propose to offer the testimony of two or three witnesses at trial to testify as follows.[1]

As to Counts 2, 3, 5 of the conviction, a San Antonio Police Department Detective was on an Internet chat room Website posing as a 13–year–old girl named "Vanessa" with a screen name of "angel_babysa" to catch Internet child predators. In early 2006, Douglas, using a screen name

---

[1] The facts are taken directly from *People v. Douglas*, No. D059950, 2012 WL 6062557, at *1-2 (Cal. Ct. App. Dec. 7, 2012).

"blacknight7vball" initiated a chat with Vanessa on this Website. Douglas identified himself as a 28–year–old male from Southern California and asked Vanessa if she was willing to talk with an "older guy." Although Vanessa reiterated to Douglas that she was only 13, he continued to pursue chatting with her.

On February 14, 2006, during their first chat session Douglas told Vanessa her first time (ostensibly having sexual intercourse) should be with an older guy because "[he] can teach you." Then he went on to say, "You know I wish I was there, wish I was closer" because he wanted to be the one to "teach" Vanessa.

Further, Douglas told Vanessa that "[h]e likes stories on the Internet, printed out stories, sexual stories" and sent Vanessa a link to a private album with a large number of pornographic photographs. In addition, Douglas sent Vanessa several other links, including a link to a free adult site which he said has "lots of things for you."

The following day, Douglas again contacted Vanessa and said: "How's my new favorite cutie doing?" During this chat, Douglas sent Vanessa more pornographic photographs. While directing her to look at some of the photographs from the album, he stated: "I like the way it was shot, I like to lick her pussy." He then looked at a pregnant teen photograph and told Vanessa: "I think pregnant teens are sexy."

On February 28, 2006, Douglas contacted Vanessa again and said: "I have more photos to show you if you're in the mood." During this session, Douglas and Vanessa had a lot "more sex chatting." He asked Vanessa about her physical appearance and commented on how he liked women/girls with small breasts. Douglas also described sexual things he wanted to do with Vanessa. During this chat, Vanessa asked Douglas about the name on his profile, Michael Douglas,

and if he was the famous actor. He replied: "Nope, I wish I was." He also told Vanessa that "[he] can always travel for the right person once [he] get[s] to know [her]."

On March 13, 2006, Douglas sent Vanessa a link from "shaggys_dope" (a photo album/Website containing pornographic pictures) to view pornographic photographs of a nine- and a 15–year–old girl. Douglas commented on them to Vanessa saying: "I think they're hot."

On August 9, 2006, Douglas shared with Vanessa a "shadowphototrader" album with child pornographic photographs. These photographs were from Websites containing "preteen hardcore" pornography and were also identified as "lolita" photographs. The chats continued through August 31, 2006.

Separately, as to Count 1 of the conviction, on May 3, 2006, a San Diego County Deputy Sheriff, received 21 cyber tips about an online account name "shaggys_dope" for its content of child pornography photographs. The deputy traced the shaggys_dope account to an Internet protocol (IP) address at Douglas' residence. A subsequent search of Douglas' home computer produced a large number of child pornographic photographs and videos. Also, shaggys_dope was associated with both a MySpace account belonging to an individual named Michael who lived in Encinitas and the e-mail linked to the "blacknight7@hotmail.com" account.

As to Count 4 of the conviction, during a search of Douglas' Encinitas residence, detectives found a compact disc near the home computer that contained videos of child pornography. Several of the videos had young girls approximately nine to 13 years of age orally copulating adult males. Some of the videos depicted young girls involved with masturbation, intercourse and oral copulation with adult males and adult females. Additionally, law enforcement searched Douglas' vehicle and discovered condoms, handcuffs, hand and body lotion, three knives, a mag light, emergency flashers, some type of elastic rubber and gloves.

At trial, Douglas consistently denied committing the crimes and claimed a friend with alleged access to Douglas' computer accounts and passwords, had committed all the crimes. The Jury convicted him on all counts.

### 2.   Acts from Defendant's Phones

Second, the government would seek to admit evidence recovered from two phones belonging to the defendant, searched pursuant to federal search warrants: one seized from the vehicle he was arrested in (the Verizon phone); and one seized from his residence (the Samsung phone). Among corroborative evidence of photos, chat exchanged, text messages and phone accounts sent to the UCA in this case, and other user attribution data, the devices also revealed the Defendant's other bad acts:

    a.   possession of child pornography (some of the same he distributed to the UCA);

    b.   distribution and receipt of child pornography in Kik, text message and other applications to other individuals than the UCA in July through November 2023;

    c.   engaging in online groups related to teen girl videos;

    d.   possession of photos and "memes" of incent, inbreeding, and dad/daughter sex;

    e.   a photo of a naked young teen with the words "Are you a pedophile? Our survey says yes" imprinted on the phono.

### 3.   <u>Acts from Defendant's Google Accounts</u>

The federal search warrant return from the defendant's three (3) Google accounts: miked14691@gmail.com, chicagomikemgd@gmail.com, and rmfiorg@gmail.com, revealed the possession of child pornography.

Defendant DOUGLAS has been charged in the superseding indictment with multiple counts of distribution of child pornography and enticement of a minor.

## II.  MOTION *IN LIMINE* TO ADMIT EVIDENCE AS INEXTRICABLY INTERTWINED, PURSUANT TO RULE 404(B), AND RULE 414

The United States seeks to introduce at trial evidence of uncharged conduct committed by the defendant, as identified above. For the reasons explained below, the Court should find that this evidence is admissible as inextricably intertwined with the charged conduct, pursuant to Federal Rule of Evidence 414 ("Rule 414"), and/or pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)").[2]

The United States intends to introduce this evidence through no more than three or four witnesses. First, as to the prior conviction, the government will have a witness familiar with the facts of 2008 briefly summarize those crimes and introduce the prior conviction of the same as a certified Court record[3]. It should be noted that these records are in fact what the jury must use to determine if in fact the defendant qualified for the enhanced penalty that he has been charged with and is specifically lodged in the superseding indictment (DE 55).

Second, HSI Special Agent Scott Unger, Computer Forensic Agent with HSI,[4] will testify regarding the results of the forensic examinations of the two phones. In addition to eliciting how these devices were used to engage in the charged conduct, the United States seeks to introduce testimony from Agent Unger that these devices simultaneously were used by the defendant to distribute, receive, and possess child pornography; engage in online groups related to teen girl videos; possess photos and "memes" relating to incent, inbreeding, and dad/daughter sex; and possess a photo of naked young teen on which "Are you a pedophile? Our survey says yes" is written, the possession of which has not been charged, but which should nevertheless be admitted

---

[2] This motion *in limine* is also submitted to satisfy the government's requirement to provide pre-trial notice of its intent to introduce evidence pursuant Rules 404(b) and 414.  *See* Fed. R. Evid. 404(b)(3); Fed. R. Evid. 414(b).

[3] The prior conviction has been filed as part of the government's enhanced sentencing notice (DE 59-1).

[4] The government has separately providing notice of his expertise in this area (DE 57).

as evidence for any of the reasons below. Agent Unger will also testify regarding his review of the three (3) Google accounts and the child pornography that he found therein, including hundreds that match the images/videos found across the defendant's devices.

A.   The Evidence of "Possession of Child Pornography" is Admissible as Inextricably Intertwined with the Charges

Evidence of the defendant's uncharged possession of child pornography identified above in sections I.B.2.and I.B.3 is admissible as intrinsic evidence of the charged conduct. Evidence of uncharged conduct is deemed admissible as intrinsic evidence—and thus outside the scope and prohibitions of Rules 404(b) and 414—when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (internal quotation marks omitted). Stated another way, evidence that is not part of the crime charged but nevertheless pertains "to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985).

Evidence of the defendant's possession of child pornography satisfies those requirements here.  As an initial matter, the evidence overlaps temporally with the charged conduct. The child pornography that the defendant accumulated and possessed on his phones was accessible when he distributed the same to the UCA and was planning to meet the UCA to have sex with the notional child. Further, the evidence that the defendant distributed child pornography in a chat room that he created, allowing others to do the same, indicates that the defendant likely obtained some of this child pornography via his activity in Kik (DE 1:10 ("Distribution Count 4"); DE 55 ("Count

4"). In other words, this uncharged possession of child pornography arose out of the same series of transactions as the charged offenses and is therefore "inextricably intertwined" with the facts of the case, as it "tend[s] to corroborate, explain, or provide necessary context for evidence regarding the charged offense[s]" of conspiring to advertise and distribute child pornography. *See Cowan v. United States*, No. 3:14-cv-370-J-32MCR, 2017 WL 1386804, at *12 (M.D. Fla. Apr. 18, 2017) (citing *United States v. Bush*, 673 F. App'x 947, 950 (11th Cir. 2016)).

The defendants' contemporaneous possession of child pornography is likewise necessary to explain the context, motive, and set-up of the crime, and should therefore be admitted as "an integral and natural part of an account of the crime" and "necessary to complete the story of the crime for the jury." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (*citing United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)). Proof of the defendant's prurient sexual interest in children, as evidenced by his collection of child pornography, clearly forms an integral part of the story of this case. Indeed, any logical and coherent explanation of how the defendant successfully distributed child pornography to the UCA necessarily requires an explanation of what child pornography he was distributing in the first place. This, in turn, requires the government to demonstrate that the defendant collected and stored child pornography on his devices, which will further contextualize for the jury how the defendant was able to distribute to the UCA and within the chat room he created and continued to distribute, and why he did so.

Simply put, Douglas possessed child pornography in relation to and in furtherance of his distribution of child pornography and to entice the 8-year-old child. His possession of child pornography is therefore inextricably intertwined with the charged offenses. Of course, such evidence must satisfy Federal Rule of Evidence 403 ("Rule 403") to be admissible. As explained

below, the probative value of this evidence is not substantially outweighed by any danger of unfair prejudice or confusion and should therefore be deemed admissible at trial in this matter.

  B. <u>The Evidence is Admissible Pursuant to Rule 414</u>

  Assuming *arguendo* this Court determines that the defendants' uncharged possession of child pornography is not intrinsic to and inextricably intertwined with the charges here, this evidence (*see* section 1.B.2.a and 1.B.3 above) as well as the other items listed in section I.B.2.b, I.B.2.c, and evidence of the prior conviction in section I.B.1 above, are nevertheless independently admissible pursuant to Federal Rule of Evidence Rule 414 ("Rule 414").  This evidence is admissible for the purpose of showing a defendant's propensity to commit bad acts.  *United States v. McGarity*, 669 F.3d 1218, 1244 (11th Cir. 2012).

  Rule 414 provides that, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation" to "be considered on any matter to which it is relevant," including the defendant's criminal propensity. Fed. R. Evid. 414(a). Pursuant to Rule 414(d)(2)(B), "child molestation means a crime under federal law or under state law" involving "any conduct prohibited by 18 U.S.C. chapter 110."[5]  Here, the defendant has charged with, among other crimes, violations of 2252A, which fall within chapter 110. Additionally, the evidence of uncharged conduct the government seeks to introduce—the defendant's distribution, receipt, and possession of child pornography on their devices and Google accounts, in violation of 18 U.S.C. § 2252A(a)(2)(A)

---

[5] Federal Rule of Evidence 414(d)(1) includes a definition of "child" to be a person below the age of 14. However, "[a]lthough Rule 414(d)(1) defines a 'child' as a person below the age of 14, it defines 'child molestation' to include 'any conduct prohibited by 18 U.S.C. chapter 110' without regard to whether the chapter 110 offense was committed with a person below the age of 14, a 'child' as defined by the Rule. Fed.R.Evid. 414(d)(2)(B)." *United States v. Foley*, 740 F.3d 1079, 1088 (7th Cir. 2014).  In Foley, it was irrelevant whether the victim of the current child pornography production offenses were under age 14. "The relevant age of the children victims under this definition, then, is determined by reference to chapter 110 of title 18, which defines "minor" as any person under the age of eighteen…" United States v. Sturm, 673 F.3d 1274, 1284 (10th Cir. 2012).

and (a)(5)(B)—likewise falls within chapter 110 and therefore qualifies as an act of child molestation under Rule 414. Accordingly, the proffered evidence of satisfies the requirements for admission under Rule 414.

The legislative sponsors of Rule 414 specified that "[i]n contrast to Rule 404(b)'s general prohibition of evidence of character or propensity," Rule 414 "authorize[s] admission and consideration of evidence of an uncharged offense for its bearing 'on any matter to which it is relevant.' This includes the defendant's propensity to commit sexual assault or child molestation offenses, and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense . . . ." 140 Cong. Rec. S12990-01. The legislative sponsors explained the importance of this evidence in cases where a child is the victim:

> The [proposed] reform effected by th[is] rule is critical to the protection of the public from rapists and child molesters, and is justified by the distinctive characteristics of the cases it will affect. In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sadosexual interest in children— that simply does not exist in ordinary people. Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, there is a compelling public interest in admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense.

*Id*. Congress recognized and intended that Rule 414 would make the admission of similar crimes evidence in federal sex offense cases the norm, and its exclusion the exception:

> The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.

140 Cong. Rec. H8991-92 (1994) (Statements of Rep. Molinari and Senator Dole) (emphasis added); see also 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi. Kent L. Rev. at 19.

The United States intends to offer evidence of the defendants' uncharged distribution, receipt, and possession of child pornography—which, other than the 2011 conviction, occurred at or around the same time as the defendant distributed child pornography to the UCA—under Rule 414 to show the defendant's prurient sexual interest in children, motive, intent, plan, and lack of mistake or accident. Under prevailing Eleventh Circuit precedent, this child-molestation conduct is relevant and admissible under Rule 414 for such purposes. *See United States v. Baker*, 680 F. App'x 861, 863 (11th Cir. 2017) (affirming admission under Rule 414 of prior conviction for child molestation in a possession-of-child-pornography case); *United States v. Levinson*, 504 F. App'x 824, 827-828 (11th Cir. 2013) (finding evidence that defendant engaged in child molestation properly admitted under Rule 414 to prove he had "a disposition of character that makes it more likely that he committed the [charged] act of child molestation"). Other circuits have likewise consistently confirmed Rule 414's broad principle of admissibility in child pornography cases. *See United States v. Lewis*, 318 F. App'x 1, (D.C. Cir. 2009) (affirming admission of defendant's uncharged possession of child pornography under Rule 414 in prosecution for attempted coercion and enticement of a minor); *United States v. Seymour*, 468 F.3d 378 (6th Cir. 2006) (defendant's uncharged prior sexual assaults against adult females admissible in case charging child molestation offenses); *United States v. Norris*, 428 F.3d 907, 913-14 (9th Cir. 2005) (finding admissible under Rule 414 defendant's uncharged molestation of victim's sister).

The evidence is inherently relevant given the Rule 414 evidence is strikingly similar to his current charges. Moreover, the evidence is overwhelmingly relevant if the defendant will argue that did not commit the crimes charged, or was not aware of the content he was distributing.

To be sure, "[e]vidence admissible under Rule 414 must also meet the requirements of other provisions of the Federal Rules of Evidence, including Rule 403." *United States v. Carino*,

368 F. App'x 929, 930 (11th Cir. 2010).  As explained below, however, the proffered evidence

satisfies the requirements of Rule 403's balancing test and deemed admissible under Rule 414.

      C.    <u>The Evidence is Admissible Pursuant to Rule 404(b)</u>

Finally, all of the evidence outlined above in Section I.B. is also admissible under Fed. R.

Evid. Rule 404(b) ("Rule 404(b)"). While evidence of other bad acts is generally not admissible

at trial to prove a defendant's propensity to engage in charged conduct, Rule 404(b) permits the

admission of such evidence "for other purposes such as proof of motive, intent, plan, knowledge .

. . or lack of mistake or accident." Rule 404(b). For Rule 404(b) extrinsic evidence to be admissible,

it must be: "(1) be relevant to one of the enumerated issues other than the defendant's character,

(2) be supported by sufficient evidence to allow a jury to determine that the defendant committed

the act, and (3) not be unduly prejudicial under the standard set forth in Rule 403." *United States*

*v. Griffin*, 783 F. App'x 881, 883-84 (11th Cir. 2019) (citing *United States v. Edouard*, 485 F.3d

1324, 1344 (11th Cir. 2007)).  The Court need not hold a Rule 104(a) evidentiary hearing before

admitting evidence pursuant to Rule 404(b), however; instead, it must only make a preliminary

finding that the evidence is not being admitted solely to prove character and a jury could reasonably

conclude that "the act occurred and that the defendant was the actor." *Huddleston v. United States*,

485 U.S. 681, 689 (1988) (stating that a preliminary finding by a preponderance of the evidence is

not required); *see also United States v. Green*, 873 F.3d 846, 858 n.9 (11th Cir. 2017). At base,

Rule 404(b) "is a rule of inclusion, and . . . accordingly 404(b) evidence, like other relevant

evidence, should not be excluded when it is central to the prosecution's case." *United States v.*

*Eckhardt*, 466 F.3d 938, 946 (11th Cir. 2006) (quoting *United States v. Jernigan*, 341 F.3d 1273,

1280 (11th Cir. 2003)).

The proposed bad-acts evidence here—the defendant's solicitation of a minor and distribution and possession of child pornography in 2006 (for which he was convicted in 2011), distribution, receipt, and possession of child pornography within his phones and Google accounts, engaging in online groups related to teen girl videos, possession of photos and "memes" of incent, inbreeding, and dad/daughter sex, and a photo of naked young teen on which the words "Are you a pedophile? Our survey says yes" is written, at the same time he engaged in the charged conduct (save the 2011 conviction)—satisfies all three prongs identified above. With respect to the first prong, the evidence is being offered for a proper purpose: to show his motive, intent, purpose, lack of mistake or accident in distributing child pornography to the UCA and attempting to entice Child1. Put another way, this evidence tends to prove that it was the defendant, and not anyone else, who engaged in the charged conduct of knowingly distributing child pornography and attempting to entice a minor. Indeed, the defendant in this case is likely to assert at trial that: he did not knowingly and intentionally engage in conduct charged; that he was not the person communicating with the UCA to commit these crimes; or some combination thereof.  These claims are contradicted by the other bad-act evidence the government seeks to admit from the defendant's own devices, Google accounts and prior conviction which tends to establish that he has a sexual interest in minors and the intent to engage in the charged conduct.

The defendant may agree that he committed the physical acts which form the basis for the charge but assert that he lacked the intent necessary to be found guilty. In such a case, evidence of other crimes, wrongs, or acts is admissible under Rule 404(b) to prove that the defendant did, in fact, have the requisite intent and knowledge. *See, e.g.*, *United States v. Smith*, 804 F.3d 724, 736 (5th Cir. 2015) (citing Rule 404(b) and noting that "an uncharged offense is relevant to intent . . . if it requires the same intent as the charged offense") (internal quotation marks omitted)). Because

the proposed evidence here is being offered for a proper purpose—to show the defendant's motive, knowledge, intent, identity, and lack of mistake or accident—it should be deemed admissible at trial under Rule 404(b).

Moreover, as the Eleventh Circuit has explained, when a defendant pleads not guilty, as the defendant has, he places these considerations at issue. *See Edouard*, 485 F.3d at 1345 ("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." (quoting *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998)).[6]  Absent the defendant's affirmative removal of motive, intent, identity, lack mistake or accident as issues in this case, the government is entitled to introduce the above-noticed evidence to establish these facts without having to wait for the defendant to put those matters in issue. And although motive is generally not an element of an offense itself, evidence of motive is often relevant to show a defendant's state of mind and purpose for committing the crime charged. Accordingly, if motive can be proven by prior or subsequent crimes, wrongs, or acts, Rule 404(b) permits their admission into evidence. Fed. R. Evid. 404(b)(2) (permitting use of evidence to prove motive); *see also United States v. Cook*, 592 F.2d 877, 880 (5th Cir. 1979) (noting that "the trial court may properly permit the introduction of evidence as to other activities by the defendant which are relevant to motive"). Indeed, courts around the country—including in the Eleventh Circuit—have admitted similar bad-act evidence related to

---

[6] *See also United States v. Walker*, 410 F.3d 754, 759 (5th Cir. 2005) (holding that the defendant "put his intent at issue by pleading not guilty"); *United States v. Juarez*, 561 F.2d 65, 73 (7th Cir. 1977) (noting that "intent in virtually all offenses is material, and is therefore a part of the case to be proved in chief; and . . . unless the precise defense be disclosed in advance, the prosecution may in fairness assume that [i]ntent may come into issue"); *United States v. Adcock*, 558 F.2d 397, 402 (8th Cir. 1977) (observing that because "intent was an essential element of . . . the crimes charged" and the government was "duty-bound in its case-in-chief to establish all of the essential elements of the crimes charged . . [t]he government need not await the defendant's denial of intent before offering evidence of similar acts relevant to that issue").

child pornography under Rule 404(b) in similar circumstances and for similar purposes. *See Levinson*, 504 F. at 828 (11th Cir. 2013) (affirming admission of defendant's possession of real and virtual child pornography as evidence of defendant's purpose and intent in coercing a minor to engage in sexual activity).[7] Given the temporal and substantive similarities between the proposed evidence and the charged conduct, this evidence plainly satisfies the first prong of the Rule 404(b) test. *See, e.g.*, *United States v. Smith*, 804 F.3d 724, 736 (5th Cir. 2015) (citing Rule 404(b) and noting that "an uncharged offense is relevant to intent . . . if it requires the same intent as the charged offense") (internal quotation marks omitted)).

The defendant does not contend the evidence is insufficient, but merely argues that if "the Government can made its case without such additional extrinsic evidence, the fairness doctrine dictates this type of evidence should not be allowed into a trial" (DE 48:4). Fairness is what the law says is fair, including the admission of appropriate Rule 404(b) evidence. The fact is that since the defendant may allege that someone else committed these crimes, or he did not have the requisite intent to commit the crimes charged, the government must prove that the defendant did, in fact, have the requisite intent and knowledge. All of the proposed Rule 404(b) evidence help to prove his motive, intent, identity, lack mistake or accident as he previously knew that distributing child pornography and attempting to entice a minor were illegal.

With respect to the second prong—whether the bad acts are supported by sufficient evidence to allow a jury to determine that the defendants committed them—this, too, counsels in

---

[7] *See also United States v. Alford*, 744 F. App'x 650, 654 (11th Cir. 2018) (affirming admission of defendant's possession of child erotica under Rule 404(b) given "the probative value of the evidence for proving intent or lack of mistake" in receipt-of-child-pornography case); *United States v. Brumfield*, 686 F.3d 960, 963 (8th Cir. 2012) (finding evidence that defendant propositioned a minor to have sex with him and to film the act admissible pursuant to Rule 404(b) and "highly probative" of knowledge and intent at trial for defendant charged with possessing child pornography); *United States v. Nance*, 767 F.3d 1037, 1042 (10th Cir. 2014) (affirming admission of evidence under Rule 404(b) that defendant had viewed and deleted uncharged child pornography from his computer to show defendant's knowledge of his transportation of child pornography).

favor of admission. The United States can offer sufficient proof for the jury to find that the defendant committed the extrinsic acts. The United States would offer into evidence the certified prior convictions of distribution of child pornography, possession of child pornography and enticement of a child in which the defendant plead guilty in 2011. The government intends to call law enforcement officers who are familiar with the facts of that case to summarize the evidence. A certified conviction of the defendant's plea of guilty to these charges further solidifies the proof of the extrinsic act. Separately, in regards to the material found on the defendant's phones and Google accounts, those records will be testified to by HSI Special Agent Scott Unger, Computer Forensic Agent Unger – they were on the devices found in the possession or home of the defendant, only attributable to him based upon account information and use of the phones. As noted above, this Court need not hold an evidentiary hearing prior to admitting evidence under Rule 404(b) at this stage.

Finally, as explained below, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403. Accordingly, while the defendant is not charged with "possession" of child pornography or obscene material here, the child pornography[8] and obscene material found on the defendant's devices, and certainly his other distribution, receipt, and enticement described above, should be admitted, at a minimum, as other bad acts under Rule 404(b). These other bad acts confirm the defendant had a prurient interest in sexual activity with children, and this evidence is thus directly probative of the defendants' motive, intent, knowledge, identity, and lack of mistake in distributing child pornography and attempting to entice a minor.

D.     <u>The Evidence is Admissible Under Rule 403</u>

---

[8] The government will select a limited number of images and videos to move in evidence and present to the jury as requested in Section IV, *infra*.

Regardless of whether this Court deems the other acts evidence described above admissible as intrinsic to the charges, Rule 414 evidence, or Rule 404(b) evidence, the Court must apply the Fed. R. Evid. 403's ("Rule 403") balancing test to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the party opposing its admission. *See United States v. Bush*, 673 F. App'x 947, 950 (11th Cir. 2016). It is important to point out, however, that Rule 403 is only meant to guard against *unfair* prejudice—that is, prejudice based on something other than the evidence's own persuasive weight. As the Supreme Court has explained, the term "unfair prejudice" refers to the "capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Evidence should not be excluded merely because it might be graphic or disturbing. *United States v. Kapp*, 419 F.3d 666, 667 (7th Cir. 2005); *see also United States v. Morales-Aldahondo*, 524 F.3d 115, 119-20 (1st Cir. 2008) (finding in a child-pornography case that "the court is not required to scrub the trial clean of all evidence that may have an emotional impact, where the evidence is part of the government's narrative."). For this reason, the Eleventh Circuit has cautioned that Rule 403

> is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility. We have also said that in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial effect.

*United States v. Alfaro-Moncado*, 607 F.3d 720, 734 (11th Cir. 2010) (citation and quotations omitted).

Moreover, the admission of defendant's prior child sex conviction would not create a risk of unfair prejudice that substantially outweighs its probative value. *See United States v. Cooper*, 433 F. App'x 875, 877 (11th Cir. 2011) (finding under Rule 403, evidence of defendant's prior

convictions for child molestation "highly probative because it tended to show that the [sic] Cooper intentionally downloaded child pornography, that he knew the images were child pornography, and that he had not mistaken them for anything other than that."); *United States v. Adleta*, No. 6:13-cr-94-Orl-22GJK, 2013 WL 4734824 (M.D. Fla. Sept. 3, 2013) (explaining that, with respect to evidence admitted under Rules 403, 413, and 414, "[a]s to Rule 403 balancing, this evidence is naturally prejudicial. In fact, that conviction is charged in the indictment and a sentencing enhancement.[9]

Applying these principles here, the proffered other acts evidence plainly satisfies the requirements of Rule 403. As an initial matter, the evidence is highly probative of the defendant's intentional involvement to distribute child pornography and solicit a minor. *See, e.g.*, *United States v. Cooper*, 433 F. App'x 875, 877 (11th Cir. 2011) (finding, under Rule 403, evidence of defendant's prior convictions for child molestation "highly probative because it tended to show that the [sic] Cooper intentionally downloaded child pornography, that he knew the images were child pornography, and that he had not mistaken them for anything other than that."); *see also United States v. Mercer*, 653 F. App'x 622, 630 (10th Cir. 2016) (citing 140 Cong. Rec. H8991-92 (1994) ("In child molestation cases [under Rule 414], for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people."). The evidence also relates to conduct that the defendant engaged in at the same time as the charged conduct (other than the prior conviction), and therefore tends to underscore that it was the defendant—and not anyone else—who operated his Kik account and text communication when communicating with the UCA. If anything, the uncharged conduct is less prejudicial than the

---

[9] Defense counsel, John Kirby, Esq., has provided that the defense intends to stipulate to the prior conviction for purposes of the indictment and as an element before the Jury.

charged conduct. To the extent it is prejudicial, however, it is not unfairly so. Instead, it is prejudicial for the same reason it is probative: it tends to prove that the defendant has a sexual attraction to children and is guilty of the charges.

Defendant contends that because the prior conviction took place approximately 13 years ago, this fact diminishes the probative value of the evidence under Rule 403 (DE 48). The fact that the conduct underlying defendant's prior child molestation conviction (distribution and possession of child pornography) and other bad act (enticement of a minor) occurred about 13 years before the offenses charged in this case does not render the prior conviction inadmissible. This is because Rule 404, 414, unlike Rule 609, contains no presumptive age limitation; and under these Federal Rules of Evidence, neither does the Eleventh Circuit.

In *United States v. Carino*, 368 F. App'x 929, 930 (11th Cir. 2010), the Court approved use of the defendant's sister's testimony that he sexually abused her when he was 16 years' old, but was facing trial 32 years' later (at age 48) charged with possessing and receiving child pornography. Having considered the standard of Rule 403 and conducted a proper balancing test, the evidence was properly admitted. *See United States v. Larson*, 112 F.3d 600, 605 (2nd Cir. 1997) (noting that "Congress meant [Rule 414's] temporal scope to be broad" in upholding admission of evidence of abuse 16 years before ethe charged offense.

In *United States v. Barturek*, 969 F.3d 860, 864 (8th Cir. 2020) the Eight Circuit found that a 26-year-old act of child molestation admissible in defendant's trial charging child pornography, and the age of the prior offenses "did not establish unfair prejudice." The *Barturek* Court observed that "Congress placed no time limit on admissibility of evidence under Rule 414…." *Id.* Similarly, in *United States v. Gabe*, 237 F.3d 954, 956, 960 (8th Cir 2001), where the defendant was charged with abusive sexual contact with a child under the age of 12, the Court held that the district court

properly admitted Rule 414 testimony that the defendant had sexually abused a seven-year-old *twenty years earlier*. The court agreed that the testimony was "highly probative" because the abuse alleged by the now-27-year-old "was almost identical to the abuse of [the minor] alleged in Count One.  Both were young girls of six or seven years at the time of the offenses; both were related to [the defendant]; and the sexual nature of the offenses was similar." *Id.* at 959. In *United States v. Hollow Horn*, 523 F.3d 882 (8th Cir. 2008) the Court affirmed admission of a prior sexual assault occurring 11 years before the charged conduct, nothing "Congress expressly rejected imposing any time limit on prior sex offense evidence," when it enacted Rule 413 (citing 140 CONG. REC. H8968-01, H8992 (daily ed. Aug. 21, 1994) (statement by Rep. Molinari) ("No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses.").

In *United States v. Meacham*, 115 F.3d 1488, 1490, 1495 (10th Cir. 1997), the defendant was charged with transporting a minor in violation of § 2423. The court affirmed the admission of evidence of child molestation occurring roughly *30 years* before trial under Rule 404(b) and Rule 414. *See also United States v. Drewry,* 365 F.3d 957, 960 (10th Cir. 2004) (finding "[s]ufficient factual similarity" between 25-year-old uncharged child molestation and the charged offense).

Finally, to the extent the Court is concerned with unfair prejudice, such prejudice can be mitigated here by a limiting instruction to the jury that specifies how the jury may properly consider the evidence.  *See United States v. Brown*, 665 F. 3d 1239, 1248 (11th Cir. 2011).

Accordingly, the government respectfully requests that this Court deem evidence of the defendants' uncharged other bad acts admissible as intrinsic evidence, under Rule 414, and/or under Rule 404(b).

### III.   MOTION *IN LIMINE* RE: ADMISSIBILITY OF SUMMARIES OF DATA PURSUANT TO FEDERAL RULE OF EVIDENCE 1006

The United States of America also moves, *in limine*, to preemptively admit into evidence witness testimony and exhibits summarizing digital device records. The summaries, which will compile and streamline the contents of a substantial amount of digital evidence related to the chat communication and the defendant's devices that the government intends to introduce, do not consist of argument and are admissible. *See United States v. Sanchez*, 586 F.3d 918, 929 (11th Cir. 2009); *United States v. Feliciano*, 300 Fed. App'x 795, 800 (11th Cir. Nov. 25, 2008).   The summary charts will allow the witness to talk through these records in a more clear and precise manner.

In their entirety, the records are difficult to follow in that they are extremely voluminous. By combining them into summary exhibits, the jury will not be forced to go back and forth between multiple documents from multiple devices, possibly hundreds or thousands of times.  Federal Rule of Evidence 1006 provides the following: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006.

The government anticipates that introduction of this evidence pursuant to the above-cited cases and Rule 1006 will expedite the length of the trial and ease the jury in following along with the evidence.  Specifically, rather than having the government show the jury more than thousands of images and videos of child pornography and web-based chat or communication, along with the data of those files, the government will simply publish the same information to the jury by showing the jury the information contained and summarized in the exhibits.

## IV.    MOTION *IN LIMINE* TO PUBLISH CHILD PORNOGRAPHY TO THE JURY

Last, the United States moves, *in limine*, for permission to publish images and videos of what it believes are child pornography that Douglas distributed to the UC and was recovered from the defendant's devices and Google account to the jury during its presentation of evidence.

The defendants may object to such a presentation being more prejudicial than probative. Just as in determining the admissibility of all evidence, a balancing test is applied pursuant to Federal Rule of Evidence 403 to determine whether the probative value of other acts evidence is substantially outweighed by the danger of unfair prejudice to the party opposing its admission. *Huddleston*, 485 U.S. at 688.

Rule 403 permits the exclusion of relevant evidence if its "probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. As noted above, however, evidence should not be excluded merely because it might be graphic or disturbing. *Kapp*, 419 F.3d at 667. And here, there is nothing unfair or unduly prejudicial about admitting and publishing to the jury the images and videos of child pornography that relate to and corroborate the very acts for which the jury will be asked to hold the defendant accountable. While jurors may be repulsed by child pornography, they should be allowed to see the materials upon which the charges are based. The superseding indictment charges distribution of child pornography and does not specify, nor does it need to, the specific images or videos the government will present to the jury to prove this charge.  Moreover, the attempted enticement of a minor count requires proof that the defendant attempted to persuade, induce or entice a minor—the child pornography he distributed at times was used to do just that. Thus, the government intends to select images and portions of several videos to publish to the jury. Where a defendant is "being prosecuted for exactly what [the evidence] depicts," a court should steadfastly reject Rule 403 challenges. *See United States v.*

*Hanna*, 630 F.3d 505, 512 (7th Cir. 2010) (citations omitted). This is precisely the case before this Court.

Appellate courts, including the Eleventh Circuit, have repeatedly and nearly uniformly ruled that the publication of child pornography is not unduly prejudicial, notwithstanding a defendant's offer to stipulate to their content. *See United States v. Bilus*, 626 F. App'x 856, 869 (11th Cir. 2015) (holding that publication of 11 images and two 5-second video clips did not cause unfair prejudice); *United States v. Cray*, 450 F. App'x 923, 934-35 (11th Cir. 2012) (affirming conviction where jury was shown, over defendant's objection, child pornography); *United States v. Ballard*, 448 F. App'x 987, 988-89 (11th Cir. 2011) (affirming conviction where jury was shown, over defendant's objection, 15 images and three videos of child pornography, despite defendant's stipulation that all admitted evidence constituted child pornography); *United States v. Dodds*, 347 F.3d 893, 897-99 (11th Cir. 2003) (affirming conviction in which jury was shown, over defendant's objection that the evidence was cumulative and unduly prejudicial, 66 images of child pornography); *United States v. Mellies*, 329 F. App'x 592, 600-01 (6th Cir. 2009) (affirming admission of 1,600 images, out of 11,000 in defendant's collection despite defendant's admission that the images portrayed child pornography); *United States v. Sewell*, 457 F.3d 841, 844 (8th Cir. 2006) (holding that the district court "abused its discretion in refusing to allow the Government to publish a representative sample of the [child pornography] images").

The defendant may claim that the videos and images are "inflammatory," implying that upon seeing the child pornography, the jury would automatically convict him regardless of whether the rest of the evidence proves that he committed the crimes. Such an argument might have *some* minimal sway if the evidence at issue was somehow collateral to the charged offenses, but it makes no sense here. In this case, *the videos and images are the crimes*. If the defendant

argues "somebody else" distributed or possessed them, or the defendant did not know they were child pornography, and the jury accepted either of these defenses, why would it conclude that, even though the defendant did not possess or knowingly possess, he is nonetheless a bad person deserving of punishment through a guilty verdict? This argument would be based on flawed logic and should be rejected by this Court.

Publishing a measured portion of the defendant's collection not only conforms with Eleventh Circuit precedent, it also ensures that each of the jurors is exposed to and considers all of the evidence. If the images and videos are merely sent back to the jury room on disks in envelopes without publishing them in court, there is a strong possibility that some, or all of the jurors will opt not to look at the images and videos at all. Even if a lone juror takes seriously the Court's command to "consider all of the evidence," and wishes to view the evidence to fulfill their duty that they swore under oath to undertake, negative peer pressure and the fear of the social stigma and being labeled a "pervert" by the other jurors may prevent them from doing so. Furthermore, if one or two jurors look at the videos and images during deliberation but the others do not, will that not mean that the jurors who look are privy to evidence that the others have not seen? Will that force the others to look also, or will they decline to do so thereby refusing to follow the Court's instruction to "consider all of the evidence?"[10] Alternatively, will the ones who view the evidence have leverage and sway over the others because they are the only jurors to have actually seen all of the evidence? Publishing the evidence in court avoids all of these problems by ensuring that *every juror* views a brief sample of each charged video.

---

[10] *See* Eleventh Circuit Pattern Jury Instructions, Basic Instruction B5 (2016) ("When I say *you must consider all the evidence*, I don't mean that you must accept all the evidence as true or accurate") (emphasis added); *see also United States v. Carr*, MDFL Case. No. 3:16-cr-118-J-39JBT, Doc. 70 at 4, 5.

Seeing the evidence for themselves enables the jurors to make a direct connection that cannot be duplicated or substituted by mere testimony or written stipulation, and the importance of which cannot be overstated. This connection to the evidence will eliminate the possibility of any "doubting Thomas" jurors who might have a preconceived and incorrect understanding of what constitutes child pornography and will provide the United States the fair opportunity to carry its high burden of proof. As the Supreme Court remarked in *Old Chief*, "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it."  519 U.S. at 189.  It is well established that the United States is entitled to prove its case free from a defendant's preference to stipulate the evidence away.  *Old Chief*, 519 U.S. at 189.

Potential impact of the evidence on the jurors is properly addressed and minimized in jury selection by ensuring that the prospective jurors are aware of the nature of the charges and that they can be fair and impartial. This Court may advise the potential jurors (individually and in private) about the graphic nature of the visual materials and whether they can still be impartial upon seeing them. The result is that, after the jurors are vetted and empaneled, there is a strong presumption that they are the kind of jurors that are not so overly sensitive to the content of the case that they cannot fairly consider the evidence. Rather, they have been selected precisely because they were the most likely to discharge their civic duty without bias or prejudice for and against the United States or defendant. By declaring that they can be impartial, they have all functionally agreed to view all the evidence. The selection process, and our entire judicial system, demands that these jurors be taken at their word. The proper manner for the Court to deal with the contraband evidence is to forewarn them during *voir dire* so that they are mentally prepared, thus not hobbling the prosecution by barring the United States from showing the jurors the best

evidence of defendant's charged offenses. The Court may properly give the jury a mid-trial cautionary instruction immediately prior to the images being published during the trial, as well as a similar instruction after the evidence has closed and before the jury begins its deliberations. *See United States v. Baker*, Case No. 3:13-cr-197, 2015 WL 7068145, at *3 (M.D. Fla. Nov. 13, 2015).

In accordance with controlling Supreme Court (*Old Chief*) and Eleventh Circuit precedent, the applicable Eleventh Circuit pattern jury instructions, and in the interest of justice and fairness, the United States respectfully requests that this Court permit the admission a limited set of child-pornography images and videos necessary to prove the charges in the superseding indictment and allow publication of short excerpts of them to the jury.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    *s/ Gregory Schiller*
GREGORY SCHILLER
Assistant United States Attorney
Court Id No. A5501906
U.S. Attorney's Office - SDFL
500 S. Australian Ave., Suite 400
West Palm Beach, Florida 33401
Telephone: (561)209-1045
E-mail: gregory.schiller@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: <u>*s/Gregory Schiller*</u>
Gregory Schiller
Assistant United States Attorney