```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                    WEST PALM BEACH DIVISION
                     CASE NO. 23-cr-80219-AMC
 3
     UNITED STATES OF AMERICA,            Fort Pierce, Florida
 4
                     Plaintiff,           August 12, 2024
 5
              vs.
 6                                        9:37 a.m. - 2:23 p.m.

 7   MICHAEL GORDON DOUGLAS,

 8             Defendant.                 Pages 1 to 164

 9   _____

                     TRANSCRIPT OF MOTION TO SUPPRESS
10            BEFORE THE HONORABLE AILEEN M. CANNON
                     UNITED STATES DISTRICT JUDGE
11   APPEARANCES:

12   FOR THE GOVERNMENT:
                                U.S. ATTORNEY'S OFFICE
13                              GREGORY SCHILLER, ESQ.
                                500 S. Australian Avenue
14                              Suite 400
                                West Palm Beach, Florida 33401
15
     FOR THE DEFENDANT:
16                              LAW OFFICES OF JOHN D. KIRBY, APC
                                JOHN D. KIRBY, ESQ.
17                              401 W. A Street
                                Suite 1150
18                              San Diego, California 92101

19                              LAW OFFICE OF JOHN R. HOWES
                                JOHN R. HOWES, ESQ.
20                              110 SE 6th Street
                                Suite 1700
21                              Fort Lauderdale, Florida 3301

22
     STENOGRAPHICALLY REPORTED BY:
23
                                LAURA E. MELTON, RMR, CRR, FPR
24                              Official Court Reporter to the
                                Honorable Aileen M. Cannon
25                              United States District Court
                                Fort Pierce, Florida
```

```
 1                   E X A M I N A T I O N S
 2      Witness/Proceedings                                Page
 3      HOMELAND SECURITY INVESTIGATIONS
        SPECIAL AGENT BONNIE MYERS
 4           DIRECT EXAMINATION BY MR. SCHILLER            20
             CROSS-EXAMINATION BY MR. KIRBY               31
 5
 6
 7                      E X H I B I T S
 8
                 GOVERNMENT FOR IDENTIFICATION
 9      Exhibit                                            Page
        1                                                  27
10
11               DEFENDANT FOR IDENTIFICATION
        Exhibit                                            Page
12                          NONE
13
14
15
                 GOVERNMENT ADMITTED EXHIBITS
16      Exhibit                                            Page
        1                                                  18
17      2                                                  29
        3                                                  37
18
19               DEFENDANT ADMITTED EXHIBITS
        Exhibit                                            Page
20                          NONE
21
22
23
24
25
```

1          (Call to the Order of the Court.)

2          THE COURT:  Good morning.  Please be seated unless you

3   are addressing the Court.

4          Let's call the case.

5          COURTROOM DEPUTY:  The United States of

6   America v. Michael Gordon Douglas, case number 23-cr-80219.

7          Will the parties please make your appearance, starting

8   with the government.

9          MR. SCHILLER:  Good morning, Your Honor.  Gregg

10  Schiller on behalf of the United States, and with me at counsel

11  table is Homeland Security Investigations Special Agent Aisha

12  Rahman.

13         THE COURT:  Good morning to you both.

14         AGENT:  Good morning.

15         MR. KIRBY:  Good morning, Your Honor.  John Kirby on

16  behalf of Mr. Douglas.  He is present.

17         MR. HOWES:  Good morning, Your Honor.  John Howes as

18  local counsel for Mr. Douglas.  How are you today?

19         THE COURT:  Good morning to all of you.  I'm well.

20  Thank you.

21         Good morning, Mr. Douglas.

22         THE DEFENDANT:  Good morning, Your Honor.

23         THE COURT:  This is a hearing, an evidentiary hearing,

24  on three defense motions to suppress.  There is also a

25  government omnibus motion in limine which is set for hearing

```
1    today and will be addressed following the evidentiary portion
2    of the hearing.
3            Let me first turn to Mr. Schiller.  Given the number of
4    motions and the issues that are presented, do you have a plan
5    with respect to presentation of evidence?
6            MR. SCHILLER:  Yes, ma'am, I do.
7            THE COURT:  Okay.
8            MR. SCHILLER:  In regards to the motions to suppress,
9    first regarding docket entry 47 -- actually, let me back up.
10   Docket entry 46, which is the motion to suppress the evidence
11   seized from the vehicle, Counsel and I, based on the filing at
12   docket entry 83, are going to stipulate to a summary of
13   evidence that occurred -- everything leading up to the actual
14   seizure of the vehicle, and then we will put on one witness,
15   Homeland Security Special Agent Bonnie Myers, who will testify
16   about the consent she received from the defendant's aunt.
17           So in regards to that, that's how we will proceed on
18   that, and argue the legal availability to search the car.
19           THE COURT:  Okay.  This stipulated set of facts, are
20   they memorialized in writing?
21           MR. SCHILLER:  They are, ma'am.  And they're
22   memorialized in Government's Exhibit 60 at pages 2, 3, 4, 5, 6,
23   7, and 8.
24           THE COURT:  So 2 through 8?
25           MR. SCHILLER:  Yes, ma'am.
```

```
 1            THE COURT:  And you're using the blue, file-stamped or
 2   the pages on the bottom?  I guess there are no pages on the
 3   bottom.  So you're referring to the --
 4            MR. SCHILLER:  Yes.
 5            THE COURT:  -- 2 through 8.
 6            MR. SCHILLER:  And, Judge, just so the Court knows,
 7   part of the reason why I don't put page numbers on there,
 8   because sometimes the pagination doesn't match up with the file
 9   stamp.
10            THE COURT:  Okay.  So the facts begin at the bottom of
11   page 2 of ECF 60 --
12            MR. SCHILLER:  Through the middle of page 8.  With one
13   caveat, Your Honor.
14            THE COURT:  And what is the caveat?
15            MR. SCHILLER:  At the bottom of page 7 is the paragraph
16   regarding consent.  So for that we will have the agent testify.
17            THE COURT:  Okay.  So does this mean that the only
18   portion of evidence to be presented today would concern the
19   disputed consent?
20            MR. SCHILLER:  I believe so, Judge.  Because I believe
21   for every issue that we have, we are agreeing to what the facts
22   are; we're just disagreeing on whether they are legally
23   admissible or suppressionable.
24            THE COURT:  Okay.
25            MR. SCHILLER:  I don't want to speak for Mr. Kirby, but
```

1   that's the conversations we have had.

2        THE COURT:  Okay.  Mr. Kirby, let me hear from you.

3   Please clarify your position with respect to the stipulated

4   facts for this hearing.

5        MR. KIRBY:  That is correct, Your Honor, what the

6   government has stated.  The issue that we have is whether

7   Mr. Douglas' aunt actually signed the consent form or not.

8        THE COURT:  Okay.  So let me just confirm that the

9   facts beginning at the bottom of page 2 of the government's

10  response in opposition to the motion to suppress filed at ECF

11  46 and 54 would be stipulated as true for purposes of this

12  suppression hearing, with the exception of that singular

13  paragraph on page 7 concerning consent?

14       MR. KIRBY:  That's correct, Your Honor.

15       THE COURT:  Okay.

16       All right.  Mr. Schiller, do you think a colloquy is

17  necessary of the defendant himself for purposes of the

18  stipulated facts that we're going to be operating under?

19       MR. SCHILLER:  No, I don't believe so, Judge.  I think

20  counsel's availability to do it is fine.  Obviously, if the

21  Court wants to, I have no objection to it, but...

22       THE COURT:  Okay.  Mr. Kirby, do you think any

23  additional colloquy is necessary on this portion, which is just

24  the stipulated facts I have mentioned?

25       MR. KIRBY:  No, Your Honor.  I have talked to

1    Mr. Douglas about this.

2          THE COURT:  Okay.  Let's swear Mr. Douglas in.

3          COURTROOM DEPUTY:  Can you please raise your right

4    hand.

5          Do you swear or affirm that the testimony you are about

6    to give is the truth, the whole truth, and nothing but the

7    truth, so help you God?

8          THE DEFENDANT:  I do.

9          THE COURT:  All right.  Mr. Douglas, you have been

10   sworn, which means that anything you say later could be used

11   against you in a future prosecution for perjury or for making a

12   false statement.  Do you understand, sir?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Okay.  Have you been listening to the

15   conversation that I have been having with the attorneys about

16   the stipulated facts for this hearing?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Okay.  Do you have any questions about what

19   we've discussed?

20         THE DEFENDANT:  None at this time, Your Honor.

21         THE COURT:  Now, I want to make sure you understand

22   that at this evidentiary hearing you would have the obligation

23   or the right -- excuse me -- the right to introduce any

24   evidence you wish on any disputed questions of fact.  Do you

25   understand that, sir?

1          THE DEFENDANT:  I do.

2          THE COURT:  And so what I have heard the attorneys say

3     is that for purposes of this hearing, there is an agreement

4     that all of the facts set forth on pages 2 through 8 of the

5     government's opposition at docket entry 60 are true, for

6     purposes of this hearing, with the exception of the consent

7     paragraph at the bottom of page 7.

8          Do you understand that, sir?

9          THE DEFENDANT:  I do.

10          THE COURT:  Okay.  And are you willing to stipulate to

11     those facts for purposes of this suppression hearing?

12          THE DEFENDANT:  I guess.  I haven't read what the

13     government wrote, but...

14          THE COURT:  You have not?

15          THE DEFENDANT:  I have not read it yet, no.

16          THE COURT:  Well, then I think it is necessary for you

17     to be fully familiar with what it is that you are stipulating

18     as true for purposes of this hearing.  So we are going to take

19     a 15-minute break so Mr. Kirby and Mr. Howes can present that

20     information to Mr. Douglas, and so that he can have enough time

21     to understand the factual portion that we have been addressing.

22          So the Court is in a brief recess.

23     (A recess was taken from 9:44 a.m. to 10:00 a.m.)

24          THE COURT:  Please be seated.  We are back in case

25     number 23-80219.

1          Mr. Kirby, have you had an opportunity to consult with

2     Mr. Douglas regarding the stipulated facts for this hearing?

3          MR. KIRBY:  Your Honor, he read through the facts one

4     more time.  Yes -- so, yes, Your Honor, we have.

5          THE COURT:  Okay.  Let's get back to Mr. Douglas.

6          You remain under oath, sir.  I want to finish up my

7     conversation with you.

8          Have you had a full chance to review the facts that are

9     being agreed to for purposes of this suppression hearing, sir?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Okay.  And do you agree that all of those

12    facts are true for purposes of this suppression hearing, with

13    the exception of the consent paragraph that was flagged by

14    Mr. Schiller?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Okay.  Do you need any additional time to

17    discuss these stipulated facts for purposes of this hearing

18    with your attorney?

19         THE DEFENDANT:  No, Your Honor.

20         THE COURT:  Has anybody forced you to agree to those

21    facts for purposes of this hearing?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  Are you doing so freely and voluntarily?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Okay.  Do you have a copy of those facts in

1    front of you, Mr. Douglas?

2           THE DEFENDANT:  They have been removed, but they're

3    over there somewhere.

4           MR. KIRBY:  It's right there (indicating).

5           Yes, Your Honor.  We --

6           THE DEFENDANT:  Yes.

7           MR. KIRBY:  Yes, he does, Your Honor.

8           THE COURT:  Okay.  I just want him to have a copy of

9    that in front of him, and so that I can verify just precisely

10   exactly what is being agreed to from a page number perspective.

11          Do you have a document in front of you, sir, with a

12   blue banner on the top that says Document 60?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Okay.  And so what's being agreed to, for

15   purposes of this hearing -- I want to make sure you

16   understand -- starts at the bottom of that page where it says

17   "facts."

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And it continues continuously through

20   page 3, 4, 5, 6, and 7, but then once you get to the bottom of

21   7, the paragraph that starts "with Douglas now in custody," do

22   you see that, sir?

23          THE DEFENDANT:  Just a moment.

24          MR. KIRBY:  Right there (indicating).

25          THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  So that paragraph is not being stipulated
 2     for purposes of this hearing.  Do you understand that, sir?
 3              THE DEFENDANT:  Yes, Your Honor.
 4              THE COURT:  Mr. Schiller, with respect to page 8, what,
 5     if anything, in that half-a-page portion is being agreed to for
 6     purposes of this hearing, as far as you understand things?
 7              MR. SCHILLER:  The first two paragraphs, Your Honor.
 8              THE COURT:  So the entirety of it?
 9              MR. SCHILLER:  Yes, ma'am.
10              THE COURT:  Even the part that says "upon receiving the
11     signed consent"?
12              MR. SCHILLER:  Right.  I -- yes.  I don't think the
13     defense is saying that we didn't receive it.  They're just
14     contesting another part of it.  But, yes.
15              THE COURT:  Okay.  All right.  And then those two
16     paragraphs, Mr. Douglas, also are being agreed to for purposes
17     of this suppression hearing.  Do you understand that?
18              Now I'm referring to the top of page 8.  Do you see?
19              THE DEFENDANT:  Uh-huh, yes, Your Honor.
20              THE COURT:  Okay.  And so, to be clear, do you agree
21     that all of these facts are being agreed to for purposes of
22     this hearing, and that you have had enough time to think about
23     these matters before agreeing to stipulate to these facts?
24              THE DEFENDANT:  Yes, Your Honor.
25              THE COURT:  Okay.  All right.  Then let's proceed
```

1   forward.

2          Having ironed out the question of the agreed facts,

3   Mr. Schiller, what do you propose we turn to next?

4          MR. SCHILLER:  So, Judge, if we could look at docket

5   entry -- sorry, ma'am -- docket entry 47, which is the

6   defendant's motion to suppress statements; the government

7   responded at docket entry 61.

8          What the parties have agreed to is, we will play the

9   interview -- which is an audio recording, and I have it on my

10  computer -- for the Court openly, and so the Court can listen

11  to the parts of the interview that are relevant to the

12  defendant's motion to suppress and the government's response.

13  I estimate that it is probably about 15 minutes' worth of audio

14  recording.

15         THE COURT:  Is it the full interview or excerpts?

16         MR. SCHILLER:  It is excerpts.  It is the -- about two

17  or three minutes from the beginning when Miranda is read and

18  his acknowledgement of such, and then about a 10- or 15-minute

19  section beginning at about the 35-minute mark until about the

20  50-minute mark.

21         THE COURT:  Is there a written transcript of the full

22  interview?

23         MR. SCHILLER:  We are working on it, but we were not

24  able to get it done before today's hearing.  I do have a copy

25  for the Court on a flash drive.  So if, in addition to what we

1    play in court today, the Court needs to listen to it further or

2    again, I can certainly -- I have that ready to provide to the

3    Court.

4            THE COURT:  Okay.  Mr. Kirby?

5            MR. KIRBY:  The excerpts that the government intends to

6    play covered the issue, as far as I'm concerned.

7            THE COURT:  Okay.  So are there any other additional

8    portions of that interview that you believe need to be played

9    separate from the portions that have been identified by

10   Mr. Schiller?

11           MR. KIRBY:  No, Your Honor.

12           THE COURT:  Okay.  And this excerpt of the interview is

13   going to be marked as what?

14           MR. SCHILLER:  We can -- we will mark this as an

15   exhibit.  We will probably have one or two exhibits before

16   that.  So I'm not sure what number it will be yet, maybe 3 or

17   4.

18           THE COURT:  Okay.

19           MR. SCHILLER:  Yeah.

20           THE COURT:  All right.  Well, then we will number it

21   later, but for now you can -- any objection, Mr. Kirby, to

22   admission of Government's Exhibit -- you're going to have to

23   give me a number now, Mr. Schiller.

24           MR. SCHILLER:  Oh, I'm sorry, ma'am.  All right.  We

25   will -- you know what?  We will call that 1 then.

1          THE COURT:  Okay.  Any objection to admission of

2    Government's 1, which is a portion of the custodial interview?

3          MR. KIRBY:  Subsequent to it actually being played and

4    listening to it, no, Your Honor.

5          THE COURT:  Okay.  All right.  Well, we will then play

6    the exhibit.  And after that, Mr. Kirby, if you have any

7    objection to it, please advise the Court.

8          Let's go.

9          MR. SCHILLER:  You want us to start that one now,

10   Judge?

11         THE COURT:  Yes.

12         MR. SCHILLER:  Okay.  No problem.

13         Judge, the recording, just so the record is clear, is

14   1 hour 56 minutes and 55 seconds long.  I am going to start it

15   at 4 minutes and 19 seconds --

16         THE COURT:  Did you say 1 hour -- and what?

17         MR. SCHILLER:  1 hour 56 minutes and 55 seconds long.

18   And I'm going to be starting it at 4 minutes and 19 seconds.

19         THE COURT:  So it's a, roughly, 2-hour interview total?

20         MR. SCHILLER:  That is correct, ma'am.

21         Well, I'm going to start it at 4 minutes and

22   13 seconds.

23         THE COURT:  Okay.

24      (A video and/or audio was played.)

25         MR. SCHILLER:  Judge, I have stopped the recording at

1    5 minutes and 25 seconds.

2         What the Court just heard was the interview conducted

3    by Homeland Security Investigations Special Agent Aisha Rahman

4    with the defendant, Michael Douglas; the reading of Miranda;

5    and what we purport to be his acknowledgement of those rights

6    to proceeding with the interview.  That was the first issue

7    brought up by the defense in their motion to suppress.

8         For the record, at docket entry 47, page 2, the first

9    full paragraph, the defense wrote in their motion, "Prior to

10   questioning him, agents did advise Douglas of his Miranda

11   rights, but at no point received an oral or written waiver from

12   Douglas of those rights."  So that's why the government played

13   that portion.

14        THE COURT:  Mr. Kirby?

15        MR. KIRBY:  And that's correct, Your Honor.  There is

16   no -- there is no portion of that tape in which

17   the -- Mr. Douglas ever waives his rights.  I mean, he is -- he

18   is read those rights, but he never waives them.  That is

19   outside of normal procedure, as far as I know.  And he is never

20   asked whether or not he waived those rights and agrees to

21   testify -- or agrees to questioning.  And that's improper.

22        THE COURT:  Okay.  I would like for this hearing to be

23   evidence and then argument.  So I don't know about this

24   start-stop method, but I want to hear all the evidence and then

25   I will give each side an opportunity to argue.  But, so far,

```
1   it's getting jumbled.  So let's reserve argument.  And I would

2   just like to hear the evidence that is Government's Exhibit 1.

3           MR. SCHILLER:  Thank you, ma'am.  And I apologize for

4   that.

5           MR. KIRBY:  And no -- and, Your Honor, no objection to

6   that actually being part of the recording, Your Honor.  I do

7   agree to that.

8           THE COURT:  Okay.  So let me just be clear.  Do you

9   object to admission, for purposes of this hearing, Government's

10  Exhibit 1, which is excerpts of the nearly 2-hour custodial

11  interview conducted in this case December -- what is the date,

12  Mr. Schiller?

13          MR. SCHILLER:  December 12, 2023.

14          THE COURT:  Yes or no, Mr. Kirby?

15          MR. KIRBY:  I do not, Your Honor.

16          THE COURT:  Okay.  All right.  So Government's

17  Exhibit 1 will be admitted without objection.

18          And then is Government's Exhibit 2 the entire

19  recording?

20          MR. SCHILLER:  Government's Exhibit 1 is the entire

21  recording.

22          THE COURT:  Okay.  Again, I thought there was an

23  exhibit that had excerpts, the ones you're playing for the

24  Court right now, and then separately there is the entire

25  two-hour.  Or are you having it all in one exhibit and just
```

1    marking the portions?

2         MR. SCHILLER:  That's correct, Your Honor.  I'm sorry.

3    And I apologize for that.  I thought I was -- I thought

4    explained it, but it's -- that's my fault.

5         No, the exhibit is the entire recording, and I am

6    playing the excerpts that are relevant to the motion to

7    suppress.

8         THE COURT:  Okay.  Do you have an exhibit list for this

9    hearing?

10        MR. SCHILLER:  No, not -- not prepared in advance,

11   ma'am, no.  Because I wasn't --

12        THE COURT:  Okay.  Well, this is the problem.

13   We're -- it's disorganized.  So we have one exhibit so far,

14   it's Government's Exhibit 1, and it's the entire custodial

15   interview.

16        MR. SCHILLER:  Correct.

17        THE COURT:  Okay.  Now we have to go -- now go back.

18        Mr. Kirby, do you object to admission of the entire

19   custodial interview as Government's Exhibit 1?

20        MR. KIRBY:  No, Your Honor.

21        THE COURT:  Okay.  So Government's Exhibit 1 is the

22   entire interview.

23        And you should have an exhibit list prior to the

24   hearing to avoid confusion.

25        MR. SCHILLER:  Yes, ma'am.

1          THE COURT:  Okay.  So let's continue to play portions

2     of Government's Exhibit 1.

3          (Government Exhibit 1 was received in evidence.)

4          MR. SCHILLER:  Thank you, ma'am.  We are now going to

5     continue from Government's Exhibit 1, playing at 35 minutes and

6     43 seconds.

7          (A video and/or audio was played.)

8          MR. SCHILLER:  Your Honor, I have paused the tape at

9     42 minutes and 17 seconds.

10         THE COURT:  Okay.  What is your next clip?

11         MR. SCHILLER:  We are going to play from 56:35.

12         THE COURT:  Okay.

13         MR. SCHILLER:  Your Honor, sorry.  56:29.  My

14    apologies.

15         THE COURT:  Okay.  56:29 is the start of clip 3.

16         MR. SCHILLER:  Yes, and this one will go for about

17    30 seconds.

18         (A video and/or audio was played.)

19         MR. SCHILLER:  Judge, I have stopped it at 57:30.

20         THE COURT:  Okay.  Next clip.

21         MR. SCHILLER:  That's it for purposes of presenting any

22    information where the defendant mentioned anything regarding

23    the motion to suppress.

24         THE COURT:  Okay.  So, to be clear, we have three

25    clips.

1          Mr. Kirby, do you have any additional clips from

2     Government's Exhibit 1 that you wish to play?  Mr. Kirby.

3          MR. KIRBY:  I'm thinking, Your Honor.  I'm sorry.  I

4     am -- I am here, Your Honor.

5          No.  I think -- I think that covers it, Your Honor.

6          THE COURT:  Okay.  All right.  Any additional exhibits

7     or testimony to present on the various motions set for today's

8     hearing?

9          MR. SCHILLER:  Yes, ma'am.  The government has a

10    witness to call regarding the consent.

11         THE COURT:  Okay.  Call your first witness, please.

12         MR. SCHILLER:  Thank you.  The government calls

13    Homeland Security Investigations Special Agent Bonnie Myers.

14         THE COURT:  Good morning, Agent.  Please make your way

15    to the witness stand to be sworn in.

16         COURTROOM DEPUTY:  Do you swear or affirm that the

17    testimony you are about to give is the truth, the whole truth,

18    and nothing but the truth, so help you God?

19         THE WITNESS:  I do.

20         THE COURT:  Thank you.  Please be seated and tell us

21    your full name.

22         THE WITNESS:  Bonnie Lynn Myers.

23         MR. SCHILLER:  May I proceed, Your Honor?

24         THE COURT:  Yes.

25         MR. SCHILLER:  Thank you.

1           Could I approach the podium?

2           THE COURT:  Yes.

3           MR. SCHILLER:  Thank you.

4    Thereupon:

5      HOMELAND SECURITY INVESTIGATIONS SPECIAL AGENT BONNIE MYERS

6    having been sworn by the Courtroom Deputy, testified as

7    follows:

8                        DIRECT EXAMINATION

9    BY MR. SCHILLER:

10   Q.  Good morning, Agent Myers.

11   A.  Good morning.

12   Q.  How long have you been employed with Homeland Security

13   Investigations?

14   A.  I have been with Homeland Security Investigations since

15   2010.

16   Q.  And prior to 2010, did you serve in any other law

17   enforcement capacity?

18   A.  Yes.  I was with the United States Border Patrol from 2003

19   to 2010.

20   Q.  Okay.  Prior to that, any other law enforcement?

21   A.  No.

22   Q.  So have you been in law enforcement consecutively for

23   21 years?

24   A.  That's correct.

25   Q.  During that time, have you testified in any number of

1    proceedings, whether in state or federal court?

2    A.   Yes, I have.

3    Q.   Have you presented search warrants, affidavits for

4    complaint and arrest to federal magistrate judges during that

5    time period?

6    A.   Yes, I have.

7    Q.   And in all times that you have testified, has your

8    testimony been impugned for dishonesty, lack of truth, lack of

9    candor?

10   A.   No.

11   Q.   I want to direct your attention, if I could, to

12   December 12, 2023.  Were you involved as part of the team that

13   was going to eventually be part of the arrest or search of the

14   defendant's residence belonging to Michael Douglas?

15   A.   Yes, I was.

16   Q.   Okay.  And what was your responsibility on the 12th as it

17   eventually became?

18   A.   I was assigned with a team that was going to be part of the

19   search warrant at the residence.

20   Q.   And was there a search warrant in place for the residence

21   where Michael Douglas had lived in the Southern District of

22   California?

23   A.   Yes, there was.

24   Q.   Was that at 525 West El Norte Parkway, Space 75, in

25   Escondido, California?

```
 1   A.   That's correct.

 2   Q.   And did a federal magistrate judge in the Southern District

 3   of California sign a search warrant for that residence?

 4   A.   Yes.

 5   Q.   At approximately 9:00 p.m. on December 12, 2023, were you

 6   made aware that the defendant had been arrested?

 7   A.   Yes, I was.

 8   Q.   And following that arrest, is it at that point that you and

 9   other agents executed the search warrant at the residence?

10   A.   That's correct.

11   Q.   Approximately how many agents were there?

12   A.   I can't remember offhand.  Maybe ten agents.

13   Q.   Okay.  And how was it that the search warrant was executed?

14   Knocking and announcing?

15   A.   Yes.  There was a knock-and-announce --

16   Q.   Okay.

17   A.   -- entry at the residence.

18   Q.   And upon entry into the residence, how many individuals

19   were found in the residence?

20   A.   There were approximately three individuals encountered at

21   the residence.

22   Q.   And who were they?

23   A.   I believe Adrianne Corirossi is the name.

24   Q.   Sorry.  Is that a male?

25   A.   It's a male.  Sorry.  A male individual.  And two females.
```

```
 1   Q.  And who were the two females?

 2   A.  Linda Douglas and Patricia Douglas.

 3   Q.  Did you learn that Linda Douglas was the mother of the

 4   defendant, Patricia Douglas was the aunt of the defendant?

 5   A.  Yes.

 6   Q.  Did you alone interact with those two individuals?

 7   A.  No, I was not alone.

 8   Q.  Who else interacted with you?

 9   A.  There was another agent with me by the name of Special

10   Agent Cesar Valdivia, as well as the other agents completing

11   the search were in the room as well.

12   Q.  But who interacted with Ms. Linda Douglas and Ms. Patricia

13   Douglas?

14   A.  That was myself and Agent Valdivia.

15   Q.  Can you tell the Court how your, just, interactions were

16   with them.  Not what was said yet, but how was the pleasantries

17   or lack thereof between you and the two Douglas women?

18   A.  It was very cordial.  They were very open to speaking with

19   us.

20   Q.  Who did most of the talking while you were talking with

21   Ms. Linda Douglas and Ms. Patricia Douglas?

22   A.  I believe Linda Douglas did most of the talking.

23   Q.  The mother?

24   A.  The mother, yes.

25   Q.  Okay.  Did you talk to the two of them together?
```

1    A.   Yes.

2    Q.   Did you record your conversation with them, either audio or

3    video?

4    A.   It was not recorded at the time.

5    Q.   How long did you talk to the two of them?

6    A.   I can't remember offhand.  Maybe approximately 20 minutes.

7    Q.   Okay.

8    A.   20, 30 minutes.

9    Q.   And what was the general point -- or what was the general

10   conversation that you had with the two of them?

11   A.   The conversations were more just general information about

12   the defendant, his whereabouts, and who lived at the residence,

13   more establishing who came -- came and went from the residence.

14   Q.   In talking with Linda Douglas, the mother, did you notice

15   any infirmaries [sic], anything that would suggest to you that

16   she didn't understand the conversations you were having with

17   her, whether it was a physical or mental disability -- the

18   mother, that is?

19   A.   No, I did not.

20   Q.   Same question for the aunt, Patricia Douglas.  Did you

21   notice whether or not there were any infirmaries, whether it

22   was mental or physical, such that she wasn't understanding the

23   conversation you were having with her?

24   A.   No, I did not.

25   Q.   When you spoke to Patricia Douglas specifically, the aunt,

1    was she responsive to your questions?

2    A.  Yes, she was.

3    Q.  And in talking with Patricia Douglas specifically, did you

4    or the other agent ever raise your voice with her?

5    A.  No.

6    Q.  Ever pull your weapon on her?

7    A.  No.

8    Q.  Ever stand over her and in a towering manner?

9    A.  No, we did not.

10   Q.  Were you sitting or standing during most of your

11   conversation with her?

12   A.  We were sitting during most of the conversation.

13   Q.  And at some point during your interactions with her, did

14   you talk to Patricia Douglas about a specific Toyota Highlander

15   vehicle?

16   A.  Yes, I did.

17   Q.  And what were you talking to her about when it came to the

18   vehicle?

19   A.  I -- I had asked her -- they knew that the defendant had

20   the vehicle and was out with the vehicle, and that we wanted to

21   search the vehicle.

22   Q.  Did Patricia Douglas affirm that that vehicle belonged to

23   her and she was the owner of it?

24   A.  Yes, she did.

25   Q.  Okay.  And, in fact, that's true; she is actually the owner

1   of that vehicle?

2   A.   Yes, she is.

3   Q.   Okay.  And did you ask Ms. Douglas for consent for the

4   agents to search that vehicle?

5   A.   Yes, I did.

6   Q.   And did she have any questions about that?

7   A.   No, she did not have any questions.

8   Q.   Did you physically ask her for consent then to search the

9   vehicle?

10  A.   Yes, I did.

11  Q.   Did she grant you that consent?

12  A.   She did grant consent.

13  Q.   Did you do anything more to confirm the consent?

14  A.   I asked her to sign a written consent form as well.

15  Q.   Thank you.

16       MR. SCHILLER:  Just a moment, Your Honor.

17       MR. KIRBY:  Is this an exhibit?

18       MR. SCHILLER:  Yes.

19       MR. KIRBY:  Okay.

20       MR. SCHILLER:  I'm just showing it to you.  You have

21  it.

22       Your Honor, I would like to mark the consent to search

23  as Government's Exhibit 1 for identification purposes.

24       THE COURT:  Okay.

25  ///

1          (Government Exhibit 1 was marked for identification.)

2          MR. SCHILLER:  Thank you.  If I could approach the

3     witness.

4          THE COURT:  Yes.

5          MR. SCHILLER:  Thank you.

6     BY MR. SCHILLER:

7     Q.   Agent Myers, is that the consent form that you had

8     completed with Ms. Patricia Douglas?

9     A.   Yes, it is.

10    Q.   Okay.  And what is the tenor of that consent form?

11    A.   The consent form -- it's my handwriting at the top --

12    explains Patricia Douglas was informed by me of her right to

13    consent to search the property.  And I list the -- the vehicle

14    and the license plate.

15    Q.   And who filled out the form where it says the name of the

16    vehicle and the license plate number?

17    A.   I filled that out.

18    Q.   Okay.  At the very bottom of that form there are three

19    signatures, are there not?

20    A.   There is.

21    Q.   Okay.  And with the signatures are dates and

22    handwritten -- handwritings, printings of the name?

23    A.   Yes.

24    Q.   Who is the very last line of the signature with the printed

25    name, signature, and date?

1    A.  The very last line?

2    Q.  Yes, ma'am.

3    A.  Special Agent Cesar Valdivia.

4    Q.  And he was the one who was with you?

5    A.  Yes.

6    Q.  And it's his printed name and his signature?

7    A.  That's correct.

8    Q.  And what is the date?

9    A.  December 12, 2003.

10   Q.  Right above that, whose signature is there?

11   A.  That's my signature.

12   Q.  And your printed name?

13   A.  My printed name and signed name.

14   Q.  And you wrote that?

15   A.  Yes, I did.

16   Q.  And what information is right above your signature line?

17   A.  That is Patricia Douglas.

18   Q.  And is it her signature?

19   A.  Yes, it is.

20   Q.  And the date 12/12/23?

21   A.  That's correct.

22   Q.  Did you witness her sign that?

23   A.  Yes, I did.

24   Q.  Did you witness her print her name and sign her name?

25   A.  Yes.

1  Q.  And in printing her name and signing her name, did she ask

2  you any questions about the form?

3  A.  No.

4  Q.  And you witnessed her physically do it?

5  A.  Yes, I did.

6         MR. SCHILLER:  Your Honor, at this time I would like to

7  move this into evidence as Government's Exhibit 2.

8         THE COURT:  Any objection?

9         MR. KIRBY:  No.

10        THE COURT:  All right.  Government's Exhibit 2 is

11 admitted without objection.

12        (Government Exhibit 2 was received in evidence.)

13 BY MR. SCHILLER:

14 Q.  Following the obtaining of the verbal and written consent

15 to search the Toyota Highlander, did Ms. Douglas present you

16 with any questions?

17 A.  No, she did not.

18 Q.  Did she ever withdraw her consent?

19 A.  No, she did not.

20 Q.  And was that form sent over to the agents on scene with the

21 Toyota Highlander so that they could have it?

22 A.  Yes, it was.

23        MR. SCHILLER:  No further questions, Your Honor.  Thank

24 you.

25        THE COURT:  I have a question.

1           Where were you when you were having this conversation

2    with the two Douglas women?

3           THE WITNESS:  We were in the living room area of the

4    residence.

5           THE COURT:  Were you sitting on a couch or any other

6    furniture?

7           THE WITNESS:  I believe I was sitting -- there was two

8    chairs, and Patricia and Linda Douglas were both seated on the

9    couch.

10          THE COURT:  And overall, how long do you estimate your

11   entire interaction lasted with the Douglas women?

12          THE WITNESS:  I -- I believe possibly 20 to 30 minutes,

13   talking with them.

14          THE COURT:  And when you explained -- excuse me -- you

15   testified earlier that Ms. Patricia Douglas consented to the

16   search of the vehicle orally and then later in writing, can

17   you, in just your own words, describe to us the conversation

18   that you had with Ms. Patricia Douglas about the consent.

19          THE WITNESS:  Sure.  So I will try -- the vehicle --

20   they were both very concerned about the vehicle.  That was

21   their only working vehicle at the time, if I remember in the

22   conversation.

23          I explained to them where it was and that we would like

24   to search the vehicle.  And I asked Patricia specifically if

25   she was the registered owner; she said yes, she was.  And I

1    asked if she would grant us consent to search the vehicle, and

2    she said yes.

3              So at that time I filled out the form in front of her,

4    asked her if it was correct; she said yes.  And asked her, in

5    the line here, if she voluntarily granted us consent to search

6    it; she said yes and signed the form.  I then proceeded to sign

7    it and then Special Agent Cesar Valdivia signed it below me.

8              THE COURT:  Did Ms. Patricia Douglas ever express any

9    hesitation in the verbal or written consent?

10             THE WITNESS:  No, she did not.

11             THE COURT:  Did she ask any questions seeking to

12   clarify anything on the written form?

13             THE WITNESS:  She did not.

14             THE COURT:  Okay.  Thank you.

15             Cross-examination.

16             MR. SCHILLER:  Thank you, ma'am.

17             MR. KIRBY:  May I approach the podium, Your Honor?

18             THE COURT:  Yes, sir.

19             MR. KIRBY:  Thank you, Your Honor.

20                         CROSS-EXAMINATION

21   BY MR. KIRBY:

22   Q.  Good morning, Special Agent Myers.

23   A.  Good morning.

24   Q.  So you testified that you met with both Linda and Patricia

25   Douglas the day Mr. Douglas was arrested; is that correct?

1   A.   That's correct.

2   Q.   And when you were speaking with -- well, first of all, you

3   stated, did you not, that Linda Douglas did most of the

4   speaking?

5   A.   Yes.

6   Q.   And did Ms. Patricia Douglas seem subdued while you were

7   speaking with them?

8   A.   Subdued?  What do you mean, sir?

9   Q.   Not speaking very much?

10  A.   She did speak.  I wouldn't -- I wouldn't say she was

11  subdued.

12  Q.   But she didn't speak very much?

13  A.   Linda Douglas did do most of the talking.

14  Q.   And did she seem alert?

15  A.   Yes.

16  Q.   Were you aware that she had been diagnosed with a stroke?

17          THE COURT:  When you say "she," who are you referring

18  to?

19          MR. KIRBY:  My apologies, Your Honor.

20  BY MR. KIRBY:

21  Q.   Were you aware that Patricia Douglas had been diagnosed

22  with a stroke?

23  A.   I was not.

24  Q.   Did it appear to you that she had been?

25  A.   No, it did not.

1    Q.   Did you take any steps to ascertain Patricia Douglas' state

2    of mind prior to having her execute this -- this waiver?

3    A.   What steps would you mean, sir?

4    Q.   Did you take any steps to see whether she was coherent,

5    whether she understood what was going on?

6    A.   I believe the conversation, when she was speaking openly to

7    me, that I understood that she was coherent and understanding

8    the conversation.

9    Q.   And I believe you stated, did you not, that this

10   conversation between you, Ms. Linda Douglas, and Ms. Patricia

11   Douglas took place in the living room of Linda Douglas'

12   residence; is that correct?

13   A.   That's correct.

14   Q.   And where exactly were you seated or -- I believe you said

15   you were seated.  Is that correct?

16   A.   Yes.

17   Q.   And where exactly were you seated?

18   A.   Directly across from them.  They were seated on the couch.

19   Q.   And at this point -- well, how long into the conversation

20   did you ask that Patricia Douglas sign the waiver form?

21   A.   I -- I don't remember exactly.  It may have been

22   15 minutes -- 10, 15 minutes into the conversation.

23   Q.   Now, my understanding, and correct me if I'm wrong, is that

24   there is no table in that living room area.  Is that correct?

25   A.   I do not remember at this time.

1   Q.  Well, if there was no table, how did Patricia Douglas sign

2   the form?

3           MR. SCHILLER:  Objection.  Calls for speculation.

4           THE COURT:  Overruled.

5           THE WITNESS:  I -- I don't remember offhand if it was

6   at a table or if she was brought a notebook to put the paper on

7   when she signed it.  But she signed it there in the living

8   room.

9   BY MR. KIRBY:

10  Q.  And are you absolutely certain that Patricia Douglas did,

11  in fact, sign this form?

12  A.  Yes, I am.

13  Q.  And no effort was ever made to find an example of her

14  signature elsewhere?

15  A.  At that time, no, I did not make any effort.

16  Q.  So the signature on that form, your testimony today, you

17  witnessed her sign that form?

18  A.  That's correct.

19          MR. KIRBY:  Thank you, Your Honor.

20          THE COURT:  Redirect?

21          MR. SCHILLER:  No, Your Honor.  Thank you.

22          THE COURT:  Thank you, Agent.  How do you spell your

23  last name?

24          THE WITNESS:  Myers, M-Y-E-R-S.

25          THE COURT:  And first name again.

1          THE WITNESS:  Bonnie, B-O-N-N-I-E.

2          THE COURT:  And, just to be clear, it's Special Agent

3    with the Department of Homeland Security?

4          THE WITNESS:  That's correct.

5          THE COURT:  Okay.  Are you in a particular unit?

6          THE WITNESS:  I am currently acting over a contraband

7    smuggling unit.  And prior to that, and at the time of the

8    search warrant, I was in the child exploitation unit.

9          THE COURT:  Okay.  Thank you, ma'am.

10         Anything further from either side for the witness?

11         MR. SCHILLER:  Not from the government.

12         MR. KIRBY:  No, Your Honor.

13         THE COURT:  Okay.  Thank you.  You may be excused.

14         Okay.  Any additional evidence, either in the form of

15   witness testimony or exhibits to present, Mr. Schiller?

16         MR. SCHILLER:  One piece of exhibit that we would

17   like -- one exhibit we would like to admit, Judge, and that is

18   the certified passport application of Ms. Patricia Douglas.  We

19   mentioned it in our response to the motion to suppress.  And on

20   Friday we received the official certified, sealed copy that I

21   would like to move in evidence.

22         But before I do, it obviously contains a lot of

23   personal information of Ms. Douglas.  So although I will submit

24   the original to the Court, I would like permission to redact

25   that personal information, her date of birth, social security

1    number, and things like that before I file it into the record.

2            THE COURT:  Okay.  Any objection to admission of

3    Government's Exhibit 3, which is a certified copy of

4    Ms. Patricia Douglas' passport application?

5            MR. KIRBY:  Your Honor, only with the caveat that I

6    would like to see the redaction before it is actually entered

7    into evidence.

8            THE COURT:  Okay.  Well, the full document, without

9    redactions, will be admitted and will be filed under seal; the

10   parties can work together on what redactions of personal

11   identifying information.

12           But do you have any objection to the document and its

13   full contents being introduced for purposes of this hearing?

14           MR. KIRBY:  As long as it's filed under seal,

15   Your Honor, I do not.

16           THE COURT:  Okay.  All right.  Now, of course, there

17   needs to be a motion to redact only that which is necessary

18   under the CM/ECF electronic filing rules for PII.  If there is

19   any other contents, you would need to justify why it needs to

20   be sealed.

21           MR. SCHILLER:  Understood, Your Honor.  Does Your Honor

22   need me to file a motion to that effect after today's hearing?

23           THE COURT:  Yes.

24           MR. SCHILLER:  I will do so.  Thank you.

25           THE COURT:  Okay.  I will, nevertheless, take a look at

1    that exhibit.

2            MR. SCHILLER:  May I approach now, Your Honor?

3            THE COURT:  Yes.

4            MR. SCHILLER:  Thank you very much.  And I'm

5    approaching with Government's Exhibit 2, the consent form, and

6    3, which is the passport application.

7            THE COURT:  Okay.

8            MR. KIRBY:  And, Your Honor, I have received a copy of

9    those.

10           THE COURT:  Okay.

11           (Government Exhibit 3 was received in evidence.)

12           MR. SCHILLER:  And, Your Honor, so the record is clear,

13   those are both the original piece of evidence; that is the

14   original signed consent form and that is the original passport

15   certification that we received.  Those are not copies.

16           THE COURT:  Okay.  I'm going to return these originals

17   to you, Mr. Schiller.

18           MR. SCHILLER:  Thank you, ma'am.  If I may approach.

19           THE COURT:  Yes.

20           Okay.  Any additional evidence to present at this

21   hearing, Mr. Schiller?

22           MR. SCHILLER:  Not regarding the motions to suppress,

23   Your Honor.

24           THE COURT:  Okay.  Mr. Kirby, you have an opportunity

25   to present any evidence you would like on the motions to

```
 1    suppress.  Do you have any evidence to bring to the table at
 2    this time?
 3           MR. KIRBY:  Your Honor, only with the caveat that is in
 4    Your Honor's written order concerning reopening with
 5    the -- with possible evidence related to the handwriting
 6    expert, I do not, Your Honor.
 7           THE COURT:  Okay.  So there is a deadline.
 8    Ms. Cassisi, can you remind the Court.  Is it September 2nd by
 9    which any motion to reopen the hearing would need to be filed?
10           COURTROOM DEPUTY:  Yes, Your Honor.
11           THE COURT:  Okay.  So, Mr. Kirby, you are correct.  You
12    have until September 2nd to file a motion to reopen for the
13    limited purpose of introducing any exemplars with respect to
14    the handwriting of Ms. Patricia Douglas as it relates to your
15    challenge on the consent form.  Is that correct?
16           MR. KIRBY:  Your Honor --
17           THE COURT:  Exemplars and then the expert testimony,
18    having compared those exemplars and come up with any opinion
19    that the expert has on the signature.
20           MR. KIRBY:  Perfect, Your Honor, yes.
21           THE COURT:  Okay.
22           MR. KIRBY:  Thank you.
23           THE COURT:  I should also note that if you are going to
24    rely on an expert, you need to comply with the disclosure
25    rules, Mr. Kirby.  And so if you are going to notice an expert,
```

1   you need to go through the process of noticing the expert by

2   filing a proper notice and then, of course, supplying the

3   report to the government on a timely basis in accordance with

4   the federal rules.  Do you understand that, sir?

5           MR. KIRBY:  I do, Your Honor.  Thank you.

6           THE COURT:  Okay.  All right.  So, just to be clear,

7   Mr. Kirby, at this time you do not have any evidence to present

8   on the motions; is that correct?

9           MR. KIRBY:  No additional, yes, Your Honor.

10          THE COURT:  Okay.  All right.  Well, then let me hear

11  argument on the motion to suppress, starting first with the

12  search of the vehicle.

13          MR. SCHILLER:  Thank you, Your Honor.  If I may

14  approach.

15          THE COURT:  Yes.

16          MR. SCHILLER:  Thank you.

17          Thank you, Your Honor.

18          With regards to the motion to suppress the vehicle, the

19  government is objecting because there were at least five legal

20  avenues for law enforcement to have searched the Toyota

21  Highlander that the defendant was arrested in on December 12th,

22  2003; four of those are exceptions to the warrant requirement

23  related to probable cause, and one of those is related to

24  consent.  So I will start with the last first because it

25  appears to be the clearest.

1          The agent who just testified, Homeland Security

2     Investigations Special Agent Myers, testified that after

3     9:00 p.m., which is actually right after the defendant was

4     arrested, they executed the search warrant at the defendant's

5     residence.  She and her partner sat down in the living room

6     with the defendant's mother and aunt and spoke to them.  They

7     had a cordial conversation.  There was no threats made to them.

8     They were not coerced in any way.  And during the course of the

9     conversation, asked the aunt if she was the owner of the

10    vehicle; she said yes.  And asked her to provide consent to

11    search the vehicle; she said yes and then signed the consent

12    form.  And Agent Myers testified that she witnessed that and

13    witnessed her signature.

14          Now, in an effort to combat the defendant's argument

15    that either it was never done or she never signed it, or -- I'm

16    not exactly sure what they're saying didn't happen, but we

17    presented that consent to search in evidence as Government's

18    Exhibit 2 for the Court.

19          And then after the motion was filed, suggesting that it

20    was not her signature for some reason, without any evidence to

21    the contrary except for an affidavit that's not in evidence,

22    the government went and secured Ms. Patricia Douglas' passport

23    application from 2021, approximately two years before she

24    signed that consent.  And Your Honor can, with a layman's eye,

25    look at those two signatures and note that they are almost

1    identical.

2         So either that absolutely is her signature or someone

3    forged her signature in front of agents pretending to be her

4    and on her passport application two years ago.  It's a far

5    fetch.  It's laughable.  And so we would submit that there was

6    obviously consent to search the vehicle because the aunt did

7    sign it.  That's ground 5, I guess.

8         But in addition, the government has submitted, in its

9    response to the motion to suppress at docket entry 60, four

10   other ways in which the vehicle could have been lawfully

11   searched.  I will just go through those one at a time.  I'm not

12   going to reread my response, but I'm just going to highlight

13   some portions in there.

14        First, the government argues that the search incident

15   to arrest of the vehicle was an exception to the warrant

16   requirement.  As the Court has already taken notice of what the

17   facts are leading up to the vehicle search and what happened as

18   outlined in Government's Exhibit 60, pages 2 through 9 -- or 2

19   through 8, excuse me, this was a very volatile situation.  The

20   defendant had been followed from his residence by law

21   enforcement.  He had stopped and started at hotels.  Onto the

22   highway, off the highway, high speed, and violated multiple

23   traffic violations.  And when he was eventually stopped and

24   pinned into a location on the roadway after the female

25   passenger fell out screaming in regards to "he is going to kill

1   us all" and the word "grenade," the defendant holds up what

2   appears to be a real grenade in his hand, causing law

3   enforcement to have to take evasive measures and essentially

4   set up a sniper situation.  Because if he were to put his

5   second hand up to the grenade and pull a pin, or drop it, or

6   look like he was going to drop it, it would explode.  And there

7   were civilians in that area.  There was law enforcement in that

8   area.

9        I will submit to the Court, as I did at the appeal on

10  the bond hearing, the defendant came within seconds of losing

11  his life because of the actions that he took.  But the agents

12  on scene were able to get him to put the device down and have

13  it not explode, and remove him from the car.

14       So search, incident to arrest, because he was being

15  arrested for his actions of what he was doing, but also because

16  there was an arrest warrant for him out of the Southern

17  District of Florida --

18       THE COURT:  Is the arrest warrant contained within the

19  stipulated facts?

20       MR. SCHILLER:  I believe it is, ma'am, yes.  So at

21  docket entry 60, page 2, the very bottom, the facts are, as

22  stipulated, "The detailed facts of this case, through and

23  including November 7, 2003, are contained within the criminal

24  complaint at 23-mj-8589-RMM.  That complaint included an arrest

25  warrant."

1          And that is for the Court to take judicial notice of as
2     it is in the official court record.  But I believe it is
3     mentioned later on that they had an arrest warrant for him;
4     irregardless they did.

5          So --

6          THE COURT:  I want to make sure we're staying -- there
7     was -- there was -- I'm operating off of pages 2 through 8.

8          MR. SCHILLER:  Yes, ma'am.

9          THE COURT:  So I'm only going to be looking at those
10    facts.  If any facts that you're talking about right now are
11    not within those 8 pages, I'm not going to consider them on the
12    motion.  So that's why I'm asking.  For the arrest warrant,
13    where is the arrest warrant referenced in this summary?

14         MR. SCHILLER:  If the Court will give me just one
15    moment.

16         Page 3, first full paragraph where it reads, "However,
17    between November 27th and December 4th, when the complaint was
18    signed for the defendant's arrest for seven counts of
19    distribution of child pornography..." -- and then it goes on to
20    talk about other things.  But that is referencing the arrest.

21         THE COURT:  Okay.  So there was an authorized arrest.

22         MR. SCHILLER:  Yes, ma'am.

23         THE COURT:  Okay.

24         MR. SCHILLER:  Yes.  That was signed by Judge McCabe.

25         THE COURT:  Okay.  Again, I don't know who signed it.

1    All I know is that there was a complaint signing for the

2    defendant's arrest.

3           So please continue.

4           MR. SCHILLER:  Thank you, ma'am.

5           And just so the record is clear, on the bottom of

6    page 2, where it lists the case number 23-mj-8589-RMM, that

7    is -- that is Judge McCabe's arrest warrant in this case.

8           So they were searching incident to arrest because they

9    could arrest him and they did arrest him, not only for

10   dangerous weapons, but also to prevent the destruction of

11   evidence.  And as I noted in my response, "the purpose for a

12   search incident to arrest is to find weapons that the suspect

13   may use to injure police officers and to prevent the

14   concealment or destruction of evidence of a crime."  And that's

15   citing *Michigan v. Long*, 463 U.S. 1032, a Supreme Court case

16   from 1983.  So that's exactly what the officers were doing

17   here.

18          Now, it doesn't matter that the scene had been secured

19   once they searched it, because they were still searching to

20   make sure that there were no other dangerous weapons and that

21   there wasn't any evidence that could be destroyed.

22          THE COURT:  Does a search incident to arrest get you

23   into the trunk of the vehicle?

24          MR. SCHILLER:  Yes.  Absolutely, ma'am.

25          THE COURT:  Under *Belton?*

1          MR. SCHILLER:  Yes.

2          THE COURT:  That covers the passenger compartment --

3          MR. SCHILLER:  Yes.

4          THE COURT:  -- not the trunk.

5          MR. SCHILLER:  So, the Toyota Highlander doesn't have a

6     separate trunk compartment.

7          THE COURT:  Where is that in the stipulated facts?

8          MR. SCHILLER:  If the Court could give me a minute.

9          THE COURT:  Sure.

10          MR. SCHILLER:  I don't know that I specifically said it

11     was one giant compartment.

12          It does not say that in the fact section.

13          THE COURT:  So, for purposes of the search incident to

14     arrest, would you agree that, at least as far as the stipulated

15     facts are concerned, there would be no authorization to get

16     into the trunk under that exception only?

17          MR. SCHILLER:  I disagree because we did specifically

18     say it was a Toyota Highlander, and the Highlander only has a

19     single compartment.  That is a --

20          THE COURT:  Okay.  Well, now you're going beyond the

21     stipulated facts.  I'm not a car expert and cannot say with

22     certainty that a Highlander is as you describe it.  So unless

23     you want to present evidence about the Highlander to describe

24     that it's one continuous opening without a trunk, then I'm

25     going to stick with what's in the stipulated facts which

1    references "trunk," and the ordinary understanding of "trunk"

2    is that it is a separate portion of the car not included in the

3    passenger compartment.  Of course, none of this is to say that

4    there are a number of other bases on which the search

5    potentially could be upheld.  I just want to make a note for

6    incident to arrest purposes only.

7              MR. SCHILLER:  Thank you.

8              And would the Court permit me to move into evidence a

9    photograph showing that exact fact?

10             THE COURT:  Any objection, Mr. Kirby?

11             MR. KIRBY:  I suppose I would have to see the

12   photograph.

13             I don't object to the photograph, but I don't believe

14   it shows what Mr. Schiller says it shows.

15             Same statement.

16             MR. SCHILLER:  Your Honor, I would like to move in

17   Government's Exhibit 4A and 4B.  These are photographs of the

18   vehicle in question.

19             THE COURT:  Okay.  Any objection to admission of

20   photographs 4A and 4B, Mr. Kirby?

21             MR. KIRBY:  Well, Your Honor, actually -- I mean, I

22   would like some sort of foundation laid.  I may have seen those

23   in discovery; I certainly haven't seen them today.

24             THE COURT:  Okay.  I'm going to sustain the objection.

25             If you want to lay a foundation, Mr. Schiller, you can,

1   but at this point I think we are a bit unmoored from the

2   evidentiary presentation.

3          MR. SCHILLER:  Okay.  Judge, it's fine.  I will move on

4   to the other areas because I think it's covered, certainly, in

5   the other areas as well.

6          THE COURT:  Okay.  So I think you've -- anything more

7   on search incident to arrest?

8          MR. SCHILLER:  I would just cite to *Thorton v. The*

9   *United States* at 541 U.S. 615, Supreme Court from 2004, in

10  which the Court said, "So long as an arrestee is the sort of

11  'recent occupant' of a vehicle such as petitioner was here,

12  officers may search the vehicle incident to arrest."

13         THE COURT:  Okay.  You would agree, though, that the

14  search incident to arrest exception in the vehicle context gets

15  you only into the passenger compartment, not the trunk;

16  correct?

17         MR. SCHILLER:  That is correct.  With the caveat that

18  in this case, again, I know Your Honor is not a car expert, and

19  I appreciate that, but the Toyota Highlander only is one --

20         THE COURT:  There is no evidence to support the latter

21  statement.

22         MR. SCHILLER:  Okay.  Thank you, ma'am.

23         The second ground in which search of the vehicle was

24  permissible without a search warrant is the automobile

25  exception.  And I detail that response on pages 10, 11, 12, and

1    13 of my response at docket entry 60.  The automobile exception

2    applies if the vehicle is readily mobile and the vehicle is

3    reasonably believed to contain evidence of the crime.  So we

4    need both of those, and that is because the vehicle had just

5    been driven by the defendant.  But secondly, as contained

6    within the facts, he had been communicating with the officer in

7    the days leading up to his arrest and of his arrest that items

8    of the crime would actually be with him when he was coming to

9    see the child.  So both elements of that are met.

10           THE COURT:  Can you point to me, in the stipulated

11   facts, your best evidence on that point; in other words, that

12   he was communicating with the undercover and referencing things

13   that he would have in the car.

14           MR. SCHILLER:  Sure, Judge.

15           On page 4 of my response, on December 10th -- so this

16   is two days before the arrest -- he says, quote, "my phone is

17   all messed up.  But this is red.  I think child 1 would look

18   sexy in it, along with a photo which showed a two-piece red

19   lingerie set that was laid out on what appeared to be a brown

20   couch, and a set of white or clear anal beads laying on top of

21   the lingerie set.  About 10 minutes later Douglas sent the

22   undercover agent a 33-second long video of himself nude and

23   masturbating over a two-piece black lingerie set that was laid

24   out on what appeared to be the same brown couch."  And then --

25   so that's part of the evidence.

1        The next day -- I'm sorry.  The next paragraph, same

2   afternoon, the undercover identified several gifts for Douglas

3   to bring the notional child, the 8-year-old in this case, in an

4   effort to identify the defendant if they met to confirm his

5   intent.  When the UCA, the undercover agent, mentioned a

6   stuffed animal, Douglas replied "already done" and added that

7   he had bought the child a stuffed unicorn.

8        And then -- on the top of page 5, on December 12th, the

9   day of the arrest, Douglas messaged that he had a mini bullet

10  vibrator and described he was going to use a double-headed

11  dildo on the child.  And then when the UCA reminded Douglas not

12  to forget to bring the red lingerie and stuffed unicorn,

13  Douglas stated that he would not forget.  Of course, at the

14  time of his arrest he was purportedly on his way to go and meet

15  the undercover agent and the child.

16        THE COURT:  Okay.

17        MR. SCHILLER:  So based on that, also within the

18  stipulated facts, the defendant noted that his phone had

19  broken.  And I know we can't look backwards in time, but search

20  incident of the vehicle found the broken phone on the

21  floorboard by his seats.

22        So with those facts, there is two cases I want to bring

23  to the Court's attention.  Again, all of this is in my

24  response, but at docket entry 60, page 12, I cited to

25  *United States v. Alexander*, 835 F.3d 1406, an Eleventh Circuit

1    opinion from 1988 where the Court found that "probable cause to

2    search car for evidence of defendant's commission of a bank

3    robbery, even though the bank robber fled the scene of the

4    robbery on foot, and police had no specific evidence tying the

5    car to the commission of the robbery, where there was abundant

6    probable cause that the defendant had committed the robbery,

7    the defendant had been driving the car on days after and other

8    than the day of the robbery, and the police were simply hoping

9    to find additional evidence of the crime that had not yet been

10   found."  That was enough for the automobile exception.

11       And I also cited to *United States v. Brazel*,

12   B-R-A-Z-E-L, 102 F.3d 1120, an Eleventh Circuit opinion from

13   1997, holding that there was "probable cause to search the car

14   owned by the aunt of the co-defendant for evidence of drug

15   offenses, even though police had never observed drugs or a gun

16   in the car and had no specific evidence that the car was ever

17   used to transport drugs.  Where there was evidence that the

18   defendant was involved in drug offenses, one officer had seen

19   the defendant driving that car on a single occasion earlier

20   that month and the officers saw razor blades through the window

21   of the car.  There was reason to believe that the defendant was

22   the real or main user of the car since the nominal owner of the

23   car did not have sufficient money to buy it and the car was

24   previously spotted, though not implicated in criminal activity,

25   at a particular surveillance site."

1          Both of those cases present significantly less probable

2    cause for the automobile exception than we have in our case

3    because not only was the car operational, but, as you heard the

4    agent testify to, Patricia wanted to get her car back because

5    it was her vehicle.  And there was probable cause to believe

6    that the vehicle contained not only his phone but the items

7    Douglas would bring to the sexual encounter with the

8    8-year-old.

9          The third basis for the exception to the warrant

10   requirement is contained in my response at docket entry 60,

11   pages 13, 14, and 15.  And this is based on exigency.  And the

12   exigency was for weapons and other explosives.  So if the

13   agents can search the car for that, anything else they find in

14   the course of that would be a proper seizure as well.

15         And I wanted to cite the Court to

16   *United States v. Parrado*, P-A-R-R-A-D-O, an Eleventh Circuit

17   opinion from 1990 cited at 911 F.2d 1567, where the Court

18   rejected the argument that exigent circumstances to search a

19   defendant's parked vehicle ended with the arrest of the

20   defendant outside of the parked vehicle, stating -- and I

21   quote -- "it is, thus, clear that the justification to conduct

22   a warrantless search does not vanish once the car has been

23   immobilized, nor does it depend on a reviewing court's

24   assessment of the likelihood in each particular case that the

25   car would have been driven away or that its contents would have

1    been tampered with during the period required for the police to

2    obtain a warrant."

3         We obviously have a lot less than that scenario here

4    and, thus, the exigency still existed.  At the time Douglas'

5    car was searched, police knew the car was operational because

6    not only was it parked on the street, but Douglas had just

7    driven it.

8         In *United States v. Ramos*, 9 --

9         THE COURT:  One moment.

10        MR. SCHILLER:  Oh, yes, ma'am.

11        THE COURT:  Again, I'm focused here on the facts for a

12   minute.  Where in the stipulated facts does it indicate when

13   the vehicle was actually searched?

14        MR. SCHILLER:  I don't know that the time is in there,

15   Your Honor.  Let me see.

16        So if you go to the bottom of page 7, agents executed

17   the search warrant at the residence at 9:00 p.m.  This is

18   immediately after Douglas was arrested.  And you heard

19   Agent Myers testify that they talked to the -- the Douglas

20   women for about 20 to 30 minutes, got the signed consent, and

21   then sent it over to the agents on scene, which is when the

22   search was conducted.  So roughly 30 to 45 minutes.

23        THE COURT:  Okay.

24        MR. SCHILLER:  I didn't -- I didn't timeline it out.

25        THE COURT:  That's okay.  Please continue.

1          MR. SCHILLER:  Yes, ma'am.

2          THE COURT:  Okay.  So we measure the exigency at which

3     point?

4          MR. SCHILLER:  We measure the exigency at the time it

5     occurs.

6          THE COURT:  And what's the "it"?  The search or the

7     seizure of the car?

8          MR. SCHILLER:  The seizure.

9          THE COURT:  Okay.  And when did the seizure of the car

10    occur?

11         MR. SCHILLER:  The defendant was arrested right around

12    9:00 p.m., when the search warrant was -- right at almost the

13    same time the search warrant was executed, Your Honor will note

14    that -- I'm sorry.  So if you go to the bottom of page 60,

15    at -- four lines up from the bottom, "At approximately

16    7:45 p.m., Douglas drove the Highlander at the corner of West

17    Norte Parkway and 7 Oaks Road.  Agents noticed the amber

18    emergency lights were flashing from the windshield as he drove

19    past through the intersection and over the speed limit."

20         And then the next several paragraphs detail the

21    eventual stopping of the car.  Now, it doesn't say exactly when

22    that happened; I know.  I didn't put the time in there.  But we

23    do know that that time -- last timestamp that is stipulated in

24    there is at 7:45 p.m., and then the signed consent was

25    somewhere around 9:30, 9:45.

1          So we know that the defendant's vehicle was

2     stopped -- if you just even take the -- a reasonable amount of

3     time that all of these things happened, going from the bottom

4     of page 5 through page 8, we're -- we're talking about,

5     you know, a relatively short period of time.  So there is a

6     short period of time from 7:45 until the consent was signed.

7          THE COURT:  Okay.  So just looking at exigency,

8     understanding that for purposes of determining whether there

9     was still an exigency --

10         MR. SCHILLER:  Yes.

11         THE COURT:  -- we are looking at the approximate time

12    the vehicle was seized.

13         MR. SCHILLER:  Yes.

14         THE COURT:  Okay.  So what are the facts at that time,

15    in your view, stipulated that support the ongoing exigency?

16         MR. SCHILLER:  That the defendant had raised in his

17    hand what appeared to be a live grenade.  That at the time that

18    the grenade was put down and he was taken out of the car,

19    weapons were found on his person, including knives.  And they

20    had to use a bomb squad technician to secure not only the

21    grenade and finding that it was fake, but secure the rest of

22    the vehicle to make sure, from at least his perspective, there

23    were no other explosive devices.

24         THE COURT:  Okay.  Everything you just described, is it

25    in the stipulated facts?

1          MR. SCHILLER:  Yes, ma'am.

2          THE COURT:  Okay.  All right.  So the exigency, as you

3     have described it, is the existence of weapons and other

4     explosives --

5          MR. SCHILLER:  Correct.

6          THE COURT:  -- all stemming from the grenade incident?

7          MR. SCHILLER:  Yes, ma'am.

8          THE COURT:  Okay.

9          MR. SCHILLER:  Now, I would point the Court to

10    United States v. Ramos, 933 F.2d 968, cited on page 14 of my

11    response.  It's an Eleventh Circuit opinion from 1991.  And in

12    there the Eleventh Circuit espoused several factors that may

13    indicate exigent circumstances.  It's not an exclusive list,

14    but it is a very encompassing list.  They include the gravity

15    of the offense with which the subject is to be charged; a

16    reasonable belief that the suspect committed the crime;

17    probable cause that the suspect is armed; strong reason to

18    believe that the suspect is on the premises or vehicle being

19    entered; and likelihood that delay could cause destruction of

20    evidence or jeopardize the safety of the officers.

21          So even in some small part we had each of these in this

22    case.  Obviously, the gravity of the crime is exceptionally

23    significant.  He was going to visit what he believed was an

24    8-year-old child to sexually abuse that child.  There was an

25    arrest warrant for him; so the reasonable belief that he was

1    the suspect was there.  Probable cause to believe that he was

2    armed was clearly there based on what he did immediately before

3    his arrest with the grenade, not to mention the woman who falls

4    out of the car yelling "he is going to kill us all" and

5    "grenade," which is contained in the factual summary.  A strong

6    reason to believe that the suspect is in the vehicle being

7    entered.  Well, he obviously was in the vehicle.  And a

8    likelihood that delay could cause destruction of evidence or

9    jeopardy.

10          Now, although the bomb technician cleared it, the

11   agents have no idea if there is something else there.  So as

12   they go and search through the car for exigency circumstances,

13   they're also making sure for that purpose as well.  The bomb

14   technician is looking for bombs, but they want to make sure

15   there is no other dangerous weapons or other circumstances

16   there, as they would, given the gravity of the situation.

17          And so that is the argument for exigency.  The last

18   argument that I make is that the car was the instrumentality of

19   the crime committed.

20          I want to start off this argument by quoting something

21   from defense -- the defense motion.  At docket entry 46,

22   page 4, they write, "Probable cause did not exist because there

23   was no evidence to indicate that Douglas had any items of

24   evidence located in the Highlander when he was arrested.

25   Douglas did not indicate during his communications with the UC,

1    that he had any relevant items in his possession while he was

2    driving the Highlander, and he did not make any statements

3    post-arrest to indicate that any relevant evidence would be

4    found in the Highlander."

5         So his entire statement has been admitted.  I will take

6    that part first.  And although we didn't listen to all of the

7    relevant portions, it's in evidence.  But during that

8    interview, he -- he does provide that the items that were in

9    the chat would be in the car.  He says they are for someone

10   else but that they are in the car; that's number 1.  So that

11   debunks defendant's second statement.  And --

12        THE COURT:  Now, just conceptually, this basis for

13   admission of the evidence seized from the car.  You say the car

14   was an instrumentality of the crime committed.  Is this

15   separate from the automobile exception?

16        MR. SCHILLER:  It is, ma'am.  Because the car -- he was

17   actually using the car to transport the items to help commit

18   his crime and to get to the crime.  So if somebody, let's say,

19   commits a drug transaction, and officers know about it, and

20   then they find him in a car later on that had nothing to do

21   with the drug transaction at all, nothing at all, he is just

22   sitting in his car and he gets pulled over for a stoplight, the

23   car is not an instrumentality of the crime.

24        But here, he was driving the car on his way to go meet

25   the child, had the items in the car that he was going to bring

1    to have sex with the child, which he had told the officer about

2    both in phone call and in text and instant message, and,

3    post-arrest, told the agents that those items would be in the

4    car.

5          THE COURT:  Okay.  Conceptually, what case speaks to

6    this exception, this instrumentality of the crime exception?

7    Not in the context of automobile exception, but as its own

8    stand-alone basis.

9          MR. SCHILLER:  I cited on page 60 at the very bottom,

10   page 15, *United States v. White*.  It's a Sixth Circuit case.

11   But it says, "Officers had reasonable ground to believe the

12   automobile had been used to transport contraband, if only the

13   two counterfeit notes, which were taken from the person of the

14   defendant immediately after his arrest.  Consequently, the

15   officers had probable cause to seize the automobile as the

16   instrumentality of the crime."

17         THE COURT:  And this, in your view, operates as a

18   separate exception from the automobile?

19         MR. SCHILLER:  Yes.  I think very often they are one

20   and the same, but I think in this particular instance we can

21   articulate them separately.  They obviously have a lot of

22   overlap, but we can articulate them even separately here.

23         THE COURT:  Okay.  Is there any Eleventh Circuit

24   authority treating this as its own independent basis to resist

25   suppression?  I have --

1            MR. SCHILLER:  Not that I --

2            THE COURT:  I, candidly, haven't seen this species of

3      an exception, so to speak, separate from automobile exception.

4            MR. SCHILLER:  No, Your Honor.  I was not able to find

5      it.  Not in the Eleventh Circuit.

6            THE COURT:  Okay.

7            Okay.  Anything further on the -- on the vehicle

8      search?

9            MR. SCHILLER:  No, ma'am.  No.

10           Now, I just want to be clear about one thing, going

11     back to the consent, if I may.

12           I am not discussing the declaration that the defense

13     filed because it has not been offered as a piece of evidence at

14     this hearing; and so, therefore, it's not relevant.  And -- but

15     if for some reason the Court needs me to address that, I would

16     be happy to.  But, again, it has not been moved in evidence for

17     consideration by this Court.

18           THE COURT:  Okay.

19           MR. SCHILLER:  So if there is nothing further, I will

20     turn it over to defense counsel.

21           THE COURT:  Okay.  Mr. Kirby, I would like to hear from

22     you now on the arguments related to the search of the vehicle.

23     And before you get started, I do want clarification that you

24     are not relying on the declaration that was previously attached

25     to one of your filings in this case.

1          MR. KIRBY:  Well, Your Honor, I -- I am relying upon

2     that.  And, Your Honor, if Your Honor needs me to move that

3     into evidence, I would ask that that be moved into evidence.

4          THE COURT:  Well, specify exactly what you're referring

5     to because I asked you earlier if you had any evidence

6     introduced at this hearing, and you told me no, and the only

7     possibility was a future expert report examining Ms. Patricia

8     Douglas' signature.

9          MR. KIRBY:  Well, then I misspoke, Your Honor.

10    I -- the declaration of Ms. Patricia Douglas, I would move into

11    evidence, Your Honor.

12         THE COURT:  Where is it in the record?

13         MR. KIRBY:  It is attached to my -- it is attached to

14    my opposition to their --

15         THE COURT:  Mr. Howes.

16         MR. HOWES:  Judge, if I could help.  We filed a notice

17    of filing of that particular document.

18         THE COURT:  Okay.  I need to see the actual

19    declaration.  If you're purporting to admit an exhibit at this

20    hearing, I need to see it.

21         MR. HOWES:  Okay.

22         THE COURT:  Do you have it?

23         MR. HOWES:  I will get it.  I think I have it.

24         MR. SCHILLER:  It's at docket entry 54-1, Your Honor.

25         MR. HOWES:  There you go.

1          MR. KIRBY:  Your Honor, this will be Defense Exhibit A.

2     The government has that exhibit, Your Honor.  Would you like me

3     to approach --

4          THE COURT:  Hold on.

5          Is there any objection from the government to admission

6     of this defense exhibit -- I don't use letters, Mr. Kirby.  So

7     what is your number for that?

8          MR. KIRBY:  1.

9          THE COURT:  Okay.  Any objection to Defense Exhibit 1

10     which is described as what exactly?

11          MR. KIRBY:  It is the declaration of Patricia Gayle

12     Douglas.

13          MR. SCHILLER:  Yes, the government objects.

14          THE COURT:  Okay.  What is your basis for objection?

15          MR. SCHILLER:  Hearsay.

16          THE COURT:  Okay.  Sustained.

17          Do you have any method of overcoming the hearsay

18     objection?

19          MR. KIRBY:  Not at this time, Your Honor.

20          THE COURT:  Okay.  Well, this is the evidentiary

21     hearing; of course, this is your chance to do so.  So I want to

22     make sure you understand that this is the time at which you

23     would need to present any evidence to support admission of that

24     declaration, which is otherwise clearly hearsay.

25          MR. KIRBY:  Well, Your Honor, Ms. Douglas is not able

1    to travel or testify, so at this point, no, Your Honor.

2         THE COURT:  Okay.  All right.  Well, because that

3    declaration is hearsay, because there has been no evidence to

4    support its admission -- and, in fact, there was a motion to

5    continue expressly stating that Ms. Douglas is not able to

6    testify given her physical and mental infirmities -- then I

7    don't see a basis to admit that declaration, and it won't be

8    part of the hearing record on the motions.

9         Okay.  So anything further on the declaration?

10        MR. KIRBY:  No, Your Honor.

11        THE COURT:  Okay.  Then let me hear your argument in

12   response to the government's submission, which is that there

13   are multiple reasons to deny suppression of the evidence seized

14   from the vehicle, starting first with consent.

15        MR. KIRBY:  Yes, Your Honor.

16        With regard to consent, I believe that we have made our

17   position clear.  Our position is that Ms. Patricia Douglas did

18   not sign the waiver that's been submitted as evidence in this

19   case.  We will seek to reopen, but I think the record has been

20   made to the extent it can be made at this point.

21        THE COURT:  Okay.  So at this time do you have anything

22   further on the consent piece?

23        MR. KIRBY:  No, Your Honor.

24        THE COURT:  Then I will await your motion to reopen.

25   And, again, that's limited just to the expert issue that you

1   identified in your motion to continue this hearing.

2          MR. KIRBY:  Yes, Your Honor.

3          THE COURT:  Okay.  All right then.  Turn to the other

4   grounds, please.

5          MR. KIRBY:  Yes, Your Honor.

6          As to exigency, Your Honor, at the point the government

7   searched Patricia Douglas' vehicle, Mr. Douglas had been

8   removed from the vehicle, the -- the agents had ascertained

9   that the purported grenade was actually a plastic prop, and

10  they -- they had seized the vehicle.  It was not going in

11  there -- going anywhere.  There was no exigency at that point.

12  There was no reason for them not to go get a warrant, which

13  would have been the normal course.  All exigency to search that

14  vehicle at that moment without -- without a warrant had

15  dissipated.  So there was no exigency to search the vehicle at

16  that point.

17         THE COURT:  What do you say to the government's

18  citation to *Parrado* which is described by the government as a

19  case in which the Eleventh Circuit rejected the notion that

20  exigent circumstances to search a defendant's parked car ended

21  with the arrest of the defendants outside that parked vehicle?

22         MR. KIRBY:  Well, Your Honor, I'm not sure of all of

23  the circumstances that -- surrounding that.  I'm just talking

24  about the facts of this particular case.

25         In this particular case, the vehicle had already been

1  searched subject to -- had already been seized subject to

2  Mr. -- Mr. Douglas' arrest; so I'm not sure if his parked

3  vehicle had already been seized or not.  In this case the

4  vehicle was in the custody of the government.  So it wasn't

5  going anywhere.  It could not go anywhere.

6       THE COURT:  But, I mean, perhaps the issue is not

7  whether it could have gone anywhere.  It's more whether it

8  contained explosives or other dangerous weapons, given -- given

9  the grenade issue that Mr. Douglas had displayed, even if later

10  determined to be a dummy.

11       MR. KIRBY:  I believe by that point, Your Honor, the

12  government knew that the grenade was a dummy and was not real.

13  And so at that point all exigency dissipated because there

14  was -- there was no evidence that there was any explosive

15  device whatsoever.  It was a prop grenade.

16       THE COURT:  There is a citation in the government's

17  response to a case called *Forker*, which appears to suggest that

18  we would measure the exigency at the time of the seizure of the

19  car, not at the time of the search of the car.  And so at the

20  time the car was seized, at that point, would you not agree

21  that there was still an ongoing exigency because it had not yet

22  been determined to be a fake grenade?

23       MR. KIRBY:  Well, I don't believe that there has been

24  any evidence to that effect, Your Honor.  As to when they

25  determined -- I mean, Mr. -- Mr. Douglas was out of the

1   vehicle, the -- the grenade was in the government's custody, as

2   far as the record reflects.  So I'm not sure -- at that point

3   they knew that there was no real grenade.

4        THE COURT:  When you say "at that point," which point

5   are you referring to?

6        MR. KIRBY:  The point that Mr. Douglas had been

7   arrested with the grenade -- the fake grenade in his hand.

8        THE COURT:  Would you agree, though, that under those

9   circumstances it would be reasonable to believe that he could

10  have other explosive-type devices in his vehicle, having just

11  presented one and scared a woman to the point of her yelling

12  that she was going to be killed?

13       MR. KIRBY:  I -- I -- Your Honor, as a matter of -- of

14  this case, I don't know that I would agree that the government

15  knew that Mr. Douglas had a fake grenade, that they would -- it

16  would be reasonable for them to presume that there might be

17  live grenades or other actual explosives in the vehicle.

18       THE COURT:  Okay.  All right.  Anything further on

19  exigency?

20       MR. KIRBY:  No, Your Honor.

21       THE COURT:  Okay.  Then I would like to hear your

22  argument on the automobile exception and then the search

23  incident to arrest.

24       MR. KIRBY:  Well, Your Honor, as far as -- I'm sorry.

25  The automobile exception, Your Honor?

1          If I may, Your Honor, I believe that to some extent the

2    same argument applies.  I mean --

3          THE COURT:  Which argument?

4          MR. KIRBY:  That the -- the automobile is currently in

5    the custody of the government and they certainly could have

6    gotten a warrant --

7          THE COURT:  That's not -- that's not the analysis.

8    There are two prongs for this.  The vehicle has to be readily

9    mobile, i.e., operational, and agents have to have probable

10   cause to believe that the vehicle contains contraband or other

11   evidence of a crime.

12         MR. KIRBY:  And I don't believe that there is -- there

13   was probable cause.  And I would --

14         THE COURT:  Why?  This is what I want to understand.

15         How can you contest the existence of probable cause to

16   believe that the car contained contraband or evidence of a

17   crime?

18         MR. KIRBY:  Because there was nothing -- no statements

19   by -- made by Mr. Douglas to indicate that at the moment he was

20   driving that vehicle there was -- there was contraband within

21   that vehicle.  There was a -- a phone call concerning him going

22   to meet with the girl and that there was a stuffed animal,

23   perhaps, that -- that -- but there was no -- there was no

24   evidence that it was in the car at that moment.  There was

25   nothing he said to state that the -- that the -- any evidence

1    of the crime was in the car at the moment that he was stopped.

2          He could have gone and picked it up later.  There was

3    just -- there was nothing at that point to indicate that there

4    was any evidence in the car at that time.

5          THE COURT:  Even though he had told the agent that he

6    had purchased these items when the agent asked, "Do you have

7    them," he said, "Yes."  And, of course, he was on the way to

8    meet the child?

9          MR. KIRBY:  I don't believe he ever said he was on the

10   way to meet the child at that point.

11         THE COURT:  On the way to the meet-up location, based

12   on the communications with the undercover.

13         In other words, the fact that he had agreed that he had

14   bought these items or that he had acquired these items, and

15   then, of course, he is going to that location, wouldn't it be

16   reasonable to suggest at that point that he would have on his

17   person the items that he said he would have?

18         MR. KIRBY:  That's one interpretation, Your Honor.

19         THE COURT:  Okay.  Anything further on the automobile

20   exception?

21         MR. KIRBY:  No, Your Honor.

22         THE COURT:  Do you dispute that the vehicle was

23   operational?

24         MR. KIRBY:  No.

25         THE COURT:  Okay.

 1          Okay.  Then we have left the search incident to arrest.

 2          MR. KIRBY:  And, Your Honor, I believe the argument

 3    that Your Honor has already addressed reaches that.  There is

 4    no evidence that there is not a separate trunk, and

 5    under -- under the -- that exception it does not reach the

 6    trunk area itself.

 7          THE COURT:  Okay.  So, but there was evidence found on

 8    his person, you would agree, correct, based on the stipulated

 9    facts?

10          MR. KIRBY:  Evidence on his?

11          THE COURT:  "Person" as opposed to in the trunk.

12          MR. KIRBY:  Of?  There was certainly knives and the

13    fake grenade were found on his person.

14          THE COURT:  So it says here on page 7, "Search of

15    Douglas incident to arrest, agents found the following on his

16    person:  Multiple knives, an anal plug, sex toy, and a wallet

17    that contained his California ID, a Cash app debit card, as

18    well as other identification."

19          MR. KIRBY:  Those items -- yes, Your Honor, those

20    items, yes, I believe, are admissible as incident to arrest.  I

21    was -- I was talking about the items found in the trunk area

22    that -- in a separate box.

23          THE COURT:  Okay.  Anything further on the search

24    incident to arrest?

25          MR. KIRBY:  No, Your Honor.

1          THE COURT:  Okay.  Anything from the government with

2     respect to these arguments?  We're talking still about the

3     vehicle.

4          MR. SCHILLER:  No, Your Honor.  Thank you.

5          THE COURT:  Okay.  All right.  Well, then let me turn

6     back to Mr. Schiller so we can discuss the second motion to

7     suppress which concerns Mr. Douglas' post-arrest statements.

8          MR. SCHILLER:  Thank you, Your Honor.

9          The defense's motion to suppress the statements occur

10    at docket entry 47 and are responded to at docket entry 61.

11         The defense's motion is very, very void of exactly what

12    they suggest is the statement or statements that caused him to

13    ask for a lawyer and, thus, should have cut off questioning.

14         The only time they mention anything in their motion on

15    page 2, the first full paragraph, is, "In addition,

16    approximately 36 minutes into the interview Douglas invoked his

17    right to counsel, after which agents should have immediately

18    ceased the questioning of him."  They don't say precisely what

19    time or what statement he made.

20         And so having that, kind of, void to work within, I

21    took the liberty of going through the recording line by line by

22    line, or second by second by second, if you will, to try to

23    isolate what those statements were.  So that's -- begins on

24    page 3.  But they make a -- an argument before that that I want

25    to touch on first.  And I apologize for going out of order.

1      And that is, they say at no point did the agents

2  receive oral or written waiver of his rights.  Your Honor heard

3  the recording.  And at 4:25, after his -- the agents read him

4  his Miranda rights, all of his rights, including his right to

5  counsel -- and afterwards they ask him, "Do you understand all

6  of those things?"  And he responded, "Yes, ma'am."

7      THE COURT:  Okay.  Can I -- can you play clip one

8  again, please.

9      MR. SCHILLER:  Yes, ma'am.

10      Your Honor, I'm beginning at 4:15 on the recording.

11      (A video and/or audio was played.)

12      THE COURT:  Okay.

13      MR. SCHILLER:  Your Honor, I stopped the recording at

14  5:22.

15      THE COURT:  Okay.  Thank you.

16      Please continue your argument.

17      MR. SCHILLER:  Thank you, ma'am.

18      So I'm loathe to understand how he didn't knowingly

19  orally waive his rights.  Did he sign a Miranda waiver card?

20  No, he doesn't need to.  But he understood his rights.  Agents

21  understood what kind of education he had.  And he expressed

22  that he understood his rights by saying, "Yes, ma'am," when

23  asked, "Do you understand all of those things?"

24      THE COURT:  I think the argument that's being made is

25  that he needed to be asked a separate question after that,

1    which is, having acknowledged his understanding of the rights,

2    was he still willing to speak to the agent?

3             MR. SCHILLER:  Right.  I -- that's not the law.  There

4    is no magic words they need to ask him to make sure he

5    understands his rights.  In fact, I will go one step further.

6    They don't need to do that last question at all.  If he -- if

7    you're reading Miranda rights, and some -- and the agent goes:

8             "Do you understand you have the right to counsel?"

9             "Yes."

10            "Do you understand you have the right to remain

11    silent?"

12            "Yes."

13            And if you "yes" each one of those, you are good.

14    If -- you can ask them all and say, "Do you understand all

15    those rights?"  "Yes."  You don't have to follow it up by

16    saying, "Do you wish to speak with me?"  That is a thing that

17    some officers do and some don't do.  I suppose it adds one more

18    level of protection, but it's not necessary under the Court's

19    progeny of Miranda.

20            THE COURT:  Okay.  Thank you.  Please continue.

21            MR. SCHILLER:  Yes, ma'am.

22            Now, what I took the liberty of doing in response to

23    the second argument which is "he invoked his right to counsel,"

24    is I tried to, as best as I could, go through the recording,

25    and isolate every time the defendant either mentioned the word

1   "lawyer" or referenced that he had mentioned the word "lawyer."

2   And so I don't want to take the Court's time in rereading my

3   response, but as you can see on pages 3, 4, and 5 of my

4   response, every time the defendant suggests the word "lawyer,"

5   the agents do exactly what the Eleventh Circuit -- and I will

6   get to the case law in just a moment -- tells them to do, which

7   is, if it's not equivocal, then you ask a question to find out.

8   "So you're saying you don't want to talk to us?  You want a

9   lawyer?"  Because he didn't say, "I'm done talking to you."

10   That's unequivocal.  "I'm done talking to you."  Easy.

11        But he throws out the word "lawyer" in a very

12   convoluted, run-on sentence.  And so the agents, to clarify

13   what he means, ask him those follow-up questions.  And that's

14   what happens back and forth, back and forth.  Repeatedly they

15   ask him, "Wait.  So are you saying you want a lawyer and you

16   don't want" -- and he interrupts them before they can even

17   finish the question at least eight or nine times.  They are

18   doing their best to communicate to Mr. Douglas so they

19   understand what he wants to do.

20        And it appears that most of his references to

21   "lawyer" -- the word "lawyer," excuse me -- are references to

22   his lawyer -- well, lawyers that he had during his 2011

23   previous conviction.  But when he does mention it, possibly

24   regarding the search of the phone and giving consent for the

25   passcode or wanting to continue talking with them, and they try

1    to clarify, he rambles on and just keeps talking.

2           So even if -- even if it was considered an invocation,

3    he reinitiates and just keeps talking.  And the agents can't

4    stop him from talking, as you heard from the audio recording.

5           So the Eleventh Circuit has been really, really clear

6    on this issue.  And I want to direct the Court's attention to

7    *United States v. Ochoa*, O-C-H-O-A.  It's an -- it's not a

8    published opinion, but I thought the facts were really, really

9    telling about our case.  It's an Eleventh Circuit opinion from

10   2019.  The Westlaw cite is 2019 WL5491336.  And I had cited it

11   on page 7 of my response.

12          "The Courts denied the defendant's motion to suppress

13   and held his post-Miranda statements admissible.  During the

14   last sentence of the reading of his Miranda rights, the

15   officers read to Ochoa:  I have read the statement of my rights

16   and I understand what they are.  At this time I am willing to

17   answer questions without my lawyer -- without a lawyer

18   present."

19          They read that to him.

20          The Court goes on to say, "After asking the officer to

21   read the statement again, Ochoa insisted that he did not really

22   agree with the last one, and, quote, 'You're asking me at this

23   time if I'm willing to answer questions without a lawyer.  I

24   don't agree with that,' end quote."

25          The officer explained what the statement meant and

1   Ochoa then agreed to speak.  The Court noted that "the parties

2   did not dispute the facts that the defendant did not expressly

3   state that he wished to consult an attorney or remain silent.

4   The Court held it was appropriate for the officer to ask

5   follow-up questions to clarify what Ochoa meant by his

6   statements."

7        And then I went on to cite case after case after case

8   where the Eleventh Circuit has specifically said that it is

9   appropriate, nay important, for agents to clarify when an

10  individual who is subject to his Miranda rights is invoking his

11  right to counsel; to make sure that they understand it and to

12  make sure that that's actually what you want to do.  Maybe you

13  do want to talk to us, but you said the word "lawyer," so, hey,

14  hold on, that relates to your Miranda rights.  Let's question

15  it.

16       I cited *United States v. Propst*, P-R-O-P-S-T, on

17  page 7, Eleventh Circuit, 2010, at 369 Fed.App'x 42, where the

18  Court held the defendant's statement "I would rather have a

19  lawyer around to talk" was considered ambiguous and did not

20  require officers to terminate questioning.  We don't even get

21  close to that here.  We don't.

22       Just a couple of other points I want to make.

23       The defendant in his motion brought up the Supreme

24  Court case of *Jackson v. Denno* in his motion, seemingly wanting

25  a Jackson hearing, but that really applies to what happens

1    during a trial, not so much a motion to suppress.  So I cited

2    that and the case law at the bottom of page 8, and I don't

3    think it's relevant.

4         I would -- I would offer the Court this.  If -- with

5    your review that you have already heard of the statement, and

6    if the Court takes further review of the statement in chambers,

7    and if there is specific portions that need to be excised out,

8    specifically -- I don't think this is true, but let's say it

9    was -- that he invoked his right to a lawyer regarding giving

10   his passport, which I don't believe he did based upon the

11   conversation.  We could excise out that one little line so the

12   jury doesn't hear that one little part.  Because individuals

13   can invoke their right to counsel for specific things or for

14   everything.  And clearly the defendant here may have been

15   offering that for specific things, dealing with the woman in

16   the car, dealing with the phone, but never committed to it.

17   Every time the officers tried to ask him -- and Your Honor

18   heard the interview.  Every time they tried to ask him and

19   clarify, he interrupts them, talks over them, and doesn't stop

20   rambling until he catches his breath.  And it's during that

21   two seconds of breathing that one of the agents says, "Okay.

22   But you mentioned 'lawyer' before.  So we just want to be

23   clear.  Do you want to still talk to us?"  And he keeps

24   talking.

25        So I think the agents really did absolutely everything

1   the Eleventh Circuit would have them do, recommends them to do,

2   and requires them to do in these circumstances.  And I don't

3   believe there is any reason to suppress the statement

4   whatsoever.

5           Thank you.

6           THE COURT:  Okay.  Now, just for my curiosity, is there

7   anything incriminating on the recording?

8           MR. SCHILLER:  Is there anything what, ma'am?

9           THE COURT:  Incriminating on the recording.

10          MR. SCHILLER:  Oh, yes.  There are many things

11  incriminating on the recording.

12          THE COURT:  Okay.  All right.  Then let me hear from

13  you, Mr. Kirby.  I would like for you to be, please, be very

14  clear about what in the recording specifically, pointing to

15  timestamps, causes you concern because your motion is fairly

16  general in nature.

17          MR. KIRBY:  Yes, Your Honor.

18          Before I get to that -- and I will get to that in just

19  a second -- I do want to, you know, put on the record,

20  Your Honor, that the government has the burden of showing

21  voluntariness in their -- did they follow the Miranda --

22  Miranda specifically?

23          There was no written or oral waiver of Mr. Douglas'

24  Miranda rights.  The government has just --

25          THE COURT:  Okay.  Wait.  First, answer my question,

1    and then you can make whatever arguments want.

2         What specifically in the recording causes you concern?

3    And you need to be -- you need to pinpoint what about the

4    recording, from -- from a timestamp perspective, is

5    problematic?

6         MR. KIRBY:  I believe it is -- it is around minute 41

7    to 42, where Ms. -- where the -- it is in the context of the

8    passcode.  But in that -- in that same discussion, there is

9    a -- a question from the agents, "Do you still want to answer

10   questions?"  Mr. Douglas says -- I'm -- I don't want to

11   misstate it.  I want to say the exact words.

12        "If there are questions you want to answer, but not

13   along these lines" -- at which point they continue to ask him

14   questions along those lines.

15        THE COURT:  Okay.  This is what we're going to do.

16   It's 11:40, and we're about ready for lunch anyway.

17        Over the lunch break, Mr. Kirby, please carefully

18   scrutinize the recording.  And when you come back to the

19   lectern after lunch, I would like for you to specifically tell

20   me the portions of the recording where you believe your client

21   invokes his right to counsel, so that I can hone in on those

22   portions.  Because your motion is -- is fairly imprecise, and I

23   want to make sure that I'm honing in on the timeline that you

24   find most concerning.  And then, of course, we will cover the

25   threshold question whether he agreed to speak to begin with.

1          Okay.  Any questions?

2          MR. KIRBY:  No, Your Honor.

3          THE COURT:  All right.  It's 11:40.  We will be in

4    recess until 1:00 p.m.

5          MR. KIRBY:  Thank you, Your Honor.

6          COURTROOM DEPUTY:  All rise.

7          MR. SCHILLER:  Your Honor, with the Court's permission,

8    may we leave things at counsel's table?

9          THE COURT:  Yes.

10          MR. SCHILLER:  Thank you.

11          (A recess was taken from 11:43 a.m. to 1:02 p.m.).

12          THE COURT:  Good afternoon.  Please be seated.

13    Everybody is here.  We are back in session, 23-80219, United

14    States of America v. Michael Gordon Douglas.

15          We left off, Mr. Kirby, with your presentation on the

16    motion to suppress statements.  I asked that you clarify, over

17    the break, the exact portions of the recording that you think

18    implicate the right to counsel or the invocation of such.  And

19    so if we could start there, please.

20          MR. KIRBY:  Yes, Your Honor.

21          I would just, in the context of my ethical duties,

22    however -- I need to cite to a case which I believe stands for

23    the proposition that a written waiver is not necessary under

24    Eleventh Circuit law.  And that's *Bernal* --

25    *U.S. v. Bernal-Benitez*, 594 F.3d at 1318.

1        THE COURT:  Okay.  Thank you.

2        MR. KIRBY:  You're welcome, Your Honor.  And I spoke

3   with Mr. Schiller and I believe he is ready to play from minute

4   42, which would be the point that I will contend invocation was

5   made.

6        THE COURT:  Okay.  Let's hear that portion of the tape

7   then, please.

8        MR. SCHILLER:  Thank you.

9        Judge, I'm having trouble hearing counsel.  I don't

10  know if his microphone is working or not working -- but it's

11  just hard for me to hear you.

12       THE COURT:  He said minute 42.

13       If you could just speak up, Mr. Kirby.

14       MR. KIRBY:  Yes, Your Honor.  Usually not a problem,

15  but, yes.

16       MR. SCHILLER:  Playing now, Your Honor.

17     (A video and/or audio was played.)

18       MR. SCHILLER:  Judge, I stopped it at 42:11.

19       MR. KIRBY:  Your Honor, he asked for a lawyer.  They're

20  going along the same line of questioning, and then they

21  continue on.

22       THE COURT:  But what is the line of questioning that is

23  happening at that time?  And then what is the line of

24  questioning that happens after that statement?

25       MR. KIRBY:  Your Honor -- I'm sorry.  Mr. Schiller,

1    could you, perhaps, start it at 41 then, to give the Court some

2    context.

3              MR. SCHILLER:  Ready?

4              MR. KIRBY:  Yes.

5              THE COURT:  Okay.  Mr. Schiller, please tell me where

6    you're starting.

7              MR. SCHILLER:  41:01, Your Honor.

8              THE COURT:  41:01.  Okay.  Thank you.

9         (A video and/or audio was played.)

10             MR. KIRBY:  Your Honor, for my purposes, we're done.

11             THE COURT:  Okay.

12             MR. SCHILLER:  Your Honor, we're at 42:21.

13             THE COURT:  Okay.  It's still not evident to me, having

14    played from minute 41 on, what exactly the context was,

15    Mr. Schiller.

16             So doing it in this piecemeal fashion, it's hard for me

17    to understand what was being discussed prior to and then after

18    the purported invocation of his right to counsel.

19             MR. KIRBY:  Your Honor, we can back it up even further,

20    if that would help the Court or we --

21             THE COURT:  Well, it's your motion.  And I just want

22    you to present your arguments and explain exactly what do you

23    think in the recording indicates that he invoked his right to

24    counsel, and why isn't it clear that the agent shifted gears

25    and started discussing something else, something different than

1    what was previously being discussed?

2          MR. KIRBY:  Well, I -- I believe it -- it's clear that

3    he is invoking his rights at that point, Your Honor.

4          THE COURT:  Based on what?  What did he say in the

5    recording that you believe amounts to that clear, unequivocal

6    invocation?

7          MR. KIRBY:  If you have any more questions along that

8    line, then "lawyer."

9          THE COURT:  Mr. Kirby, you need to do a little bit more

10   than just, sort of, generally point things out.  Where in the

11   recording is the purported invocation, so I can go and I can

12   listen to this recording?  I asked you specifically over the

13   break to focus on the recording so that I could hone in on the

14   relevant portions.

15         What I heard the defendant say was, "If it's the same

16   line of questioning," and then "we're done."  And then at that

17   point the question by the agent is, "Who else have you sent

18   child pornography to besides Anna?"

19         So isn't that a new topic, a new line of inquiry?

20         MR. KIRBY:  Well, Your Honor, I would argue that

21   they're all of a piece.

22         THE COURT:  All right.  So other than this 42:11 minute

23   marker that you've identified, are there any other portions of

24   the transcript where you think Mr. Douglas clearly invoked his

25   right to counsel?

1          MR. KIRBY:  Simply in the -- in the portions leading up

2     that we have already heard, Your Honor.

3          THE COURT:  Which are?  We had three clips this

4     morning.

5          MR. KIRBY:  Okay.  The clip that started -- the last

6     clip we heard that I believe was in the record, Your Honor.

7          THE COURT:  So that's clip 3.  Mr. Schiller, if you

8     could -- of course, standing when you address the Court -- is

9     this 56:29 to 57:30?

10         MR. SCHILLER:  That would be the last clip the

11    government played, Your Honor, yes, ma'am.

12         THE COURT:  That's the clip you're relying on,

13    Mr. Kirby?

14         MR. KIRBY:  No, Your Honor.  I believe it was -- it was

15    41 -- minute 41 to stop -- the place that we stopped just now.

16         THE COURT:  Oh, okay.  Sorry.  I was asking whether, in

17    addition to that minute 41 count, were there any other portions

18    of the recording that you were relying on for your argument

19    about invocation of counsel?

20         MR. KIRBY:  That's where I believe a clear invocation

21    was made, Your Honor.

22         THE COURT:  At the 41-minute marker, okay.

23         MR. KIRBY:  41 to 42, yes.

24         THE COURT:  Your motion, does it address any other

25    portions in the transcript?  Or, excuse me, there is no

1    transcript.  In the recording.

2           MR. KIRBY:  Your Honor, that's what I am -- I am

3    relying on today for this motion to suppress.

4           THE COURT:  Okay.  Docket entry 47, which is your

5    motion, refers to approximately 36 minutes into the interview.

6    What happened at that point?

7           MR. KIRBY:  Your Honor, upon re-evaluating the tape, I

8    believe that the 41 to 42 is more succinct and accurate a

9    portion.

10          THE COURT:  All right.  So, to be clear, your motion

11   with respect to suppression of statements and on the topic of

12   invocation, I should be focusing only on this last excerpt,

13   which starts at approximately minute 41?

14          MR. KIRBY:  Yes, Your Honor.

15          THE COURT:  Okay.  And so your argument on that point

16   is what exactly?

17          MR. KIRBY:  That, at that point, Mr. Douglas has made a

18   clear invocation of his right to counsel, that he doesn't want

19   to speak further with the agents, that he wants to speak with

20   an attorney.

21          THE COURT:  Okay.  All right.  Then let's turn to your

22   other argument in the motion which concerns the waiver to begin

23   with.  And I understand your acknowledgement, rightly so, that

24   a written waiver isn't required, that an oral waiver would be

25   sufficient.

1        What is your argument, given what we heard in clip 1 at

2   the outset of today's hearing?

3        MR. KIRBY:  Well, Your Honor, clearly a written waiver

4   is not required in the Eleventh Circuit.  I have not found any

5   controlling authority one way or the other as to the

6   Eleventh Circuit under -- as far as an oral motion, but I -- an

7   oral waiver.  But I would argue that an oral waiver -- at the

8   very least, the government should be required to receive some

9   sort of affirmative waiver from the defendant that he not only

10  understood his rights but acquiesced, rather than simply he was

11  read his rights, asked if he understood those rights, and with

12  nothing more, questioning begins.

13       THE COURT:  Okay.  Just so I understand your argument,

14  although he clearly acknowledges each of the rights that were

15  verbally read to him, your position is that the agent was

16  required to ask him another question in saying what exactly?

17       MR. KIRBY:  He acknowledges that he understands them,

18  but the officer needed to ask him and receive an assertion

19  that, yes, he understands them and he waives them, or he agrees

20  to speak with the agents.

21       THE COURT:  Okay.

22       Okay.  And then just to clarify, there was a suggestion

23  in your motion to notions of voluntariness, citing

24  *Jackson v. Denno* and other authorities.  Are you making an

25  argument that the defendant's statement was not voluntary under

1   the totality of the circumstances because it was not the

2   product of an essentially free and unconstrained choice?

3          MR. KIRBY:  I am not, Your Honor.

4          THE COURT:  Okay.  So that argument is abandoned, just

5   to be clear?

6          MR. KIRBY:  Yes.

7          THE COURT:  All right.  Okay.  Then any other arguments

8   on the statements themselves?

9          MR. KIRBY:  No, Your Honor.

10          THE COURT:  All right.  Thank you.

11          Mr. Schiller, do you care to respond to any of the

12   arguments made thus far?

13          MR. SCHILLER:  No, Your Honor.  I have expressed all my

14   arguments already.  Thank you.

15          THE COURT:  Okay.  All right.  Anything else on the

16   suppression motions that we've covered today, which are docket

17   entries 46, 47, and 48, from either side?

18          MR. SCHILLER:  Judge, if I could -- during the lunch

19   break I happened to find a case on an issue that Your Honor

20   was -- had brought up during my arguments about the motion to

21   suppress the search of the car, and specifically the trunk.

22          THE COURT:  Okay.

23          MR. SCHILLER:  And I will bring it up for the Court's

24   review and consideration.  It is *United States v. Lanzon*,

25   L-A-N-Z-O-N, 639 F.3d 1239.  It's an Eleventh Circuit opinion

1    from 2011.  In that case "law enforcement had probable cause to

2    search the defendant's truck under the automobile exception for

3    warrantless searches where the defendant had participated in

4    instant messaging conversations with an officer posing as the

5    father of a 14-year-old girl, described his intent to have sex

6    with the 14-year-old girl, agreed to meet at the specific time

7    and place, agreed to bring certain condoms, and addressed the

8    officer by his undercover persona.  When officers did not find

9    the condoms after a pat-down, there was probable cause to

10   search his truck for evidence of a crime."

11        So they were able to search the entire truck, is what

12   I'm getting at.  And so I think that because, when the officers

13   obviously took the defendant out of the car didn't find all of

14   the items that he would have possessed and told the agent he

15   was going to possess, they then would have had the right to

16   then search the entire car, including the trunk purposes, under

17   the automobile exception.

18        I wanted to provide that to the Court if the Court

19   wanted to take a look at that case.  And I thank you very much.

20        MR. KIRBY:  I'm sorry, Mr. Schiller.  Could I -- you

21   said that cite a little quickly.  Can I get the back end of it,

22   please.

23        MR. SCHILLER:  Yes.  *United States v. Lanzon*,

24   L-A-N-Z-O-N, 639 F.3d 1293.  Eleventh Circuit, 2011.

25        MR. KIRBY:  And I'm missing where they said they could

1    search the bed of the truck.

2         MR. SCHILLER:  No.  It just said to search the entire

3    truck.  That was my understanding of the case.  But --

4         THE COURT:  Okay.

5         MR. SCHILLER:  Thank you, ma'am.

6         THE COURT:  All right.  That's distinct from the search

7    incident to arrest, *New York v. Belton*, discussion we were

8    having, correct, in talking about automobile exception which

9    wouldn't have that trunk limitation.

10        MR. SCHILLER:  Correct, ma'am.  I just wanted to

11   provide that to the Court as well.

12        THE COURT:  Yes.

13        MR. SCHILLER:  Thank you.

14        THE COURT:  All right.  Mr. Kirby, if you wish to

15   respond via a response to supplemental authority, you may do so

16   in accordance with the local rules which have a word limit.

17        MR. KIRBY:  Thank you very much, Your Honor.

18        THE COURT:  Okay.

19        Okay.  So I think we've covered fully the suppression

20   motions.  So now let's turn to the government's omnibus motion

21   in limine.  Before we get started, I want to understand if

22   there are any areas of agreement between the parties since the

23   filing of the government's motion.

24        Mr. Schiller.

25        MR. SCHILLER:  Yes, ma'am.  Thank you.

1          As directed by the Court, the parties filed a status

2     report regarding today's hearing at docket entry 83.  And

3     amongst other matters, including the motions to suppress that

4     we've already covered, at page 2, items number 7, 8, and then 9

5     on page 3, I have identified those areas that the parties are

6     agreeing to, and I will provide those to the Court now.

7          First, in the government's motion, omnibus motion in

8     limine regarding the summary data, we have yet to provide those

9     summaries.  And there hasn't been an objection to us providing

10    those summaries.  I know that is not a major issue, probably,

11    for the Court or the parties this morning, but I just

12    wanted -- because that's part of the omnibus motion, I just

13    wanted to note that.  But we are working on those and we will

14    provide them to the defense as soon as we have them.

15         THE COURT:  Okay.  Hold on.  Before you move past the

16    summaries.

17         MR. SCHILLER:  Yes, ma'am.

18         THE COURT:  These would be summaries of voluminous data

19    found on what device?

20         MR. SCHILLER:  His Samsung phone, his Verizon phone,

21    and his Google accounts.

22         THE COURT:  And in terms of the categories of data,

23    what would you be seeking to summarize?

24         MR. SCHILLER:  At this point, I'm not sure what we're

25    going to use, Judge.  So I -- so I can't tell the Court with

1    any specificity; I apologize.  But, I mean, generally it would

2    include images, videos, usually summary charts that show total

3    numbers of things, a listing of accounts that were found on the

4    device, or the account -- I know that sounds repetitive -- but

5    the accounts within the Google accounts, in a more compressed

6    list that will allow both defense, government, Court, and the

7    jury to piece through everything in less than thousands and

8    thousands of pages.  That's typically what we do in our cases

9    and I would purport to do in this case.  There might be some

10   other things, but we will provide that to the defense in

11   advance of trial.

12        THE COURT:  Okay.  So what I'm hearing is, really, that

13   this portion of the motion seeking to use summaries of data

14   pursuant to Federal Rule of Evidence 1006 is not ready for

15   judicial resolution; correct?

16        MR. SCHILLER:  Right, Judge.  My guess is we will be

17   able just to agree on those things, but if we do have an issue,

18   we will bring that back to the Court.

19        THE COURT:  Okay.  All right.  Mr. Kirby, do you wish

20   to be heard on this aspect of the motion?

21        MR. KIRBY:  So long as we have the search warrant

22   affidavits and -- showing the admissibility of this

23   information, no, Your Honor, I haven't seen those search

24   affidavits yet.

25        THE COURT:  All right.  This brings up a different

1    issue.

2              MR. KIRBY:  Yes, it does, Your Honor.

3              THE COURT:  Can you clarify what it is that you haven't

4    received.

5              MR. KIRBY:  I think Mr. Howes wishes to speak.

6              MR. HOWES:  Judge, there was --

7              THE COURT:  Please get before a microphone.

8              MR. HOWES:  I thought my voice carried better than

9    that, Your Honor.  Here, let me take my ear out and I will

10   probably speak better now.

11             Your Honor, today, going through the documents that are

12   here, I have -- I count three different search warrants that we

13   have no probable cause affidavit, no search warrant, and no

14   inventory and return on.  One was of the house where the

15   defendant resided.  There would be an issue with respect to

16   whether or not the telephones that -- that, according to the

17   government's reporting, came out of that search was within the

18   terms of the affidavit and the search warrant.

19             So that's -- that's one.

20             Another one is --

21             THE COURT:  Okay.  Wait.  Let's just pause there.

22             So do I hear you correctly that you're saying you have

23   not, in discovery, received copies of search warrants or

24   affidavits --

25             MR. HOWE:  Affidavits --

1          THE COURT:  -- in support of the warrant applications

2     or the inventories themselves for three separate searches of

3     what?

4          MR. HOWES:  Of one was of his residence, another was if

5     they sent -- we've got a two-page letter from -- from Google.

6     If they sent search warrants to Google, then we're entitled to

7     those.  And we -- and if they conducted any type of use of the

8     contents of the -- the phones, then we're entitled to those

9     search warrants as well.  I mean, they -- I'm looking at

10    this --

11         THE COURT:  Okay.  All right.  Just -- this might be an

12    issue that just needs to be clarified.

13         Mr. Schiller.

14         MR. SCHILLER:  Judge, we've given them every search

15    warrant affidavit, warrant application, cover letter that has

16    existed in this case.  It's all been provided in discovery.  I

17    can't confirm and tell the Court exactly what page number

18    within the discovery it is because I can't get online inside

19    the Court's courtroom, but I can guarantee the defense we have

20    provided all of it and it was all provided in the initial round

21    of discovery, which was quite voluminous and hundreds of pages.

22    But everything is there.

23         THE COURT:  Okay.  So is it just an issue of review

24    of -- fully of these materials, then?

25         MR. HOWES:  I will -- I will go back while we're here

1    today, Judge, and see if I can find them.  If it was in the

2    first discovery response, then they're there.

3         THE COURT:  Okay.  Well, then it appears that all of

4    these materials have been provided to you.  If there is some

5    issue that you have identified, then you should file an

6    appropriate motion.

7         MR. HOWES:  Yes, ma'am.

8         THE COURT:  Okay.  We got off track there a bit.  We

9    were talking about the 1006 summary issue.  I'm going to

10   reserve ruling on that aspect of the motion pending trial.  At

11   which point then, Mr. Kirby, if you have any objections related

12   to the reliability of the underlying records or the summaries

13   themselves, then you should preserve those objections

14   accordingly.  But as a theoretical matter, it doesn't seem to

15   me problematic for the government to assist the jury through

16   the use of summaries of this voluminous data.

17        Anything further on this portion of the motion?

18        MR. KIRBY:  No, Your Honor.

19        THE COURT:  Mr. Schiller.

20        MR. SCHILLER:  No, Your Honor.  Thank you.

21        THE COURT:  Okay.

22        MR. SCHILLER:  At docket entry 83, line item number 8,

23   we refer to part 4 of the government's omnibus motion in

24   limine, which is the motion in limine to publish child

25   pornography.  There has been no response or opposition filed by

1     the defense at this point.  And what the government will

2     purport to do in trial is select a limited number of items from

3     the defendant's phones and Google accounts, if the Court is

4     going to admit that pursuant to our 404(b), 414, and

5     inextricably intertwined motion to produce, along with the

6     child pornography that was distributed specifically by the

7     defendant to the undercover officer in the course of their

8     chats.

9             THE COURT:  Okay.  Let's start first with just the

10    charged counts.

11            MR. SCHILLER:  Yes, ma'am.  I should have --

12            THE COURT:  What is your plan on the charged counts?

13            MR. SCHILLER:  So, the charged counts are all consumed

14    within a video recording or screenshots of all the chats that

15    the defendant had with the undercover agent.  We are going to

16    play the video recordings or screenshots of those conversations

17    to the jury.  And the undercover agent, who will be testifying

18    about those, and I, will read through them for the jury.

19            During those conversations is when child pornography

20    was distributed.  And it will be played.  Sometimes it's long,

21    so we will cut down, to a very limited portion, for the jury to

22    see.  Because that is what he has been charged with and they

23    have to make a determination of it.  That is for what he has

24    been charged with.

25            THE COURT:  So on the seven counts --

1          MR. SCHILLER:  Yes, ma'am.

2          THE COURT:  -- looking at the superseding indictment,

3     would these be seven still images?

4          MR. SCHILLER:  No.  They're videos.

5          THE COURT:  Well, I understand they're videos.  But as

6     far as what you seek to publish to the jury from the videos, so

7     that we're not going to be playing lengthy videos of child

8     pornography.

9          MR. SCHILLER:  So our intention was to play the videos,

10    but we will play only a very small portion of the video, a

11    matter of seconds.  Some of the videos are quite lengthy,

12    upwards of a minute or more.  We will not do that.

13         THE COURT:  Okay.  So let me turn to Mr. Kirby.  I did

14    not see any substantive response to this aspect of the motion,

15    Mr. Kirby.  So can you please explain to me if you have an

16    objection to what Mr. Schiller has described.

17         MR. KIRBY:  As long as it's not excessive, Your Honor,

18    I do not have an objection as to the counts, Your Honor.

19    And -- well, we can deal with the counts for now.  I do not

20    have an objection, Your Honor.

21         THE COURT:  Okay.  So what I have heard so far is for

22    the seven charged counts of distribution of child pornography,

23    the government proposes to play very brief excerpts from each

24    of those videos, seconds for each of them.  And that, so long

25    as the government stays within that rubric, you have no

1    objection.  Did I hear you correctly?

2             MR. KIRBY:  Yes, you did, Your Honor.

3             THE COURT:  Okay.  All right.  So I think we've covered

4    the charged counts.

5             Mr. Schiller, now turn to any requests you have to

6    publish child pornography beyond the charged counts.

7             MR. SCHILLER:  Okay, Judge.  Thank you.

8             So this now gets into the larger portion of the omnibus

9    motion in limine in regards to the inextricably intertwined

10   404(b) and 413 evidence.

11            So if you want me to put those two together...

12            THE COURT:  Unless there are other areas of agreement

13   that you haven't yet covered, then, yes, please, segue into

14   that.

15            MR. SCHILLER:  Okay.  There is one other area of

16   agreement.

17            THE COURT:  Okay.  Let's finish that then.

18            MR. SCHILLER:  Okay.  On page 3 of docket entry 83, the

19   status report for today's hearing, the defendant has previously

20   objected to the government's introduction in evidence at trial

21   of the facts of the Defendant's 2011 conviction.  But for

22   purposes of litigating the motion today, the parties stipulate

23   to the facts as alleged in the government's motion in limine,

24   at docket entry 62, pages 2 through 5, as the facts the

25   government would produce at trial through witnesses.  And the

1    parties agree that the government does not need to present

2    those witnesses at the motion hearing today to support those

3    facts.

4              THE COURT:  Okay.  Pages 2 through 5 of docket entry

5    62.

6              MR. SCHILLER:  Correct, ma'am.

7              THE COURT:  Mr. Kirby, do you agree with that?

8              MR. KIRBY:  For purposes of today's hearing, yes.

9              THE COURT:  Okay.  The dispute here with the prior 2011

10   conviction, is it correct that all parties agree that at least

11   the fact of the conviction via certified judgment would be

12   admissible to the jury?  Mr. Kirby; is that correct?  For

13   purposes of the sentencing enhancement that is charged in the

14   indictment.

15             MR. KIRBY:  For purposes of the sentencing enhancement,

16   yes, Your Honor.

17             THE COURT:  So what do you agree to so that I can

18   figure out what is actually disputed?

19             MR. KIRBY:  I agree that the sentencing

20   enhancement -- for purposes of the sentencing enhancement, that

21   that conviction can be disclosed to the jury.  What I object to

22   are introduction of the facts related to that 2011 conviction.

23   I believe it's -- and I can go into the argument, or not.

24             THE COURT:  Okay.  So, as far as -- so, just so I

25   understand, in terms of paperwork, you would be -- you would

1    not be objecting to introduction of the certified judgment for

2    that 2011 conviction; correct?

3              MR. KIRBY:  For purposes of sentencing, correct.

4              THE COURT:  Okay.  But also during trial?  To the jury,

5    just to be clear.

6              MR. KIRBY:  For purposes of the enhancement, yes.

7              THE COURT:  Which would necessarily be exposed to the

8    jury?

9              MR. KIRBY:  Yes.

10             THE COURT:  Okay.

11        Okay.  So then the area of dispute is whether to go

12   beyond the judgment and call a witness to testify about the

13   underlying facts associated with that conviction; is that

14   right?

15             MR. SCHILLER:  That is right, Your Honor.

16             THE COURT:  Okay.  So why does the government believe

17   it needs to go that extra step and go into the details of the

18   2011 conviction?

19             MR. SCHILLER:  Sure.

20        So this all relates to the government's 414 -- the

21   motion -- the omnibus motion in limine to admit that evidence

22   under Federal Rule of Evidence 414 and 404(b).

23        And does Your Honor want me to go into argument about

24   that now?

25             THE COURT:  All right.  So the areas of dispute that

1   are left are -- the underlying fact for the 2011 conviction and

2   then use of the -- what the government has described as an

3   inextricably intertwined evidence in the form of Google

4   accounts and other child pornography found on the devices; is

5   that right?

6           MR. SCHILLER:  Yes.  And there is a few other things,

7   but it is all found within the devices in the Google accounts.

8           THE COURT:  Okay.  So at this point I will let you take

9   it from here.  You can present your argument as you wish on

10  these two buckets of disputed evidence.

11          MR. SCHILLER:  Okay.  Thank you.

12          So the other evidence the government wants to introduce

13  that are other bad acts committed by the defendant and

14  uncharged fall into one of three buckets; either inextricably

15  intertwined, 414 evidence, or 404(b) evidence.  And each of

16  them, as defense counsel noted in their response and I noted in

17  my motion, requires a 403 balancing test.  So I'm going to

18  address each of those three-levels of introduction, and then I

19  will end with a 403 balancing test at the end.

20          The evidence that we want to introduce is captured

21  within docket entry 62 in, really, three buckets.  The first

22  bucket is the evidence of the prior conviction and the facts of

23  that prior conviction.  I have outlined those facts on pages 2,

24  3, 4, and 5.  And, Your Honor, those facts come almost word for

25  word from the appellate decision upholding the defendant's 2011

1    conviction and the factual summary as laid out by the appellate

2    court in California, the state court.  So that's where I really

3    took those from because it's a published opinion.

4         That's one bucket.  And I will explain why that's

5    admissible in just a minute.

6         The second bucket is evidence found from the

7    defendant's two phones, the one found on the floorboard of his

8    car -- the broken phone -- the cracked-screen phone, excuse

9    me -- and then a second phone found within his residence.  Both

10   of those phones have been identified as belonging to the

11   defendant, based on an innumerous amount of evidence about his

12   email addresses, phone numbers, usernames.

13        And from those two devices we want to introduce the

14   following five things:  One, his possession of child

15   pornography on those devices, some of which were the exact same

16   items that he distribution to the undercover agent in the chat

17   room.  Two, other distribution and receipt of child pornography

18   in the same application that he used in this case, in text

19   messaging and other applications to other individuals not the

20   undercover agent, from July through November of 2023.  Thus,

21   overlapping the time period that he was communicating with the

22   agent.

23        THE COURT:  The time period here is November/December

24   of 2023?

25        MR. SCHILLER:  That's right.  So this extends just a

1   little bit before that.  We're not looking to admit chats that

2   he had back in, you know, 2000 or 1998, except for the prior

3   conviction because he was actually convicted of that.

4          And then there are three other small buckets of items

5   that we want to introduce that came out of his phones,

6   including evidence that he was engaging in chat rooms that were

7   entitled -- that were related to teen girl videos or had some

8   reference to "teen girls" in the name of the group chat that he

9   was -- that he had entered into.

10         The possession of photos or memes involving incest,

11  inbreeding, and dad-and-daughter sex.  There were countless

12  images on the defendant's phones that were essentially gifts or

13  memes where it's a photograph and then it has a tag line on it

14  describing, you know, some statement or act; all that involved

15  incest, inbreeding, dad-and-daughter sex.  Again, there were

16  hundreds of these, but we would select maybe three or four to

17  produce for the jury.

18         THE COURT:  Three or four what exactly?

19         MR. SCHILLER:  Images.

20         THE COURT:  Images of the memes?

21         MR. SCHILLER:  Yes.  The memes themselves are images.

22         THE COURT:  Okay.  So this, sort of, miscellaneous

23  third category, I think you started off saying "evidence of him

24  in chat rooms regarding teen girls."  How would that

25  materialize?  Are those pictures too?  Or --

1          MR. SCHILLER:  It is an extraction from his phone

2    showing a date and time that he entered a particular chat room

3    and the name of the chat room.  And all of that occurs in late

4    2023.

5          THE COURT:  Okay.  And then the memes or images you

6    said -- your proposal would be how many of those?

7          MR. SCHILLER:  I have my list.  Hold on one second,

8    Judge.

9          I have identified five out of the hundreds and hundreds

10   that exist.

11         THE COURT:  Can you give me an example of what one of

12   these memes says -- or shows?

13         MR. SCHILLER:  Sure.

14         One of them might show an adult male engaging in sex

15   with what appears to be a young girl, age unknown, and the tag

16   line would say something like "love impregnating my daughter."

17         THE COURT:  Okay.  What else is in this third bucket?

18         MR. SCHILLER:  The last part would be -- we found a

19   particular photo of a naked teen girl, and the words on the

20   photo say "are you a pedophile?" with a question mark.  "Our

21   survey says yes."  Those words are printed on the photo of what

22   appears to be a young, naked teen girl.  I siphoned that one

23   out separately.

24         THE COURT:  And all of this content you are saying

25   comes from either the cracked-screen phone found in the car or

1    the second phone found in his house?

2            MR. SCHILLER:  Correct.

3            THE COURT:  And when you say these memes or this

4    picture of the naked teen girl, is that just in the photo

5    library or where in the phone?

6            MR. SCHILLER:  Can I just have one second, Judge?

7            THE COURT:  Yes.

8            MR. SCHILLER:  We found them in several places within

9    the phone; sometimes in the photo library, sometimes

10   in -- within apps that he was using specifically, but

11   definitely in places he had access to.

12           THE COURT:  Okay.  The app that was used to communicate

13   with the undercover here, is that Kik?

14           MR. SCHILLER:  Yes, ma'am.

15           THE COURT:  And then -- because you mentioned other

16   applications that he used --

17           MR. SCHILLER:  Yes.

18           THE COURT:  -- in the -- in the second category of

19   information.  What other apps are in that one?

20           MR. SCHILLER:  Telegram.

21           THE COURT:  Okay.  So now you've, sort of, given me the

22   universe of stuff, at least to the best of your definition at

23   this point.  Now, can you argue why it should come in?

24           MR. SCHILLER:  Sure.  There is one other bucket of

25   stuff, though.

1          THE COURT:  Okay.

2          MR. SCHILLER:  I told you about the phones.  But then

3     also from the three Google accounts that belong to the

4     defendant, we found in there a substantial amount of child

5     pornography.  And we found a lot of the images and videos that

6     he sent to the undercover agent in those accounts and some

7     other stuff -- other -- excuse me -- other child pornography as

8     well.  So that's that final bucket.

9          THE COURT:  What is the time period for the Google

10    accounts?

11         MR. SCHILLER:  The images and videos we're considering

12    are all within the fall, leading up to December of -- I will

13    say the second half of 2023.  So it's all within a relative

14    time frame or the time frame of the charged indictment.

15         THE COURT:  Because when were the warrants on Google

16    served and then produced?

17         MR. SCHILLER:  After his arrest, they were

18    produced -- they were sought.  Google responded, I believe,

19    January of this year, maybe February.  We've --

20         THE COURT:  And you were asking to go how far back?

21         MR. SCHILLER:  I don't remember, Judge.  I'm sorry.  I

22    don't --

23         THE COURT:  Okay.  Well, that's -- my question is, just

24    in terms of the time period for the Google account return, are

25    we talking about just fall of 2023 content or going back years?

1      MR. SCHILLER:  It goes back years.  But we're going

2  to -- the information we're going to seek to produce to the

3  jury will be within 2023.  So it will be in the year of the

4  crime.  I have no problem limiting myself to that for the

5  Court.

6      THE COURT:  And in terms of the Google accounts, this

7  is actual images of child pornography?  What kinds of material?

8      MR. SCHILLER:  Yes, images and video of child

9  pornography and -- yeah, we've -- so that's the illegal

10  material.  The accounts also include images of the defendant.

11  Those aren't bad acts.  Those are just to show his ownership

12  over it; so we would, you know, probably move those in, but not

13  for other bad acts, just to show ownership over those accounts.

14      Those email accounts were connected to the Kik account

15  that he was using to communicate with the undercover agent in

16  this case as well.  So it's all connected together.  But the

17  motion specifically talks about the other bad acts that

18  otherwise have not been charged as crimes, even though they

19  are.

20      THE COURT:  Okay.  Any other items of evidence?

21      MR. SCHILLER:  No.  That covers everything, Your Honor.

22      THE COURT:  Okay.  So now we can run through your

23  analysis.

24      MR. SCHILLER:  Okay.  Thank you, ma'am.  Can I approach

25  the podium, if that's --

1          THE COURT:  Yes.

2          MR. SCHILLER:  Okay.  Thank you.

3          Judge, in my motion in limine I tried to break down for

4     the Court not only the items being sought -- sought to be

5     admitted that I have just described, but then referencing those

6     subheadings in my arguments so Your Honor can relate back as

7     you're reviewing it.  So just, for example -- and then I will

8     get to my argument -- but it will make more sense this way.

9          The section -- the section that I just went over with

10    the Court explaining the bad acts that we found from his phone,

11    the child pornography and whatnot, within the motion it's

12    within heading (I)(B)(2).  And then if you notice on page 7

13    where I start discussing the admissibility of this inextricably

14    intertwined, I reference it as section (I)(B)(2).  So this way,

15    as Your Honor is reviewing the motion in limine, within and

16    after today's hearing, it's easy to go back to the items I want

17    to admit and see exactly what we're referring to.

18         So for purposes of the inextricably intertwined

19    argument, for evidence to be considered inextricably

20    intertwined, it has to be "uncharged offense that arose out of

21    the same transaction or series of transactions as charged

22    offenses, necessary to complete the story of the crime, or" --

23    not "and," but "or" -- "inextricably intertwined with the

24    evidence regarding the charged offense."  And that's citing

25    *United States v. Troya*, 733 F.3d 1125, the Eleventh Circuit,

1    2003.

2            We find that that exists with two pieces of the

3    government's evidence as inextricably intertwined; and that is

4    the child pornography that we uncovered from his phones and

5    from the Google accounts.

6            Why are they inextricably intertwined and should be

7    admitted under that theory?  Well, as an initial matter, the

8    evidence overlaps temporally with the charged conduct.  So the

9    child pornography that we found is around the same time as his

10   distribution of child pornography in this case.

11           The uncharged possession of child pornography arose out

12   of the same series of transactions as the charged offenses and

13   is inextricably intertwined because -- well, let me -- sorry.

14   Let me strike that for a second and approach it a different

15   way.

16           The images and videos of child pornography found on the

17   defendant's phones and his Google accounts are necessary to

18   explain the context, motive, and setup of the crime.  Because,

19   for the defendant to distribute child pornography, he had to

20   possess it first.  So what we're showing the jury is how he

21   possessed it.

22           Now, if he was here in the Southern District of Florida

23   when he committed these crimes, we could charge him with that

24   material because we would have venue over it.  But he had it in

25   the Southern District of California where he was arrested.  So

1    we can't charge him with possession of it here.  We can charge

2    him with distribution with the agent.  But the items that he

3    possessed are part and parcel with how he had them to then

4    distribute them.  So that's one way that we believe it is

5    inextricably intertwined.

6         And simply put, Douglas possessed child pornography in

7    relation to and in furtherance of his distribution of child

8    pornography.

9         So it's not a complex argument I'm trying to make.  I

10   just -- it's because he had it that he was able to distribute

11   it.

12        THE COURT:  All right.  But that would only get you the

13   images that are the same ones he transmitted.

14        MR. SCHILLER:  I think -- I don't think it's limited to

15   that because he chose of his collection what to distribute to

16   the agent, and he did choose certain ones to distribute.  And

17   he could have chosen from any of the items that he had on his

18   phones and his Google accounts.  So I think it's the possession

19   of those materials that he possessed to, then, choose from to

20   distribute is what's inextricably intertwined.

21        Now, again, we're not going to look to show the jury --

22   I mean, he had thousands of images and videos of child

23   pornography across his two phones and his Google accounts.

24   We're going to pick a select few that we found, but also that

25   he, in fact, did distribute to the agent that we did find on

1   his phones and his Google accounts.  So it -- it's both,

2   really.

3          But I think that whether the Court finds that it's

4   inextricably intertwined or not, I think the Court will

5   certainly see that it, at the very least, falls under 404(b)

6   evidence or certainly 414 evidence.

7          So if the Court has no other questions, I will move on

8   to those areas as well.

9          THE COURT:  In terms of just volume, you said thousands

10  of images.

11         MR. SCHILLER:  Yes.  And videos.

12         THE COURT:  And that's across the spectrum of both

13  phones, plus Google accounts.

14         MR. SCHILLER:  Exactly.

15         THE COURT:  Okay.  When you say "thousands," are we

16  talking about 10,000?

17         MR. SCHILLER:  No.  No, we're not.  We're talking

18  about, I believe, around 2,000 on one device, several hundred

19  on another device, and several hundred across the Google

20  accounts.

21         THE COURT:  And some of the images in each of those

22  repositories match up with the images that were distributed?

23         MR. SCHILLER:  Yes, ma'am.

24         THE COURT:  Okay.  So now you can move on to 414.

25         MR. SCHILLER:  Thank you very much.

1       So Federal Rule of Evidence 414 is a very, very unique

2   rule and one that is typically rare for Courts to see and

3   prosecutors to attempt to use because it's rare that we have a

4   defendant with a previous conviction or one who has previously

5   done similar things to what they're doing now.

6       Federal Rule of Evidence 414 provides that in a

7   criminal case in which the defendant is accused of child

8   molestation, the Court may admit evidence that the defendant

9   committed any other molestation to be considered on any matter

10  to which it is relevant, including propensity.

11      This is much, much broader than 404(b) evidence that I

12  will get to in a few minutes.  So the statute plainly defines

13  all of this.  It says child molestation means a crime under

14  federal law or under state law involving -- and then it lists

15  several things -- any conduct prohibited by 18 U.S.C.

16  Chapter 110.  So that means any previous act, and where the

17  current act and the previous act are both chargeable under

18  Title 18, United States Code, Section 110, that's child

19  molestation.  Well, that includes 18 U.S.C. 2252(A) which is

20  what the defendant is charged with here, including distribution

21  of child pornography.  It counts as a child molestation

22  offense.  That was a broad term the legislature chose to

23  create, but then defined it specifically.

24      What I did not mention in my motion, and I -- and I

25  neglected to do this, and I apologize to the Court, but that it

 1   also includes contact between the defendant's body and the

 2   child's genitals or anus, or the defendant's genitals or anus

 3   and the child's body, or an attempt to do so.  And so his act

 4   of enticement of a minor in this case is, in fact, that attempt

 5   to do that act.  And his previous conviction, as I have

 6   outlined in my motion, was his attempt to do that as well.

 7         So because both the previous conviction for

 8   distribution of child pornography, possession of child

 9   pornography, and his attempted solicitation all fall under the

10   414 definition of child molestation, and so do his current

11   charges, the evidence then is considered 414 evidence and so is

12   the other child pornography he possessed.  It is, by

13   definition, admissible for propensity evidence.  And it's

14   important because -- and I will get to this also in the 404(b)

15   argument.  But one of the things I'm under the impression that

16   the defense may lodge as a defense is that -- and excuse my

17   colloquy, but "some other dude did it."  It wasn't him.  It was

18   someone else who was behind the phone during the distribution

19   or some kind of chatting, but it wasn't him.

20         And so to that end, he actually made that exact same

21   argument in his trial back in 2011.  So that's another reason

22   why we would be seeking to admit it.  But under 414, we could

23   admit -- once that evidence is admitted, if the Court grants

24   it, the government can argue that evidence for propensity.  He

25   did it once, he is still doing it now.  And the law was created

1    that way specifically because -- and I'm -- I will quote from

2    the legislature when they wrote the law.  On page 10 of my

3    motion it says "the practical effect of the new rules is to put

4    evidence of uncharged offenses and sexual assault and child

5    molestation cases on the same footing as other types of

6    relevant evidence that are not subject to a special

7    exclusionary rule.  The presumption is in favor of admission.

8    The underlying legislative judgment is that the evidence

9    admissible pursuant to the proposed rules is typically relevant

10    and probative, and that its probative value is normally not

11    outweighed by the risk of prejudice or other averse effects."

12         Early -- a little bit earlier on the page, on page 10

13    of my motion, I wrote that, "In contrast to Rule 404(b)" --

14    which I will get to in just a minute, the -- "which generally

15    prohibits character and propensity evidence, 414 authorizes

16    admission and consideration of evidence of an uncharged

17    offense" -- in this case some of it is charged, four were

18    previously charged -- "for its bearing on any matter to which

19    it's relevant.  This includes the defendant's propensity to

20    commit sexual assault or child molestation offenses and the

21    assessment of -- the probability or improbability that the

22    defendant has been falsely or mistakenly accused in such an

23    offense."  So we can use it for that exact purpose.

24         So, in my motion I cited to several Eleventh Circuit

25    cases upholding this exact proposition that the government is

1    offering.  I offered on page 11, *United States v. Baker*,

2    680 Fed.App'x 861, an Eleventh Circuit case from 2017, where

3    the Court affirmed the admission under Rule 414 of a prior

4    conviction for child molestation and a possession of child

5    pornography case.  So in that --

6         THE COURT:  Was that just the conviction itself or was

7    it the underlying details?

8         MR. SCHILLER:  Details.

9         In *United States v. Levinson*, which actually took place

10   in the Southern District of Florida, 504 Fed.App'x 824,

11   Eleventh Circuit, 2013, the Court held that, "Finding evidence

12   that the defendant engaged in child molestation properly was

13   admitted under 414 to prove he had a, quote, 'disposition of

14   character' that makes it more likely that he committed the

15   charged act of child molestation."

16        THE COURT:  Okay.  I under the authorities that you

17   have cited.

18        So you're certain that the Baker case involved a

19   situation in which the government, for example, called a

20   witness to talk about the exact evidence of the prior crime,

21   rather than just admitting the judgment itself?

22        MR. SCHILLER:  I said yes before.  I'm pretty sure

23   that's the case.  But you know what, Judge?  I -- I am not

24   100 percent.  I apologize.  No.

25        THE COURT:  We will check that.

1          MR. SCHILLER:  Okay.

2          THE COURT:  Okay.  And so 414, your point is it's very

3    broad, it permits propensity evidence, and that all of the

4    evidence you're seeking to admit falls under the definition.

5          Anything further on 414?

6          MR. SCHILLER:  No, ma'am.  The only thing -- the only

7    part of the government's evidence it's seeking to admit that

8    doesn't fall under the 414 is that smaller bucket of the memes

9    and the teen chat room and those particular things because I

10   don't think they fall under the definition of child

11   molestation.  Everything else, I believe, does.

12         So, finally, if I may move on to the 404(b) argument.

13         THE COURT:  Yes.

14         MR. SCHILLER:  As this Court is well aware, 404(b)

15   evidence is admissible to prove motive, intent, plan,

16   knowledge, or the lack of mistake or accident.  And for 404(b)

17   evidence to be admitted, the government has to show that one of

18   those issues is an issue in the case other than to show the

19   defendant's bad character; to be supported by sufficient

20   evidence that allows the jury to determine that the defendant

21   committed the acts; and is not unduly prejudicial.  And, again,

22   I will deal with the third part at the end of my arguments.

23         So the evidence is being offered for a proper purpose.

24   It's being offered to show his motive, his intent, his purpose,

25   and his lack or mistake of accident to commit these crimes in

1    distributing child pornography to the undercover agent and

2    attempting to solicit her notional child.  The evidence tends

3    to prove that it was the defendant and not anyone else who

4    engaged in the charged conduct of distributing child

5    pornography and attempting to entice a minor.  Indeed, the

6    defendant in this case, like I said before, is likely to assert

7    that either he didn't knowingly or intentionally engage in the

8    conduct, that he was not the person that communicated with the

9    UC, some combination thereof, and is needed to prove that the

10   defendant had the knowledge and intent to commit these crimes

11   because of what he has done in the past.

12        Again, I'm not going to cite -- I know the Court knows

13   the case law, but when a defendant pleads not guilty, he is

14   placing these things that arise out of 404(b), motive, intent,

15   opportunity, lack of mistake, at issue the moment he pleads not

16   guilty.  And, absent an affirmative removal of intent and

17   motive, identity, lack of mistake, as issues in the case, the

18   government is entitled to introduce the evidence to establish

19   the facts without having to wait for the defendant to put those

20   matters at issue.

21        Just a couple of cases I wanted to bring to the Court's

22   attention.  I already mentioned the *Levinson* case because there

23   was 414 evidence in there.  Well, the Court also made a 404(b)

24   finding and it "affirmed the admission of the defendant's

25   possession of real and virtual child pornography as evidence of

1    the defendant's purpose and intent in coercing a minor to

2    engage in sexual activity."

3         Because of his chats with an undercover agent in that

4    case, what they found on his computer regarding child

5    pornography was admissible as 404(b) evidence.

6         Interestingly, though, the defendant seems to, in

7    his -- well, he filed a -- a motion to prevent this information

8    from coming in, in advance of my omnibus motion, and then filed

9    a response.  But what he said in the motion was the government

10   can make its case without such additional extrinsic evidence.

11   The Fairness Doctrine dictates this type of evidence should not

12   be allowed in trial.

13        I don't see anywhere in the defendant's arguments that

14   they don't think the evidence that I'm offering is either

15   inextricably intertwined or 404(b) or 414 evidence.  I think

16   the argument they're making is a 403 argument; that it is more

17   prejudicial than probative.  And I think that's where they're

18   resting their decision or their arguments.  And, again, I will

19   get to that in just a second.

20        As far as the evidence itself, because as I said, there

21   is -- the government has to show that it was the defendant who

22   did these prior bad acts.  The prior conviction and the

23   evidence of that will take the place -- will take the form of

24   one or two witnesses who will testify briefly as to what

25   occurred back in 2006, resulting in his 2011 conviction.

1         And then with -- regarding what we found on the two

2    phones and the Google accounts, there will be one witness, the

3    digital forensic examiner, Scott Unger from HSI, who we

4    provided notice of expertise about in separate filings, who

5    will testify to what he uncovered on the defendant's devices

6    and in the Google accounts.  So we are talking a matter of

7    three witnesses.  And time-wise, it will be a very, very small

8    part of the trial compared to what the jury's going to hear in

9    the form of these chats that took place between the defendant

10   and the undercover agent.

11        And I have to caution the Court because these chats are

12   nothing short of sadistic and masochistic.  They are gruesome

13   in their description of what the defendant wants to do to the

14   notional 8-year-old child.  And his plan to do so, first in

15   Florida, and then eventually allowing them to come to

16   California and do it there, up until the day of his arrest.

17        So that is going to be overwhelming evidence for the

18   jury to hear; I don't mean as far as guilt or not guilt.  I'm

19   just saying it's overwhelming to hear.

20        The other stuff that the government wants to introduce

21   as either inextricably intertwined, 404(b) or 414, pales in

22   comparison to the actual charged crime.  So when we talk about

23   a 404 -- 3 analysis, I want the Court to understand that's

24   where the government is coming from.

25        I cited a few cases that are similar to this case in my

1   motion.  And specifically at docket entry 62, page 17, I cited

2   to *United States v. Cooper*, 433 Fed.App'x 875, the

3   Eleventh Circuit from 2011.  And there the Court held that,

4   finding under Rule 403, evidence of the defendant's prior

5   conviction of child molestation were highly probative because

6   it tended to show that Cooper, the defendant, intentionally

7   downloaded child pornography, that he knew the images were

8   child pornography, and that he had not mistaken them for

9   anything other than that.

10          And so, yes, the evidence is prejudicial because it is

11   grotesque, but so is what he is charged with.  And so I think

12   what the defense is going -- has already argued in their

13   motions, and they do so today, is that the 403 analysis somehow

14   creates an unduly prejudicial situation with the other bad acts

15   the government wants to introduce.  So that's just not the

16   case.  It is small in comparison to what the government will

17   present in this case involving his 6- to 7-week-long chats with

18   an undercover agent, his distribution of child pornography, his

19   plan to meet up with the agent, the day in question when he is

20   finally taken down and arrested and having a grenade to protect

21   himself or hurt others so he won't be arrested or whatever he

22   thinks is going on, his interview with the agents, and then

23   what we ended up finding on his devices even relevant to the

24   charges in this case.  That will be the overwhelming

25   presentation of evidence.  The other bad acts, as I have

1    outlined them, will be a small portion.

2          I'm not going to go through them all, but 19 through 20

3    of my motion, I listed Eleventh Circuit case after

4    Eleventh Circuit case -- Second's, Eighth's, and Tenth Circuit

5    cases, that in these exact circumstances, tell the Court that

6    the 403 analysis does not prevent the introduction of the

7    evidence.

8          And just by way of one example, I cited to

9    *U.S. v. Carino*, 368 Fed.App'x 929, out of the Eleventh Circuit

10   from 2010.  And there the Court approved the use of the

11   defendant's sister testifying that the defendant sexually

12   abused her when he was 16 years old, but was facing trial now

13   32 years later with possessing and receiving child pornography.

14         I look at that case and I go, so he's charged with

15   possessing images and distributing images and videos of child

16   pornography.  And the other bad act evidence that comes in is

17   his actual physical molestation of his sister.  And the

18   Eleventh Circuit upheld that.  We are a far cry from that in

19   this case with the evidence that the government wants to admit.

20         But the other reason I brought that case up and the

21   lineage of cases that follow is because one of the arguments

22   that defense makes is that the prior conviction evidence --

23   which, convicted in 2011, occurred in 2006 -- is way too remote

24   in time and fails the 404 -- 3 test.  There is case after case

25   allowing similar evidence even farther dated back than that to

1   be admitted at trial.  414 and 404(b) do not have time

2   limitations on them.  There are some rules of evidence, like

3   609, that do, but not 404(b) and not 414.

4        THE COURT:  All right.  Well, just because the

5   Eleventh Circuit has authorized or affirmed a District Court's

6   exercise of discretion in one direction does not mean that that

7   is, sort of, the one and only way to address evidentiary

8   disputes.  And so, I guess, my question is, given the

9   overwhelming weight of evidence, as you've described it, of the

10  charged offenses, why is it necessary, for example, focusing

11  just on the 2011 conviction, to go into the underlying details

12  of that crime?

13       MR. SCHILLER:  Sure, Judge.

14       Because the defendant's going to argue that he didn't

15  do this.

16       THE COURT:  But we don't know that yet.

17       MR. SCHILLER:  Well --

18       THE COURT:  Why not just table this discussion until we

19  know what the defense actually is?

20       MR. SCHILLER:  So because then what would happen is --

21  and I have seen this happen in trial before -- where I don't

22  lodge the argument as 414 or 404(b), and then in closing

23  argument a defense attorney stands up and says, "Ladies and

24  gentlemen, nobody can put my client behind the keyboard or

25  behind the phone at the moment he did this because nobody was

1    there seeing him."

2         The defendant in his interview to the police already

3    told them and blamed this on some other guy named Adrianne who

4    was squatting at his home.  Adrianne was there the day the

5    search warrant was executed.  I can't predict what the defense

6    is going to argue on cross or on -- or on their case in chief.

7    But if I don't present the evidence, there is nothing stopping

8    them from arguing in closing:  Someone else did this.  We don't

9    know who.  Maybe it was the guy living in the house.  Maybe it

10   was his mother.  Who knows?  But the government can't prove at

11   that moment in time it was him.

12        So that's why this other bad act evidence goes to

13   attack that argument.  If I wait -- if we wait until closings,

14   the case has been closed and I can't reopen it.  So I think

15   what the Eleventh Circuit and other courts around the country

16   have said is it's admissible for -- especially under 414 -- to

17   show propensity.  That's allowed.  And the legislature, in

18   creating that law, was trying to give the courts a mechanism

19   whereby it could admit that because it was relevant.  Because

20   jurors should be able to consider that when deciding the case

21   that's charged before them.

22        THE COURT:  Just so I understand, the only evidence

23   that you are saying that, in your view, does not fall into 414

24   territory are the five memes that you are going to select?

25        MR. SCHILLER:  Sorry, Judge.  I want to answer you

1    without hesitation.  That's one of them, yes, ma'am.

2         THE COURT:  That's it?  Everything else, in your view,

3    satisfies the definition of child molestation?

4         MR. SCHILLER:  So on page 5 of my motion at Section 2,

5    line items C, D, and E, those things -- those three things that

6    fall within that smaller bucket I do not believe qualify under

7    414.  But everything else that we're seeking to admit -- the

8    facts of his prior conviction, his distribution and possession

9    of child pornography in other instances, all fall under 414,

10   yes, ma'am.

11        THE COURT:  Okay.

12        MR. SCHILLER:  And, again, I want to -- I want to offer

13   the Court -- we found so much of this evidence, but we are

14   going to limit it to a very, very small sampling.  Just so the

15   jury understands, that we found an amount of this material,

16   here is one example.  And that's --

17        THE COURT:  Right.  But you still want to introduce

18   into evidence that there -- presumably through the forensic

19   examiner, that thousands of images of child pornography was

20   found in total; correct?

21        MR. SCHILLER:  Sure.  And I don't think that's an

22   unfair thing to ask because we're giving the jury the

23   understanding of what his collection was like for the purposes

24   of distributing, as inextricably intertwined, and because it

25   shows his intent and motive and opportunity to commit this

1    crime.

2        If he had but a few and distributed those but a few, he

3    could make the argument, "Well, I didn't put those on there and

4    I don't know how they got distributed."  But when you have

5    thousands on there, it's very difficult to make that argument.

6        THE COURT:  Other than your initial argument that -- on

7    the inextricably intertwined, that in order for him to have

8    distributed, he would have necessarily had to possess some.

9    And so, at least for the images that he distributed, those

10   would fall under that inextricably intertwined doctrine.  Do

11   you have any other arguments to support admission under

12   inextricably intertwined?

13       MR. SCHILLER:  Nothing outside of my motion and what I

14   made today, Your Honor.

15       THE COURT:  But in your motion, what else do you say

16   with respect to inextricably intertwined?  Like, why is all

17   this other stuff necessary to complete the story of the crime,

18   for example?

19       MR. SCHILLER:  So -- and forgive me if I mentioned

20   these already.  But the evidence tends to corroborate, explain

21   or provide necessary context for evidence regarding the charged

22   offenses of distributing child pornography.  It's necessary to

23   explain the context and motive and setup of the crime.  It is

24   necessary to show the defendant's prurient interest, as

25   evidenced by his collection of child pornography, as part of

1    the story of the case; and the logical and coherent explanation

2    of how the defendant successfully distributed child pornography

3    to the undercover agent necessarily requires an explanation of

4    what he was distributing and how much he had to distribute in

5    the first place.

6          THE COURT:  Okay.  All right.  Thank you.

7          Let me hear from Mr. Kirby.

8          MR. SCHILLER:  Oh, Judge, I'm sorry.

9          THE COURT:  Yes.

10         MR. SCHILLER:  The defense made two other arguments in

11   their response to my motion in limine that I responded to per

12   the Court's order, and I just wanted to address those facts.

13         THE COURT:  Okay.  Quickly.

14         MR. SCHILLER:  Okay.  Thank you.

15         At docket entry 67 I responded to the defendant's other

16   arguments that he made regarding the -- his dislike of

17   admitting the facts of the prior underlying case.  He made an

18   argument regarding the age of the child.  In our case the age

19   of the child was 8.  And in the 2011 conviction, the underlying

20   age of the child was a teenager.  And he said, well, those two

21   aren't the same, so it shouldn't be admitted.

22         The reason his argument fails is because the age of the

23   child beyond the defendant's belief that it was a child, i.e.,

24   under the age of 18, is not an element of the crime.  So it's

25   irrelevant how old the child actually is.  The crime punishes

1    that it's a child.  It doesn't matter whether she's 6, 12, or

2    17; the crime punishes the fact that she was a child.  And this

3    only goes towards the enticement count in Count 8 of the

4    indictment.  They're not making that argument as to the child

5    pornography distribution charges.

6         They also made a second argument that the defendant's

7    intent of whether he was actually going to meet this pretend

8    child in 2006 was the same as it was here.  And, again, it's

9    really irrelevant because whether he was -- I'm sorry -- not

10   whether his intent was to meet the child, but whether he was

11   actually going to meet the child.  Because the actual meeting

12   of the child or showing up to the hotel is not an element of

13   the crime at all.  It might be part of the substantial step

14   taken, but it's not physically needed as an element of the

15   crime.

16        And, finally, it's interesting.  The defendant makes no

17   argument to exclude his prior convictions for distribution and

18   possession of child pornography other than remoteness.  So in

19   their trying to keep out the facts of the prior conviction,

20   their arguments seem to be mostly on the solicitation count.

21   And their arguments to keep out the fact that he previously

22   possessed and distributed child pornography are about

23   remoteness in time about when it happened, 2006 versus 2023.

24        Thank you.

25        THE COURT:  Okay.  Just so I understand the paperwork

1   for the prior conviction, I think you attached, at 59-1, some

2   documents from the Superior Court of California.

3          MR. SCHILLER:  Yes, ma'am.

4          THE COURT:  So I'm trying to understand exactly what

5   would be shown to the jury.  Is it that four-page document?  Or

6   does it then go on -- I see a minute entry pronouncement of

7   judgment sheet.

8          MR. SCHILLER:  What I think is necessary is the -- the

9   felony complaint that lists the four charges and then the

10  docket entry showing the conviction of those four charges.

11  Because the docket entry --

12         THE COURT:  Working with what I have in front of me

13  unless you have something else --

14         MR. SCHILLER:  Sorry, ma'am.

15         THE COURT:  I'm looking at 59-1.

16         MR. SCHILLER:  Yes, ma'am.

17         THE COURT:  It says DNA test status summary.

18         MR. SCHILLER:  Yes.

19         THE COURT:  And it says charged summary.  Is that what

20  you are talking about?

21         MR. SCHILLER:  I am.  So page 1, 2, 3, and 4 of that

22  docket entry.

23         THE COURT:  That's just the information summary?

24         MR. SCHILLER:  It's the charges.  It's the actual filed

25  charges against the defendant.

1        THE COURT:  And then where is the actual conviction?

2        MR. SCHILLER:  So that exists in a docket entry at

3    59-1, page 6.

4        THE COURT:  Okay.  Now, in terms of the witness that

5    you have lined up to testify about the facts underlying that

6    prior conviction, who is that?

7        MR. SCHILLER:  So we have the -- two witnesses.  We

8    have the undercover agent from Texas who was actually chatting

9    with the defendant back in 2006.  And we have the lead

10   investigator who executed the search warrants and performed the

11   investigation in San Diego where the defendant was eventually

12   arrested.

13       So what happened was, these two agents were actually

14   working a case simultaneously and they were able to identify

15   each other as having -- they were investigating the same

16   defendant, Michael Douglas.  And so the Texas agent basically

17   turned over his undercover chat case to the San Diego agent,

18   and then San Diego made the arrest, including those charges.

19   The case went to trial and was upheld on appeal.

20       We are working to try to get the transcripts of those

21   trials -- of that trial if they still exist and trying to

22   identify the court reporter.

23       THE COURT:  Okay.

24       MR. SCHILLER:  So --

25       THE COURT:  All right.  Thank you.

1          MR. SCHILLER:  Thank you, ma'am.

2          THE COURT:  Mr. Kirby.

3          MR. KIRBY:  Yes, Your Honor.

4          Your Honor, as an initial matter, as to the

5    inextricably intertwined argument, I think Your Honor is

6    correct.  I mean, I think what that goes to is the -- the

7    images that were actually sent to the minor.  I don't have

8    any -- any -- or the notional minor.  I don't have an argument

9    as to those.

10          As to the other images, I think that really does come

11   in under other act evidence, and it goes too far afield.  I

12   mean, I -- I have -- I think we could maybe split things down a

13   little bit, but when we're talking about images of

14   daddy-and-daughter sex, that has nothing to do with this case.

15   Or talking about teenage girls; that has nothing to do with

16   this case.  I think the government is trying to prove too much.

17   They have their case.  They have the evidence that pertains to

18   this case.  And to bring in all of these other images is just

19   inviting error, and -- and it's -- it's swallowing the facts of

20   the case itself.  I think the government should be limited to

21   the images that were sent to the minor -- to the notional

22   minor.

23          And as far as the conviction -- the prior conviction,

24   404(b), I think it's good they have 414 because, really, it's

25   nothing but propensity evidence.  It doesn't go for anything

1   aside from that.  And it is 13 years old, Your Honor, which,

2   granted, there have been cases where certainly older

3   convictions or acts related to older convictions have come in.

4   But in a vacuum and given the rest of the evidence the

5   government has, it's unnecessary and it's excessive and

6   it's -- it's remote and it shouldn't -- it shouldn't come in.

7          The government's now saying it's two witnesses.  In

8   their motion in limine they said three to four witnesses.

9   You know, they're witnesses maybe we would want to call.  And

10  then we have a trial within a trial of the 404(b) prior act,

11  which is going to take us far afield of what this case is

12  actually about.

13         I would ask that Your Honor not allow the 2011

14  conviction or the facts underlying it to come in, and that the

15  pornography that we're discussing -- and there is plenty of it

16  that was sent to this notional child -- that the government be

17  limited to that pornography.

18         THE COURT:  So is your argument just one rooted in 403,

19  ultimately?

20         MR. KIRBY:  Not as to 404 -- not as to the 404(b) part

21  of the argument.  I think it is propensity evidence, and I

22  don't think it's permissible under 404(b).

23         As to 414, yes, it's a 403 argument, Your Honor.  I

24  think, given the -- the facts underlying the conviction as to

25  the prior 2011 conviction, yes.  As far as all of these other

1    thousands of images -- and, again, there has been no -- okay,

2    so we have five memes, but other than that, we have thousands

3    of images.  I'm not sure what the government is even seeking to

4    introduce at this point, quite frankly.

5         THE COURT:  So you would agree, at least so far, that

6    other than the memes, everything they've described in terms of

7    images of child pornography found on the phone or in the Google

8    accounts, that those would meet the definition of child

9    molestation under 414?

10        MR. KIRBY:  Not necessarily, Your Honor, because I

11   don't know what they're seeking to -- to introduce.  I mean,

12   we're talking about thousands of images.  For them to just say

13   they all meet it, I mean, I think it's -- the burden should be

14   upon them to categorize the images and say these are the

15   images, not just all of them.

16        You know, I mean, I can, I suppose, dig through 10,000

17   images and make an argument image by image, but I think that

18   should -- the government is seeking to introduce them.  I think

19   the burden should be on them to -- to determine "these are the

20   images we want to put in, this is why they meet that

21   definition," rather than just say all of them do.  I mean, I

22   don't know what "all of them" means.

23        THE COURT:  Well, in the motion they itemized the

24   categories of what they found, for example, on his phones.  And

25   they have broken it out between possession of child

1    pornography, some of which is the same as what he distributed

2    allegedly to the undercover in this case.  And you have

3    distribution and receipt of child pornography.  I mean, is it

4    your argument that it isn't actually child pornography?

5            MR. KIRBY:  No.  My argument is that rather than

6    just -- just painting a broad brush, that the government needs

7    to set forth the images it seeks to introduce rather than just

8    state that it's going to introduce some subset of these images

9    and leave it upon me to make individual arguments as to

10   individual images that I don't even have.  I don't even know

11   which ones they're talking about yet.

12           THE COURT:  Okay.  Well, it sounds like generally what

13   I have heard is a 403 argument, and then an argument, I guess,

14   about further particularization of the particular evidence.

15           Anything further in response to the government's motion

16   in limine?

17           MR. KIRBY:  No, Your Honor.

18           THE COURT:  Okay.  All right.  Well, on the suppression

19   issues I'm going to reserve ruling pending September 2nd, which

20   is the date, as I said, by which the defense can file a motion

21   to reopen on the limited consent issue.

22           I'm going to ask the government to file on the docket

23   the exhibits that were introduced today.  And if they cannot be

24   filed because they're audio recordings, then file them

25   appropriately with the clerk of court.

1          As far as the passport, that should be the subject of a

2     motion to seal, and then any redactions to be discussed between

3     the parties, and then filed on the docket after agreement with

4     respect to any PII.

5          Any questions just about the housekeeping submission of

6     evidence?

7          MR. SCHILLER:  Judge, I just have one.  Regarding the

8     motion to seal the passport, I just want to make sure I

9     understand the Court correctly.  You want me to file a motion

10    requesting permission to seal it?  Or just, generally speaking,

11    based on the Court's ruling here today?

12         THE COURT:  Yes.

13         MR. SCHILLER:  Okay.  I understand.  Thank you.

14         THE COURT:  Okay.  There were no defense exhibits

15    submitted during this hearing.  Is that correct, Mr. Kirby?

16         MR. KIRBY:  That is correct, Your Honor.

17         THE COURT:  Okay.  So I will take those motions to

18    suppress under advisement, as I said, pending receipt of that

19    eventual motion to reopen, if one is filed.  Again, reminding

20    Mr. Kirby of the expert notice rules.

21         With respect to the motion in limine, I do think it is

22    a bit too early to rule definitively on those issues.  As a

23    general matter, I think the government presents very compelling

24    arguments for admission under the various rules that are cited,

25    but it's too early to make those final calls without really

1   seeing the evidence in more granular detail.

2        What I can generally say at this point, at least with

3   respect to the 2011 conviction, is that -- is that it's unclear

4   to me why particular evidence about that prior conviction in

5   the form of witness testimony is necessary beyond the fact of

6   conviction and the certified paperwork.

7        So I'm inclined not to permit discussion of the

8   underlying details of the prior conviction because I think

9   under 403 the balancing ultimately tips in favor of defense on

10  that issue.

11       But with respect to all of the additional evidence that

12  was described found on the phone and in the Google accounts, I

13  think it's likely that much of that does warrant admission.

14  But, again, those decisions need to be made closer to trial.

15       So I'm not going to issue any final rulings except for

16  what has been agreed to definitively.  And so I will

17  memorialize something to that effect, but no final ruling on

18  the in limine motion will be made at this time.

19       Any questions before we adjourn?

20       MR. KIRBY:  No questions, Your Honor.  There

21  is -- there is -- there are a couple of matters.

22       Mr. -- Mr. Douglas is now at St. Lucie in protective

23  custody.  He was previously in West Palm Beach where he was in

24  general population and was assaulted several times.  I would

25  ask if the Court could request that the marshals keep him in

1    St. Lucie where he can be in protective custody.

2          And also, Your Honor -- and I -- we went down this road

3    before, but, Your Honor, he was asked -- he was prescribed a

4    neck brace earlier and he has never received it.  Again, I'd

5    just ask if the Court could simply ask the medical staff to

6    look at that, please.

7          THE COURT:  These requests -- these sort of on-the-fly

8    requests for medical attention or particular placement, they

9    need to be made in the form of written motions with supporting

10   details to provide context.  I can't just rule in the abstract

11   and start making recommendations about placement or medical

12   services without more information.

13         So that's -- that's the Court's ruling at this time.

14   It's premature and not properly filed.

15         MR. KIRBY:  I will file something with Your Honor.

16   Thank you.

17         THE COURT:  Okay.

18         Anything from the government?

19         MR. SCHILLER:  Thank you, Judge.  Yes.

20         In regards to the admissibility of the underlying facts

21   of the 2011 conviction, the only two witnesses the government

22   would purport to have testify to that are both out of district,

23   and we need to make travel arrangements for them.  Does the

24   Court anticipate letting us know before the end of the year

25   or -- a trial time, if you know?  And, if not, I understand.  I

1    just -- I want to try to be able to -- because they're not law

2    enforcement now, they're retired; so we need to make those

3    travel arrangements for them.

4         THE COURT:  It seems to me now the answer is no.  If

5    something were to change mid-trial, and there becomes -- it

6    becomes evident that there is a need for the government to be

7    able to present this evidence, then you would know.  But I

8    can't give you any additional forewarning other than that.  So

9    that's that.

10        MR. SCHILLER:  Thank you, Judge.

11        MR. HOWES:  Judge, if I -- excuse me.  If I might,

12   I -- I might have been wrong, and I will let the Court know.  I

13   have gone through 200 -- 352 of 1,091 pages of discovery.  So I

14   might have missed those -- those search warrants.  So I just

15   wanted the government to know if I'm wrong, I will tell them

16   I'm wrong.

17        THE COURT:  Okay.  Well, then you all should confer

18   about discovery.  And if there is something you think you don't

19   have yet, then I'm sure Mr. Schiller will provide it to you.

20        MR. SCHILLER:  Absolutely, Your Honor.

21        THE COURT:  Okay.

22        MR. HOWES:  We have had no problems of that nature,

23   Judge.  We have actually been very courteous and professional

24   in all these matters.

25        THE COURT:  Okay.  And just overall, Mr. Kirby, do you

1   have a sense that this is going to trial?

2           MR. KIRBY:  Yes, Your Honor.

3           THE COURT:  Okay.  Thank you.

4           The Court is in recess.

5       (These proceedings concluded at 2:23 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4    I hereby certify that the foregoing is an accurate

5    transcription of the proceedings in the above-entitled matter.

6

7

     DATE:  01-22-2025        /s/Laura Melton
8                             LAURA E. MELTON, RMR, CRR, FPR
                              Official Court Reporter
9                             United States District Court
                              Southern District of Florida
10                            Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

'

'disposition [1]‗ - 1:112:13
'lawyer' [1]‗ - 1:75:22
'recent [1]‗ - 1:47:11
'you're [1]‗ - 1:73:22

---

1

1 [24]‗ - 1:13:25‗, 1:14:2‗, 1:14:14‗, 1:14:16‗, 1:14:17‗, 1:16:2‗, 1:16:10‗, 1:16:17‗, 1:16:20‗, 1:17:14‗, 1:17:19‗, 1:17:21‗, 1:18:2‗, 1:18:3‗, 1:18:5‗, 1:19:2‗, 1:26:23‗, 1:27:1‗, 1:48:17‗, 1:57:10‗, 1:61:8‗, 1:61:9‗, 1:84:1‗, 1:125:21
1,091 [1]‗ - 1:134:13
10 [6]‗ - 1:12:18‗, 1:33:22‗, 1:47:25‗, 1:48:21‗, 1:111:2‗, 1:111:12
10,000 [2]‗ - 1:108:16‗, 1:129:16
100 [1]‗ - 1:112:24
1006 [2]‗ - 1:89:14‗, 1:92:9
102 [1]‗ - 1:50:12
1032 [1]‗ - 1:44:15
10:00 [1]‗ - 1:8:23
10th [1]‗ - 1:48:15
11 [2]‗ - 1:47:25‗, 1:112:1
110 [2]‗ - 1:109:16‗, 1:109:18
1120 [1]‗ - 1:50:12
1125 [1]‗ - 1:105:25
11:40 [2]‗ - 1:77:16‗, 1:78:3
11:43 [1]‗ - 1:78:11
12 [7]‗ - 1:16:13‗, 1:21:12‗, 1:22:5‗, 1:28:9‗, 1:47:25‗, 1:49:24‗, 1:124:1
12/12/23 [1]‗ - 1:28:20
1239 [1]‗ - 1:85:25
1293 [1]‗ - 1:86:24
12th [3]‗ - 1:21:16‗, 1:39:21‗, 1:49:8
13 [4]‗ - 1:14:22‗, 1:48:1‗, 1:51:11‗, 1:128:1
1318 [1]‗ - 1:78:25
14 [2]‗ - 1:51:11‗, 1:55:10
14-year-old [2]‗ - 1:86:5

‗, 1:86:6
1406 [1]‗ - 1:49:25
15 [5]‗ - 1:12:13‗, 1:33:22‗, 1:51:11‗, 1:58:10
15-minute [2]‗ - 1:8:19‗, 1:12:18
1567 [1]‗ - 1:51:17
16 [1]‗ - 1:118:12
17 [3]‗ - 1:18:9‗, 1:117:1‗, 1:124:2
18 [4]‗ - 1:109:15‗, 1:109:18‗, 1:109:19‗, 1:123:24
19 [3]‗ - 1:14:15‗, 1:14:18‗, 1:118:2
1983 [1]‗ - 1:44:16
1988 [1]‗ - 1:50:1
1990 [1]‗ - 1:51:17
1991 [1]‗ - 1:55:11
1997 [1]‗ - 1:50:13
1998 [1]‗ - 1:100:2
1:00 [1]‗ - 1:78:4
1:02 [1]‗ - 1:78:11

---

2

2 [25]‗ - 1:4:22‗, 1:4:24‗, 1:5:5‗, 1:5:11‗, 1:6:9‗, 1:8:4‗, 1:15:8‗, 1:16:18‗, 1:29:7‗, 1:29:10‗, 1:29:12‗, 1:37:5‗, 1:40:18‗, 1:41:18‗, 1:42:21‗, 1:43:7‗, 1:44:6‗, 1:69:15‗, 1:88:4‗, 1:95:24‗, 1:96:4‗, 1:98:23‗, 1:121:4‗, 1:125:21
2,000 [1]‗ - 1:108:18
2-hour [2]‗ - 1:14:19‗, 1:16:10
20 [5]‗ - 1:24:6‗, 1:24:8‗, 1:30:12‗, 1:52:20‗, 1:118:2
200 [1]‗ - 1:134:13
2000 [1]‗ - 1:100:2
2003 [5]‗ - 1:20:18‗, 1:28:9‗, 1:39:22‗, 1:42:23‗, 1:106:1
2004 [1]‗ - 1:47:9
2006 [5]‗ - 1:115:25‗, 1:118:23‗, 1:124:8‗, 1:124:23‗, 1:126:9
2010 [5]‗ - 1:20:15‗, 1:20:16‗, 1:20:19‗, 1:74:17‗, 1:118:10
2011 [20]‗ - 1:72:22‗, 1:86:1‗, 1:86:24‗, 1:95:21‗, 1:96:9‗, 1:96:22‗, 1:97:2‗,

1:97:18‗, 1:98:1‗, 1:98:25‗, 1:110:21‗, 1:115:25‗, 1:117:3‗, 1:118:23‗, 1:119:11‗, 1:123:19‗, 1:128:13‗, 1:128:25‗, 1:132:3‗, 1:133:21
2013 [1]‗ - 1:112:11
2017 [1]‗ - 1:112:2
2019 [1]‗ - 1:73:10
2021 [1]‗ - 1:40:23
2023 [10]‗ - 1:16:13‗, 1:21:12‗, 1:22:5‗, 1:99:20‗, 1:99:24‗, 1:101:4‗, 1:103:13‗, 1:103:25‗, 1:104:3‗, 1:124:23
21 [1]‗ - 1:20:23
2252(A [1]‗ - 1:109:19
23-80219 [2]‗ - 1:8:25‗, 1:78:13
23-cr-80219 [1]‗ - 1:3:6
23-mj-8589-RMM [2]‗ - 1:42:24‗, 1:44:6
25 [1]‗ - 1:15:1
27th [1]‗ - 1:43:17
2:23 [1]‗ - 1:135:5
2nd [3]‗ - 1:38:8‗, 1:38:12‗, 1:130:19

---

3

3 [17]‗ - 1:4:22‗, 1:10:20‗, 1:13:16‗, 1:18:15‗, 1:36:3‗, 1:37:6‗, 1:37:11‗, 1:43:16‗, 1:69:24‗, 1:72:3‗, 1:82:7‗, 1:88:5‗, 1:95:18‗, 1:98:24‗, 1:116:23‗, 1:118:24‗, 1:125:21
30 [5]‗ - 1:18:17‗, 1:24:8‗, 1:30:12‗, 1:52:20‗, 1:52:22
32 [1]‗ - 1:118:13
33-second [1]‗ - 1:48:22
35 [1]‗ - 1:18:5
35-minute [1]‗ - 1:12:19
352 [1]‗ - 1:134:13
36 [2]‗ - 1:69:16‗, 1:83:5
368 [1]‗ - 1:118:9
369 [1]‗ - 1:74:17

---

4

4 [12]‗ - 1:4:22‗, 1:10:20‗, 1:13:17‗, 1:14:15‗, 1:14:18‗, 1:14:21‗, 1:48:15‗, 1:56:22‗, 1:72:3‗, 1:92:23‗,

1:98:24‗, 1:125:21
403 [10]‗ - 1:98:17‗, 1:98:19‗, 1:115:16‗, 1:117:4‗, 1:117:13‗, 1:118:6‗, 1:128:18‗, 1:128:23‗, 1:130:13‗, 1:132:9
404 [3]‗ - 1:116:23‗, 1:118:24‗, 1:128:20
404(b [21]‗ - 1:93:4‗, 1:95:10‗, 1:98:15‗, 1:108:5‗, 1:109:11‗, 1:110:14‗, 1:111:13‗, 1:113:12‗, 1:113:14‗, 1:113:16‗, 1:114:14‗, 1:114:23‗, 1:115:5‗, 1:115:15‗, 1:116:21‗, 1:119:1‗, 1:119:3‗, 1:119:22‗, 1:127:24‗, 1:128:10‗, 1:128:20
404(b) [2]‗ - 1:97:22‗, 1:128:22
41 [9]‗ - 1:77:6‗, 1:80:1‗, 1:80:14‗, 1:82:15‗, 1:82:17‗, 1:82:23‗, 1:83:8‗, 1:83:13
41-minute [1]‗ - 1:82:22
413 [1]‗ - 1:95:10
414 [30]‗ - 1:93:4‗, 1:97:20‗, 1:97:22‗, 1:98:15‗, 1:108:6‗, 1:108:24‗, 1:109:1‗, 1:109:6‗, 1:110:10‗, 1:110:11‗, 1:110:22‗, 1:111:15‗, 1:112:3‗, 1:112:13‗, 1:113:2‗, 1:113:5‗, 1:113:8‗, 1:114:23‗, 1:115:15‗, 1:116:21‗, 1:119:1‗, 1:119:3‗, 1:119:22‗, 1:120:16‗, 1:120:23‗, 1:121:7‗, 1:121:9‗, 1:127:24‗, 1:128:23‗, 1:129:9
41:01 [2]‗ - 1:80:7‗, 1:80:8
42 [7]‗ - 1:18:9‗, 1:74:17‗, 1:77:7‗, 1:79:4‗, 1:79:12‗, 1:82:23‗, 1:83:8
42:11 [2]‗ - 1:79:18‗, 1:81:22
42:21 [1]‗ - 1:80:12
43 [1]‗ - 1:18:6
433 [1]‗ - 1:117:2
45 [1]‗ - 1:52:22
46 [4]‗ - 1:4:10‗, 1:6:11‗, 1:56:21‗, 1:85:17
463 [1]‗ - 1:44:15
47 [6]‗ - 1:4:9‗, 1:12:5‗, 1:15:8‗, 1:69:10‗, 1:83:4‗, 1:85:17
48 [1]‗ - 1:85:17

4:15 [1]– 1:70:10
4:25 [1]– 1:70:3
4A [2]– 1:46:17–, 1:46:20
4B [2]– 1:46:17–, 1:46:20
4th [1]– 1:43:17

---

**5**

5 [11]– 1:4:22–, 1:10:20–,
1:15:1–, 1:41:7–, 1:49:8–,
1:54:4–, 1:72:3–, 1:95:24–,
1:96:4–, 1:98:24–, 1:121:4
50-minute [1]– 1:12:20
504 [1]– 1:112:10
525 [1]– 1:21:24
54 [1]– 1:6:11
54-1 [1]– 1:60:24
541 [1]– 1:47:9
55 [2]– 1:14:14–, 1:14:17
56 [2]– 1:14:14–, 1:14:17
56:29 [3]– 1:18:13–,
1:18:15–, 1:82:9
56:35 [1]– 1:18:11
57:30 [2]– 1:18:19–,
1:82:9
59-1 [3]– 1:125:1–,
1:125:15–, 1:126:3
594 [1]– 1:78:25
5:22 [1]– 1:70:14

---

**6**

6 [5]– 1:4:22–, 1:10:20–,
1:117:17–, 1:124:1–, 1:126:3
60 [12]– 1:4:22–, 1:5:11–,
1:8:5–, 1:10:12–, 1:41:9–,
1:41:18–, 1:42:21–, 1:48:1–,
1:49:24–, 1:51:10–, 1:53:14
–, 1:58:9
609 [1]– 1:119:3
61 [2]– 1:12:7–, 1:69:10
615 [1]– 1:47:9
62 [4]– 1:95:24–, 1:96:5–,
1:98:21–, 1:117:1
639 [2]– 1:85:25–,
1:86:24
67 [1]– 1:123:15
680 [1]– 1:112:2

---

**7**

7 [14]– 1:4:23–, 1:5:15–,
1:6:13–, 1:8:7–, 1:10:20–,

1:10:21–, 1:42:23–, 1:52:16
–, 1:53:17–, 1:68:14–,
1:73:11–, 1:74:17–, 1:88:4–,
1:105:12
7-week-long [1]–
1:117:17
733 [1]– 1:105:25
75 [1]– 1:21:24
7:45 [3]– 1:53:16–,
1:53:24–, 1:54:6

---

**8**

8 [16]– 1:4:23–, 1:4:24–,
1:5:5–, 1:5:12–, 1:8:4–,
1:11:4–, 1:11:18–, 1:41:19–,
1:43:7–, 1:43:11–, 1:54:4–,
1:75:2–, 1:88:4–, 1:92:22–,
1:123:19–, 1:124:3
8-year-old [4]– 1:49:3–,
1:51:8–, 1:55:24–, 1:116:14
824 [1]– 1:112:10
83 [4]– 1:4:12–, 1:88:2–,
1:92:22–, 1:95:18
835 [1]– 1:49:25
861 [1]– 1:112:2
875 [1]– 1:117:2

---

**9**

9 [3]– 1:41:18–, 1:52:8–,
1:88:4
911 [1]– 1:51:17
929 [1]– 1:118:9
933 [1]– 1:55:10
968 [1]– 1:55:10
9:00 [4]– 1:22:5–, 1:40:3
–, 1:52:17–, 1:53:12
9:30 [1]– 1:53:25
9:44 [1]– 1:8:23
9:45 [1]– 1:53:25

---

**A**

a.m. [3]– 1:8:23–, 1:78:11
abandoned [1]– 1:85:4
able [12]– 1:12:24–,
1:42:12–, 1:59:4–, 1:61:25–,
1:62:5–, 1:86:11–, 1:89:17–,
1:107:10–, 1:120:20–,
1:126:14–, 1:134:1–, 1:134:7
absent [1]– 1:114:16
absolutely [5]– 1:34:10–,
1:41:2–, 1:44:24–, 1:75:25–,

1:134:20
abstract [1]– 1:133:10
abundant [1]– 1:50:5
abuse [1]– 1:55:24
abused [1]– 1:118:12
access [1]– 1:102:11
accident [2]– 1:113:16–,
1:113:25
accordance [2]– 1:39:3
–, 1:87:16
according [1]– 1:90:16
accordingly [1]– 1:92:14
account [3]– 1:89:4–,
1:103:24–, 1:104:14
accounts [25]– 1:88:21–,
1:89:3–, 1:89:5–, 1:93:3–,
1:98:4–, 1:98:7–, 1:103:3–,
1:103:6–, 1:103:10–, 1:104:6
–, 1:104:10–, 1:104:13–,
1:104:14–, 1:106:5–,
1:106:17–, 1:107:18–,
1:107:23–, 1:108:1–,
1:108:13–, 1:108:20–,
1:116:2–, 1:116:6–, 1:129:8
–, 1:132:12
accurate [1]– 1:83:8
accused [2]– 1:109:7–,
1:111:22
acknowledged [1]–
1:71:1
acknowledgement [3]–
1:12:18–, 1:15:5–, 1:83:23
acknowledges [2]–
1:84:14–, 1:84:17
acquiesced [1]– 1:84:10
acquired [1]– 1:67:14
act [11]– 1:100:14–,
1:109:16–, 1:109:17–,
1:110:3–, 1:110:5–, 1:112:15
–, 1:118:16–, 1:120:12–,
1:127:11–, 1:128:10
acting [1]– 1:35:6
actions [2]– 1:42:11–,
1:42:15
activity [2]– 1:50:24–,
1:115:2
acts [10]– 1:98:13–,
1:104:11–, 1:104:13–,
1:104:17–, 1:105:10–,
1:113:21–, 1:115:22–,
1:117:14–, 1:117:25–,
1:128:3
actual [9]– 1:4:13–,
1:60:18–, 1:65:17–, 1:104:7

–, 1:116:22–, 1:118:17–,
1:124:11–, 1:125:24–,
1:126:1
added [1]– 1:49:6
addition [4]– 1:12:25–,
1:41:8–, 1:69:15–, 1:82:17
additional [12]– 1:6:23–,
1:9:16–, 1:13:7–, 1:19:1–,
1:19:6–, 1:35:14–, 1:37:20–,
1:39:9–, 1:50:9–, 1:115:10–,
1:132:11–, 1:134:8
address [6]– 1:59:15–,
1:82:8–, 1:82:24–, 1:98:18–,
1:119:7–, 1:123:12
addressed [3]– 1:4:1–,
1:68:3–, 1:86:7
addresses [1]– 1:99:12
addressing [2]– 1:3:3–,
1:8:21
adds [1]– 1:71:17
adjourn [1]– 1:132:19
admissibility [3]–
1:89:22–, 1:105:13–,
1:133:20
admissible [10]– 1:5:23
–, 1:68:20–, 1:73:13–,
1:96:12–, 1:99:5–, 1:110:13
–, 1:111:9–, 1:113:15–,
1:115:5–, 1:120:16
admission [17]– 1:13:22
–, 1:14:1–, 1:16:9–, 1:17:18–,
1:36:2–, 1:46:19–, 1:57:13–,
1:61:5–, 1:61:23–, 1:62:4–,
1:111:7–, 1:111:16–, 1:112:3
–, 1:114:24–, 1:122:11–,
1:131:24–, 1:132:13
admit [15]– 1:35:17–,
1:60:19–, 1:62:7–, 1:93:4–,
1:97:21–, 1:100:1–, 1:105:17
–, 1:109:8–, 1:110:22–,
1:110:23–, 1:113:4–, 1:113:7
–, 1:118:19–, 1:120:19–,
1:121:7
admitted [11]– 1:16:17–,
1:29:11–, 1:36:9–, 1:57:5–,
1:105:5–, 1:106:7–, 1:110:23
–, 1:112:13–, 1:113:17–,
1:119:1–, 1:123:21
admitting [2]– 1:112:21–,
1:123:17
Adrianne [3]– 1:22:23–,
1:120:3–, 1:120:4
adult [1]– 1:101:14
advance [3]– 1:17:10–,
1:89:11–, 1:115:8
advise [2]– 1:14:7–,

1:15:10

advisement [1]_ - 1:131:18

affidavit [4]_ - 1:40:21_, 1:90:13_, 1:90:18_, 1:91:15

affidavits [5]_ - 1:21:3_, 1:89:22_, 1:89:24_, 1:90:24, 1:90:25

affirm [3]_ - 1:7:5_, 1:19:16_, 1:25:22

affirmed [3]_ - 1:112:3_, 1:114:24_, 1:119:5

afield [2]_ - 1:127:11_, 1:128:11

afternoon [2]_ - 1:49:2_, 1:78:12

afterwards [1]_ - 1:70:5

age [6]_ - 1:101:15_, 1:123:18_, 1:123:20_, 1:123:22_, 1:123:24

agent [35]_ - 1:5:16_, 1:23:9_, 1:25:4_, 1:40:1_, 1:48:22_, 1:49:5_, 1:49:15_, 1:51:4_, 1:67:5_, 1:67:6_, 1:71:2_, 1:71:7_, 1:80:24_, 1:81:17_, 1:84:15_, 1:86:14 _, 1:93:15_, 1:93:17_, 1:99:16_, 1:99:20_, 1:99:22 _, 1:103:6_, 1:104:15_, 1:107:2_, 1:107:16_, 1:107:25_, 1:114:1_, 1:115:3 _, 1:116:10_, 1:117:18_, 1:117:19_, 1:123:3_, 1:126:8 _, 1:126:16_, 1:126:17

Agent [17]_ - 1:3:11_, 1:4:15_, 1:15:3_, 1:19:13_, 1:19:14_, 1:20:10_, 1:23:10 _, 1:23:14_, 1:27:7_, 1:28:3_, 1:31:7_, 1:31:22_, 1:34:22_, 1:35:2_, 1:40:2_, 1:40:12_, 1:52:19

AGENT [2]_ - 1:3:14, 1:20:5

Agents [1]_ - 1:53:17

agents [32]_ - 1:15:10_, 1:22:9_, 1:22:11_, 1:22:12_, 1:23:10_, 1:26:4_, 1:29:20_, 1:41:3_, 1:42:11_, 1:51:13_, 1:52:16_, 1:52:21_, 1:56:11 _, 1:58:3_, 1:63:8_, 1:66:9_, 1:68:15_, 1:69:17_, 1:70:1_, 1:70:3_, 1:70:20_, 1:72:5_, 1:72:12_, 1:73:3_, 1:74:9_, 1:75:21_, 1:75:25_, 1:77:9_, 1:83:19_, 1:84:20_, 1:117:22 _, 1:126:13

ago [1]_ - 1:41:4

agree [19]_ - 1:9:11_, 1:9:20_, 1:11:20_, 1:16:7_, 1:45:14_, 1:47:13_, 1:64:20 _, 1:65:8_, 1:65:14_, 1:68:8_, 1:73:22_, 1:73:24_, 1:89:17 _, 1:96:1_, 1:96:7_, 1:96:10_, 1:96:17_, 1:96:19_, 1:129:5

agreed [14]_ - 1:9:9_, 1:10:10_, 1:10:14_, 1:11:5_, 1:11:16_, 1:11:21_, 1:12:2_, 1:12:8_, 1:67:13_, 1:74:1_, 1:77:25_, 1:86:6_, 1:86:7_, 1:132:16

agreeing [3]_ - 1:5:21_, 1:11:23_, 1:88:6

agreement [5]_ - 1:8:3_, 1:87:22_, 1:95:12_, 1:95:16 _, 1:131:3

agrees [3]_ - 1:15:20_, 1:15:21_, 1:84:19

Aisha [2]_ - 1:3:11_, 1:15:3

alert [1]_ - 1:32:14

Alexander [1]_ - 1:49:25

alleged [1]_ - 1:95:23

allegedly [1]_ - 1:130:2

allow [2]_ - 1:89:6_, 1:128:13

allowed [2]_ - 1:115:12_, 1:120:17

allowing [2]_ - 1:116:15_, 1:118:25

allows [1]_ - 1:113:20

almost [3]_ - 1:40:25_, 1:53:12_, 1:98:24

alone [3]_ - 1:23:6_, 1:23:7 _, 1:58:8

amber [1]_ - 1:53:17

ambiguous [1]_ - 1:74:19

America [2]_ - 1:3:6_, 1:78:14

amount [4]_ - 1:54:2_, 1:99:11_, 1:103:4_, 1:121:15

amounts [1]_ - 1:81:5

anal [2]_ - 1:48:20_, 1:68:16

analysis [5]_ - 1:66:7_, 1:104:23_, 1:116:23_, 1:117:13_, 1:118:6

animal [2]_ - 1:49:6_, 1:66:22

Anna [1]_ - 1:81:18

announce [1]_ - 1:22:15

announcing [1]_ - 1:22:14

answer [7]_ - 1:73:17_, 1:73:23_, 1:76:25_, 1:77:9_, 1:77:12_, 1:120:25_, 1:134:4

anticipate [1]_ - 1:133:24

anus [2]_ - 1:110:2

anyway [1]_ - 1:77:16

apologies [2]_ - 1:18:14_, 1:32:19

apologize [6]_ - 1:16:3_, 1:17:3_, 1:69:25_, 1:89:1_, 1:109:25_, 1:112:24

app [2]_ - 1:68:17_, 1:102:12

appeal [2]_ - 1:42:9_, 1:126:19

appear [1]_ - 1:32:24

appearance [1]_ - 1:3:7

appeared [3]_ - 1:48:19_, 1:48:24_, 1:54:17

appellate [2]_ - 1:98:25_, 1:99:1

application [7]_ - 1:35:18 _, 1:36:4_, 1:37:6_, 1:40:23_, 1:41:4_, 1:91:15_, 1:99:18

applications [3]_ - 1:91:1 _, 1:99:19_, 1:102:16

applies [3]_ - 1:48:2_, 1:66:2_, 1:74:25

appreciate [1]_ - 1:47:19

approach [9]_ - 1:20:1_, 1:27:2, 1:31:17_, 1:37:2_, 1:37:18_, 1:39:14_, 1:61:3_, 1:104:24_, 1:106:14

approaching [1]_ - 1:37:5

appropriate [3]_ - 1:74:4 _, 1:74:9_, 1:92:6

appropriately [1]_ - 1:130:25

approved [1]_ - 1:118:10

approximate [1]_ - 1:54:11

apps [2]_ - 1:102:10_, 1:102:19

area [8]_ - 1:30:3_, 1:33:24 _, 1:42:7_, 1:42:8_, 1:68:6_, 1:68:21_, 1:95:15_, 1:97:11

areas [7]_ - 1:47:4_, 1:47:5 _, 1:87:22_, 1:88:5_, 1:95:12 _, 1:97:25_, 1:108:8

argue [8]_ - 1:4:18_, 1:15:25_, 1:81:20_, 1:84:7_, 1:102:23_, 1:110:24_, 1:119:14_, 1:120:6

argued [1]_ - 1:117:12

argues [1]_ - 1:41:14

arguing [1]_ - 1:120:8

argument [56]_ - 1:15:23 _, 1:16:1_, 1:39:11_, 1:40:14 _, 1:51:18_, 1:56:17_, 1:56:18_, 1:56:20_, 1:62:11 _, 1:65:22_, 1:66:2_, 1:66:3_, 1:68:2_, 1:69:24_, 1:70:16_, 1:70:24_, 1:71:23_, 1:82:18 _, 1:83:15_, 1:83:22_, 1:84:1 _, 1:84:13_, 1:84:25_, 1:85:4 _, 1:96:23_, 1:97:23_, 1:98:9 _, 1:105:8_, 1:105:19_, 1:107:9_, 1:110:15_, 1:110:21_, 1:113:12_, 1:115:16_, 1:119:22_, 1:119:23_, 1:120:13_, 1:122:3_, 1:122:5_, 1:122:6 _, 1:123:18_, 1:123:22_, 1:124:4_, 1:124:6_, 1:124:17 _, 1:127:5_, 1:127:8_, 1:128:18_, 1:128:21_, 1:128:23_, 1:129:17_, 1:130:4_, 1:130:5_, 1:130:13

arguments [20]_ - 1:59:22 _, 1:69:2_, 1:77:1_, 1:80:22_, 1:85:7_, 1:85:12_, 1:85:14_, 1:85:20_, 1:105:6_, 1:113:22 _, 1:115:13_, 1:115:18_, 1:118:21_, 1:122:11_, 1:123:10_, 1:123:16_, 1:124:20_, 1:124:21_, 1:130:9_, 1:131:24

arise [1]_ - 1:114:14

armed [2]_ - 1:55:17_, 1:56:2

arose [2]_ - 1:105:20_, 1:106:11

arrangements [2]_ - 1:133:23_, 1:134:3

arrest [49]_ - 1:21:4_, 1:21:13_, 1:22:8_, 1:41:15_, 1:42:14_, 1:42:16_, 1:42:18 _, 1:42:24_, 1:43:3_, 1:43:12 _, 1:43:13_, 1:43:18_, 1:43:20_, 1:43:21_, 1:44:2_, 1:44:7_, 1:44:8_, 1:44:9_, 1:44:12_, 1:44:22_, 1:45:14 _, 1:46:6_, 1:47:7_, 1:47:12_, 1:47:14_, 1:48:7_, 1:48:16_, 1:49:9_, 1:49:14_, 1:51:19_, 1:55:25_, 1:56:3_, 1:57:3_, 1:58:3_, 1:58:14_, 1:63:21_, 1:64:2_, 1:65:23_, 1:68:1_, 1:68:15_, 1:68:20_, 1:68:24 _, 1:69:7_, 1:87:7_, 1:103:17 _, 1:116:16_, 1:126:18

arrested [13]_ - 1:22:6_,

1:31:25_, 1:39:21_, 1:40:4_, 1:42:15_, 1:52:18_, 1:53:11 _, 1:56:24_, 1:65:7_, 1:106:25_, 1:117:20_, 1:117:21_, 1:126:12
arrestee [1]_ - 1:47:10
articulate [2]_ - 1:58:21_, 1:58:22
ascertain [1]_ - 1:33:1
ascertained [1]_ - 1:63:8
aside [1]_ - 1:128:1
aspect [3]_ - 1:89:20_, 1:92:10_, 1:94:14
assault [2]_ - 1:111:4_, 1:111:20
assaulted [1]_ - 1:132:24
assert [1]_ - 1:114:6
assertion [1]_ - 1:84:18
assessment [2]_ - 1:51:24_, 1:111:21
assigned [1]_ - 1:21:18
assist [1]_ - 1:92:15
associated [1]_ - 1:97:13
attached [4]_ - 1:59:24_, 1:60:13_, 1:125:1
attack [1]_ - 1:120:13
attempt [4]_ - 1:109:3_, 1:110:3_, 1:110:4_, 1:110:6
attempted [1]_ - 1:110:9
attempting [2]_ - 1:114:2 _, 1:114:5
attention [5]_ - 1:21:11_, 1:49:23_, 1:73:6_, 1:114:22 _, 1:133:8
attorney [4]_ - 1:9:18_, 1:74:3_, 1:83:20_, 1:119:23
attorneys [2]_ - 1:7:15_, 1:8:2
audio [11]_ - 1:12:9_, 1:12:13_, 1:14:24_, 1:18:7_, 1:18:18_, 1:24:2_, 1:70:11_, 1:73:4_, 1:79:17_, 1:80:9_, 1:130:24
aunt [9]_ - 1:4:16_, 1:6:7_, 1:23:4_, 1:24:20_, 1:24:25_, 1:40:6_, 1:40:9_, 1:41:6_, 1:50:14
authorities [2]_ - 1:84:24 _, 1:112:16
authority [3]_ - 1:58:24_, 1:84:5_, 1:87:15
authorization [1]_ - 1:45:15

authorized [2]_ - 1:43:21 _, 1:119:5
authorizes [1]_ - 1:111:15
automobile [17]_ - 1:47:24_, 1:48:1_, 1:50:10_, 1:51:2_, 1:57:15_, 1:58:7_, 1:58:12_, 1:58:15_, 1:58:18 _, 1:59:3_, 1:65:22_, 1:65:25 _, 1:66:4_, 1:67:19_, 1:86:2_, 1:86:17_, 1:87:8
availability [2]_ - 1:4:18_, 1:6:20
avenues [1]_ - 1:39:20
averse [1]_ - 1:111:11
avoid [1]_ - 1:17:24
await [1]_ - 1:62:24
aware [4]_ - 1:22:6_, 1:32:16_, 1:32:21_, 1:113:14

## B

B-O-N-N-I-E [1]_ - 1:35:1
backwards [1]_ - 1:49:19
bad [11]_ - 1:98:13_, 1:104:11_, 1:104:13_, 1:104:17_, 1:105:10_, 1:113:19_, 1:115:22_, 1:117:14_, 1:117:25_, 1:118:16_, 1:120:12
baker [1]_ - 1:112:1
Baker [1]_ - 1:112:18
balancing [3]_ - 1:98:17_, 1:98:19_, 1:132:9
bank [2]_ - 1:50:2_, 1:50:3
banner [1]_ - 1:10:12
based [10]_ - 1:4:11_, 1:49:17_, 1:51:11_, 1:56:2_, 1:67:11_, 1:68:8_, 1:75:10_, 1:81:4_, 1:99:11_, 1:131:11
bases [1]_ - 1:46:4
basis [7]_ - 1:39:3_, 1:51:9 _, 1:57:12_, 1:58:8_, 1:58:24 _, 1:61:14_, 1:62:7
Beach [1]_ - 1:132:23
beads [1]_ - 1:48:20
bearing [1]_ - 1:111:18
became [1]_ - 1:21:17
becomes [2]_ - 1:134:5_, 1:134:6
bed [1]_ - 1:87:1
begin [3]_ - 1:5:10_, 1:77:25_, 1:83:22
beginning [4]_ - 1:6:9_,

1:12:17_, 1:12:19_, 1:70:10
begins [2]_ - 1:69:23_, 1:84:12
behalf [2]_ - 1:3:10_, 1:3:16
behind [3]_ - 1:110:18_, 1:119:24_, 1:119:25
belief [3]_ - 1:55:16_, 1:55:25_, 1:123:23
belong [1]_ - 1:103:3
belonged [1]_ - 1:25:22
belonging [2]_ - 1:21:14_, 1:99:10
below [1]_ - 1:31:7
Belton [2]_ - 1:44:25_, 1:87:7
Benitez [1]_ - 1:78:25
Bernal [2]_ - 1:78:24_, 1:78:25
Bernal-Benitez [1]_ - 1:78:25
best [4]_ - 1:48:11_, 1:71:24_, 1:72:18_, 1:102:22
better [2]_ - 1:90:8_, 1:90:10
between [8]_ - 1:23:17_, 1:33:10_, 1:43:17_, 1:87:22 _, 1:110:1_, 1:116:9_, 1:129:25_, 1:131:2
beyond [5]_ - 1:45:20_, 1:95:6_, 1:97:12_, 1:123:23 _, 1:132:5
birth [1]_ - 1:35:25
bit [7]_ - 1:47:1_, 1:81:9_, 1:92:8_, 1:100:1_, 1:111:12 _, 1:127:13_, 1:131:22
black [1]_ - 1:48:23
blades [1]_ - 1:50:20
blamed [1]_ - 1:120:3
blue [2]_ - 1:5:1_, 1:10:12
body [2]_ - 1:110:1_, 1:110:3
bomb [3]_ - 1:54:20_, 1:56:10_, 1:56:13
bombs [1]_ - 1:56:14
bond [1]_ - 1:42:10
BONNIE [1]_ - 1:20:5
Bonnie [4]_ - 1:4:15_, 1:19:13_, 1:19:22_, 1:35:1
Border [1]_ - 1:20:18
bottom [17]_ - 1:5:2_, 1:5:3 _, 1:5:10_, 1:5:15_, 1:6:9_, 1:8:7_, 1:10:16_, 1:10:20_,

1:27:18_, 1:42:21_, 1:44:5_, 1:52:16_, 1:53:14_, 1:53:15 _, 1:54:3_, 1:58:9_, 1:75:2
bought [2]_ - 1:49:7_, 1:67:14
box [1]_ - 1:68:22
brace [1]_ - 1:133:4
Brazel [1]_ - 1:50:11
BRAZEL [1]_ - 1:50:12
break [6]_ - 1:8:19_, 1:77:17_, 1:78:17_, 1:81:13 _, 1:85:19_, 1:105:3
breath [1]_ - 1:75:20
breathing [1]_ - 1:75:21
brief [2]_ - 1:8:22_, 1:94:23
briefly [1]_ - 1:115:24
bring [5]_ - 1:38:1_, 1:49:3_, 1:49:12_, 1:49:22_, 1:51:7_, 1:57:25_, 1:85:23_, 1:86:7_, 1:89:18_, 1:114:21 _, 1:127:18
brings [1]_ - 1:89:25
broad [3]_ - 1:109:22_, 1:113:3_, 1:130:6
broader [1]_ - 1:109:11
broken [4]_ - 1:49:19_, 1:49:20_, 1:99:8_, 1:129:25
brought [5]_ - 1:15:7_, 1:34:6_, 1:74:23_, 1:85:20_, 1:118:20
brown [1]_ - 1:48:19_, 1:48:24
brush [1]_ - 1:130:6
bucket [8]_ - 1:98:22_, 1:99:4_, 1:99:6_, 1:101:17_, 1:102:24_, 1:103:8_, 1:113:8 _, 1:121:6
buckets [4]_ - 1:98:10_, 1:98:14_, 1:98:21_, 1:100:4
bullet [1]_ - 1:49:9
burden [2]_ - 1:76:20_, 1:129:13_, 1:129:19
but.. [2]_ - 1:6:21_, 1:8:13
buy [1]_ - 1:50:23
BY [6]_ - 1:20:9_, 1:27:6_, 1:29:13, 1:31:21_, 1:32:20_, 1:34:9

## C

California [8]_ - 1:21:22_, 1:21:25_, 1:22:3_, 1:68:17_, 1:99:2_, 1:106:25_, 1:116:16 _, 1:125:2

candidly [1]_- 1:59:2

candor [1]_- 1:21:9

cannot [2]_- 1:45:21_,
1:130:23

capacity [1]_- 1:20:17

captured [1]_- 1:98:20

car [57]_- 1:4:18_, 1:42:13
_, 1:45:21_, 1:46:2_, 1:47:18
_, 1:48:13_, 1:50:2_, 1:50:5_,
1:50:7_, 1:50:13_, 1:50:16_,
1:50:19_, 1:50:21_, 1:50:22
_, 1:50:23_, 1:51:3_, 1:51:4_,
1:51:13_, 1:51:22_, 1:51:25
_, 1:52:5_, 1:53:7_, 1:53:9_,
1:53:21_, 1:54:18_, 1:56:4_,
1:56:12_, 1:56:18_, 1:57:9_,
1:57:10_, 1:57:13_, 1:57:16
_, 1:57:17_, 1:57:20_,
1:57:22_, 1:57:23_, 1:57:24
_, 1:57:25_, 1:58:4_, 1:63:20
_, 1:64:19_, 1:64:20_,
1:66:16_, 1:66:24_, 1:67:1_,
1:67:4_, 1:75:16_, 1:85:21_,
1:86:13_, 1:86:16_, 1:99:8_,
1:101:25

card [2]_- 1:68:17_,
1:70:19

care [1]_- 1:85:11

carefully [1]_- 1:77:17

Carino [1]_- 1:118:9

carried [1]_- 1:90:8

case [81]_- 1:3:4_, 1:3:6_,
1:8:24_, 1:16:11_, 1:42:22_,
1:44:6_, 1:44:7_, 1:44:15_,
1:47:18_, 1:49:3_, 1:51:2_,
1:51:24_, 1:55:22_, 1:58:5_,
1:58:10_, 1:59:25_, 1:62:19
_, 1:63:19_, 1:63:24_,
1:63:25_, 1:64:3_, 1:64:17_,
1:65:14_, 1:72:6_, 1:73:9_,
1:74:7_, 1:74:24_, 1:75:2_,
1:78:22_, 1:85:19_, 1:86:1_,
1:86:19_, 1:87:3_, 1:89:9_,
1:91:16_, 1:99:18_, 1:104:16
_, 1:106:10_, 1:109:7_,
1:110:4_, 1:111:17_, 1:112:2
_, 1:112:5_, 1:112:18_,
1:112:23_, 1:113:18_,
1:114:6_, 1:114:13_,
1:114:17_, 1:114:22_,
1:115:4_, 1:115:10_,
1:116:25_, 1:117:16_,
1:117:17_, 1:117:24_,
1:118:3_, 1:118:4_, 1:118:14
_, 1:118:19_, 1:118:20_,
1:118:24_, 1:120:6_,
1:120:14_, 1:120:20_,
1:123:1_, 1:123:17_,

1:123:18_, 1:126:14_,
1:126:17_, 1:126:19_,
1:127:14_, 1:127:16_,
1:127:17_, 1:127:18_,
1:127:20_, 1:128:11_,
1:130:2

cases [10]_- 1:49:22_,
1:51:1_, 1:89:8_, 1:111:5_,
1:111:25_, 1:114:21_,
1:116:25_, 1:118:5_,
1:118:21_, 1:128:2

Cash [1]_- 1:68:17

Cassisi [1]_- 1:38:8

catches [1]_- 1:75:20

categories [2]_- 1:88:22
_, 1:129:24

categorize [1]_- 1:129:14

category [2]_- 1:100:23_,
1:102:18

caused [1]_- 1:69:12

causes [2]_- 1:76:15_,
1:77:2

causing [1]_- 1:42:2

caution [1]_- 1:116:11

caveat [5]_- 1:5:13_,
1:5:14_, 1:36:5_, 1:38:3_,
1:47:17

ceased [1]_- 1:69:18

certain [4]_- 1:34:10_,
1:86:7_, 1:107:16_, 1:112:18

certainly [8]_- 1:13:2_,
1:46:23_, 1:47:4_, 1:66:5_,
1:68:12_, 1:108:5_, 1:108:6
_, 1:128:2

certainty [1]_- 1:45:22

certification [1]_- 1:37:15

certified [6]_- 1:35:18_,
1:35:20_, 1:36:3_, 1:96:11_,
1:97:1_, 1:132:6

Cesar [3]_- 1:23:10_,
1:28:3_, 1:31:7

chairs [1]_- 1:30:8

challenge [1]_- 1:38:15

chambers [1]_- 1:75:6

chance [2]_- 1:9:8_,
1:61:21

change [1]_- 1:134:5

Chapter [1]_- 1:109:16

character [2]_- 1:111:15
_, 1:113:19

character' [1]_- 1:112:14

charge [3]_- 1:106:23_,
1:107:1

chargeable [1]_-
1:109:17

charged [28]_- 1:55:15_,
1:93:10_, 1:93:12_, 1:93:13
_, 1:93:22_, 1:93:24_,
1:94:22_, 1:95:4_, 1:95:6_,
1:96:13_, 1:103:14_,
1:104:18_, 1:105:21_,
1:105:24_, 1:106:8_,
1:106:12_, 1:109:20_,
1:111:17_, 1:111:18_,
1:112:15_, 1:114:4_,
1:116:22_, 1:117:11_,
1:118:14_, 1:119:10_,
1:120:21_, 1:122:21_,
1:125:19

charges [8]_- 1:110:11_,
1:117:24_, 1:124:5_, 1:125:9
_, 1:125:10_, 1:125:24_,
1:125:25_, 1:126:18

charts [1]_- 1:89:2

chat [9]_- 1:57:9_, 1:99:16
_, 1:100:6_, 1:100:8_,
1:100:24_, 1:101:2_, 1:101:3
_, 1:113:9_, 1:126:17

chats [7]_- 1:93:8_,
1:93:14_, 1:100:1_, 1:115:3
_, 1:116:9_, 1:116:11_,
1:117:17

chatting [1]_- 1:110:19_,
1:126:8

check [1]_- 1:112:25

chief [1]_- 1:120:6

child [93]_- 1:35:8_,
1:43:19_, 1:48:9_, 1:48:17_,
1:49:3_, 1:49:7_, 1:49:11_,
1:49:15_, 1:55:24_, 1:57:25
_, 1:58:1_, 1:67:8_, 1:67:10_,
1:81:18_, 1:92:24_, 1:93:6_,
1:93:19_, 1:94:7_, 1:94:22_,
1:95:6_, 1:98:4_, 1:99:14_,
1:99:17_, 1:103:4_, 1:103:7
_, 1:104:7_, 1:104:8_,
1:105:11_, 1:106:4_, 1:106:9
_, 1:106:10_, 1:106:11_,
1:106:16_, 1:106:19_,
1:107:6_, 1:107:7_, 1:107:22
_, 1:109:7_, 1:109:13_,
1:109:18_, 1:109:21_,
1:110:8_, 1:110:10_,
1:110:12_, 1:111:4_,
1:111:20_, 1:112:4_,
1:112:12_, 1:112:15_,
1:113:10_, 1:114:1_, 1:114:2
_, 1:114:4_, 1:114:25_,
1:115:4_, 1:116:14_, 1:117:5
_, 1:117:7_, 1:117:8_,
1:117:18_, 1:118:13_,

1:118:15_, 1:121:3_, 1:121:9
_, 1:121:19_, 1:122:22_,
1:122:25_, 1:123:2_,
1:123:18_, 1:123:19_,
1:123:20_, 1:123:23_,
1:123:25_, 1:124:1_, 1:124:2
_, 1:124:4_, 1:124:8_,
1:124:10_, 1:124:11_,
1:124:12_, 1:124:18_,
1:124:22_, 1:128:16_,
1:129:7_, 1:129:8_, 1:129:25
_, 1:130:3_, 1:130:4

child's [2]_- 1:110:2_,
1:110:3

choice [1]_- 1:85:2

choose [2]_- 1:107:16_,
1:107:19

chose [2]_- 1:107:15_,
1:109:22

chosen [1]_- 1:107:17

Circuit [32]_- 1:49:25_,
1:50:12_, 1:51:16_, 1:55:11
_, 1:55:12_, 1:58:10_,
1:58:23_, 1:59:5_, 1:63:19_,
1:72:5_, 1:73:5_, 1:73:9_,
1:74:8_, 1:74:17_, 1:76:1_,
1:78:24_, 1:84:4_, 1:84:6_,
1:85:25_, 1:86:24_, 1:105:25
_, 1:111:24_, 1:112:2_,
1:112:11_, 1:117:3_, 1:118:3
_, 1:118:4_, 1:118:9_,
1:118:18_, 1:119:5_,
1:120:15

circumstances [10]_-
1:51:18_, 1:55:13_, 1:56:12
_, 1:56:15_, 1:63:20_,
1:63:23_, 1:65:9_, 1:76:2_,
1:85:1_, 1:118:5

citation [2]_- 1:63:18_,
1:64:16

cite [7]_- 1:47:8_, 1:51:15
_, 1:73:10_, 1:74:7_, 1:78:22
_, 1:86:21_, 1:114:12

cited [14]_- 1:49:24_,
1:50:11_, 1:51:17_, 1:55:10
_, 1:58:9_, 1:73:10_, 1:74:16
_, 1:75:1_, 1:111:24_,
1:112:17_, 1:116:25_,
1:117:1_, 1:118:8_, 1:131:24

citing [3]_- 1:44:15_,
1:84:23_, 1:105:24

civilians [1]_- 1:42:7

clarification [1]_- 1:59:23

clarified [1]_- 1:91:12

clarify [10]_- 1:6:3_,
1:31:12_, 1:72:12_, 1:73:1_,
1:74:5_, 1:74:9_, 1:75:19_,

1:78:16_, 1:84:22_, 1:90:3

clear [23]_ - 1:11:20_, 1:14:13_, 1:16:8_, 1:18:24_, 1:35:2_, 1:37:12_, 1:39:6_, 1:44:5_, 1:48:20_, 1:51:21_, 1:59:10_, 1:62:17_, 1:73:5_, 1:75:23_, 1:76:14_, 1:80:24 _, 1:81:2_, 1:81:5_, 1:82:20_, 1:83:10_, 1:83:18_, 1:85:5_, 1:97:5

cleared [1]_ - 1:56:10

clearest [1]_ - 1:39:25

clearly [6]_ - 1:56:2_, 1:61:24_, 1:75:14_, 1:81:24 _, 1:84:3_, 1:84:14

clerk [1]_ - 1:130:25

client [2]_ - 1:77:20_, 1:119:24

clip [10]_ - 1:18:10_, 1:18:15_, 1:18:20_, 1:70:7_, 1:82:5_, 1:82:6_, 1:82:7_, 1:82:10_, 1:82:12_, 1:84:1

clips [3]_ - 1:18:25_, 1:19:1 _, 1:82:3

close [1] - 1:74:21

closed [1]_ - 1:120:14

closer [1]_ - 1:132:14

closing [2]_ - 1:119:22_, 1:120:8

closings [1]_ - 1:120:13

CM/ECF [1]_ - 1:36:18

co [1]_ - 1:50:14

co-defendant [1] - 1:50:14

Code [1]_ - 1:109:18

coerced [1]_ - 1:40:8

coercing [1]_ - 1:115:1

coherent [3]_ - 1:33:4_, 1:33:7_, 1:123:1

collection [3]_ - 1:107:15 _, 1:121:23_, 1:122:25

colloquy [3]_ - 1:6:16_, 1:6:23_, 1:110:17

combat [1]_ - 1:40:14

combination [1]_ - 1:114:9

coming [3]_ - 1:48:8_, 1:115:8_, 1:116:24

commission [2]_ - 1:50:2 _, 1:50:5

commit [5]_ - 1:57:17_, 1:111:20_, 1:113:25_, 1:114:10_, 1:121:25

commits [1]_ - 1:57:19

committed [10]_ - 1:50:6 _, 1:55:16_, 1:56:19_, 1:57:14_, 1:75:16_, 1:98:13 _, 1:106:23_, 1:109:9_, 1:112:14_, 1:113:21

communicate [3]_ - 1:72:18_, 1:102:12_, 1:104:15

communicated [1]_ - 1:114:8

communicating [3]_ - 1:48:6_, 1:48:12_, 1:99:21

communications [2]_ - 1:56:25_, 1:67:12

compared [2]_ - 1:38:18_, 1:116:8

comparison [2]_ - 1:116:22_, 1:117:16

compartment [6]_ - 1:45:2_, 1:45:6_, 1:45:11_, 1:45:19_, 1:46:3_, 1:47:15

compelling [1]_ - 1:131:23

complaint [6]_ - 1:21:4_, 1:42:24_, 1:43:17_, 1:44:1_, 1:125:9

complete [2]_ - 1:105:22_, 1:122:17

completed [1]_ - 1:27:8

completing [1]_ - 1:23:10

complex [1]_ - 1:107:9

comply [1] - 1:38:24

compressed [1]_ - 1:89:5

computer [2]_ - 1:12:10_, 1:115:4

concealment [1]_ - 1:44:14

conceptually [2]_ - 1:57:12_, 1:58:5

concern [3]_ - 1:5:18_, 1:76:15_, 1:77:2

concerned [3]_ - 1:13:6_, 1:30:20_, 1:45:15

concerning [4]_ - 1:6:13_, 1:38:4_, 1:66:21_, 1:77:24

concerns [2]_ - 1:69:7_, 1:83:22

concluded [1]_ - 1:135:5

condoms [2]_ - 1:86:7_, 1:86:9

conduct [5]_ - 1:51:21_, 1:106:8_, 1:109:15_, 1:114:4 _, 1:114:8

conducted [4]_ - 1:15:2_, 1:16:11_, 1:52:22_, 1:91:7

confer [1]_ - 1:134:17

confirm [4]_ - 1:6:8_, 1:26:13_, 1:49:4_, 1:91:17

confusion [1]_ - 1:17:24

connected [2]_ - 1:104:14 _, 1:104:16

consecutively [1]_ - 1:20:22

consent [44]_ - 1:4:16_, 1:5:16_, 1:5:19_, 1:6:7_, 1:6:13_, 1:8:6_, 1:9:13_, 1:11:11_, 1:19:10_, 1:26:3_, 1:26:8_, 1:26:11_, 1:26:12_, 1:26:13_, 1:26:14_, 1:26:22 _, 1:27:7_, 1:27:10_, 1:27:11 _, 1:27:13_, 1:29:14_, 1:29:18_, 1:30:18_, 1:31:1_, 1:31:5_, 1:31:9_, 1:37:5_, 1:37:14_, 1:38:15_, 1:39:24 _, 1:40:10_, 1:40:11_, 1:40:17_, 1:40:24_, 1:41:6_, 1:52:20_, 1:53:24_, 1:54:6_, 1:59:11_, 1:62:14_, 1:62:16 _, 1:62:22_, 1:72:24_, 1:130:21

consented [1]_ - 1:30:15

consequently [1]_ - 1:58:14

consider [3]_ - 1:43:11_, 1:120:20

consideration [3]_ - 1:59:17_, 1:85:24_, 1:111:16

considered [5]_ - 1:73:2_, 1:74:19_, 1:105:19_, 1:109:9 _, 1:110:11

considering [1]_ - 1:103:11

consult [2]_ - 1:9:1_, 1:74:3

consumed [1]_ - 1:93:13

contact [1]_ - 1:110:1

contain [1]_ - 1:48:3

contained [9]_ - 1:42:18_, 1:42:23_, 1:48:5_, 1:51:6_, 1:51:10_, 1:56:5_, 1:64:8_, 1:66:16_, 1:68:17

contains [2]_ - 1:35:22_, 1:66:10

contend [1]_ - 1:79:4

content [2]_ - 1:101:24_, 1:103:25

contents [4]_ - 1:36:13_, 1:36:19_, 1:51:25_, 1:91:8

contest [1]_ - 1:66:15

contesting [1]_ - 1:11:14

context [10]_ - 1:47:14_, 1:58:7_, 1:77:7_, 1:78:21_, 1:80:2_, 1:80:14_, 1:106:18 _, 1:122:21_, 1:122:23_, 1:133:10

continue [11]_ - 1:18:1_, 1:18:5_, 1:44:3_, 1:52:25_, 1:62:5_, 1:63:1_, 1:70:16_, 1:71:20_, 1:72:25_, 1:77:13 _, 1:79:21

continues [1]_ - 1:10:19

continuous [1]_ - 1:45:24

continuously [1]_ - 1:10:19

contraband [5]_ - 1:35:6 _, 1:58:12_, 1:66:10_, 1:66:16_, 1:66:20

contrary [1]_ - 1:40:21

contrast [1]_ - 1:111:13

controlling [1]_ - 1:84:5

conversation [18]_ - 1:7:15_, 1:9:7_, 1:24:2_, 1:24:10_, 1:24:23_, 1:25:11 _, 1:25:12_, 1:30:1_, 1:30:17 _, 1:30:22_, 1:33:6_, 1:33:8_, 1:33:10_, 1:33:19_, 1:33:22 _, 1:40:7_, 1:40:9_, 1:75:11

conversations [6]_ - 1:6:1_, 1:24:11_, 1:24:16_, 1:86:4_, 1:93:16_, 1:93:19

convicted [2]_ - 1:100:3_, 1:118:23

conviction [41]_ - 1:72:23 _, 1:95:21_, 1:96:10_, 1:96:11_, 1:96:21_, 1:96:22 _, 1:97:2_, 1:97:13_, 1:97:18 _, 1:98:1_, 1:98:22_, 1:98:23 _, 1:99:1_, 1:100:3_, 1:109:4 _, 1:110:5_, 1:110:7_, 1:112:4_, 1:112:6_, 1:115:22 _, 1:115:25_, 1:117:5_, 1:118:22_, 1:119:11_, 1:121:8_, 1:123:19_, 1:124:19_, 1:125:1_, 1:125:10_, 1:126:1_, 1:126:6 _, 1:127:23_, 1:128:14_, 1:128:24_, 1:128:25_, 1:132:3_, 1:132:4_, 1:132:6 _, 1:132:8_, 1:133:21

convictions [3]_ - 1:124:17_, 1:128:3

convoluted [1]_ - 1:72:12

cooper [1]_ - 1:117:2

Cooper [1]_ - 1:117:6

copies [2] - 1:37:15..., 1:90:23

copy [6] - 1:9:25..., 1:10:8..., 1:12:24..., 1:35:20..., 1:36:3..., 1:37:8

cordial [2] - 1:23:18..., 1:40:7

Corirossi [1] - 1:22:23

corner [1] - 1:53:16

correct [41] - 1:6:5..., 1:6:14..., 1:14:20..., 1:15:15..., 1:17:2..., 1:17:16..., 1:20:24..., 1:22:1..., 1:22:10..., 1:28:7..., 1:28:21..., 1:31:4..., 1:31:25..., 1:32:1..., 1:33:12..., 1:33:13..., 1:33:15..., 1:33:23..., 1:33:24..., 1:34:18..., 1:35:4..., 1:38:11..., 1:38:15..., 1:39:8..., 1:47:16..., 1:47:17..., 1:55:5..., 1:68:8..., 1:87:8..., 1:87:10..., 1:89:15..., 1:96:6..., 1:96:10..., 1:96:12..., 1:97:2..., 1:97:3..., 1:102:2..., 1:121:20..., 1:127:6..., 1:131:15..., 1:131:16

correctly [3] - 1:90:22..., 1:95:1..., 1:131:9

corroborate [1] - 1:122:20

couch [5] - 1:30:5..., 1:30:9..., 1:33:18..., 1:48:20..., 1:48:24

counsel [18] - 1:3:10..., 1:3:18..., 1:59:20..., 1:69:17..., 1:70:5..., 1:71:8..., 1:71:23..., 1:74:11..., 1:75:13..., 1:77:21..., 1:78:18..., 1:79:9..., 1:80:18..., 1:80:24..., 1:81:25..., 1:82:19..., 1:83:18..., 1:98:16

Counsel [1] - 1:4:11

counsel's [2] - 1:6:20..., 1:78:8

count [4] - 1:82:17..., 1:90:12..., 1:124:3..., 1:124:20

Count [1] - 1:124:3

counterfeit [1] - 1:58:13

countless [1] - 1:100:11

country [1] - 1:120:15

counts [11] - 1:43:18..., 1:93:10..., 1:93:12..., 1:93:13..., 1:93:25..., 1:94:18..., 1:94:19..., 1:94:22..., 1:95:4..., 1:95:6..., 1:109:21

couple [3] - 1:74:22..., 1:114:21..., 1:132:21

course [13] - 1:36:16...,

1:39:2..., 1:40:8..., 1:46:3..., 1:49:13..., 1:51:14..., 1:61:21..., 1:63:13..., 1:67:7..., 1:67:15..., 1:77:24..., 1:82:8..., 1:93:7

Court [80] - 1:3:1..., 1:3:3..., 1:5:6..., 1:6:21..., 1:8:22..., 1:12:10..., 1:12:25..., 1:13:1..., 1:13:3..., 1:14:7..., 1:15:2..., 1:16:24..., 1:23:15..., 1:35:24..., 1:38:8..., 1:40:18..., 1:41:16..., 1:42:9..., 1:43:1..., 1:43:14..., 1:44:15..., 1:45:8..., 1:46:8..., 1:47:9..., 1:47:10..., 1:50:1..., 1:51:15..., 1:51:17..., 1:59:5..., 1:59:15..., 1:59:17..., 1:73:20..., 1:74:1..., 1:74:4..., 1:74:18..., 1:74:24..., 1:75:4..., 1:75:6..., 1:80:1..., 1:80:20..., 1:82:8..., 1:86:18..., 1:87:11..., 1:88:1..., 1:88:6..., 1:88:11..., 1:88:25..., 1:89:6..., 1:89:18..., 1:91:17..., 1:93:3..., 1:104:5..., 1:105:4..., 1:105:10..., 1:108:3..., 1:108:4..., 1:108:7..., 1:109:8..., 1:109:25..., 1:110:23..., 1:112:3..., 1:112:11..., 1:113:14..., 1:114:12..., 1:114:23..., 1:116:11..., 1:116:23..., 1:117:3..., 1:118:5..., 1:118:10..., 1:121:13..., 1:125:2..., 1:131:9..., 1:132:25..., 1:133:5..., 1:133:24..., 1:134:12..., 1:135:4

court [7] - 1:13:1..., 1:21:1..., 1:43:2..., 1:99:2..., 1:126:22..., 1:130:25

COURT [355] - 1:3:2..., 1:3:13..., 1:3:19..., 1:3:23..., 1:4:7..., 1:4:19..., 1:4:24..., 1:5:1..., 1:5:5..., 1:5:10..., 1:5:14..., 1:5:17..., 1:5:24..., 1:6:2..., 1:6:8..., 1:6:15..., 1:6:22..., 1:7:2..., 1:7:9..., 1:7:14..., 1:7:18..., 1:7:21..., 1:8:2..., 1:8:10..., 1:8:14..., 1:8:16..., 1:8:24..., 1:9:5..., 1:9:11..., 1:9:16..., 1:9:20..., 1:9:23..., 1:9:25..., 1:10:8..., 1:10:14..., 1:10:19..., 1:11:1..., 1:11:4..., 1:11:8..., 1:11:10..., 1:11:15..., 1:11:20..., 1:11:25..., 1:12:15..., 1:12:21..., 1:13:4..., 1:13:7..., 1:13:12..., 1:13:18..., 1:13:20..., 1:14:1..., 1:14:5..., 1:14:11..., 1:14:16..., 1:14:19..., 1:14:23..., 1:15:14..., 1:15:22..., 1:16:8..., 1:16:14..., 1:16:16..., 1:16:22..., 1:17:8..., 1:17:12..., 1:17:17..., 1:17:21..., 1:18:1..., 1:18:10..., 1:18:12

1:18:15..., 1:18:20..., 1:18:24..., 1:19:6..., 1:19:11..., 1:19:14..., 1:19:20..., 1:19:24..., 1:20:2..., 1:26:24..., 1:27:4..., 1:29:8..., 1:29:10..., 1:29:25..., 1:30:5..., 1:30:10..., 1:30:14..., 1:31:8..., 1:31:11..., 1:31:14..., 1:31:18..., 1:32:17..., 1:34:4..., 1:34:20..., 1:34:22..., 1:34:25..., 1:35:2..., 1:35:5..., 1:35:9..., 1:35:13..., 1:36:2..., 1:36:8..., 1:36:16..., 1:36:23..., 1:36:25..., 1:37:3..., 1:37:7..., 1:37:10..., 1:37:16..., 1:37:19..., 1:37:24..., 1:38:7..., 1:38:11..., 1:38:17..., 1:38:21..., 1:38:23..., 1:39:6..., 1:39:10..., 1:39:15..., 1:42:18..., 1:43:6..., 1:43:9..., 1:43:21..., 1:43:23..., 1:43:25..., 1:44:22..., 1:44:25..., 1:45:2..., 1:45:4..., 1:45:7..., 1:45:9..., 1:45:13..., 1:45:20..., 1:46:10..., 1:46:19..., 1:46:24..., 1:47:6..., 1:47:13..., 1:47:20..., 1:48:10..., 1:49:16..., 1:52:9..., 1:52:11..., 1:52:23..., 1:52:25..., 1:53:2..., 1:53:6..., 1:53:9..., 1:54:7..., 1:54:11..., 1:54:14..., 1:54:24..., 1:55:2..., 1:55:6..., 1:55:8..., 1:57:12..., 1:58:5..., 1:58:17..., 1:58:23..., 1:59:2..., 1:59:6..., 1:59:18..., 1:59:21..., 1:60:4..., 1:60:12..., 1:60:15..., 1:60:18..., 1:60:22..., 1:61:4..., 1:61:9..., 1:61:14..., 1:61:16..., 1:61:20..., 1:62:2..., 1:62:11..., 1:62:21..., 1:62:24..., 1:63:3..., 1:63:17..., 1:64:6..., 1:64:16..., 1:65:4..., 1:65:8..., 1:65:18..., 1:65:21..., 1:66:3..., 1:66:7..., 1:66:14..., 1:67:5..., 1:67:11..., 1:67:19..., 1:67:22..., 1:67:25..., 1:68:7..., 1:68:11..., 1:68:14..., 1:68:23..., 1:69:1..., 1:69:5..., 1:70:7..., 1:70:12..., 1:70:15..., 1:70:24..., 1:71:20..., 1:76:6..., 1:76:9..., 1:76:12..., 1:76:25..., 1:77:15..., 1:78:3..., 1:78:9..., 1:78:12..., 1:79:1..., 1:79:6..., 1:79:12..., 1:79:22..., 1:80:5..., 1:80:8..., 1:80:11..., 1:80:13..., 1:80:21..., 1:81:4..., 1:81:9..., 1:81:22..., 1:82:3..., 1:82:7..., 1:82:12..., 1:82:16..., 1:82:22..., 1:82:24..., 1:83:4..., 1:83:10..., 1:83:15..., 1:83:21..., 1:84:13..., 1:84:21..., 1:85:4..., 1:85:7..., 1:85:10..., 1:85:15..., 1:85:22..., 1:87:4..., 1:87:6..., 1:87:12..., 1:87:14..., 1:87:18..., 1:88:15..., 1:88:18...,

1:88:22..., 1:89:12..., 1:89:19..., 1:89:25..., 1:90:3..., 1:90:7..., 1:90:21..., 1:91:1..., 1:91:11..., 1:91:23..., 1:92:3..., 1:92:8..., 1:92:19..., 1:92:21..., 1:93:9..., 1:93:12..., 1:93:25..., 1:94:2..., 1:94:5..., 1:94:13..., 1:94:21..., 1:95:3..., 1:95:12..., 1:95:17..., 1:96:4..., 1:96:7..., 1:96:9..., 1:96:17..., 1:96:24..., 1:97:4..., 1:97:7..., 1:97:10..., 1:97:16..., 1:97:25..., 1:98:8..., 1:99:23..., 1:100:18..., 1:100:20..., 1:100:22..., 1:101:5..., 1:101:11..., 1:101:17..., 1:101:24..., 1:102:3..., 1:102:7..., 1:102:12..., 1:102:15..., 1:102:18..., 1:102:21..., 1:103:1..., 1:103:9..., 1:103:15..., 1:103:20..., 1:103:23..., 1:104:6..., 1:104:20..., 1:104:22..., 1:105:1..., 1:107:12..., 1:108:9..., 1:108:12..., 1:108:15..., 1:108:21..., 1:108:24..., 1:112:6..., 1:112:16..., 1:112:25..., 1:113:2..., 1:113:13..., 1:119:4..., 1:119:16..., 1:119:18..., 1:120:22..., 1:121:2..., 1:121:11..., 1:121:17..., 1:122:6..., 1:122:15..., 1:123:6..., 1:123:9..., 1:123:13..., 1:124:25..., 1:125:4..., 1:125:12..., 1:125:15..., 1:125:17..., 1:125:19..., 1:125:23..., 1:126:1..., 1:126:4..., 1:126:23..., 1:126:25..., 1:127:2..., 1:128:18..., 1:129:5..., 1:129:23..., 1:130:12..., 1:130:18..., 1:131:12..., 1:131:14..., 1:131:17..., 1:133:7..., 1:133:17..., 1:134:4..., 1:134:17..., 1:134:21..., 1:134:25..., 1:135:3

Court's [12] - 1:49:23..., 1:71:18..., 1:72:2..., 1:73:6..., 1:78:7..., 1:85:23..., 1:91:19..., 1:114:21..., 1:119:5..., 1:123:12..., 1:131:11..., 1:133:13

court's [1] - 1:51:23

courteous [1] - 1:134:23

courtroom [1] - 1:91:19

Courtroom [1] - 1:20:6

COURTROOM [5] - 1:3:5..., 1:7:3..., 1:19:16..., 1:38:10..., 1:78:6

Courts [2] - 1:73:12...,

1:109:2

courts [2]_- 1:120:15_, 1:120:18

cover [2]_- 1:77:24_, 1:91:15

covered [7]_- 1:13:6_, 1:47:4_, 1:85:16_, 1:87:19_, 1:88:4_, 1:95:3_, 1:95:13

covers [3]_- 1:19:5_, 1:45:2_, 1:104:21

cracked [2]_- 1:99:8_, 1:101:25

cracked-screen [2]_- 1:99:8_, 1:101:25

create [1]_- 1:109:23

created [1]_- 1:110:25

creates [1]_- 1:117:14

creating [1]_- 1:120:18

crime [32]_- 1:44:14_, 1:48:3_, 1:48:8_, 1:50:9_, 1:55:16_, 1:55:22_, 1:56:19 _, 1:57:14_, 1:57:18_, 1:57:23_, 1:58:6_, 1:58:16_, 1:66:11_, 1:66:17_, 1:67:1_, 1:86:10_, 1:104:4_, 1:105:22 _, 1:106:18_, 1:109:13_, 1:112:20_, 1:116:22_, 1:119:12_, 1:122:1_, 1:122:17_, 1:122:23_, 1:123:24_, 1:123:25_, 1:124:2_, 1:124:13_, 1:124:15

crimes [4]_- 1:104:18_, 1:106:23_, 1:113:25_, 1:114:10

criminal [3]_- 1:42:23_, 1:50:24_, 1:109:7

cross [2]_- 1:31:15_, 1:120:6

CROSS [1]_- 1:31:20

cross-examination [1]_ - 1:31:15

CROSS-EXAMINATION [1]_- 1:31:20

cry [1]_- 1:118:18

curiosity [1]_- 1:76:6

current [2]_- 1:109:17_, 1:110:10

custodial [4]_- 1:14:2_, 1:16:10_, 1:17:14_, 1:17:19

custody [6]_- 1:10:21_, 1:64:4_, 1:65:1_, 1:66:5_, 1:132:23_, 1:133:1

cut [2]_- 1:69:13_, 1:93:21

## D

dad [2]_- 1:100:11_, 1:100:15

dad-and-daughter [2]_- 1:100:11_, 1:100:15

daddy [1]_- 1:127:14

daddy-and-daughter [1]_- 1:127:14

dangerous [4]_- 1:44:10 _, 1:44:20_, 1:56:15_, 1:64:8

data [5]_- 1:88:8_, 1:88:18 _, 1:88:22_, 1:89:13_, 1:92:16

date [7]_- 1:16:11_, 1:27:25_, 1:28:8_, 1:28:20_, 1:35:25_, 1:101:2_, 1:130:20

dated [1]_- 1:118:25

dates [1]_- 1:27:21

daughter [4]_- 1:100:11_, 1:100:15_, 1:101:16_, 1:127:14

day's [3]_- 1:48:7_, 1:48:16_, 1:50:7

deadline [1]_- 1:38:7

deal [2]_- 1:94:19_, 1:113:22

dealing [2]_- 1:75:15_, 1:75:16

debit [1]_- 1:68:17

debunks [1]_- 1:57:11

December [10]_- 1:16:11 _, 1:16:13_, 1:21:12_, 1:22:5 _, 1:28:9_, 1:39:21_, 1:43:17 _, 1:48:15_, 1:49:8_, 1:103:12

deciding [1]_- 1:120:20

decision [2]_- 1:98:25_, 1:115:18

decisions [1]_- 1:132:14

declaration [9]_- 1:59:12 _, 1:59:24_, 1:60:10_, 1:60:19_, 1:61:11_, 1:61:24 _, 1:62:3_, 1:62:7_, 1:62:9

defendant [69]_- 1:6:17_, 1:15:4_, 1:18:22_, 1:22:6_, 1:23:4_, 1:24:12_, 1:25:19_, 1:39:21_, 1:40:3_, 1:41:20_, 1:42:1_, 1:42:10_, 1:48:5_, 1:49:4_, 1:49:18_, 1:50:6_, 1:50:7_, 1:50:14_, 1:50:18_, 1:50:19_, 1:50:21_, 1:51:20 _, 1:53:11_, 1:54:16_,

1:58:14_, 1:71:25_, 1:72:4_, 1:74:2_, 1:74:23_, 1:75:14_, 1:81:15_, 1:84:9_, 1:86:3_, 1:86:13_, 1:90:15_, 1:93:7_, 1:93:15_, 1:95:19_, 1:98:13 _, 1:99:11_, 1:103:4_, 1:104:10_, 1:106:19_, 1:109:4_, 1:109:7_, 1:109:8 _, 1:109:20_, 1:111:22_, 1:112:12_, 1:113:20_, 1:113:4_, 1:114:6_, 1:114:10 _, 1:114:13_, 1:114:19_, 1:115:6_, 1:115:21_, 1:116:9 _, 1:116:13_, 1:117:6_, 1:118:11_, 1:120:2_, 1:123:2 _, 1:124:16_, 1:125:25_, 1:126:9_, 1:126:11_, 1:126:16

DEFENDANT [23] - 1:3:22_, 1:7:8_, 1:7:13_, 1:7:17_, 1:7:20_, 1:8:1_, 1:8:9_, 1:8:12_, 1:8:15_, 1:9:10_, 1:9:15_, 1:9:19_, 1:9:22_, 1:9:24_, 1:10:2_, 1:10:6_, 1:10:13_, 1:10:18_, 1:10:23_, 1:10:25_, 1:11:3_, 1:11:19_, 1:11:24

defendant's [38]_- 1:4:16 _, 1:12:6_, 1:12:12_, 1:21:14 _, 1:40:4_, 1:40:6_, 1:40:14_, 1:43:18_, 1:44:2_, 1:50:2_, 1:51:19_, 1:54:1_, 1:57:11_, 1:63:20_, 1:73:12_, 1:74:18 _, 1:84:25_, 1:86:2_, 1:93:3_, 1:98:25_, 1:99:7_, 1:100:12 _, 1:106:17_, 1:110:1_, 1:110:2_, 1:111:19_, 1:113:19_, 1:114:24_, 1:115:1_, 1:115:13_, 1:116:5 _, 1:117:4_, 1:118:11_, 1:119:14_, 1:122:24_, 1:123:15_, 1:123:23_, 1:124:6

Defendant's [1]_- 1:95:21

defendants [1]_- 1:63:21

defense [26]_- 1:3:24_, 1:11:13_, 1:15:7_, 1:15:9_, 1:56:21_, 1:59:12_, 1:59:20 _, 1:61:6_, 1:88:14_, 1:89:6_, 1:89:10_, 1:91:19_, 1:93:1_, 1:98:16_, 1:110:16_, 1:117:12_, 1:118:22_, 1:119:19_, 1:119:23_, 1:120:5_, 1:123:10_, 1:130:20_, 1:131:14_, 1:132:9

Defense [1]_- 1:61:1_, 1:61:9

defense's [2]_- 1:69:9_, 1:69:11

defined [1]_- 1:109:23

defines [1]_- 1:109:12

definitely [1]_- 1:102:11

definition [8]_- 1:102:22_, 1:110:10_, 1:110:13_, 1:113:4_, 1:113:10_, 1:121:3 _, 1:129:8_, 1:129:21

definitively [1]_- 1:131:22 _, 1:132:16

delay [2]_- 1:55:19_, 1:56:8

denied [1]_- 1:73:12

Denno [2]_- 1:74:24_, 1:84:24

deny [1]_- 1:62:13

Department [1]_- 1:35:3

Deputy [1] - 1:20:6

DEPUTY [5]_- 1:3:5_, 1:7:3_, 1:19:16_, 1:38:10_, 1:78:6

describe [3]_- 1:30:17_, 1:45:22_, 1:45:23

described [12]_- 1:49:10 _, 1:54:24_, 1:55:3_, 1:61:10 _, 1:63:18_, 1:86:5_, 1:94:16 _, 1:98:2_, 1:105:5_, 1:119:9 _, 1:129:6_, 1:132:12

describing [1]_- 1:100:14

description [1]_- 1:116:13

destroyed [1]_- 1:44:21

destruction [4]_- 1:44:10 _, 1:44:14_, 1:55:19_, 1:56:8

detail [3]_- 1:47:25_, 1:53:20_, 1:132:1

detailed [1]_- 1:42:22

details [6]_- 1:97:17_, 1:112:7_, 1:112:8_, 1:119:11 _, 1:132:8_, 1:133:10

determination [1]_- 1:93:23

determine [2]_- 1:113:20 _, 1:129:19

determined [3]_- 1:64:10 _, 1:64:22_, 1:64:25

determining [1]_- 1:54:8

device [6]_- 1:42:12_, 1:64:15_, 1:88:19_, 1:89:4_, 1:108:18_, 1:108:19

devices [8]_- 1:54:23_, 1:65:10_, 1:88:19_, 1:98:4_, 1:98:7_,

1:99:13_, 1:99:15_, 1:116:5
_, 1:117:23
  diagnosed[2]_ - 1:32:16
_, 1:32:21
  dictates[1]_ - 1:115:11
  Diego[3]_ - 1:126:11_,
1:126:17_, 1:126:18
  different[4]_ - 1:80:25_,
1:89:25_, 1:90:12_, 1:106:14
  difficult[1]_ - 1:122:5
  dig[1]_ - 1:129:16
  digital[1]_ - 1:116:3
  dildo[1]_ - 1:49:11
  DIRECT[1]_ - 1:20:8
  direct[2]_ - 1:21:11_,
1:73:6
  directed[1]_ - 1:88:1
  direction[1]_ - 1:119:6
  directly[1]_ - 1:33:18
  disability[1]_ - 1:24:17
  disagree[1]_ - 1:45:17
  disagreeing[1]_ - 1:5:22
  disclosed[1]_ - 1:96:21
  disclosure[1]_ - 1:38:24
  discovery[8]_ - 1:46:23_,
1:90:23_, 1:91:16_, 1:91:18
_, 1:91:21_, 1:92:2_,
1:134:13_, 1:134:18
  discretion[1]_ - 1:119:6
  discuss[2]_ - 1:9:17_,
1:69:6
  discussed[4]_ - 1:7:19_,
1:80:17_, 1:81:1_, 1:131:2
  discussing[4]_ - 1:59:12
_, 1:80:25_, 1:105:13_,
1:128:15
  discussion[4]_ - 1:77:8_,
1:87:7_, 1:119:18_, 1:132:7
  dishonesty[1]_ - 1:21:8
  dislike[1]_ - 1:123:16
  disorganized[1]_ -
1:17:13
  displayed[1]_ - 1:64:9
  dispute[5]_ - 1:67:22_,
1:74:2_, 1:96:9_, 1:97:11_,
1:97:25
  disputed[4]_ - 1:5:19_,
1:7:24_, 1:96:18_, 1:98:10
  disputes[1]_ - 1:119:8
  dissipated[2]_ - 1:63:15_,
1:64:13
  distinct[1]_ - 1:87:6

  distribute[8]_ - 1:106:19_,
1:107:4_, 1:107:10_,
1:107:15_, 1:107:16_,
1:107:20_, 1:107:25_,
1:123:4
  distributed[10]_ - 1:93:6_,
1:93:20_, 1:108:22_, 1:122:2
_, 1:122:4_, 1:122:8_,
1:122:9_, 1:123:2_, 1:124:22
_, 1:130:1
  distributing[6]_ - 1:114:1
_, 1:114:4_, 1:118:15_,
1:121:24_, 1:122:22_,
1:123:4
  distribution[15]_ - 1:43:19
_, 1:94:22_, 1:99:16_,
1:99:17_, 1:106:10_, 1:107:2
_, 1:107:7_, 1:109:20_,
1:110:8_, 1:110:18_,
1:117:18_, 1:121:8_, 1:124:5
_, 1:124:17_, 1:130:3
  district[1]_ - 1:133:22
  District[7]_ - 1:21:21_,
1:22:2_, 1:42:17_, 1:106:22
_, 1:106:25_, 1:112:10_,
1:119:5
  DNA[1]_ - 1:125:17
  docket[33]_ - 1:4:9_,
1:4:10_, 1:4:12_, 1:8:5_,
1:12:4_, 1:12:5_, 1:12:7_,
1:15:8_, 1:41:9_, 1:42:21_,
1:48:1_, 1:49:24_, 1:51:10_,
1:56:21_, 1:60:24_, 1:69:10
_, 1:83:4_, 1:85:16_, 1:88:2_,
1:92:22_, 1:95:18_, 1:95:24
_, 1:96:4_, 1:98:21_, 1:117:1
_, 1:123:15_, 1:125:10_,
1:125:11_, 1:125:22_,
1:126:2_, 1:130:22_, 1:131:3
  doctrine[1]_ - 1:122:10
  Doctrine[1]_ - 1:115:11
  document[5]_ - 1:10:11_,
1:36:8_, 1:36:12_, 1:60:17_,
1:125:5
  Document[1]_ - 1:10:12
  documents[2]_ - 1:90:11
_, 1:125:2
  done[9]_ - 1:12:24_,
1:40:15_, 1:49:6_, 1:72:9_,
1:72:10_, 1:80:10_, 1:81:16
_, 1:109:5_, 1:114:11
  double[1]_ - 1:49:10
  double-headed[1]_ -
1:49:10
  Douglas[94]_ - 1:3:6_,
1:3:16_, 1:3:18_, 1:3:21_,

1:7:1_, 1:7:2_, 1:7:9_, 1:8:20
_, 1:9:2_, 1:9:5_, 1:10:1_,
1:10:21_, 1:11:16_, 1:15:4_,
1:15:10_, 1:15:12_, 1:15:17
_, 1:21:14_, 1:21:21_, 1:23:2
_, 1:23:3_, 1:23:4_, 1:23:12_,
1:23:13_, 1:23:17_, 1:23:21
_, 1:23:22_, 1:24:14_,
1:24:20_, 1:24:25_, 1:25:3_,
1:25:14_, 1:25:22_, 1:26:3_,
1:27:8_, 1:27:12_, 1:28:17_,
1:29:15_, 1:30:2_, 1:30:8_,
1:30:11_, 1:30:15_, 1:30:18
_, 1:31:8_, 1:31:25_, 1:32:3_,
1:32:6_, 1:32:13_, 1:32:21_,
1:33:10_, 1:33:11_, 1:33:20
_, 1:34:1_, 1:34:10_, 1:35:18
_, 1:35:23_, 1:38:14_,
1:48:21_, 1:49:2_, 1:49:6_,
1:49:9_, 1:49:11_, 1:49:13_,
1:51:7_, 1:52:6_, 1:52:18_,
1:52:19_, 1:53:16_, 1:56:23
_, 1:56:25_, 1:60:10_,
1:61:12_, 1:61:25_, 1:62:5_,
1:62:17_, 1:63:7_, 1:64:9_,
1:64:25_, 1:65:6_, 1:65:15_,
1:66:19_, 1:68:15_, 1:69:16
_, 1:72:18_, 1:77:10_,
1:78:14_, 1:81:24_, 1:83:17
_, 1:107:6_, 1:126:16_,
1:132:22
  Douglas'[11]_ - 1:6:7_,
1:33:1_, 1:33:11_, 1:36:4_,
1:40:22_, 1:52:4_, 1:60:8_,
1:63:7_, 1:64:2_, 1:69:7_,
1:76:23
  down[9]_ - 1:40:5_,
1:42:12_, 1:54:18_, 1:86:9_,
1:93:21_, 1:105:3_, 1:117:20
_, 1:127:12_, 1:133:2
  downloaded[1]_ -
1:117:7
  drive[1]_ - 1:12:25
  driven[3]_ - 1:48:5_,
1:51:25_, 1:52:7
  driving[5]_ - 1:50:7_,
1:50:19_, 1:57:2_, 1:57:24_,
1:66:20
  drop[2]_ - 1:42:5_, 1:42:6
  drove[2]_ - 1:53:16_,
1:53:18
  drug[4]_ - 1:50:14_,
1:50:18_, 1:57:19_, 1:57:21
  drugs[2]_ - 1:50:15_,
1:50:17
  dude[1]_ - 1:110:17
  dummy[2]_ - 1:64:10_,
1:64:12

  during[19]_ - 1:20:25_,
1:21:4_, 1:25:10_, 1:25:12_,
1:25:13_, 1:40:8_, 1:52:1_,
1:56:25_, 1:57:7_, 1:72:22_,
1:73:13_, 1:75:1_, 1:75:20_,
1:85:18_, 1:85:20_, 1:93:19
_, 1:97:4_, 1:110:18_,
1:131:15
  duties[1]_ - 1:78:21

        E

  ear[1]_ - 1:90:9
  early[3]_ - 1:111:12_,
1:131:22_, 1:131:25
  easy[2]_ - 1:72:10_,
1:105:16
  ECF[1]_ - 1:5:11_, 1:6:10
  education[1]_ - 1:70:21
  effect[4]_ - 1:36:22_,
1:64:24_, 1:111:3_, 1:132:17
  effects[1]_ - 1:111:11
  effort[4]_ - 1:34:13_,
1:34:15_, 1:40:14_, 1:49:4
  eight[1]_ - 1:72:17
  Eighth's[1]_ - 1:118:4
  either[12]_ - 1:24:2_,
1:35:10_, 1:35:14_, 1:40:15
_, 1:41:2_, 1:71:25_, 1:85:17
_, 1:98:14_, 1:101:25_,
1:114:7_, 1:115:14_,
1:116:21
  El[1]_ - 1:21:24
  electronic[1]_ - 1:36:18
  element[3]_ - 1:123:24_,
1:124:12_, 1:124:14
  elements[1]_ - 1:48:9
  Eleventh[30]_ - 1:49:25_,
1:50:12_, 1:51:16_, 1:55:11
_, 1:55:12_, 1:58:23_, 1:59:5
_, 1:63:19_, 1:72:5_, 1:73:5_,
1:73:9_, 1:74:8_, 1:74:17_,
1:76:1_, 1:78:24_, 1:84:4_,
1:84:6_, 1:85:25_, 1:86:24_,
1:105:25_, 1:111:24_,
1:112:2_, 1:112:11_, 1:117:3
_, 1:118:3_, 1:118:4_,
1:118:9_, 1:118:18_, 1:119:5
_, 1:120:15
  elsewhere[1]_ - 1:34:14
  email[2]_ - 1:99:12_,
1:104:14
  emergency[1]_ - 1:53:18
  employed[1]_ - 1:20:12
  encompassing[1]_ -

1:55:14

encounter [1] - 1:51:7

encountered [1] - 1:22:20

end [7] - 1:73:24, 1:86:21, 1:98:19, 1:110:20, 1:113:22, 1:133:24

ended [3] - 1:51:19, 1:63:20, 1:117:23

enforcement [9] - 1:20:17, 1:20:20, 1:20:22, 1:39:20, 1:41:21, 1:42:3, 1:42:7, 1:86:1, 1:134:2

engage [2] - 1:114:7, 1:115:2

engaged [2] - 1:112:12, 1:114:4

engaging [2] - 1:100:6, 1:101:14

enhancement [5] - 1:96:13, 1:96:15, 1:96:20, 1:97:6

entered [5] - 1:36:6, 1:55:19, 1:56:7, 1:100:9, 1:101:2

entice [1] - 1:114:5

enticement [2] - 1:110:4, 1:124:3

entire [12] - 1:16:18, 1:16:20, 1:16:24, 1:17:5, 1:17:14, 1:17:18, 1:17:22, 1:30:11, 1:57:5, 1:86:11, 1:86:16, 1:87:2

entirety [1] - 1:11:8

entitled [4] - 1:91:6, 1:91:8, 1:100:7, 1:114:18

entries [1] - 1:85:17

entry [33] - 1:4:9, 1:4:10, 1:4:12, 1:8:5, 1:12:5, 1:12:7, 1:15:8, 1:22:17, 1:22:18, 1:41:9, 1:42:21, 1:48:1, 1:49:24, 1:51:10, 1:56:21, 1:60:24, 1:69:10, 1:83:4, 1:88:2, 1:92:22, 1:95:18, 1:95:24, 1:96:4, 1:98:21, 1:117:1, 1:123:15, 1:125:6, 1:125:10, 1:125:11, 1:125:22, 1:126:2

equivocal [1] - 1:72:7

error [1] - 1:127:19

Escondido [1] - 1:21:25

especially [1] - 1:120:16

espoused [1] - 1:55:12

essentially [3] - 1:42:3,

1:85:2, 1:100:12

establish [1] - 1:114:18

establishing [1] - 1:24:13

estimate [2] - 1:12:13, 1:30:10

ethical [1] - 1:78:21

evaluating [1] - 1:83:7

evasive [1] - 1:42:3

eventual [2] - 1:53:21, 1:131:19

eventually [5] - 1:21:13, 1:21:17, 1:41:23, 1:116:15, 1:126:11

Evidence [4] - 1:89:14, 1:97:22, 1:109:1, 1:109:6

evidence [149] - 1:4:5, 1:4:10, 1:4:13, 1:5:18, 1:7:24, 1:15:23, 1:15:24, 1:16:2, 1:18:3, 1:29:7, 1:29:12, 1:35:14, 1:35:21, 1:36:7, 1:37:11, 1:37:13, 1:37:20, 1:37:25, 1:38:1, 1:38:5, 1:39:7, 1:40:17, 1:40:20, 1:40:21, 1:44:11, 1:44:14, 1:44:21, 1:45:23, 1:46:8, 1:47:20, 1:48:3, 1:48:11, 1:48:25, 1:50:2, 1:50:4, 1:50:9, 1:50:14, 1:50:16, 1:50:17, 1:55:20, 1:56:8, 1:56:23, 1:56:24, 1:57:3, 1:57:7, 1:57:13, 1:59:13, 1:59:16, 1:60:3, 1:60:5, 1:60:11, 1:61:23, 1:62:3, 1:62:13, 1:62:18, 1:64:14, 1:64:24, 1:66:11, 1:66:16, 1:66:24, 1:66:25, 1:67:4, 1:68:4, 1:68:7, 1:68:10, 1:86:10, 1:95:10, 1:95:20, 1:97:21, 1:98:3, 1:98:10, 1:98:12, 1:98:15, 1:98:20, 1:98:22, 1:99:6, 1:99:11, 1:100:6, 1:100:23, 1:104:20, 1:105:19, 1:105:24, 1:106:3, 1:106:8, 1:108:6, 1:109:8, 1:109:11, 1:110:11, 1:110:13, 1:110:23, 1:110:24, 1:111:4, 1:111:6, 1:111:8, 1:111:15, 1:111:16, 1:112:11, 1:112:20, 1:113:3, 1:113:4, 1:113:7, 1:113:15, 1:113:17, 1:113:20, 1:113:23, 1:114:2, 1:114:18, 1:114:23, 1:114:25, 1:115:5,

1:115:10, 1:115:11, 1:115:14, 1:115:15, 1:115:20, 1:115:23, 1:116:17, 1:117:4, 1:117:10, 1:117:25, 1:118:7, 1:118:16, 1:118:19, 1:118:22, 1:118:25, 1:119:2, 1:119:9, 1:120:7, 1:120:12, 1:120:22, 1:121:13, 1:121:18, 1:122:20, 1:122:21, 1:127:11, 1:127:17, 1:127:25, 1:128:4, 1:128:21, 1:130:14, 1:131:6, 1:132:1, 1:132:4, 1:132:11, 1:134:7

evidenced [1] - 1:122:25

evident [2] - 1:80:13, 1:134:6

evidentiary [6] - 1:3:23, 1:4:1, 1:7:22, 1:47:2, 1:61:20, 1:119:7

exact [9] - 1:46:9, 1:77:11, 1:78:17, 1:99:15, 1:110:20, 1:111:23, 1:111:25, 1:112:20, 1:118:5

exactly [20] - 1:10:10, 1:33:14, 1:33:17, 1:33:21, 1:40:16, 1:44:16, 1:53:21, 1:60:4, 1:61:10, 1:69:11, 1:72:5, 1:80:14, 1:80:22, 1:83:16, 1:84:16, 1:91:17, 1:100:18, 1:105:17, 1:108:14, 1:125:4

examination [1] - 1:31:15

EXAMINATION [2] - 1:20:8, 1:31:20

examiner [2] - 1:116:3, 1:121:19

examining [1] - 1:60:7

example [9] - 1:34:13, 1:101:11, 1:105:7, 1:112:19, 1:118:8, 1:119:10, 1:121:16, 1:122:18, 1:129:24

except [3] - 1:40:21, 1:100:2, 1:132:15

exception [25] - 1:6:12, 1:8:6, 1:9:13, 1:41:15, 1:45:16, 1:47:14, 1:47:25, 1:48:1, 1:50:10, 1:51:2, 1:51:9, 1:57:15, 1:58:6, 1:58:7, 1:58:18, 1:59:3, 1:65:22, 1:65:25, 1:67:20

1:68:5, 1:86:2, 1:86:17, 1:87:8

exceptionally [1] - 1:55:22

exceptions [1] - 1:39:22

excerpt [2] - 1:13:12, 1:83:12

excerpts [7] - 1:12:15, 1:12:16, 1:13:5, 1:16:10, 1:16:23, 1:17:6, 1:94:23

excessive [2] - 1:94:17, 1:128:5

excise [1] - 1:75:11

excised [1] - 1:75:7

exclude [1] - 1:124:17

exclusionary [1] - 1:111:7

exclusive [1] - 1:55:13

excuse [9] - 1:7:23, 1:30:14, 1:41:19, 1:72:21, 1:82:25, 1:99:8, 1:103:7, 1:110:16, 1:134:11

excused [1] - 1:35:13

execute [1] - 1:33:2

executed [7] - 1:22:9, 1:22:13, 1:40:4, 1:52:16, 1:53:13, 1:120:5, 1:126:10

exemplars [3] - 1:38:13, 1:38:17, 1:38:18

exercise [1] - 1:119:6

Exhibit [27] - 1:4:22, 1:13:22, 1:16:2, 1:16:10, 1:16:17, 1:16:18, 1:16:20, 1:17:14, 1:17:19, 1:17:21, 1:18:2, 1:18:3, 1:18:5, 1:19:2, 1:26:23, 1:27:1, 1:29:7, 1:29:10, 1:29:12, 1:36:3, 1:37:5, 1:37:11, 1:40:18, 1:41:18, 1:46:17, 1:61:1, 1:61:9

exhibit [15] - 1:13:15, 1:14:6, 1:16:23, 1:16:25, 1:17:5, 1:17:8, 1:17:13, 1:17:23, 1:26:17, 1:35:16, 1:35:17, 1:37:1, 1:60:19, 1:61:2, 1:61:6

exhibits [5] - 1:13:15, 1:19:6, 1:35:15, 1:130:23, 1:131:14

exigency [19] - 1:51:11, 1:51:12, 1:52:4, 1:53:2, 1:53:4, 1:54:7, 1:54:9, 1:54:15, 1:55:2, 1:56:12, 1:56:17, 1:63:6, 1:63:11, 1:63:13, 1:63:15, 1:64:13

_, 1:64:18_, 1:64:21_,
1:65:19

exigent [3]_ - 1:51:18_,
1:55:13_, 1:63:20

exist [3]_ - 1:56:22_,
1:101:10_, 1:126:21

existed [2]_ - 1:52:4_,
1:91:16

existence [1]_ - 1:55:3_,
1:66:15

exists [2]_ - 1:106:2_,
1:126:2

expert [11]_ - 1:38:6_,
1:38:17_, 1:38:19_, 1:38:24
_, 1:38:25_, 1:39:1_, 1:45:21
_, 1:47:18_, 1:60:7_, 1:62:25
_, 1:131:20

expertise [1]_ - 1:116:4

explain [6]_ - 1:80:22_,
1:94:15_, 1:99:4_, 1:106:18
_, 1:122:20_, 1:122:23

explained [4]_ - 1:17:4_,
1:30:14_, 1:30:23_, 1:73:25

explaining [1]_ - 1:105:10

explains [1]_ - 1:27:12

explanation [2]_ - 1:123:1
_, 1:123:3

explode [2]_ - 1:42:6_,
1:42:13

exploitation [1]_ - 1:35:8

explosive [3]_ - 1:54:23_,
1:64:14_, 1:65:10

explosive-type [1]_ -
1:65:10

explosives [4]_ - 1:51:12
_, 1:55:4_, 1:64:8_, 1:65:17

exposed [1]_ - 1:97:7

express [1]_ - 1:31:8

expressed [2]_ - 1:70:21
_, 1:85:13

expressly [2]_ - 1:62:5_,
1:74:2

extends [1]_ - 1:99:25

extent [2]_ - 1:62:20_,
1:66:1

extra [1]_ - 1:97:17

extraction [1]_ - 1:101:1

extrinsic [1]_ - 1:115:10

eye [1]_ - 1:40:24

---

F

---

F.2d [2]_ - 1:51:17_,

---

1:55:10

F.3d [6]_ - 1:49:25_,
1:50:12_, 1:78:25_, 1:85:25
_, 1:86:24_, 1:105:25

facing [1]_ - 1:118:12

fact [15]_ - 1:7:24_, 1:25:25
_, 1:34:11_, 1:45:12_, 1:46:9
_, 1:62:4_, 1:67:13_, 1:71:5_,
1:96:11_, 1:98:1_, 1:107:25
_, 1:110:4_, 1:124:2_,
1:124:21_, 1:132:5

factors [1]_ - 1:55:12

facts [62]_ - 1:4:19_, 1:5:10
_, 1:5:21_, 1:6:4_, 1:6:9_,
1:6:18_, 1:6:24_, 1:7:16_,
1:8:4_, 1:8:11_, 1:9:2_, 1:9:3
_, 1:9:8_, 1:9:12_, 1:9:17_,
1:9:21_, 1:9:25_, 1:10:17_,
1:11:21_, 1:11:23_, 1:12:2_,
1:41:17_, 1:42:19_, 1:42:21
_, 1:42:22_, 1:43:10_, 1:45:7
_, 1:45:15_, 1:45:21_,
1:45:25_, 1:48:6_, 1:48:11_,
1:49:18_, 1:49:22_, 1:52:11
_, 1:52:12_, 1:54:14_,
1:54:25_, 1:63:24_, 1:68:9_,
1:73:8_, 1:74:2_, 1:95:21_,
1:95:23_, 1:95:24_, 1:96:3_,
1:96:22_, 1:97:13_, 1:98:22
_, 1:98:23_, 1:98:24_,
1:114:19_, 1:121:8_,
1:123:12_, 1:123:17_,
1:124:19_, 1:126:5_,
1:127:19_, 1:128:14_,
1:128:24_, 1:133:20

factual [3]_ - 1:8:21_,
1:56:5_, 1:99:1

fails [2]_ - 1:118:24_,
1:123:22

fairly [2]_ - 1:76:15_,
1:77:22

Fairness [1]_ - 1:115:11

fake [5]_ - 1:54:21_,
1:64:22_, 1:65:7_, 1:65:15_,
1:68:13

fall [10]_ - 1:98:14_,
1:103:12_, 1:103:25_,
1:110:9_, 1:113:8_, 1:113:10
_, 1:120:23_, 1:121:6_,
1:121:9_, 1:122:10

falls [3]_ - 1:56:3_, 1:108:5
_, 1:113:4

false [1]_ - 1:7:12

falsely [1]_ - 1:111:22

familiar [1]_ - 1:8:17

far [24]_ - 1:11:6_, 1:13:6_,

---

1:15:19_, 1:15:25_, 1:17:13
_, 1:41:4_, 1:45:14_, 1:65:2_,
1:65:24_, 1:84:6_, 1:85:12_,
1:94:6_, 1:94:21_, 1:96:24_,
1:103:20_, 1:115:20_,
1:116:18_, 1:118:18_,
1:127:11_, 1:127:23_,
1:128:11_, 1:128:25_,
1:129:5_, 1:131:1

fashion [1]_ - 1:80:16

father [1]_ - 1:86:5

fault [1]_ - 1:17:4

favor [2]_ - 1:111:7_,
1:132:9

February [1]_ - 1:103:19

Fed.App'x [5]_ - 1:74:17_,
1:112:2_, 1:112:10_, 1:117:2
_, 1:118:9

federal [6]_ - 1:21:1_,
1:21:4_, 1:22:2_, 1:39:4_,
1:109:6_, 1:109:14

Federal [3]_ - 1:89:14_,
1:97:22_, 1:109:1

fell [1]_ - 1:41:25

felony [1]_ - 1:125:9

female [1]_ - 1:41:24

females [2]_ - 1:22:25_,
1:23:1

fetch [1]_ - 1:41:5

few [6]_ - 1:98:6_, 1:107:24
_, 1:109:12_, 1:116:25_,
1:122:2

figure [1]_ - 1:96:18

file [11]_ - 1:5:1_, 1:5:8_,
1:36:1_, 1:36:22_, 1:38:12_,
1:92:5_, 1:130:20_, 1:130:22
_, 1:130:24_, 1:131:9_,
1:133:15

file-stamped [1]_ - 1:5:1

filed [16]_ - 1:6:10_, 1:36:9
_, 1:36:14_, 1:38:9_, 1:40:19
_, 1:59:13_, 1:60:16_, 1:88:1
_, 1:92:25_, 1:115:7_,
1:115:8_, 1:125:24_,
1:130:24_, 1:131:3_,
1:131:19_, 1:133:14

filing [5]_ - 1:4:11_, 1:36:18
_, 1:39:2_, 1:60:17_, 1:87:23

filings [2]_ - 1:59:25_,
1:116:4

filled [3]_ - 1:27:15_,
1:27:17_, 1:31:3

final [4]_ - 1:103:8_,
1:131:25_, 1:132:15_,
1:132:17

---

finally [3]_ - 1:113:12_,
1:117:20_, 1:124:16

fine [2]_ - 1:6:20_, 1:47:3

finish [3]_ - 1:9:6_, 1:72:17
_, 1:95:17

first [24]_ - 1:4:3_, 1:4:9_,
1:11:7_, 1:15:6_, 1:15:8_,
1:19:11_, 1:32:2_, 1:34:25_,
1:39:11_, 1:39:24_, 1:41:14
_, 1:43:16_, 1:57:6_, 1:62:14
_, 1:69:15_, 1:69:25_,
1:76:25_, 1:88:7_, 1:92:2_,
1:93:9_, 1:98:21_, 1:106:20
_, 1:116:14_, 1:123:5

five [5]_ - 1:39:19_, 1:99:14
_, 1:101:9_, 1:120:24_,
1:129:2

flagged [1]_ - 1:9:13

flash [1]_ - 1:12:25

flashing [1]_ - 1:53:18

fled [1]_ - 1:50:3

floorboard [2]_ - 1:49:21_,
1:99:7

Florida [4]_ - 1:42:17_,
1:106:22_, 1:112:10_,
1:116:15

fly [1]_ - 1:133:7

focus [1]_ - 1:81:13

focused [1]_ - 1:52:11

focusing [2]_ - 1:83:12_,
1:119:10

follow [5]_ - 1:71:15_,
1:72:13_, 1:74:5_, 1:76:21_,
1:118:21

follow-up [1]_ - 1:72:13_,
1:74:5

followed [1]_ - 1:41:20

following [5]_ - 1:4:1_,
1:22:8_, 1:29:14_, 1:68:15_,
1:99:14

follows [1] - 1:20:7

foot [1]_ - 1:50:4

footing [1]_ - 1:111:5

forced [1]_ - 1:9:20

forensic [2]_ - 1:116:3_,
1:121:18

forewarning [1]_ -
1:134:8

forged [1]_ - 1:41:3

forget [2]_ - 1:49:12_,
1:49:13

forgive [1]_ - 1:122:19

Forker [1]_ - 1:64:17

form [27]– - 1:6:7–, 1:26:14
–, 1:27:7–, 1:27:10–, 1:27:11
–, 1:27:15–, 1:27:18–, 1:29:2
–, 1:29:20–, 1:31:3–, 1:31:6–,
1:31:12–, 1:33:20–, 1:34:2–,
1:34:11–, 1:34:16–, 1:34:17
–, 1:35:14–, 1:37:5–, 1:37:14
–, 1:38:15–, 1:40:12–, 1:98:3
–, 1:115:23–, 1:116:9–,
1:132:5–, 1:133:9

forth [4]– - 1:8:4–, 1:72:14
–, 1:130:7

forward [1]– - 1:12:1

foundation [2]– - 1:46:22
–, 1:46:25

four [10]– - 1:39:22–, 1:41:9
–, 1:53:15–, 1:100:16–,
1:100:18–, 1:111:17–,
1:125:5–, 1:125:9–, 1:125:10
–, 1:128:8

four-page [1]– - 1:125:5

frame [2]– - 1:103:14

frankly [1]– - 1:129:4

free [1]– - 1:85:2

freely [1]– - 1:9:23

Friday [1]– - 1:35:20

front [6]– - 1:10:1–, 1:10:9
–, 1:10:11–, 1:31:3–, 1:41:3–,
1:125:12

full [9]– - 1:9:8–, 1:12:15–,
1:12:21–, 1:15:9–, 1:19:21–,
1:36:8–, 1:36:13–, 1:43:16–,
1:69:15

fully [3]– - 1:8:17–, 1:87:19
–, 1:91:24

furniture [1]– - 1:30:6

furtherance [1]– - 1:107:7

future [2]– - 1:7:11–,
1:60:7

G

Gayle [1]– - 1:61:11

gears [1]– - 1:80:24

general [6]– - 1:24:9–,
1:24:11–, 1:76:16–, 1:131:23
–, 1:132:24

generally [6]– - 1:81:10–,
1:89:1–, 1:111:14–, 1:130:12
–, 1:131:10–, 1:132:2

genitals [2]– - 1:110:2

gentlemen [1]– - 1:119:24

giant [1]– - 1:45:11

gifts [2]– - 1:49:2–,
1:100:12

girl [8]– - 1:66:22–, 1:86:5–,
1:86:6–, 1:100:7–, 1:101:15
–, 1:101:19–, 1:101:22–,
1:102:4

girls [3]– - 1:100:8–,
1:100:24–, 1:127:15

given [11]– - 1:4:3–,
1:56:16–, 1:62:6–, 1:64:8–,
1:84:1–, 1:91:14–, 1:102:21
–, 1:119:8–, 1:128:4–,
1:132:8

God [2]– - 1:7:7–, 1:19:18

Google [24]– - 1:88:21–,
1:89:5–, 1:91:5–, 1:91:6–,
1:93:3–, 1:98:3–, 1:98:7–,
1:103:3–, 1:103:9–, 1:103:15
–, 1:103:18–, 1:103:24–,
1:104:6–, 1:106:5–, 1:106:17
–, 1:107:18–, 1:107:23–,
1:108:1–, 1:108:13–,
1:108:19–, 1:116:2–, 1:116:6
–, 1:129:7–, 1:132:12

Gordon [2]– - 1:3:6–,
1:78:14

Government [4]– - 1:18:3
–, 1:27:1–, 1:29:12–, 1:37:11

government [65]– - 1:3:8
–, 1:3:25–, 1:6:6–, 1:8:13–,
1:12:6–, 1:13:5–, 1:15:12–,
1:19:9–, 1:19:12–, 1:35:11–,
1:39:3–, 1:39:19–, 1:40:22–,
1:41:8–, 1:41:14–, 1:61:2–,
1:61:5–, 1:61:13–, 1:63:6–,
1:63:18–, 1:64:4–, 1:64:12–,
1:65:14–, 1:66:5–, 1:69:1–,
1:76:20–, 1:76:24–, 1:82:11
–, 1:84:8–, 1:89:6–, 1:92:15–,
1:93:1–, 1:94:23–, 1:94:25–,
1:95:25–, 1:96:1–, 1:97:16–,
1:98:2–, 1:98:12–, 1:110:24
–, 1:111:25–, 1:112:19–,
1:113:17–, 1:114:18–,
1:115:9–, 1:115:21–,
1:116:20–, 1:116:24–,
1:117:15–, 1:117:16–,
1:118:19–, 1:120:10–,
1:127:16–, 1:127:20–,
1:128:5–, 1:128:16–, 1:129:3
–, 1:129:18–, 1:130:6–,
1:130:22–, 1:131:23–,
1:133:18–, 1:133:21–,
1:134:6–, 1:134:15

government's [19]– -
1:6:9–, 1:8:5–, 1:12:12–,
1:62:12–, 1:63:17–, 1:64:16
–, 1:65:1–, 1:87:20–, 1:87:23
–, 1:88:7–, 1:90:17–, 1:92:23

–, 1:95:20–, 1:95:23–,
1:97:20–, 1:106:3–, 1:113:7
–, 1:128:7–, 1:130:15

Government's [22]– -
1:4:22–, 1:13:22–, 1:14:2–,
1:16:2–, 1:16:9–, 1:16:16–,
1:16:18–, 1:16:20–, 1:17:14
–, 1:17:19–, 1:17:21–, 1:18:2
–, 1:18:5–, 1:19:2–, 1:26:23–,
1:29:7–, 1:29:10–, 1:36:3–,
1:37:5–, 1:40:17–, 1:41:18–,
1:46:17

grant [3]– - 1:26:11–,
1:26:12–, 1:31:1

granted [2]– - 1:31:5–,
1:128:2

grants [1]– - 1:110:23

granular [1]– - 1:132:1

gravity [3]– - 1:55:14–,
1:55:22–, 1:56:16

Gregg [1]– - 1:3:9

grenade [21]– - 1:42:1–,
1:42:2–, 1:42:5–, 1:54:17–,
1:54:18–, 1:54:21–, 1:55:6–,
1:56:3–, 1:56:5–, 1:63:9–,
1:64:9–, 1:64:12–, 1:64:15–,
1:64:22–, 1:65:1–, 1:65:3–,
1:65:7–, 1:65:15–, 1:68:13–,
1:117:20

grenades [1]– - 1:65:17

grotesque [1]– - 1:117:11

ground [3]– - 1:41:7–,
1:47:23–, 1:58:11

grounds [1]– - 1:63:4

group [1]– - 1:100:8

gruesome [1]– - 1:116:12

guarantee [1]– - 1:91:19

guess [6]– - 1:5:2–, 1:8:12
–, 1:41:7–, 1:89:16–, 1:119:8
–, 1:130:13

guilt [2]– - 1:116:18

guilty [2]– - 1:114:13–,
1:114:16

gun [1]– - 1:50:15

guy [2]– - 1:120:3–, 1:120:9

H

half [2]– - 1:11:5–, 1:103:13

half-a-page [1]– - 1:11:5

hand [5]– - 1:7:4–, 1:42:2–,
1:42:5–, 1:54:17–, 1:65:7

handwriting [3]– - 1:27:11
–, 1:38:5–, 1:38:14

handwritings [1]– -
1:27:22

handwritten [1]– - 1:27:22

happy [1]– - 1:59:16

hard [2]– - 1:79:11–,
1:80:16

headed [1]– - 1:49:10

heading [1]– - 1:105:12

hear [17]– - 1:6:2–, 1:15:24
–, 1:16:2–, 1:39:10–, 1:59:21
–, 1:62:11–, 1:65:21–,
1:75:12–, 1:76:12–, 1:79:6–,
1:79:11–, 1:90:22–, 1:95:1–,
1:116:8–, 1:116:18–,
1:116:19–, 1:123:7

heard [15]– - 1:6:2–, 1:15:2
–, 1:51:3–, 1:52:18–, 1:70:2–,
1:73:4–, 1:75:5–, 1:75:18–,
1:81:15–, 1:82:2–, 1:82:6–,
1:84:1–, 1:89:20–, 1:94:21–,
1:130:13

hearing [49]– - 1:3:23–,
1:3:25–, 1:4:2–, 1:6:4–,
1:6:12–, 1:7:16–, 1:7:22–,
1:8:3–, 1:8:6–, 1:8:11–,
1:8:18–, 1:9:2–, 1:9:9–,
1:9:12–, 1:9:17–, 1:9:21–,
1:10:15–, 1:11:2–, 1:11:6–,
1:11:17–, 1:11:22–, 1:12:24
–, 1:15:22–, 1:16:9–, 1:17:9–,
1:17:24–, 1:19:8–, 1:36:13–,
1:36:22–, 1:37:21–, 1:38:9–,
1:42:10–, 1:59:14–, 1:60:6–,
1:60:20–, 1:61:21–, 1:62:8–,
1:63:1–, 1:74:25–, 1:79:9–,
1:84:2–, 1:88:2–, 1:89:12–,
1:95:19–, 1:96:2–, 1:96:8–,
1:105:16–, 1:131:15

hearsay [4]– - 1:61:15–,
1:61:17–, 1:61:24–, 1:62:3

held [5]– - 1:73:13–, 1:74:4
–, 1:74:18–, 1:112:11–,
1:117:3

help [5]– - 1:7:7–, 1:19:18–,
1:57:17–, 1:60:16–, 1:80:20

hesitation [2]– - 1:31:9–,
1:121:1

high [1]– - 1:41:22

Highlander [14]– - 1:25:14
–, 1:29:15–, 1:29:21–,
1:39:21–, 1:45:5–, 1:45:18–,
1:45:22–, 1:45:23–, 1:47:19
–, 1:53:16–, 1:56:24–, 1:57:2
–, 1:57:4

highlight [1]– - 1:41:12

highly [1]– - 1:117:5

highway [2]‒ - 1:41:22
himself [3]‒ - 1:6:17‒, 1:48:22‒, 1:117:21
hold [4]‒ - 1:61:4‒, 1:74:14‒, 1:88:15‒, 1:101:7
holding [1]‒ - 1:50:13
holds [1]‒ - 1:42:1
home [1]‒ - 1:120:4
HOMELAND [1] - 1:20:5
Homeland [8]‒ - 1:3:11‒, 1:4:15‒, 1:15:3‒, 1:19:13‒, 1:20:12‒, 1:20:14‒, 1:35:3‒, 1:40:1
hone [2]‒ - 1:77:21‒, 1:81:13
honing [1]‒ - 1:77:23
Honor [176]‒ - 1:2:9‒, 1:3:15‒, 1:3:17, 1:3:22‒, 1:5:13‒, 1:6:5‒, 1:6:14‒, 1:6:25‒, 1:7:13‒, 1:7:17‒, 1:7:20‒, 1:9:3‒, 1:9:4‒, 1:9:10‒, 1:9:15‒, 1:9:19‒, 1:9:22‒, 1:9:24‒, 1:10:5‒, 1:10:7‒, 1:10:13‒, 1:10:18‒, 1:10:25‒, 1:11:3‒, 1:11:7‒, 1:11:19‒, 1:11:24‒, 1:13:11‒, 1:14:4‒, 1:15:15‒, 1:16:5‒, 1:16:6‒, 1:16:15‒, 1:17:2‒, 1:17:20‒, 1:18:8‒, 1:18:13‒, 1:19:3‒, 1:19:4‒, 1:19:5‒, 1:19:23‒, 1:26:16‒, 1:26:22‒, 1:29:6‒, 1:29:23, 1:31:17‒, 1:31:19‒, 1:32:19‒, 1:34:19‒, 1:34:21‒, 1:35:12‒, 1:36:5‒, 1:36:15‒, 1:36:21‒, 1:37:2‒, 1:37:8‒, 1:37:12‒, 1:37:23‒, 1:38:3‒, 1:38:6‒, 1:38:10‒, 1:38:16‒, 1:38:20‒, 1:39:5‒, 1:39:9‒, 1:39:13‒, 1:39:17‒, 1:40:24‒, 1:46:16‒, 1:46:21‒, 1:47:18‒, 1:52:15‒, 1:53:13‒, 1:59:4‒, 1:60:1‒, 1:60:2‒, 1:60:9‒, 1:60:11‒, 1:60:24‒, 1:61:1‒, 1:61:2‒, 1:61:19‒, 1:61:25‒, 1:62:1‒, 1:62:10‒, 1:62:15‒, 1:62:23‒, 1:63:2‒, 1:63:5‒, 1:63:6‒, 1:63:22‒, 1:64:11‒, 1:64:24‒, 1:65:13‒, 1:65:20‒, 1:65:24‒, 1:65:25‒, 1:66:1‒, 1:67:18‒, 1:67:21‒, 1:68:2‒, 1:68:3‒, 1:68:19‒, 1:68:25‒, 1:69:4‒, 1:69:8‒, 1:70:2‒, 1:70:10‒, 1:70:13‒, 1:75:17‒, 1:76:17‒, 1:76:20‒, 1:78:2, 1:78:5‒, 1:78:7‒, 1:78:20‒, 1:79:2‒, 1:79:14‒, 1:79:16‒, 1:79:19‒, 1:79:25

‒, 1:80:7‒, 1:80:10‒, 1:80:12‒, 1:80:19‒, 1:81:3‒, 1:81:20‒, 1:82:2‒, 1:82:6‒, 1:82:11‒, 1:82:14‒, 1:82:21‒, 1:83:2‒, 1:83:7‒, 1:83:14‒, 1:84:3‒, 1:85:3‒, 1:85:9‒, 1:85:13‒, 1:85:19‒, 1:87:17‒, 1:89:23‒, 1:90:2‒, 1:90:9‒, 1:90:11‒, 1:92:18‒, 1:92:20‒, 1:94:17‒, 1:94:18‒, 1:94:20‒, 1:95:2‒, 1:96:16‒, 1:97:15‒, 1:97:23‒, 1:98:24‒, 1:104:21‒, 1:105:6‒, 1:105:15‒, 1:122:14‒, 1:127:3‒, 1:127:4‒, 1:127:5‒, 1:128:1‒, 1:128:13‒, 1:128:23‒, 1:129:10‒, 1:130:17‒, 1:131:16‒, 1:132:20‒, 1:133:2‒, 1:133:3‒, 1:133:15‒, 1:134:20‒, 1:135:2
Honor's [1]‒ - 1:38:4
hoping [1]‒ - 1:50:8
hotel [1]‒ - 1:124:12
hotels [1]‒ - 1:41:21
hour [4]‒ - 1:14:14‒, 1:14:16‒, 1:14:17‒, 1:16:25‒
house [3]‒ - 1:90:14‒, 1:102:1‒, 1:120:9
housekeeping [1]‒ - 1:131:5
HOWE [1] - 1:90:25
HOWES [12]‒ - 1:3:17‒, 1:60:16‒, 1:60:21‒, 1:60:23‒, 1:60:25‒, 1:90:6‒, 1:90:8‒, 1:91:4‒, 1:91:25‒, 1:92:7‒, 1:134:11‒, 1:134:22
Howes [4]‒ - 1:3:17‒, 1:8:19‒, 1:60:15‒, 1:90:5
HSI [1]‒ - 1:116:3
hundred [2]‒ - 1:108:18‒, 1:108:19
hundreds [4]‒ - 1:91:21‒, 1:100:16‒, 1:101:9
hurt [1]‒ - 1:117:21

I

I)(B)(2) [2]‒ - 1:105:12‒, 1:105:14
i.e [2]‒ - 1:66:9‒, 1:123:23
ID [1]‒ - 1:68:17
idea [1]‒ - 1:56:11
identical [1]‒ - 1:41:1
identification [3]‒ - 1:26:23‒, 1:27:1‒, 1:68:18

identified [8]‒ - 1:13:9‒, 1:49:2‒, 1:63:1‒, 1:81:23‒, 1:88:5‒, 1:92:5‒, 1:99:10‒, 1:101:9
identify [3]‒ - 1:49:4‒, 1:126:14‒, 1:126:22
identifying [1]‒ - 1:36:11
identity [1]‒ - 1:114:17
illegal [1]‒ - 1:104:9
image [2]‒ - 1:129:17
images [39]‒ - 1:89:2‒, 1:94:3‒, 1:100:12‒, 1:100:19‒, 1:100:20‒, 1:100:21‒, 1:101:5‒, 1:103:5‒, 1:103:11‒, 1:104:7‒, 1:104:8‒, 1:104:10‒, 1:106:16‒, 1:107:13‒, 1:107:22‒, 1:108:10‒, 1:108:21‒, 1:108:22‒, 1:117:7‒, 1:118:15‒, 1:121:19‒, 1:122:9‒, 1:127:7‒, 1:127:10‒, 1:127:13‒, 1:127:18‒, 1:127:21‒, 1:129:1‒, 1:129:3‒, 1:129:7‒, 1:129:12‒, 1:129:14‒, 1:129:15‒, 1:129:17‒, 1:129:20‒, 1:130:7‒, 1:130:8‒, 1:130:10
immediately [4]‒ - 1:52:18‒, 1:56:2‒, 1:58:14‒, 1:69:17
immobilized [1]‒ - 1:51:23
implicate [1]‒ - 1:78:18
implicated [1]‒ - 1:50:24
important [2]‒ - 1:74:9‒, 1:110:14
imprecise [1]‒ - 1:77:22
impregnating [1]‒ - 1:101:16
impression [1]‒ - 1:110:15
improbability [1]‒ - 1:111:21
improper [1]‒ - 1:15:21
impugned [1]‒ - 1:21:8
inbreeding [2]‒ - 1:100:11‒, 1:100:15
incest [1]‒ - 1:100:10‒, 1:100:15
incident [18]‒ - 1:41:14‒, 1:42:14‒, 1:44:8‒, 1:44:12‒, 1:44:22‒, 1:45:13‒, 1:46:6‒, 1:47:7‒, 1:47:12‒, 1:47:14‒, 1:49:20‒, 1:55:6‒, 1:65:23‒, 1:68:1‒, 1:68:15‒, 1:68:20‒,

1:68:24‒, 1:87:7
inclined [1]‒ - 1:132:7
include [3]‒ - 1:55:14‒, 1:89:2‒, 1:104:10
included [2]‒ - 1:42:24‒, 1:46:2
includes [3]‒ - 1:109:19‒, 1:110:1‒, 1:111:19
including [9]‒ - 1:42:23‒, 1:54:19‒, 1:70:4‒, 1:86:16‒, 1:88:3‒, 1:100:6‒, 1:109:10‒, 1:109:20‒, 1:126:18
incriminating [3]‒ - 1:76:7‒, 1:76:9‒, 1:76:11
indeed [1]‒ - 1:114:5
independent [1]‒ - 1:58:24
indicate [7]‒ - 1:52:12‒, 1:55:13‒, 1:56:23‒, 1:56:25‒, 1:57:3‒, 1:66:19‒, 1:67:3
indicates [1]‒ - 1:80:23
indicating [2]‒ - 1:10:4‒, 1:10:24
indictment [4]‒ - 1:94:2‒, 1:96:14‒, 1:103:14‒, 1:124:4
individual [4]‒ - 1:22:25‒, 1:74:10‒, 1:130:9‒, 1:130:10
individuals [5]‒ - 1:22:18‒, 1:22:20‒, 1:23:6‒, 1:75:12‒, 1:99:19
inextricably [22]‒ - 1:93:5‒, 1:95:9‒, 1:98:3‒, 1:98:14‒, 1:105:13‒, 1:105:18‒, 1:105:19‒, 1:105:23‒, 1:106:3‒, 1:106:6‒, 1:106:13‒, 1:107:5‒, 1:107:20‒, 1:108:4‒, 1:115:15‒, 1:116:21‒, 1:122:4‒, 1:122:7‒, 1:122:10‒, 1:122:12‒, 1:122:16‒, 1:127:5
infirmaries [2]‒ - 1:24:15‒, 1:24:21
infirmities [1]‒ - 1:62:6
information [13]‒ - 1:8:20‒, 1:18:22‒, 1:24:11‒, 1:28:16‒, 1:35:23‒, 1:35:25‒, 1:36:11‒, 1:89:23‒, 1:102:19‒, 1:104:2‒, 1:115:7‒, 1:125:23‒, 1:133:12
informed [1]‒ - 1:27:12
initial [4]‒ - 1:91:20‒, 1:106:7‒, 1:122:6‒, 1:127:4
injure [1]‒ - 1:44:13
innumerous [1]‒ -

1:99:11

inquiry [1]_ - 1:81:19

inside [1]_ - 1:91:18

insisted [1]_ - 1:73:21

instance [1]_ - 1:58:20

instances [1]_ - 1:121:9

instant [2]_ - 1:58:2_, 1:86:4

instrumentality [5]_ - 1:56:18_, 1:57:14_, 1:57:23 _, 1:58:6_, 1:58:16

intends [1]_ - 1:13:5

intent [11]_ - 1:49:5_, 1:86:5_, 1:113:15_, 1:113:24 _, 1:114:10_, 1:114:14_, 1:114:16_, 1:115:1_, 1:121:25_, 1:124:7_, 1:124:10

intention [1]_ - 1:94:9

intentionally [2]_ - 1:114:7_, 1:117:6

interact [1]_ - 1:23:6

interacted [2]_ - 1:23:8_, 1:23:12

interaction [1]_ - 1:30:11

interactions [2]_ - 1:23:15 _, 1:25:13

interest [1]_ - 1:122:24

interesting [1]_ - 1:124:16

interestingly [1]_ - 1:115:6

interpretation [1]_ - 1:67:18

interrupts [2]_ - 1:72:16_, 1:75:19

intersection [1]_ - 1:53:19

intertwined [22]_ - 1:93:5 _, 1:95:9_, 1:98:3_, 1:98:15_, 1:105:14_, 1:105:18_, 1:105:20_, 1:105:23_, 1:106:3_, 1:106:6_, 1:106:13 _, 1:107:5_, 1:107:20_, 1:108:4_, 1:115:15_, 1:116:21_, 1:121:24_, 1:122:7_, 1:122:10_, 1:122:12_, 1:122:16_, 1:127:5

interview [20]_ - 1:12:9_, 1:12:11_, 1:12:15_, 1:12:22 _, 1:13:8_, 1:13:12_, 1:14:2_, 1:14:19_, 1:15:2_, 1:15:6_, 1:16:11_, 1:17:15_, 1:17:19 _, 1:17:22_, 1:57:8_, 1:69:16 _, 1:75:18_, 1:83:5_, 1:117:22_, 1:120:2

introduce [14]_ - 1:7:23_, 1:98:12_, 1:98:20_, 1:99:13 _, 1:100:5_, 1:114:18_, 1:116:20_, 1:117:15_, 1:121:17_, 1:129:4_, 1:129:11_, 1:129:18_, 1:130:7_, 1:130:8

introduced [3]_ - 1:36:13 _, 1:60:6_, 1:130:23

introducing [1]_ - 1:38:13

introduction [5]_ - 1:95:20_, 1:96:22_, 1:97:1_, 1:98:18_, 1:118:6

inventories [1]_ - 1:91:2

inventory [1]_ - 1:90:14

investigating [1]_ - 1:126:15

investigation [1]_ - 1:126:11

Investigations [6]_ - 1:3:11_, 1:15:3_, 1:19:13_, 1:20:13_, 1:20:14_, 1:40:2

INVESTIGATIONS [1]_ - 1:20:5

investigator [1]_ - 1:126:10

inviting [1]_ - 1:127:19

invocation [10]_ - 1:73:2_, 1:78:18_, 1:79:4_, 1:80:18_, 1:81:6_, 1:81:11_, 1:82:19_, 1:82:20_, 1:83:12_, 1:83:18

invoke [1]_ - 1:75:13

invoked [5]_ - 1:69:16_, 1:71:23_, 1:75:9_, 1:80:23_, 1:81:24

invokes [1]_ - 1:77:21

invoking [2]_ - 1:74:10_, 1:81:3

involved [4]_ - 1:21:12_, 1:50:18_, 1:100:14_, 1:112:18

involving [3]_ - 1:100:10_, 1:109:14_, 1:117:17

ironed [1]_ - 1:12:2

irregardless [1]_ - 1:43:4

irrelevant [2]_ - 1:123:25_, 1:124:9

isolate [2]_ - 1:69:23_, 1:71:25

issue [23]_ - 1:5:21_, 1:6:6 _, 1:13:6_, 1:15:6_, 1:62:25_, 1:64:6_, 1:64:9_, 1:73:6_, 1:85:19_, 1:88:10_, 1:89:17 _, 1:90:1_, 1:90:15_, 1:91:12

1:91:23_, 1:92:5_, 1:92:9_, 1:113:18_, 1:114:15_, 1:114:20_, 1:130:21_, 1:132:10_, 1:132:15

issues [5]_ - 1:4:4_, 1:113:18_, 1:114:17_, 1:130:19_, 1:131:22

item [1]_ - 1:92:22

itemized [1]_ - 1:129:23

items [26]_ - 1:48:7_, 1:51:6_, 1:56:23_, 1:57:1_, 1:57:8_, 1:57:17_, 1:57:25_, 1:58:3_, 1:67:6_, 1:67:14_, 1:67:17_, 1:68:19_, 1:68:20 _, 1:68:21_, 1:86:14_, 1:88:4 _, 1:93:2_, 1:99:16_, 1:100:4 _, 1:104:20_, 1:105:4_, 1:105:16_, 1:107:2_, 1:107:17_, 1:121:5

itself [5]_ - 1:68:6_, 1:112:6 _, 1:112:21_, 1:115:20_, 1:127:20

J

Jackson [3]_ - 1:74:24_, 1:74:25_, 1:84:24

January [1]_ - 1:103:19

jeopardize [1]_ - 1:55:20

jeopardy [1]_ - 1:56:9

John [2]_ - 1:3:15_, 1:3:17

judge [3]_ - 1:14:13_, 1:22:2_, 1:131:7

Judge [34]_ - 1:5:6_, 1:5:20_, 1:6:19_, 1:12:4_, 1:14:10_, 1:14:25_, 1:18:19 _, 1:35:17_, 1:43:24_, 1:44:7 _, 1:47:3_, 1:48:14_, 1:60:16 _, 1:79:9_, 1:79:18_, 1:85:18 _, 1:88:25_, 1:89:16_, 1:90:6 _, 1:91:14_, 1:92:1_, 1:95:7_, 1:101:8_, 1:102:6_, 1:103:21 _, 1:105:3_, 1:112:23_, 1:119:13_, 1:120:25_, 1:123:8_, 1:133:19_, 1:134:10_, 1:134:11_, 1:134:23

judges [1]_ - 1:21:4

judgment [6]_ - 1:96:11_, 1:97:1_, 1:97:12_, 1:111:8_, 1:112:21_, 1:125:7

judicial [2]_ - 1:43:1_, 1:89:15

July [1]_ - 1:99:20

jumbled [1]_ - 1:16:1

jurors [1]_ - 1:120:20

jury [20]_ - 1:75:12_, 1:89:7 _, 1:92:15_, 1:93:17_, 1:93:18_, 1:93:21_, 1:94:6_, 1:96:12_, 1:96:21_, 1:97:4_, 1:97:8_, 1:100:17_, 1:104:3 _, 1:106:20_, 1:107:21_, 1:113:20_, 1:116:18_, 1:121:15_, 1:121:22_, 1:125:5

jury's [1]_ - 1:116:8

justification [1]_ - 1:51:21

justify [1]_ - 1:36:19

K

keep [3]_ - 1:124:19_, 1:124:21_, 1:132:25

keeps [3]_ - 1:73:1_, 1:73:3_, 1:75:23

keyboard [1]_ - 1:119:24

Kik [2]_ - 1:102:13_, 1:104:14

kill [2]_ - 1:41:25_, 1:56:4

killed [1]_ - 1:65:12

kind [3]_ - 1:69:20_, 1:70:21_, 1:110:19

kinds [1]_ - 1:104:7

KIRBY [123]_ - 1:3:15_, 1:6:5_, 1:6:14_, 1:6:25_, 1:9:3_, 1:10:4_, 1:10:7_, 1:10:24_, 1:13:5_, 1:13:11_, 1:14:3_, 1:15:15_, 1:16:5_, 1:16:15_, 1:17:20_, 1:19:3_, 1:26:17_, 1:26:19_, 1:29:9, 1:31:17_, 1:31:19, 1:31:21_, 1:32:19_, 1:32:20_, 1:34:9_, 1:34:19_, 1:35:12_, 1:36:5_, 1:36:14_, 1:37:8_, 1:38:3_, 1:38:16_, 1:38:20_, 1:38:22 _, 1:39:5_, 1:39:9_, 1:46:11_, 1:46:21_, 1:60:1_, 1:60:9_, 1:60:13_, 1:61:1_, 1:61:8_, 1:61:11_, 1:61:19_, 1:61:25 _, 1:62:10_, 1:62:15_, 1:62:23_, 1:63:2_, 1:63:5_, 1:63:22_, 1:64:11_, 1:64:23 _, 1:65:6_, 1:65:13_, 1:65:20 _, 1:65:24_, 1:66:4_, 1:66:12 _, 1:66:18_, 1:67:9_, 1:67:18 _, 1:67:21_, 1:67:24_, 1:68:2 _, 1:68:10_, 1:68:12_, 1:68:19_, 1:68:25_, 1:76:17 _, 1:77:6_, 1:78:2, 1:78:5_, 1:78:20_, 1:79:2_, 1:79:14_, 1:79:19_, 1:79:25_, 1:80:4_, 1:80:10_, 1:80:19_, 1:81:2_, 1:81:7_, 1:81:20_, 1:82:1_,

1:82:5_, 1:82:14_, 1:82:20_, 1:82:23_, 1:83:2_, 1:83:7_, 1:83:14_, 1:83:17_, 1:84:3_, 1:84:17_, 1:85:3_, 1:85:6_, 1:85:9_, 1:86:20_, 1:86:25_, 1:87:17_, 1:89:21_, 1:90:2_, 1:90:5_, 1:92:18_, 1:94:17_, 1:95:2_, 1:96:8_, 1:96:15_, 1:96:19_, 1:97:3_, 1:97:6_, 1:97:9_, 1:127:3_, 1:128:20 _, 1:129:10_, 1:130:5_, 1:130:17_, 1:131:16_, 1:132:20_, 1:133:15_, 1:135:2

Kirby [40]_ - 1:3:15_, 1:5:25_, 1:6:2_, 1:6:22_, 1:8:19_, 1:9:1_, 1:13:4_, 1:13:21_, 1:14:6_, 1:15:14_, 1:16:14_, 1:17:18_, 1:19:1_, 1:19:2_, 1:37:24_, 1:38:11_, 1:38:25_, 1:39:7_, 1:46:10_, 1:46:20_, 1:59:21_, 1:61:6_, 1:76:13_, 1:77:17_, 1:78:15 _, 1:79:13_, 1:81:9_, 1:82:13 _, 1:87:14_, 1:89:19_, 1:92:11_, 1:94:13_, 1:94:15 _, 1:96:7_, 1:96:12_, 1:123:7 _, 1:127:2_, 1:131:15_, 1:131:20_, 1:134:25

knives [3]_ - 1:54:19_, 1:68:12_, 1:68:16

knock [1]_ - 1:22:15

knock-and-announce [1]_ - 1:22:15

knocking [1]_ - 1:22:14

knowingly [2]_ - 1:70:18_, 1:114:7

knowledge [2]_ - 1:113:16_, 1:114:10

knows [3]_ - 1:5:6_, 1:114:12_, 1:120:10

---

**L**

lack [7]_ - 1:21:8_, 1:23:17 _, 1:113:16_, 1:113:25_, 1:114:15_, 1:114:17

ladies [1]_ - 1:119:23

laid [4]_ - 1:46:22_, 1:48:19 _, 1:48:23_, 1:99:1

Lanzon [2]_ - 1:85:24_, 1:86:23

LANZON [2]_ - 1:85:25_, 1:86:24

larger [1]_ - 1:95:8

last [13]_ - 1:27:24_, 1:28:1 _, 1:34:23_, 1:39:24_,

1:53:23_, 1:56:17_, 1:71:6_, 1:73:14_, 1:73:22_, 1:82:5_, 1:82:10_, 1:83:12_, 1:101:18

lasted [1]_ - 1:30:11

late [1]_ - 1:101:3

latter [1]_ - 1:47:20

laughable [1]_ - 1:41:5

law [19]_ - 1:20:16_, 1:20:20_, 1:20:22_, 1:39:20 _, 1:41:20_, 1:42:2_, 1:42:7_, 1:71:3_, 1:72:6_, 1:75:2_, 1:78:24_, 1:86:1_, 1:109:14 _, 1:110:25_, 1:111:2_, 1:114:13_, 1:120:18_, 1:134:1

lawfully [1]_ - 1:41:10

lawyer [18]_ - 1:69:13_, 1:72:1_, 1:72:4_, 1:72:9_, 1:72:11_, 1:72:15_, 1:72:21 _, 1:72:22_, 1:73:17_, 1:73:23_, 1:74:13_, 1:74:19 _, 1:75:9_, 1:79:19_, 1:81:8

lawyers [1]_ - 1:72:22

lay [1]_ - 1:46:25

laying [1]_ - 1:48:20

layman's [1]_ - 1:40:24

lead [1]_ - 1:126:9

leading [5]_ - 1:4:13_, 1:41:17_, 1:48:7_, 1:82:1_, 1:103:12

learn [1]_ - 1:23:3

least [11]_ - 1:39:19_, 1:45:14_, 1:54:22_, 1:72:17 _, 1:84:8_, 1:96:10_, 1:102:22_, 1:108:5_, 1:122:9 _, 1:129:5_, 1:132:2

leave [2]_ - 1:78:8_, 1:130:9

lectern [1]_ - 1:77:19

left [3]_ - 1:68:1_, 1:78:15_, 1:98:1

legal [2]_ - 1:4:18_, 1:39:19

legally [1]_ - 1:5:22

legislative [1]_ - 1:111:8

legislature [3]_ - 1:109:22 _, 1:111:2_, 1:120:17

lengthy [2]_ - 1:94:7_, 1:94:11

less [3]_ - 1:51:1_, 1:52:3_, 1:89:7

letter [2]_ - 1:91:5_, 1:91:15

letters [1]_ - 1:61:6

letting [1]_ - 1:133:24

level [1]_ - 1:71:18

levels [1]_ - 1:98:18

Levinson [2]_ - 1:112:9_, 1:114:22

liberty [2]_ - 1:69:21_, 1:71:22

library [2]_ - 1:102:5_, 1:102:9

license [2]_ - 1:27:14_, 1:27:16

life [1]_ - 1:42:11

lights [1]_ - 1:53:18

likelihood [3]_ - 1:51:24_, 1:55:19_, 1:56:8

likely [3]_ - 1:112:14_, 1:114:6_, 1:132:13

limine [15]_ - 1:3:25_, 1:87:21_, 1:88:8_, 1:92:24_, 1:95:9_, 1:95:23_, 1:97:21_, 1:105:3_, 1:105:15_, 1:123:11_, 1:128:8_, 1:130:16_, 1:131:21_, 1:132:18

limit [3]_ - 1:53:19_, 1:87:16_, 1:121:14

limitation [1]_ - 1:87:9

limitations [1]_ - 1:119:2

limited [8]_ - 1:38:13_, 1:62:25_, 1:93:2_, 1:93:21_, 1:107:14_, 1:127:20_, 1:128:17_, 1:130:21

limiting [1]_ - 1:104:4

Linda [12]_ - 1:23:2_, 1:23:3_, 1:23:12_, 1:23:21_, 1:23:22_, 1:24:14_, 1:30:8_, 1:31:24_, 1:32:3_, 1:32:13_, 1:33:10_, 1:33:11

line [18]_ - 1:27:24_, 1:28:1 _, 1:28:16_, 1:31:5_, 1:69:21 _, 1:69:22_, 1:75:11_, 1:79:20_, 1:79:22_, 1:79:23 _, 1:81:8_, 1:81:16_, 1:81:19 _, 1:92:22_, 1:100:13_, 1:101:16_, 1:121:5

lineage [1]_ - 1:118:21

lined [1]_ - 1:126:5

lines [3]_ - 1:53:15_, 1:77:13_, 1:77:14

lingerie [4]_ - 1:48:19_, 1:48:21_, 1:48:23_, 1:49:12

list [7]_ - 1:17:8_, 1:17:23_, 1:27:13_, 1:55:13_, 1:55:14 _, 1:89:6_, 1:101:7

listed [1]_ - 1:118:3

listen [4]_ - 1:12:10_, 1:13:1_, 1:57:6_, 1:81:12

listening [2]_ - 1:7:14_, 1:14:4

listing [1]_ - 1:89:3

lists [3]_ - 1:44:6_, 1:109:14_, 1:125:9

litigating [1]_ - 1:95:22

live [2]_ - 1:54:17_, 1:65:17

lived [2]_ - 1:21:21_, 1:24:12

living [6]_ - 1:30:3_, 1:33:11_, 1:33:24_, 1:34:7_, 1:40:5_, 1:120:9

loathe [1]_ - 1:70:18

local [2]_ - 1:3:18_, 1:87:16

located [1]_ - 1:56:24

location [3]_ - 1:41:24_, 1:67:11_, 1:67:15

lodge [2]_ - 1:110:16_, 1:119:22

logical [1]_ - 1:123:1

look [10]_ - 1:12:4_, 1:36:25_, 1:40:25_, 1:42:6_, 1:48:17_, 1:49:19_, 1:86:19 _, 1:107:21_, 1:118:14_, 1:133:6

looking [8]_ - 1:43:9_, 1:54:7_, 1:54:11_, 1:56:14_, 1:91:9_, 1:94:2_, 1:100:1_, 1:125:15

losing [1]_ - 1:42:10

love [1]_ - 1:101:16

Lucie [2]_ - 1:132:22_, 1:133:1

lunch [4]_ - 1:77:16_, 1:77:17_, 1:77:19_, 1:85:18

Lynn [1]_ - 1:19:22

---

**M**

M-Y-E-R-S [1]_ - 1:34:24

ma'am [53]_ - 1:4:6_, 1:4:21_, 1:4:25_, 1:11:9_, 1:12:5_, 1:13:24_, 1:14:20_, 1:16:3_, 1:17:11_, 1:17:25_, 1:18:4_, 1:19:9_, 1:28:2_, 1:31:16_, 1:35:9_, 1:37:18_, 1:42:20_, 1:43:8_, 1:43:22_, 1:44:4_, 1:44:24_, 1:47:22_, 1:52:10_, 1:53:1_, 1:55:1_, 1:55:7_, 1:57:16_, 1:59:9_, 1:70:6_, 1:70:9_, 1:70:17_, 1:70:22_, 1:71:21_, 1:76:8_,

1:82:11_, 1:87:5_, 1:87:10_, 1:87:25_, 1:88:17_, 1:92:7_, 1:93:11_, 1:94:1_, 1:96:6_, 1:102:14_, 1:104:24_, 1:108:23_, 1:113:6_, 1:121:1 _, 1:121:10_, 1:125:3_, 1:125:14_, 1:125:16_, 1:127:1

magic [1]_ - 1:71:4

magistrate [2]_ - 1:21:4_, 1:22:2

main [1]_ - 1:50:22

major [1]_ - 1:88:10

male [4]_ - 1:22:24_, 1:22:25_, 1:101:14

manner [1]_ - 1:25:8

mark [5]_ - 1:12:19_, 1:12:20_, 1:13:14_, 1:26:22 _, 1:101:20

marked [1]_ - 1:13:13_, 1:27:1

marker [2]_ - 1:81:23_, 1:82:22

marking [1]_ - 1:17:1

marshals [1]_ - 1:132:25

masochistic [1]_ - 1:116:12

masturbating [1]_ - 1:48:23

match [2]_ - 1:5:8_, 1:108:22

material [4]_ - 1:104:7_, 1:104:10_, 1:106:24_, 1:121:15

materialize [1]_ - 1:100:25

materials [3]_ - 1:91:24_, 1:92:4_, 1:107:19

matter [11]_ - 1:44:18_, 1:65:13_, 1:92:14_, 1:94:11 _, 1:106:7_, 1:109:9_, 1:111:18_, 1:116:6_, 1:124:1 _, 1:127:4_, 1:131:23

matters [5]_ - 1:11:23_, 1:88:3_, 1:114:20_, 1:132:21 _, 1:134:24

McCabe [1]_ - 1:43:24

McCabe's [1]_ - 1:44:7

mean [20]_ - 1:5:17_, 1:15:17_, 1:32:8_, 1:33:3_, 1:46:21_, 1:64:6_, 1:64:25_, 1:66:2_, 1:89:1_, 1:91:9_, 1:107:22_, 1:116:18_, 1:119:6_, 1:127:6_, 1:127:12 _, 1:129:11_, 1:129:13_,

1:129:16_, 1:129:21_, 1:130:3

means [5]_ - 1:7:10_, 1:72:13_, 1:109:13_, 1:109:16_, 1:129:22

meant [2]_ - 1:73:25_, 1:74:5

measure [3]_ - 1:53:2_, 1:53:4_, 1:64:18

measures [1]_ - 1:42:3

mechanism [1]_ - 1:120:18

medical [3]_ - 1:133:5_, 1:133:8_, 1:133:11

meet [14]_ - 1:49:14_, 1:57:24_, 1:66:22_, 1:67:8_, 1:67:10_, 1:67:11_, 1:86:6_, 1:117:19_, 1:124:7_, 1:124:10_, 1:124:11_, 1:129:8_, 1:129:13_, 1:129:20

meet-up [1]_ - 1:67:11

meeting [1]_ - 1:124:11

memes [1]_ - 1:100:10_, 1:100:13_, 1:100:20_, 1:100:21_, 1:101:5_, 1:101:12_, 1:102:3_, 1:113:8 _, 1:120:24_, 1:129:2_, 1:129:6

memorialize [1]_ - 1:132:17

memorialized [2]_ - 1:4:20_, 1:4:22

mental [3]_ - 1:24:17_, 1:24:22_, 1:62:6

mention [4]_ - 1:56:3_, 1:69:14_, 1:72:23_, 1:109:24

mentioned [11]_ - 1:6:24 _, 1:18:22_, 1:35:19_, 1:43:3 _, 1:49:5_, 1:71:25_, 1:72:1_, 1:75:22_, 1:102:15_, 1:114:22_, 1:122:19

message [1]_ - 1:58:2

messaged [1]_ - 1:49:9

messaging [2]_ - 1:86:4_, 1:99:19

messed [1]_ - 1:48:17

met [3]_ - 1:31:24_, 1:48:9 _, 1:49:4

method [2]_ - 1:15:24_, 1:61:17

Michael [6]_ - 1:3:6_, 1:15:4_, 1:21:14_, 1:21:21_, 1:78:14_, 1:126:16

Michigan [1]_ - 1:44:15

microphone [2]_ - 1:79:10_, 1:90:7

mid [1]_ - 1:134:5

mid-trial [1]_ - 1:134:5

middle [1]_ - 1:5:12

might [8]_ - 1:65:16_, 1:89:9_, 1:91:11_, 1:101:14 _, 1:124:13_, 1:134:11_, 1:134:12_, 1:134:14

mind [1]_ - 1:33:2

mini [1]_ - 1:49:9

minor [7]_ - 1:110:4_, 1:114:5_, 1:115:1_, 1:127:7 _, 1:127:8_, 1:127:21_, 1:127:22

minute [14]_ - 1:45:8_, 1:52:12_, 1:77:6_, 1:79:3_, 1:79:12_, 1:80:14_, 1:81:22 _, 1:82:15_, 1:82:17_, 1:83:13_, 1:94:12_, 1:99:5_, 1:111:14_, 1:125:6

minutes [20]_ - 1:12:17_, 1:14:14_, 1:14:15_, 1:14:17 _, 1:14:18_, 1:14:21_, 1:15:1 _, 1:18:5_, 1:18:9_, 1:24:6_, 1:24:8_, 1:30:12_, 1:33:22_, 1:48:21_, 1:52:20_, 1:52:22 _, 1:69:16_, 1:83:5_, 1:109:12

minutes' [1]_ - 1:12:13

Miranda [14]_ - 1:12:17_, 1:15:4_, 1:15:10_, 1:70:4_, 1:70:19_, 1:71:7_, 1:71:19_, 1:73:13_, 1:73:14_, 1:74:10 _, 1:74:14_, 1:76:21_, 1:76:22_, 1:76:24

miscellaneous [1]_ - 1:100:22

missed [1]_ - 1:134:14

missing [1]_ - 1:86:25

misspoke [1]_ - 1:60:9

misstate [1]_ - 1:77:11

mistake [4]_ - 1:113:16_, 1:113:25_, 1:114:15_, 1:114:17

mistaken [1]_ - 1:117:8

mistakenly [1]_ - 1:111:22

mobile [2]_ - 1:48:2_, 1:66:9

molestation [16]_ - 1:109:8_, 1:109:9_, 1:109:13 _, 1:109:19_, 1:109:21_, 1:110:10_, 1:111:5_, 1:111:20_, 1:112:4_,

1:112:12_, 1:112:15_, 1:113:11_, 1:117:5_, 1:118:17_, 1:121:3_, 1:129:9

moment [12]_ - 1:10:23_, 1:26:16_, 1:43:15_, 1:52:9_, 1:63:14_, 1:66:19_, 1:66:24 _, 1:67:1_, 1:72:6_, 1:114:15 _, 1:119:25_, 1:120:11

money [1]_ - 1:50:23

month [1]_ - 1:50:20

morning [16]_ - 1:3:2_, 1:3:9_, 1:3:13_, 1:3:14_, 1:3:15_, 1:3:17_, 1:3:19_, 1:3:21, 1:3:22_, 1:19:14_, 1:20:10_, 1:20:11_, 1:31:22 _, 1:31:23_, 1:82:4_, 1:88:11

most [8]_ - 1:23:20_, 1:23:22_, 1:25:10_, 1:25:12 _, 1:32:3_, 1:32:13_, 1:72:20 _, 1:77:24

mostly [1]_ - 1:124:20

mother [7]_ - 1:23:3_, 1:23:23_, 1:23:24_, 1:24:14 _, 1:24:18_, 1:40:6_, 1:120:10

motion [92]_ - 1:3:25_, 1:4:10_, 1:6:10_, 1:12:6_, 1:12:12_, 1:15:7_, 1:15:9_, 1:17:6_, 1:18:23_, 1:35:19_, 1:36:17_, 1:36:22_, 1:38:9_, 1:38:12_, 1:39:11_, 1:39:18 _, 1:40:19_, 1:41:9_, 1:43:12 _, 1:56:21_, 1:62:4_, 1:62:24 _, 1:63:1_, 1:69:6_, 1:69:9_, 1:69:11_, 1:69:14_, 1:73:12 _, 1:74:23_, 1:74:24_, 1:75:1 _, 1:76:15_, 1:77:22_, 1:78:16_, 1:80:21_, 1:82:24 _, 1:83:3_, 1:83:5_, 1:83:10_, 1:83:22_, 1:84:6_, 1:84:23_, 1:85:20_, 1:87:20_, 1:87:23 _, 1:88:7_, 1:88:12_, 1:89:13 _, 1:89:20_, 1:92:6_, 1:92:10 _, 1:92:17_, 1:92:23_, 1:92:24_, 1:93:5_, 1:94:14_, 1:95:9_, 1:95:22_, 1:95:23_, 1:96:2_, 1:97:21_, 1:98:17_, 1:104:17_, 1:105:3_, 1:105:11_, 1:105:15_, 1:109:24_, 1:110:6_, 1:111:3 _, 1:111:13_, 1:111:24_, 1:115:7_, 1:115:8_, 1:115:9 _, 1:117:1_, 1:118:3_, 1:121:4_, 1:122:13_, 1:122:15_, 1:123:11_, 1:128:8_, 1:129:23_, 1:130:15_, 1:130:20_, 1:131:2_, 1:131:8_, 1:131:9 _, 1:131:19_, 1:131:21_,

1:132:18

motions [14]_ - 1:3:24_, 1:4:4_, 1:4:8_, 1:19:7_, 1:37:22_, 1:37:25_, 1:39:8_, 1:62:8_, 1:85:16_, 1:87:20_, 1:88:3_, 1:117:13_, 1:131:17 _, 1:133:9

motive [7]_ - 1:106:18_, 1:113:15_, 1:113:24_, 1:114:14_, 1:114:17_, 1:121:25_, 1:122:23

move [12]_ - 1:29:7_, 1:35:21_, 1:46:8_, 1:46:16_, 1:47:3_, 1:60:2_, 1:60:10_, 1:88:15_, 1:104:12_, 1:108:7 _, 1:108:24_, 1:113:12

moved [2]_ - 1:59:16_, 1:60:3

MR [359]_ - 1:3:9_, 1:3:15_, 1:3:17_, 1:4:6_, 1:4:8_, 1:4:21_, 1:4:25_, 1:5:4_, 1:5:6_, 1:5:12_, 1:5:15_, 1:5:20_, 1:5:25_, 1:6:5_, 1:6:14_, 1:6:19_, 1:6:25_, 1:9:3_, 1:10:4_, 1:10:7_, 1:10:24_, 1:11:7_, 1:11:9_, 1:11:12_, 1:12:4_, 1:12:16_, 1:12:23_, 1:13:5_, 1:13:11_, 1:13:14_, 1:13:19_, 1:13:24 _, 1:14:3_, 1:14:9_, 1:14:12_, 1:14:17_, 1:14:20_, 1:14:25 _, 1:15:15_, 1:16:3_, 1:16:5_, 1:16:13_, 1:16:15_, 1:16:20 _, 1:17:2_, 1:17:10_, 1:17:16 _, 1:17:20_, 1:17:25_, 1:18:4 _, 1:18:8_, 1:18:11_, 1:18:13 _, 1:18:16_, 1:19:1_, 1:18:21_, 1:19:3_, 1:19:9_, 1:19:12_, 1:19:23_, 1:19:25 _, 1:20:3_, 1:20:9_, 1:26:16_, 1:26:17_, 1:26:18_, 1:26:19 _, 1:26:20_, 1:27:2_, 1:27:5_, 1:27:6_, 1:29:6_, 1:29:9_, 1:29:13_, 1:29:23_, 1:31:16, 1:31:17_, 1:31:19, 1:31:21_, 1:32:19_, 1:32:20_, 1:34:3_, 1:34:9_, 1:34:19_, 1:34:21_, 1:35:11_, 1:35:12_, 1:35:16 _, 1:36:5_, 1:36:14_, 1:36:21 _, 1:36:24_, 1:37:2_, 1:37:4_, 1:37:8_, 1:37:12_, 1:37:18_, 1:37:22_, 1:38:3_, 1:38:16_, 1:38:20_, 1:38:22_, 1:39:5_, 1:39:9_, 1:39:13_, 1:39:16_, 1:42:20_, 1:43:8_, 1:43:14_, 1:43:22_, 1:43:24_, 1:44:4_, 1:44:24_, 1:45:1_, 1:45:3_, 1:45:5_, 1:45:8_, 1:45:10_, 1:45:17_, 1:46:7_, 1:46:11_,

1:46:16_, 1:46:21_, 1:47:3_, 1:47:8_, 1:47:17_, 1:47:22_, 1:48:14_, 1:49:17_, 1:52:10 _, 1:52:14_, 1:52:24_, 1:53:1 _, 1:53:4_, 1:53:8_, 1:53:11_, 1:54:10_, 1:54:13_, 1:54:16 _, 1:55:1_, 1:55:5_, 1:55:7_, 1:55:9_, 1:57:16_, 1:58:9_, 1:58:19_, 1:59:1_, 1:59:4_, 1:59:9_, 1:59:19_, 1:60:1_, 1:60:9_, 1:60:13_, 1:60:16_, 1:60:21_, 1:60:23_, 1:60:24 _, 1:60:25_, 1:61:1_, 1:61:8_, 1:61:11_, 1:61:13_, 1:61:15 _, 1:61:19_, 1:61:25_, 1:62:10_, 1:62:15_, 1:62:23 _, 1:63:2_, 1:63:5_, 1:63:22_, 1:64:11_, 1:64:23_, 1:65:6_, 1:65:13_, 1:65:20_, 1:65:24 _, 1:66:4_, 1:66:12_, 1:66:18 _, 1:67:9_, 1:67:18_, 1:67:21 _, 1:67:24_, 1:68:2_, 1:68:10 _, 1:68:12_, 1:68:19_, 1:68:25_, 1:69:4_, 1:69:8_, 1:70:9_, 1:70:13_, 1:70:17_, 1:71:3_, 1:71:21_, 1:76:8_, 1:76:10_, 1:76:17_, 1:77:6_, 1:78:2_, 1:78:5_, 1:78:7_, 1:78:10_, 1:78:20_, 1:79:2_, 1:79:8_, 1:79:14_, 1:79:16_, 1:79:18_, 1:79:19_, 1:79:25 _, 1:80:3_, 1:80:4_, 1:80:7_, 1:80:10_, 1:80:12_, 1:80:19 _, 1:81:2_, 1:81:7_, 1:81:20_, 1:82:1_, 1:82:5_, 1:82:10_, 1:82:14_, 1:82:20_, 1:82:23 _, 1:83:2_, 1:83:7_, 1:83:14_, 1:83:17_, 1:84:3_, 1:84:17_, 1:85:3_, 1:85:6_, 1:85:9_, 1:85:13_, 1:85:18_, 1:85:23 _, 1:86:20_, 1:86:23_, 1:86:25_, 1:87:2_, 1:87:5_, 1:87:10_, 1:87:13_, 1:87:17 _, 1:87:25_, 1:88:17_, 1:88:20_, 1:88:24_, 1:89:16 _, 1:89:21_, 1:90:2_, 1:90:5_, 1:90:6_, 1:90:8, 1:90:25_, 1:91:4_, 1:91:14_, 1:91:25_, 1:92:7_, 1:92:18_, 1:92:20_, 1:92:22_, 1:93:11_, 1:93:13 _, 1:94:1_, 1:94:4_, 1:94:9_, 1:94:17_, 1:95:2_, 1:95:7_, 1:95:15_, 1:95:18_, 1:96:6_, 1:96:8_, 1:96:15_, 1:96:19_, 1:97:3_, 1:97:6_, 1:97:9_, 1:97:15_, 1:97:19_, 1:98:6_, 1:98:11_, 1:99:25_, 1:100:19 _, 1:100:21_, 1:101:1_, 1:101:7_, 1:101:13_, 1:101:18_, 1:102:2_, 1:102:6 _, 1:102:8_, 1:102:14_,

1:102:17_, 1:102:20_, 1:102:24_, 1:103:2_, 1:103:11_, 1:103:17_, 1:103:21_, 1:104:1_, 1:104:8 _, 1:104:21_, 1:104:24_, 1:105:2_, 1:107:14_, 1:108:11_, 1:108:14_, 1:108:17_, 1:108:23_, 1:108:25_, 1:112:8_, 1:112:22_, 1:113:1_, 1:113:6 _, 1:113:14_, 1:119:13, 1:119:17_, 1:119:20_, 1:120:25_, 1:121:4_, 1:121:12_, 1:121:21_, 1:122:13_, 1:122:19_, 1:123:8_, 1:123:10_, 1:123:14_, 1:125:3_, 1:125:8 _, 1:125:14_, 1:125:16, 1:125:18_, 1:125:21_, 1:125:24_, 1:126:2_, 1:126:7 _, 1:126:24_, 1:127:1_, 1:127:3_, 1:128:20_, 1:129:10_, 1:130:5_, 1:130:17_, 1:131:7_, 1:131:13_, 1:131:16_, 1:132:20_, 1:133:15_, 1:133:19_, 1:134:10_, 1:134:11_, 1:134:20_, 1:134:22_, 1:135:2

multiple [3]_ - 1:41:22_, 1:62:13_, 1:68:16

MYERS [1] - 1:20:5

Myers [10]_ - 1:4:15_, 1:19:13_, 1:19:22_, 1:20:10 _, 1:27:7_, 1:31:22_, 1:34:24 _, 1:40:2_, 1:40:12_, 1:52:19

___

N

naked [3]_ - 1:101:19_, 1:101:22_, 1:102:4

name [18]_ - 1:19:21_, 1:22:23_, 1:23:9_, 1:27:15_, 1:27:22_, 1:27:25_, 1:28:6_, 1:28:12_, 1:28:13_, 1:28:24 _, 1:29:1_, 1:34:23_, 1:34:25 _, 1:100:8_, 1:101:3

named [1]_ - 1:120:3

nature [2]_ - 1:76:16_, 1:134:22

nay [1]_ - 1:74:9

nearly [1]_ - 1:16:10

necessarily [4]_ - 1:97:7_, 1:122:8_, 1:123:3_, 1:129:10

necessary [15]_ - 1:6:17_, 1:6:23_, 1:8:16_, 1:36:17_, 1:71:18_, 1:78:23_, 1:105:22 _, 1:106:17_, 1:119:10_,

1:122:17_, 1:122:21_, 1:122:22_, 1:122:24_, 1:125:8_, 1:132:5

neck [1]_ - 1:133:4

need [25]_ - 1:9:16_, 1:13:8_, 1:36:19_, 1:36:22_, 1:38:9_, 1:38:24_, 1:39:1_, 1:48:4_, 1:60:18_, 1:60:20_, 1:61:23_, 1:70:20_, 1:71:4_, 1:71:6_, 1:75:7_, 1:77:3_, 1:78:22_, 1:81:9_, 1:96:1_, 1:132:14_, 1:133:9_, 1:133:23_, 1:134:2_, 1:134:6

needed [4]_ - 1:70:25_, 1:84:18_, 1:114:9_, 1:124:14

needs [8]_ - 1:13:1_, 1:36:17_, 1:36:19_, 1:59:15 _, 1:60:2_, 1:91:12_, 1:97:17 _, 1:130:6

neglected [1]_ - 1:109:25

never [7]_ - 1:15:18_, 1:15:19_, 1:40:15_, 1:50:15 _, 1:75:16_, 1:133:4

nevertheless [1]_ - 1:36:25

New [1]_ - 1:87:7

new [3]_ - 1:81:19_, 1:111:3

next [6]_ - 1:12:3_, 1:18:10 _, 1:18:20_, 1:49:1_, 1:53:20

nine [1]_ - 1:72:17

nobody [2]_ - 1:119:24_, 1:119:25

nominal [1]_ - 1:50:22

none [2]_ - 1:7:20_, 1:46:3

normal [2]_ - 1:15:19_, 1:63:13

normally [1]_ - 1:111:10

Norte [2]_ - 1:21:24_, 1:53:17

note [5]_ - 1:38:23_, 1:40:25_, 1:46:5_, 1:53:13_, 1:88:13

notebook [1]_ - 1:34:6

noted [5]_ - 1:44:11_, 1:49:18_, 1:74:1_, 1:98:16

notes [1]_ - 1:58:13

nothing [15] - 1:7:6_, 1:19:18_, 1:57:20_, 1:57:21 _, 1:59:19_, 1:66:18_, 1:66:25_, 1:67:3_, 1:84:12_, 1:116:12_, 1:120:7_, 1:122:13_, 1:127:14_, 1:127:15_, 1:127:25

notice [10]_ - 1:24:14_,

1:24:21_, 1:38:25_, 1:39:2_, 1:41:16_, 1:43:1_, 1:60:16_, 1:105:12_, 1:116:4_, 1:131:20

noticed [1]_ - 1:53:17

noticing [1]_ - 1:39:1

notion [1]_ - 1:63:19

notional [6]_ - 1:49:3_, 1:114:2_, 1:116:14_, 1:127:8 _, 1:127:21_, 1:128:16

notions [1]_ - 1:84:23

November [3]_ - 1:42:23 _, 1:43:17_, 1:99:20

November/December [1]_ - 1:99:23

nude [1]_ - 1:48:22

number [18]_ - 1:3:6_, 1:4:3_, 1:8:25_, 1:10:10_, 1:13:16_, 1:13:20_, 1:13:23 _, 1:20:25_, 1:27:16_, 1:36:1 _, 1:44:6_, 1:46:4_, 1:57:10_, 1:61:7_, 1:88:4_, 1:91:17_, 1:92:22_, 1:93:2

numbers [3]_ - 1:5:7_, 1:89:3_, 1:99:12

---

O

O-C-H-O-A [1]_ - 1:73:7

Oaks [1]_ - 1:53:17

oath [1]_ - 1:9:6

object [4]_ - 1:16:9_, 1:17:18_, 1:46:13_, 1:96:21

objected [1]_ - 1:95:20

objecting [2]_ - 1:39:19_, 1:97:1

objection [23]_ - 1:6:21_, 1:13:21_, 1:14:1_, 1:14:7_, 1:16:5_, 1:16:17_, 1:29:8_, 1:29:11_, 1:34:3_, 1:36:2_, 1:36:12_, 1:46:10_, 1:46:19 _, 1:46:24_, 1:61:5_, 1:61:9_, 1:61:14_, 1:61:18_, 1:88:9_, 1:94:16_, 1:94:18_, 1:94:20 _, 1:95:1

objections [2]_ - 1:92:11_, 1:92:13

objects [1]_ - 1:61:13

obligation [1]_ - 1:7:22

observed [1]_ - 1:50:15

obtain [1]_ - 1:52:2

obtaining [1]_ - 1:29:14

obviously [8]_ - 1:6:20_, 1:35:22_, 1:41:6_, 1:52:3_, 1:55:22_, 1:56:7_, 1:58:21_,

---

1:86:13

occasion [1]_ - 1:50:19

occupant' [1]_ - 1:47:11

occur [2]_ - 1:53:10_, 1:69:9

occurred [3]_ - 1:4:13_, 1:115:25_, 1:118:23

occurs [2]_ - 1:53:5_, 1:101:3

Ochoa [5]_ - 1:73:7_, 1:73:15_, 1:73:21_, 1:74:1_, 1:74:5

offense [6]_ - 1:55:15_, 1:105:20_, 1:105:24_, 1:109:22_, 1:111:17_, 1:111:23

offenses [8]_ - 1:50:15_, 1:50:18_, 1:105:22_, 1:106:12_, 1:111:4_, 1:111:20_, 1:119:10_, 1:122:22

offer [2]_ - 1:75:4_, 1:121:12

offered [4]_ - 1:59:13_, 1:112:1_, 1:113:23_, 1:113:24

offering [3]_ - 1:75:15_, 1:112:1_, 1:115:14

offhand [3]_ - 1:22:12_, 1:24:6_, 1:34:5

officer [10]_ - 1:48:6_, 1:50:18_, 1:58:1_, 1:73:20_, 1:73:25_, 1:74:4_, 1:84:18_, 1:86:4_, 1:86:8_, 1:93:7

officers [14]_ - 1:44:13_, 1:44:16_, 1:47:12_, 1:50:20 _, 1:55:20_, 1:57:19_, 1:58:11_, 1:58:15_, 1:71:17 _, 1:73:15_, 1:74:20_, 1:75:17_, 1:86:8_, 1:86:12

official [1]_ - 1:35:20_, 1:43:2

often [1]_ - 1:58:19

old [3]_ - 1:118:12_, 1:123:25_, 1:128:1

older [2]_ - 1:128:2_, 1:128:3

omnibus [8]_ - 1:3:25_, 1:87:20_, 1:88:7_, 1:88:12_, 1:92:23_, 1:95:8_, 1:97:21_, 1:115:8

on-the-fly [1]_ - 1:133:7

once [5]_ - 1:10:20_, 1:44:19_, 1:51:22_, 1:110:23 _, 1:110:25

---

one [66]_ - 1:4:14_, 1:5:12 _, 1:9:3_, 1:13:15_, 1:14:9_, 1:16:25_, 1:17:13_, 1:18:16 _, 1:28:4_, 1:35:16_, 1:35:17 _, 1:39:23_, 1:41:11_, 1:43:14_, 1:45:11_, 1:45:24 _, 1:47:19_, 1:50:18_, 1:52:9 _, 1:58:19_, 1:59:10_, 1:59:25_, 1:65:11_, 1:67:18 _, 1:70:7_, 1:71:5_, 1:71:13_, 1:71:17_, 1:73:22_, 1:75:11 _, 1:75:12_, 1:75:21_, 1:84:5 _, 1:90:14_, 1:90:19_, 1:90:20_, 1:91:4_, 1:95:15_, 1:98:14_, 1:99:4_, 1:99:7_, 1:99:14_, 1:101:7_, 1:101:11 _, 1:101:14_, 1:101:22_, 1:102:6_, 1:102:19_, 1:102:24_, 1:107:4_, 1:108:18_, 1:109:2_, 1:109:4 _, 1:110:15_, 1:113:17_, 1:115:24_, 1:116:2_, 1:118:8 _, 1:118:21_, 1:119:6_, 1:119:7_, 1:121:1_, 1:121:16 _, 1:128:18_, 1:131:7_, 1:131:19

ones [4]_ - 1:16:23_, 1:107:13_, 1:107:16_, 1:130:11

ongoing [2]_ - 1:54:15_, 1:64:21

online [1]_ - 1:91:18

open [1]_ - 1:23:18

opening [1]_ - 1:45:24

openly [2]_ - 1:12:10_, 1:33:6

operates [1]_ - 1:58:17

operating [2]_ - 1:6:18_, 1:43:7

operational [4]_ - 1:51:3_, 1:52:5_, 1:66:9_, 1:67:23

opinion [9]_ - 1:38:18_, 1:50:1_, 1:50:12_, 1:51:17_, 1:55:11_, 1:73:8_, 1:73:9_, 1:85:25_, 1:99:3

opportunity [5]_ - 1:9:1_, 1:15:25_, 1:37:24_, 1:114:15 _, 1:121:25

opposed [1]_ - 1:68:11

opposition [4]_ - 1:6:10_, 1:8:5_, 1:60:14_, 1:92:25

oral [7]_ - 1:15:11_, 1:70:2 _, 1:76:23_, 1:83:24_, 1:84:6 _, 1:84:7

orally [2]_ - 1:30:16_, 1:70:19

---

order [4]_ - 1:38:4_, 1:69:25_, 1:122:7_, 1:123:12

Order [1]_ - 1:3:1

ordinary [1]_ - 1:46:1

original [4]_ - 1:35:24_, 1:37:13_, 1:37:14

originals [1]_ - 1:37:16

otherwise [2]_ - 1:61:24_, 1:104:18

outlined [4]_ - 1:41:18_, 1:98:23_, 1:110:6_, 1:118:1

outset [1]_ - 1:84:2

outside [4]_ - 1:15:19_, 1:51:20_, 1:63:21_, 1:122:13

outweighed [1]_ - 1:111:11

overall [2]_ - 1:30:10_, 1:134:25

overcoming [1]_ - 1:61:17

overlap [1]_ - 1:58:22

overlapping [1]_ - 1:99:21

overlaps [1]_ - 1:106:8

overruled [1]_ - 1:34:4

overwhelming [4]_ - 1:116:17_, 1:116:19_, 1:117:24_, 1:119:9

own [3]_ - 1:30:17_, 1:58:7 _, 1:58:24

owned [1]_ - 1:50:14

owner [6]_ - 1:25:23_, 1:25:25_, 1:30:25_, 1:40:9_, 1:50:22

ownership [2]_ - 1:104:11 _, 1:104:13

---

P

p.m [8]_ - 1:22:5_, 1:40:3_, 1:52:17_, 1:53:12_, 1:53:16 _, 1:53:24_, 1:78:4_, 1:135:5

p.m.) [1]_ - 1:78:11

page [49]_ - 1:5:7_, 1:5:11 _, 1:5:12_, 1:5:15_, 1:6:9_, 1:6:13_, 1:8:7_, 1:10:10_, 1:10:16_, 1:10:20_, 1:11:4_, 1:11:5_, 1:11:18_, 1:15:8_, 1:42:21_, 1:43:16_, 1:44:6_, 1:48:15_, 1:49:8_, 1:49:24_, 1:52:16_, 1:53:14_, 1:54:4_, 1:55:10_, 1:56:22_, 1:58:9_, 1:58:10_, 1:68:14_, 1:69:15 _, 1:69:24_, 1:73:11_, 1:74:17_, 1:75:2_, 1:88:4_, 1:88:5_, 1:91:5_, 1:91:17_,

1:95:18_, 1:105:12_, 1:111:2
_, 1:111:12_, 1:112:1_,
1:117:1_, 1:121:4_, 1:125:5
_, 1:125:21_, 1:126:3

pages [16]_ - 1:4:22_,
1:5:2_, 1:8:4_, 1:41:18_,
1:43:7_, 1:43:11_, 1:47:25_,
1:51:11_, 1:72:3_, 1:89:8_,
1:91:21_, 1:95:24_, 1:96:4_,
1:98:23_, 1:134:13

pagination [1]_ - 1:5:8

painting [1]_ - 1:130:6

pales [1]_ - 1:116:21

Palm [1]_ - 1:132:23

paper [1]_ - 1:34:6

paperwork [3]_ - 1:96:25
_, 1:124:25_, 1:132:6

paragraph [10]_ - 1:5:15_,
1:6:13_, 1:8:7_, 1:9:13_,
1:10:21_, 1:11:1_, 1:15:9_,
1:43:16_, 1:49:1_, 1:69:15

paragraphs [3]_ - 1:11:7
_, 1:11:16_, 1:53:20

parcel [1]_ - 1:107:3

parked [6]_ - 1:51:19_,
1:51:20_, 1:52:6_, 1:63:20_,
1:63:21_, 1:64:2

Parkway [2]_ - 1:21:24_,
1:53:17

Parrado [1]_ - 1:63:18

parrado [1]_ - 1:51:16

PARRADO [1]_ - 1:51:16

part [22]_ - 1:5:7_, 1:11:10
_, 1:11:14_, 1:16:6_, 1:21:12
_, 1:21:13_, 1:21:18_,
1:48:25_, 1:55:21_, 1:57:6_,
1:62:8_, 1:75:12_, 1:88:12_,
1:92:23_, 1:101:18_, 1:107:3
_, 1:113:7_, 1:113:22_,
1:116:8_, 1:122:25_,
1:124:13_, 1:128:20

participated [1]_ - 1:86:3

particular [13]_ - 1:35:5_,
1:50:25_, 1:51:24_, 1:58:20
_, 1:60:17_, 1:63:24_,
1:63:25_, 1:101:2_, 1:101:19
_, 1:113:9_, 1:130:14_,
1:132:4_, 1:133:8

particularization [1]_ -
1:130:14

parties [12]_ - 1:3:7_,
1:12:8_, 1:36:10_, 1:74:1_,
1:87:22_, 1:88:1_, 1:88:5_,
1:88:11_, 1:95:22_, 1:96:1_,
1:96:10_, 1:131:3

partner [1]_ - 1:40:5

parts [1]_ - 1:12:11

passcode [2]_ - 1:72:25_,
1:77:8

passenger [4]_ - 1:41:25
_, 1:45:2_, 1:46:3_, 1:47:15

passport [9]_ - 1:35:18_,
1:36:4_, 1:37:6_, 1:37:14_,
1:40:22_, 1:41:4_, 1:75:10_,
1:131:1_, 1:131:8

past [3]_ - 1:53:19_,
1:88:15_, 1:114:11

pat [1]_ - 1:86:9

pat-down [1]_ - 1:86:9

Patricia [35]_ - 1:23:2_,
1:23:4_, 1:23:12_, 1:23:21_,
1:24:20_, 1:24:25_, 1:25:3_,
1:25:14_, 1:25:22_, 1:27:8_,
1:27:12_, 1:28:17_, 1:30:8_,
1:30:15_, 1:30:18_, 1:30:24
_, 1:31:8_, 1:31:24_, 1:32:6_,
1:32:21_, 1:33:1_, 1:33:10_,
1:33:20_, 1:34:1_, 1:34:10_,
1:35:18_, 1:36:4_, 1:38:14_,
1:40:22_, 1:51:4_, 1:60:7_,
1:60:10_, 1:61:11_, 1:62:17
_, 1:63:7

Patrol [1]_ - 1:20:18

pause [1]_ - 1:90:21

paused [1]_ - 1:18:8

pedophile [1]_ - 1:101:20

pending [3]_ - 1:92:10_,
1:130:19_, 1:131:18

per [1]_ - 1:123:11

percent [1]_ - 1:112:24

perfect [1]_ - 1:38:20

performed [1]_ - 1:126:10

perhaps [3]_ - 1:64:6_,
1:66:23_, 1:80:1

period [8]_ - 1:21:5_,
1:52:1_, 1:54:5_, 1:54:6_,
1:99:21_, 1:99:23_, 1:103:9
_, 1:103:24

perjury [1]_ - 1:7:11

permissible [2]_ - 1:47:24
_, 1:128:22

permission [3]_ - 1:35:24
_, 1:78:7_, 1:131:10

permit [2]_ - 1:46:8_,
1:132:7

permits [1]_ - 1:113:3

person [8]_ - 1:54:19_,
1:58:13_, 1:67:17_, 1:68:8_,
1:68:11_, 1:68:13_, 1:68:16

_, 1:114:8

persona [1]_ - 1:86:8

personal [3]_ - 1:35:23_,
1:35:25_, 1:36:10

perspective [3]_ - 1:10:10
_, 1:54:22_, 1:77:4

pertains [1]_ - 1:127:17

petitioner [1]_ - 1:47:11

phone [24]_ - 1:48:16_,
1:49:18_, 1:49:20_, 1:51:6_,
1:58:2_, 1:66:21_, 1:72:24_,
1:75:16_, 1:88:20_, 1:99:8_,
1:99:9_, 1:99:12_, 1:101:1_,
1:101:25_, 1:102:1_, 1:102:5
_, 1:102:9_, 1:105:10_,
1:110:18_, 1:119:25_,
1:129:7_, 1:132:12

phones [15]_ - 1:91:8_,
1:93:3_, 1:99:7_, 1:99:10_,
1:100:5_, 1:100:12_, 1:103:2
_, 1:106:4_, 1:106:17_,
1:107:18_, 1:107:23_,
1:108:1_, 1:108:13_, 1:116:2
_, 1:129:24

photo [6]_ - 1:48:18_,
1:101:19_, 1:101:20_,
1:101:21_, 1:102:4_, 1:102:9

photograph [4]_ - 1:46:9
_, 1:46:12_, 1:46:13_,
1:100:13

photographs [2]_ -
1:46:17_, 1:46:20

photos [1]_ - 1:100:10

physical [4]_ - 1:24:17_,
1:24:22_, 1:62:6_, 1:118:17

physically [3]_ - 1:26:8_,
1:29:4_, 1:124:14

pick [1]_ - 1:107:24

picked [1]_ - 1:67:2

picture [1]_ - 1:102:4

pictures [1]_ - 1:100:25

piece [8]_ - 1:35:16_,
1:37:13_, 1:48:18_, 1:48:23
_, 1:59:13_, 1:62:22_,
1:81:21_, 1:89:7

piecemeal [1]_ - 1:80:16

pieces [1]_ - 1:106:2

PII [2]_ - 1:36:18_, 1:131:4

pin [1]_ - 1:42:5

pinned [1]_ - 1:41:24

pinpoint [1]_ - 1:77:3

place [8]_ - 1:21:20_,
1:33:11_, 1:82:15_, 1:86:7_,
1:112:9_, 1:115:23_, 1:116:9

_, 1:123:5

placement [2]_ - 1:133:8
_, 1:133:11

places [2]_ - 1:102:8_,
1:102:11

placing [1]_ - 1:114:14

plainly [1]_ - 1:109:12

plan [5]_ - 1:4:4_, 1:93:12_,
1:113:15_, 1:116:14_,
1:117:19

plastic [1]_ - 1:63:9

plate [2]_ - 1:27:14_,
1:27:16

play [13]_ - 1:12:8_, 1:13:1
_, 1:13:6_, 1:14:5_, 1:18:1_,
1:18:11_, 1:19:2_, 1:70:7_,
1:79:3_, 1:93:16_, 1:94:9_,
1:94:10_, 1:94:23

played [12]_ - 1:13:8_,
1:14:3_, 1:14:24_, 1:15:12_,
1:18:7_, 1:18:18_, 1:70:11_,
1:79:17_, 1:80:9_, 1:80:14_,
1:82:11_, 1:93:20

playing [5]_ - 1:16:23_,
1:17:6_, 1:18:5_, 1:79:16_,
1:94:7

pleads [2]_ - 1:114:13_,
1:114:15

pleasantries [1]_ -
1:23:16

plenty [1]_ - 1:128:15

plug [1]_ - 1:68:16

plus [1]_ - 1:108:13

podium [3]_ - 1:20:1,
1:31:17_, 1:104:25

point [43]_ - 1:15:11_,
1:22:8_, 1:24:9_, 1:25:13_,
1:33:19_, 1:47:1_, 1:48:10_,
1:48:11_, 1:53:3_, 1:55:9_,
1:62:1_, 1:62:20_, 1:63:6_,
1:63:11_, 1:63:16_, 1:64:11
_, 1:64:13_, 1:64:20_, 1:65:2
_, 1:65:4_, 1:65:6_, 1:65:11_,
1:67:3_, 1:67:10_, 1:67:16_,
1:70:1_, 1:77:13_, 1:79:4_,
1:81:3_, 1:81:10_, 1:81:17_,
1:83:6_, 1:83:15_, 1:83:17_,
1:88:24_, 1:92:11_, 1:93:1_,
1:98:8_, 1:102:23_, 1:113:2
_, 1:129:4_, 1:132:2

pointing [1]_ - 1:76:14

points [1]_ - 1:74:22

police [7]_ - 1:44:13_,
1:50:4_, 1:50:8_, 1:50:15_,
1:52:1_, 1:52:5_, 1:120:2

population [1]_ - 1:132:24

pornography [52]_ -
1:81:18_, 1:92:25_, 1:93:6_,
1:93:19_, 1:94:8_, 1:94:22_,
1:95:6_, 1:98:4_, 1:99:15_,
1:99:17_, 1:103:5_, 1:103:7
_, 1:104:7_, 1:104:9_,
1:105:11_, 1:106:4_, 1:106:9
_, 1:106:10_, 1:106:11_,
1:106:16_, 1:106:19_,
1:107:6_, 1:107:8_, 1:107:23
_, 1:109:21_, 1:110:8_,
1:110:9_, 1:110:12_, 1:112:5
_, 1:114:1_, 1:114:5_,
1:114:25_, 1:115:5_, 1:117:7
_, 1:117:8_, 1:117:18_,
1:118:13_, 1:118:16_,
1:121:9_, 1:121:19_,
1:122:22_, 1:122:25_,
1:123:2_, 1:124:5_, 1:124:18
_, 1:124:22_, 1:128:15_,
1:128:17_, 1:129:7_, 1:130:1
_, 1:130:3_, 1:130:4

pornography.. [1]_ -
1:43:19

portion [17]_ - 1:4:1_,
1:5:18_, 1:6:23_, 1:8:21_,
1:11:5_, 1:14:2_, 1:15:13_,
1:15:16_, 1:46:2_, 1:79:6_,
1:83:9_, 1:89:13_, 1:92:17_,
1:93:21_, 1:94:10_, 1:95:8_,
1:118:1

portions [15]_ - 1:13:8_,
1:13:9_, 1:17:1_, 1:18:1_,
1:41:13_, 1:57:7_, 1:75:7_,
1:77:20_, 1:77:22_, 1:78:17
_, 1:81:14_, 1:81:23_, 1:82:1
_, 1:82:17_, 1:82:25

posing [1]_ - 1:86:4

position [4]_ - 1:6:3_,
1:62:17_, 1:84:15

possess [3]_ - 1:86:15_,
1:106:20_, 1:122:8

possessed [7]_ - 1:86:14
_, 1:106:21_, 1:107:3_,
1:107:6_, 1:107:19_,
1:110:12_, 1:124:22

possessing [2]_ -
1:118:13_, 1:118:15

possession [12]_ - 1:57:1
_, 1:99:14_, 1:100:10_,
1:106:11_, 1:107:1_,
1:107:18_, 1:110:8_, 1:112:4
_, 1:114:25_, 1:121:8_,
1:124:18_, 1:129:25

possibility [1]_ - 1:60:7

possible [1]_ - 1:38:5

possibly [2]_ - 1:30:12_,
1:72:23

post [4]_ - 1:57:3_, 1:58:3_,
1:69:7_, 1:73:13

post-arrest [3]_ - 1:57:3_,
1:58:3_, 1:69:7

post-Miranda [1]_ -
1:73:13

potentially [1]_ - 1:46:5

practical [1]_ - 1:111:3

precisely [2]_ - 1:10:9_,
1:69:18

predict [1]_ - 1:120:5

prejudice [1]_ - 1:111:11

prejudicial [4]_ - 1:113:21
_, 1:115:17_, 1:117:10_,
1:117:14

premature [1]_ - 1:133:14

premises [1]_ - 1:55:18

prepared [1]_ - 1:17:10

prescribed [1]_ - 1:133:3

present [18]_ - 1:3:16_,
1:8:19_, 1:19:7_, 1:29:15_,
1:35:15_, 1:37:20_, 1:37:25
_, 1:39:7_, 1:45:23_, 1:51:1_,
1:61:23_, 1:73:18_, 1:80:22
_, 1:96:1_, 1:98:9_, 1:117:17
_, 1:120:7_, 1:134:7

presentation [4]_ - 1:4:5
_, 1:47:2_, 1:78:15_,
1:117:25

presented [5]_ - 1:4:4_,
1:5:18_, 1:21:3_, 1:40:17_,
1:65:11

presenting [1]_ - 1:18:21

presents [1]_ - 1:131:23

preserve [1]_ - 1:92:13

presumably [1]_ -
1:121:18

presume [1]_ - 1:65:16

presumption [1]_ -
1:111:7

pretend [1]_ - 1:124:7

pretending [1]_ - 1:41:3

pretty [1]_ - 1:112:22

prevent [4]_ - 1:44:10_,
1:44:13_, 1:115:7_, 1:118:6

previous [6]_ - 1:72:23_,
1:109:4_, 1:109:16_,
1:109:17_, 1:110:5_, 1:110:7

previously [8]_ - 1:50:24_,
1:59:24_, 1:81:1_, 1:95:19_,
1:109:4_, 1:111:18_,

1:124:21_, 1:132:23

print [1]_ - 1:28:24

printed [5]_ - 1:27:24_,
1:28:6_, 1:28:12_, 1:28:13_,
1:101:21

printing [1]_ - 1:29:1

printings [1]_ - 1:27:22

probability [1]_ - 1:111:21

probable [16]_ - 1:39:23_,
1:50:1_, 1:50:6_, 1:50:13_,
1:51:1_, 1:51:5_, 1:55:17_,
1:56:1_, 1:56:22_, 1:58:15_,
1:66:9_, 1:66:13_, 1:66:15_,
1:86:1_, 1:86:9_, 1:90:13

probative [4]_ - 1:111:10_,
1:115:17_, 1:117:5

problem [4]_ - 1:14:12_,
1:17:12_, 1:79:14_, 1:104:4

problematic [2]_ - 1:77:5
_, 1:92:15

problems [1]_ - 1:134:22

procedure [1]_ - 1:15:19

proceed [3]_ - 1:4:17_,
1:11:25_, 1:19:23

proceeded [1]_ - 1:31:6

proceeding [1]_ - 1:15:6

proceedings [2]_ - 1:21:1
_, 1:135:5

process [1]_ - 1:39:1

produce [4]_ - 1:93:5_,
1:95:25_, 1:100:17_, 1:104:2

produced [2]_ - 1:103:16
_, 1:103:18

product [1]_ - 1:85:2

professional [1]_ -
1:134:23

progeny [1]_ - 1:71:19

prohibited [1]_ - 1:109:15

prohibits [1]_ - 1:111:15

prongs [1]_ - 1:66:8

pronouncement [1]_ -
1:125:6

prop [2]_ - 1:63:9_, 1:64:15

propensity [9]_ - 1:109:10
_, 1:110:13_, 1:110:24_,
1:111:15_, 1:111:19_,
1:113:3_, 1:120:17_,
1:127:25_, 1:128:21

proper [3]_ - 1:39:2_,
1:51:14_, 1:113:23

properly [2]_ - 1:112:12_,
1:133:14

property [1]_ - 1:27:13

proposal [1]_ - 1:101:6

propose [1]_ - 1:12:3

proposed [1]_ - 1:111:9

proposes [1]_ - 1:94:23

proposition [2]_ - 1:78:23
_, 1:111:25

Propst [1]_ - 1:74:16

PROPST [1]_ - 1:74:16

prosecution [1]_ - 1:7:11

prosecutors [1]_ -
1:109:3

protect [1]_ - 1:117:20

protection [1]_ - 1:71:18

protective [2]_ - 1:132:22
_, 1:133:1

prove [6]_ - 1:112:13_,
1:113:15_, 1:114:3_, 1:114:9
_, 1:120:10_, 1:127:16

provide [12]_ - 1:13:2_,
1:40:10_, 1:57:8_, 1:86:18_,
1:87:11_, 1:88:6_, 1:88:8_,
1:88:14_, 1:89:10_, 1:122:21
_, 1:133:10_, 1:134:19

provided [5]_ - 1:91:16_,
1:91:20_, 1:92:4_, 1:116:4

provides [1]_ - 1:109:6

providing [1]_ - 1:88:9

prurient [1]_ - 1:122:24

publish [3]_ - 1:92:24_,
1:94:6_, 1:95:6

published [2]_ - 1:73:8_,
1:99:3

pull [1]_ - 1:25:6_, 1:42:5

pulled [1]_ - 1:57:22

punishes [2]_ - 1:123:25_,
1:124:2

purchased [1]_ - 1:67:6

purport [4]_ - 1:15:5_,
1:89:9_, 1:93:2_, 1:133:22

purported [3]_ - 1:63:9_,
1:80:18_, 1:81:11

purportedly [1]_ - 1:49:14

purporting [1]_ - 1:60:19

purpose [7]_ - 1:38:13_,
1:44:11_, 1:56:13_, 1:111:23
_, 1:113:23_, 1:113:24_,
1:115:1

purposes [33]_ - 1:6:11_,
1:6:17_, 1:8:3_, 1:8:6_,
1:8:11_, 1:8:18_, 1:9:9_,
1:9:12_, 1:9:17_, 1:9:21_,
1:10:15_, 1:11:2_, 1:11:6_,
1:11:16_, 1:11:21_, 1:16:9_,

1:18:21_, 1:26:23_, 1:36:13
_, 1:45:13_, 1:46:6_, 1:54:8_,
1:80:10_, 1:86:16_, 1:95:22
_, 1:96:8_, 1:96:13_, 1:96:15
_, 1:96:20_, 1:97:3_, 1:97:6_,
1:105:18_, 1:121:23
 pursuant [3]_ - 1:89:14_,
1:93:4_, 1:111:9
 put [15]_ - 1:4:14_, 1:5:7_,
1:34:6_, 1:42:4_, 1:42:12_,
1:53:22_, 1:54:18_, 1:76:19
_, 1:95:11_, 1:107:6_,
1:111:3_, 1:114:19_,
1:119:24_, 1:122:3_,
1:129:20

**Q**

 qualify [1]_ - 1:121:9
 questioning [10]_ -
1:15:10_, 1:15:21_, 1:69:13
_, 1:69:18_, 1:74:20_,
1:79:20_, 1:79:22_, 1:79:24
_, 1:81:16_, 1:84:12
 questions [22]_ - 1:7:18_,
1:7:24_, 1:25:1_, 1:26:6_,
1:26:7_, 1:29:2_, 1:29:16_,
1:29:23_, 1:31:11_, 1:72:13
_, 1:73:17_, 1:73:23_, 1:74:5
_, 1:77:10_, 1:77:12_,
1:77:14_, 1:78:1_, 1:81:7_,
1:108:7_, 1:131:5_, 1:132:19
_, 1:132:20
 quickly [2]_ - 1:86:21_,
1:23:13
 quite [3]_ - 1:91:21_,
1:94:11_, 1:129:4
 quote [6]_ - 1:48:16_,
1:51:21_, 1:73:22_, 1:73:24
_, 1:111:1_, 1:112:13
 quoting [1]_ - 1:56:20

**R**

 Rahman [2]_ - 1:3:12_,
1:15:3
 raise [2]_ - 1:7:3_, 1:25:4
 raised [1]_ - 1:54:16
 rambles [1]_ - 1:73:1
 rambling [1]_ - 1:75:20
 Ramos [2]_ - 1:52:8_,
1:55:10
 rare [2]_ - 1:109:2_,
1:109:3
 rather [6]_ - 1:74:18_,
1:84:10_, 1:112:21_,

1:129:21_, 1:130:5_, 1:130:7
 razor [1]_ - 1:50:20
 re [1]_ - 1:83:7
 re-evaluating [1]_ -
1:83:7
 reach [1]_ - 1:68:5
 reaches [1]_ - 1:68:3
 read [13]_ - 1:8:12_, 1:8:15
_, 1:9:3_, 1:12:17_, 1:15:18_,
1:70:3_, 1:73:15_, 1:73:19_,
1:73:21_, 1:84:11_, 1:84:15
_, 1:93:18
 readily [2]_ - 1:48:2_,
1:66:8
 reading [3]_ - 1:15:4_,
1:71:7_, 1:73:14
 reads [1]_ - 1:43:16
 ready [5]_ - 1:13:2_,
1:77:16_, 1:79:3_, 1:80:3_,
1:89:14
 real [5]_ - 1:42:2_, 1:50:22
_, 1:64:12_, 1:65:3_,
1:114:25
 really [15]_ - 1:73:5_,
1:73:8_, 1:73:21_, 1:74:25_,
1:75:25_, 1:89:12_, 1:98:21
_, 1:99:2_, 1:108:2_, 1:124:9
_, 1:127:10_, 1:127:24_,
1:131:25
 reason [11]_ - 1:5:7_,
1:40:20_, 1:50:21_, 1:55:17
_, 1:56:6_, 1:59:15_, 1:63:12
_, 1:76:3_, 1:110:21_,
1:118:20_, 1:123:22
 reasonable [7]_ - 1:54:2_,
1:55:16_, 1:55:25_, 1:58:11
_, 1:65:9_, 1:65:16_, 1:67:16
 reasonably [1]_ - 1:48:3
 reasons [1]_ - 1:62:13
 receipt [3]_ - 1:99:17_,
1:130:3_, 1:131:18
 receive [4]_ - 1:11:13_,
1:70:2_, 1:84:8_, 1:84:18
 received [11]_ - 1:4:16_,
1:15:11_, 1:18:3_, 1:29:12_,
1:35:20_, 1:37:8_, 1:37:11_,
1:37:15_, 1:90:4_, 1:90:23_,
1:133:4
 receiving [2]_ - 1:11:10_,
1:118:13
 recess [5]_ - 1:8:22_,
1:8:23_, 1:78:4_, 1:78:11_,
1:135:4
 recommendations [1]_ -
1:133:11

 recommends [1]_ -
1:76:1
 record [13]_ - 1:14:13_,
1:15:8_, 1:24:2_, 1:36:1_,
1:37:12_, 1:43:2_, 1:44:5_,
1:60:12_, 1:62:8_, 1:62:19_,
1:65:2_, 1:76:19_, 1:82:6
 recorded [1]_ - 1:24:4
 recording [31]_ - 1:12:9_,
1:12:14_, 1:14:13_, 1:14:25
_, 1:16:6_, 1:16:19_, 1:16:21
_, 1:17:5_, 1:69:21_, 1:70:3_,
1:70:10_, 1:70:13_, 1:71:24
_, 1:73:4_, 1:76:7_, 1:76:9_,
1:76:11_, 1:76:14_, 1:77:2_,
1:77:4_, 1:77:18_, 1:77:20_,
1:78:17_, 1:80:23_, 1:81:5_,
1:81:11_, 1:81:12_, 1:81:13
_, 1:82:18_, 1:83:1_, 1:93:14
 recordings [2]_ - 1:93:16
_, 1:130:24
 records [1]_ - 1:92:12
 red [3]_ - 1:48:17_, 1:48:18
_, 1:49:12
 redact [2]_ - 1:35:24_,
1:36:17
 redaction [1]_ - 1:36:6
 redactions [3]_ - 1:36:9_,
1:36:10_, 1:131:2
 redirect [1]_ - 1:34:20
 refer [1]_ - 1:92:23
 reference [2]_ - 1:100:8_,
1:105:14
 referenced [2]_ - 1:43:13
_, 1:72:1
 references [3]_ - 1:46:1_,
1:72:20_, 1:72:21
 referencing [3]_ - 1:43:20
_, 1:48:12_, 1:105:5
 referring [6]_ - 1:5:3_,
1:11:18_, 1:32:17_, 1:60:4_,
1:65:5_, 1:105:17
 refers [1]_ - 1:83:5
 reflects [1]_ - 1:65:2
 regard [1]_ - 1:62:16
 regarding [18]_ - 1:4:9_,
1:5:16_, 1:9:2_, 1:18:22_,
1:19:10_, 1:37:22_, 1:72:24
_, 1:75:9_, 1:88:2_, 1:88:8_,
1:100:24_, 1:105:24_,
1:115:4_, 1:116:1_, 1:122:21
_, 1:123:16_, 1:123:18_,
1:131:7
 regards [6]_ - 1:4:8_,
1:4:17_, 1:39:18_, 1:41:25_,

1:95:9_, 1:133:20
 registered [1]_ - 1:30:25
 reinitiates [1]_ - 1:73:3
 rejected [2]_ - 1:51:18_,
1:63:19
 relate [1]_ - 1:105:6
 related [8]_ - 1:38:5_,
1:39:23_, 1:59:22_, 1:92:11
_, 1:96:22_, 1:100:7_,
1:128:3
 relates [3]_ - 1:38:14_,
1:74:14_, 1:97:20
 relation [1]_ - 1:107:7
 relative [1]_ - 1:103:13
 relatively [1]_ - 1:54:5
 relevant [14]_ - 1:12:11_,
1:17:6_, 1:57:1_, 1:57:3_,
1:57:7_, 1:59:14_, 1:75:3_,
1:81:14_, 1:109:10_, 1:111:6
_, 1:111:9_, 1:111:19_,
1:117:23_, 1:120:19
 reliability [1]_ - 1:92:12
 rely [1]_ - 1:38:24
 relying [5]_ - 1:59:24_,
1:60:1_, 1:82:12_, 1:82:18_,
1:83:3
 remain [3]_ - 1:9:6_,
1:71:10_, 1:74:3
 remember [7]_ - 1:22:12
_, 1:24:6_, 1:30:21_, 1:33:21
_, 1:33:25_, 1:34:5_,
1:103:21
 remind [1]_ - 1:38:8
 reminded [1]_ - 1:49:11
 reminding [1]_ - 1:131:19
 remote [2]_ - 1:118:23_,
1:128:6
 remoteness [2]_ -
1:124:18_, 1:124:23
 removal [1]_ - 1:114:16
 remove [1]_ - 1:42:13
 removed [2]_ - 1:10:2_,
1:63:8
 reopen [7]_ - 1:38:9_,
1:38:12_, 1:62:19_, 1:62:24
_, 1:120:14_, 1:130:21_,
1:131:19
 reopening [1]_ - 1:38:4
 repeatedly [1]_ - 1:72:14
 repetitive [1]_ - 1:89:4
 replied [1]_ - 1:49:6
 report [4]_ - 1:39:3_,
1:60:7_, 1:88:2_, 1:95:19

reporter [1]₋ - 1:126:22

reporting [1]₋ - 1:90:17

repositories [1]₋ - 1:108:22

request [1]₋ - 1:132:25

requesting [1]₋ - 1:131:10

requests [3]₋ - 1:95:5₋, 1:133:7₋, 1:133:8

require [1]₋ - 1:74:20

required [5]₋ - 1:52:1₋, 1:83:24₋, 1:84:4₋, 1:84:8₋, 1:84:16

requirement [3]₋ - 1:39:22₋, 1:41:16₋, 1:51:10

requires [3]₋ - 1:76:2₋, 1:98:17₋, 1:123:3

reread [1]₋ - 1:41:12

rereading [1]₋ - 1:72:2

reserve [3]₋ - 1:16:1₋, 1:92:10₋, 1:130:19

resided [1]₋ - 1:90:15

residence [18]₋ - 1:21:14 ₋, 1:21:19₋, 1:21:20₋, 1:22:3 ₋, 1:22:9₋, 1:22:17₋, 1:22:18 ₋, 1:22:19₋, 1:22:21₋, 1:24:12₋, 1:24:13₋, 1:30:4₋, 1:33:12₋, 1:40:5₋, 1:41:20₋, 1:52:17₋, 1:91:4₋, 1:99:9

resist [1]₋ - 1:58:24

resolution [1]₋ - 1:89:15

respect [12]₋ - 1:4:5₋, 1:6:3₋, 1:11:4₋, 1:38:13₋, 1:69:2₋, 1:83:11₋, 1:90:15₋, 1:122:16₋, 1:131:4₋, 1:131:21₋, 1:132:3₋, 1:132:11

respond [2]₋ - 1:85:11₋, 1:87:15

responded [6]₋ - 1:12:7₋, 1:69:10₋, 1:70:6₋, 1:103:18 ₋, 1:123:11₋, 1:123:15

response [26]₋ - 1:6:10₋, 1:12:12₋, 1:35:19₋, 1:41:9₋, 1:41:12₋, 1:44:11₋, 1:47:25 ₋, 1:48:1₋, 1:48:15₋, 1:49:24 ₋, 1:51:10₋, 1:55:11₋, 1:62:12₋, 1:64:17₋, 1:71:22 ₋, 1:72:3₋, 1:72:4₋, 1:73:11₋, 1:87:15₋, 1:92:2₋, 1:92:25₋, 1:94:14₋, 1:98:16₋, 1:115:9 ₋, 1:123:11₋, 1:130:15

responsibility [1]₋ - 1:21:16

responsive [1]₋ - 1:25:1

rest [2]₋ - 1:54:21₋, 1:128:4

resting [1]₋ - 1:115:18

resulting [1]₋ - 1:115:25

retired [1]₋ - 1:134:2

return [3]₋ - 1:37:16₋, 1:90:14₋, 1:103:24

review [5]₋ - 1:9:8₋, 1:75:5 ₋, 1:75:6₋, 1:85:24₋, 1:91:23

reviewing [3]₋ - 1:51:23₋, 1:105:7₋, 1:105:15

rightly [1]₋ - 1:83:23

rights [26]₋ - 1:15:5₋, 1:15:11₋, 1:15:12₋, 1:15:17 ₋, 1:15:18₋, 1:15:20₋, 1:70:2 ₋, 1:70:4₋, 1:70:19₋, 1:70:20 ₋, 1:70:22₋, 1:71:1₋, 1:71:5₋, 1:71:7₋, 1:71:15₋, 1:73:14₋, 1:73:15₋, 1:74:10₋, 1:74:14 ₋, 1:76:24₋, 1:81:3₋, 1:84:10 ₋, 1:84:11₋, 1:84:14

rise [1]₋ - 1:78:6

risk [1]₋ - 1:111:11

road [1]₋ - 1:133:2

Road [1]₋ - 1:53:17

roadway [1]₋ - 1:41:24

robber [1]₋ - 1:50:3

robbery [5]₋ - 1:50:3₋, 1:50:4₋, 1:50:5₋, 1:50:6₋, 1:50:8

room [10]₋ - 1:23:11₋, 1:30:3₋, 1:33:11₋, 1:33:24₋, 1:34:8₋, 1:40:5₋, 1:99:17₋, 1:101:2₋, 1:101:3₋, 1:113:9

rooms [2]₋ - 1:100:6₋, 1:100:24

rooted [1]₋ - 1:128:18

roughly [2]₋ - 1:14:19₋, 1:52:22

round [1]₋ - 1:91:20

rubric [1]₋ - 1:94:25

rule [4]₋ - 1:109:2₋, 1:111:7₋, 1:131:22₋, 1:133:10

Rule [7]₋ - 1:89:14₋, 1:97:22₋, 1:109:1₋, 1:109:6 ₋, 1:111:13₋, 1:112:3₋, 1:117:4

rules [9]₋ - 1:36:18₋, 1:38:25₋, 1:39:4₋, 1:87:16₋, 1:111:3₋, 1:111:9₋, 1:119:2 ₋, 1:131:20₋, 1:131:24

ruling [5]₋ - 1:92:10₋, 1:130:19₋, 1:131:11₋,

1:132:17₋, 1:133:13

rulings [1]₋ - 1:132:15

run [2]₋ - 1:72:12₋, 1:104:22

run-on [1]₋ - 1:72:12


S

sadistic [1]₋ - 1:116:12

safety [1]₋ - 1:55:20

sampling [1]₋ - 1:121:14

Samsung [1]₋ - 1:88:20

San [3]₋ - 1:126:11₋, 1:126:17₋, 1:126:18

sat [1]₋ - 1:40:5

satisfies [1]₋ - 1:121:3

saw [1]₋ - 1:50:20

scared [1]₋ - 1:65:11

scenario [1]₋ - 1:52:3

scene [5]₋ - 1:29:20₋, 1:42:12₋, 1:44:18₋, 1:50:3₋, 1:52:21

SCHILLER [223]₋ - 1:3:9 ₋, 1:4:6₋, 1:4:8₋, 1:4:21₋, 1:4:25₋, 1:5:4₋, 1:5:6₋, 1:5:12₋, 1:5:15₋, 1:5:20₋, 1:5:25₋, 1:6:19₋, 1:11:7₋, 1:11:9₋, 1:11:12₋, 1:12:4₋, 1:12:16₋, 1:12:23₋, 1:13:14 ₋, 1:13:19₋, 1:13:24₋, 1:14:9 ₋, 1:14:12₋, 1:14:17₋, 1:14:20₋, 1:14:25₋, 1:16:3₋, 1:16:13₋, 1:16:20₋, 1:17:2₋, 1:17:10₋, 1:17:16₋, 1:17:25 ₋, 1:18:4₋, 1:18:8₋, 1:18:11₋, 1:18:13₋, 1:18:16₋, 1:18:19 ₋, 1:18:21₋, 1:19:9₋, 1:19:12 ₋, 1:19:23₋, 1:19:25₋, 1:20:3 ₋, 1:20:9₋, 1:26:16₋, 1:26:18 ₋, 1:26:20₋, 1:27:2₋, 1:27:5₋, 1:27:6₋, 1:29:6₋, 1:29:13₋, 1:29:23₋, 1:31:16₋, 1:34:3₋, 1:34:21₋, 1:35:11₋, 1:35:16 ₋, 1:36:21₋, 1:36:24₋, 1:37:2 ₋, 1:37:4₋, 1:37:12₋, 1:37:18 ₋, 1:37:22₋, 1:39:13₋, 1:39:16₋, 1:42:20₋, 1:43:8₋, 1:43:14₋, 1:43:22₋, 1:43:24 ₋, 1:44:4₋, 1:44:24₋, 1:45:1₋, 1:45:3₋, 1:45:5₋, 1:45:8₋, 1:45:10₋, 1:45:17₋, 1:46:7₋, 1:46:16₋, 1:47:3₋, 1:47:8₋, 1:47:17₋, 1:47:22₋, 1:48:14 ₋, 1:49:17₋, 1:52:10₋, 1:52:14₋, 1:52:24₋, 1:53:1₋, 1:53:4₋, 1:53:8₋, 1:53:11₋, 1:54:10₋, 1:54:13₋, 1:54:16

1:55:1₋, 1:55:5₋, 1:55:7₋, 1:55:9₋, 1:57:16₋, 1:58:9₋, 1:58:19₋, 1:59:1₋, 1:59:4₋, 1:59:9₋, 1:59:19₋, 1:60:24₋, 1:61:13₋, 1:61:15₋, 1:69:4₋, 1:69:8₋, 1:70:9₋, 1:70:13₋, 1:70:17₋, 1:71:3₋, 1:71:21₋, 1:76:8₋, 1:76:10₋, 1:78:7₋, 1:78:10₋, 1:79:8₋, 1:79:16₋, 1:79:18₋, 1:80:3₋, 1:80:7₋, 1:80:12₋, 1:82:10₋, 1:85:13 ₋, 1:85:18₋, 1:85:23₋, 1:86:23₋, 1:87:2₋, 1:87:5₋, 1:87:10₋, 1:87:13₋, 1:87:25 ₋, 1:88:17₋, 1:88:20₋, 1:88:24₋, 1:89:16₋, 1:91:14 ₋, 1:92:20₋, 1:92:22₋, 1:93:11₋, 1:93:13₋, 1:94:1₋, 1:94:4₋, 1:94:9₋, 1:95:7₋, 1:95:15₋, 1:95:18₋, 1:96:6₋, 1:97:15₋, 1:97:19₋, 1:98:6₋, 1:98:11₋, 1:99:25₋, 1:100:19 ₋, 1:100:21₋, 1:101:1₋, 1:101:7₋, 1:101:13₋, 1:101:18₋, 1:102:2₋, 1:102:6 ₋, 1:102:8₋, 1:102:14₋, 1:102:17₋, 1:102:20₋, 1:102:24₋, 1:103:2₋, 1:103:11₋, 1:103:17₋, 1:103:21₋, 1:104:1₋, 1:104:8 ₋, 1:104:21₋, 1:104:24₋, 1:105:2₋, 1:107:14₋, 1:108:11₋, 1:108:14₋, 1:108:17₋, 1:108:23₋, 1:108:25₋, 1:112:8₋, 1:112:22₋, 1:113:1₋, 1:113:6 ₋, 1:113:14₋, 1:119:13, 1:119:17₋, 1:119:20₋, 1:120:25₋, 1:121:4₋, 1:121:12₋, 1:121:21₋, 1:122:13₋, 1:122:19₋, 1:123:8₋, 1:123:10₋, 1:123:14₋, 1:125:3₋, 1:125:8 ₋, 1:125:14₋, 1:125:16, 1:125:18₋, 1:125:21₋, 1:125:24₋, 1:126:2₋, 1:126:7 ₋, 1:126:24₋, 1:127:1₋, 1:131:7₋, 1:131:13₋, 1:133:19₋, 1:134:10₋, 1:134:20

Schiller [28]₋ - 1:3:10₋, 1:4:3₋, 1:6:16₋, 1:9:14₋, 1:11:4₋, 1:12:3₋, 1:13:10₋, 1:13:23₋, 1:16:12₋, 1:35:15 ₋, 1:37:17₋, 1:37:21₋, 1:46:14₋, 1:46:25₋, 1:69:6₋, 1:79:3₋, 1:79:25₋, 1:80:5₋, 1:80:15₋, 1:82:7₋, 1:85:11₋, 1:86:20₋, 1:87:24₋, 1:91:13 ₋, 1:92:19₋, 1:94:16₋, 1:95:5

..., 1:134:19
Scott [1]_ - 1:116:3
screaming [1]_ - 1:41:25
screen [2]_ - 1:99:8_,
1:101:25
screenshots [2]_ -
1:93:14_, 1:93:16
scrutinize [1]_ - 1:77:18
seal [5]_ - 1:36:9_, 1:36:14
_, 1:131:2_, 1:131:8_,
1:131:10
sealed [2]_ - 1:35:20_,
1:36:20
search [81]_ - 1:4:18_,
1:21:3_, 1:21:13_, 1:21:19_,
1:21:20_, 1:22:3_, 1:22:9_,
1:22:13_, 1:23:11_, 1:25:21
_, 1:26:4_, 1:26:8_, 1:26:22_,
1:27:13_, 1:29:15_, 1:30:16
_, 1:30:24_, 1:31:1_, 1:31:5_,
1:35:8_, 1:39:12_, 1:40:4_,
1:40:11_, 1:40:17_, 1:41:6_,
1:41:14_, 1:41:17_, 1:42:14
_, 1:44:12_, 1:44:22_,
1:45:13_, 1:46:4_, 1:47:7_,
1:47:12_, 1:47:14_, 1:47:23
_, 1:47:24_, 1:49:19_, 1:50:2
_, 1:50:13_, 1:51:13_,
1:51:18_, 1:51:22_, 1:52:17
_, 1:52:22_, 1:53:6_, 1:53:12
_, 1:53:13_, 1:56:12_, 1:59:8
_, 1:59:22_, 1:63:13_,
1:63:15_, 1:63:20_, 1:64:19
_, 1:65:22_, 1:68:1_, 1:68:14
_, 1:68:23_, 1:72:24_,
1:85:21_, 1:86:2_, 1:86:10_,
1:86:11_, 1:86:16_, 1:87:1_,
1:87:2_, 1:87:6_, 1:89:21_,
1:89:23_, 1:90:12_, 1:90:13
_, 1:90:17_, 1:90:18_,
1:90:23_, 1:91:6_, 1:91:9_,
1:91:14_, 1:120:5_, 1:126:10
_, 1:134:14
searched [7]_ - 1:39:20_,
1:41:11_, 1:44:19_, 1:52:5_,
1:52:13_, 1:63:7_, 1:64:1
searches [2]_ - 1:86:3_,
1:91:2
searching [2]_ - 1:44:8_,
1:44:19
seated [9]_ - 1:3:2_,
1:8:24_, 1:19:20_, 1:30:8_,
1:33:14_, 1:33:15_, 1:33:17
_, 1:33:18_, 1:78:12
seats [1]_ - 1:49:21
second [19]_ - 1:42:5_,
1:47:23_, 1:57:11_, 1:69:6_,

1:69:22_, 1:71:23_, 1:76:19
_, 1:99:6_, 1:99:9_, 1:101:7_,
1:102:1_, 1:102:6_, 1:102:18
_, 1:103:13_, 1:106:14_,
1:115:19_, 1:124:6
Second's [1]_ - 1:118:4
secondly [1]_ - 1:48:5
seconds [13]_ - 1:14:14_,
1:14:15_, 1:14:17_, 1:14:18
_, 1:14:22_, 1:15:1_, 1:18:6_,
1:18:9_, 1:18:17_, 1:42:10_,
1:75:21_, 1:94:11_, 1:94:24
section [5]_ - 1:12:19_,
1:45:12_, 1:105:9_, 1:105:14
Section [2]_ - 1:109:18_,
1:121:4
secure [2]_ - 1:54:20_,
1:54:21
secured [2]_ - 1:40:22_,
1:44:18
security [1]_ - 1:35:25
Security [8]_ - 1:3:11_,
1:4:15_, 1:15:3_, 1:19:13_,
1:20:12_, 1:20:14_, 1:35:3_,
1:40:1
SECURITY [1] - 1:20:5
see [19]_ - 1:10:22_,
1:11:18_, 1:33:4_, 1:36:6_,
1:46:11_, 1:48:9_, 1:52:15_,
1:60:18_, 1:60:20_, 1:62:7_,
1:72:3_, 1:92:1_, 1:93:22_,
1:94:14_, 1:105:17_, 1:108:5
_, 1:109:2_, 1:115:13_,
1:125:6
seeing [2]_ - 1:120:1_,
1:132:1
seek [3]_ - 1:62:19_,
1:94:6_, 1:104:2
seeking [10]_ - 1:31:11_,
1:88:23_, 1:89:13_, 1:110:22
_, 1:113:4_, 1:113:7_,
1:121:7_, 1:129:3_, 1:129:11
_, 1:129:18
seeks [1]_ - 1:130:7
seem [4]_ - 1:32:6_,
1:32:14_, 1:92:14_, 1:124:20
seemingly [1]_ - 1:74:24
segue [1]_ - 1:95:13
seize [1]_ - 1:58:15
seized [8]_ - 1:4:11_,
1:54:12_, 1:57:13_, 1:62:13
_, 1:63:10_, 1:64:1_, 1:64:3_,
1:64:20
seizure [6]_ - 1:4:14_,
1:51:14_, 1:53:7_, 1:53:8_,

1:53:9_, 1:64:18
select [4]_ - 1:93:2_,
1:100:16_, 1:107:24_,
1:120:24
sense [2]_ - 1:105:8_,
1:135:1
sent [10]_ - 1:29:20_,
1:48:21_, 1:52:21_, 1:81:17
_, 1:91:5_, 1:91:6_, 1:103:6_,
1:127:7_, 1:127:21_,
1:128:16
sentence [2]_ - 1:72:12_,
1:73:14
sentencing [5]_ - 1:96:13
_, 1:96:15_, 1:96:19_,
1:96:20_, 1:97:3
separate [11]_ - 1:13:9_,
1:45:6_, 1:46:2_, 1:57:15_,
1:58:18_, 1:59:3_, 1:68:4_,
1:68:22_, 1:70:25_, 1:91:2_,
1:116:4
separately [4]_ - 1:16:24
_, 1:58:21_, 1:58:22_,
1:101:23
September [3]_ - 1:38:8_,
1:38:12_, 1:130:19
series [2]_ - 1:105:21_,
1:106:12
serve [1]_ - 1:20:16
served [1]_ - 1:103:16
services [1]_ - 1:133:12
session [1]_ - 1:78:13
set [10]_ - 1:3:25_, 1:4:19_,
1:8:4_, 1:19:7_, 1:42:4_,
1:48:19_, 1:48:20_, 1:48:21
_, 1:48:23_, 1:130:7
setup [2]_ - 1:106:18_,
1:122:23
seven [4]_ - 1:43:18_,
1:93:25_, 1:94:3_, 1:94:22
several [9]_ - 1:49:2_,
1:53:20_, 1:55:12_, 1:102:8
_, 1:108:18_, 1:108:19_,
1:109:15_, 1:111:24_,
1:132:24
sex [7]_ - 1:58:1_, 1:68:16
_, 1:68:5_, 1:100:11_,
1:100:15_, 1:101:14_,
1:127:14
sexual [4]_ - 1:51:7_,
1:111:4_, 1:111:20_, 1:115:2
sexually [2]_ - 1:55:24_,
1:118:11
sexy [1]_ - 1:48:18
sheet [1]_ - 1:125:7

shifted [1]_ - 1:80:24
short [3]_ - 1:54:5_, 1:54:6
_, 1:116:12
show [12]_ - 1:89:2_,
1:101:14_, 1:104:11_,
1:104:13_, 1:107:21_,
1:113:17_, 1:113:18_,
1:113:24_, 1:115:21_,
1:117:6_, 1:120:17_,
1:122:24
showed [1]_ - 1:48:18
showing [8]_ - 1:26:20_,
1:46:9_, 1:76:20_, 1:89:22_,
1:101:2_, 1:106:20_,
1:124:12_, 1:125:10
shown [1]_ - 1:125:5
shows [4]_ - 1:46:14_,
1:101:12_, 1:121:25
sic [1]_ - 1:24:15
side [3]_ - 1:15:25_,
1:35:10_, 1:85:17
sign [12]_ - 1:22:3_,
1:26:14_, 1:28:22_, 1:28:24
_, 1:31:6_, 1:33:20_, 1:34:1_,
1:34:11_, 1:34:17_, 1:41:7_,
1:62:18_, 1:70:19
signature [15]_ - 1:27:24_,
1:27:25_, 1:28:6_, 1:28:10_,
1:28:11_, 1:28:16_, 1:28:18
_, 1:34:14_, 1:34:16_,
1:38:19_, 1:40:13_, 1:40:20
_, 1:41:2_, 1:41:3_, 1:60:8
signatures [3]_ - 1:27:19
_, 1:27:21_, 1:40:25
signed [17]_ - 1:6:7_,
1:11:11_, 1:28:13_, 1:31:6_,
1:31:7_, 1:34:7_, 1:37:14_,
1:40:11_, 1:40:15_, 1:40:24
_, 1:43:18_, 1:43:24_,
1:43:25_, 1:52:20_, 1:53:24
_, 1:54:6
significant [1]_ - 1:55:23
significantly [1]_ - 1:51:1
signing [1]_ - 1:29:1_,
1:44:1
silent [1]_ - 1:71:11_,
1:74:3
similar [3]_ - 1:109:5_,
1:116:25_, 1:118:25
simply [5]_ - 1:50:8_,
1:82:1_, 1:84:10_, 1:107:6_,
1:133:5
simultaneously [1]_ -
1:126:14
single [2]_ - 1:45:19_,

1:50:19

singular [1]‑ - 1:6:12

siphoned [1]‑ - 1:101:22

sister [2]‑ - 1:118:11‑, 1:118:17

site [1]‑ - 1:50:25

sitting [5]‑ - 1:25:10‑, 1:25:12‑, 1:30:5‑, 1:30:7‑, 1:57:22

situation [5]‑ - 1:41:19‑, 1:42:4‑, 1:56:16‑, 1:112:19 ‑, 1:117:14

Sixth [1]‑ - 1:58:10

small [7]‑ - 1:55:21‑, 1:94:10‑, 1:100:4‑, 1:116:7 ‑, 1:117:16‑, 1:118:1‑, 1:121:14

smaller [2]‑ - 1:113:8‑, 1:121:6

smuggling [1]‑ - 1:35:7

sniper [1]‑ - 1:42:4

social [1]‑ - 1:35:25

solicit [1]‑ - 1:114:2

solicitation [2]‑ - 1:110:9 ‑, 1:124:20

someone [4]‑ - 1:41:2‑, 1:57:9‑, 1:110:18‑, 1:120:8

sometimes [4]‑ - 1:5:8‑, 1:93:20‑, 1:102:9

somewhere [2]‑ - 1:10:3 ‑, 1:53:25

soon [1]‑ - 1:88:14

sorry [19]‑ - 1:12:5‑, 1:13:24‑, 1:17:2‑, 1:18:13‑, 1:19:3‑, 1:22:24‑, 1:22:25‑, 1:49:1‑, 1:53:14‑, 1:65:24‑, 1:79:25‑, 1:82:16‑, 1:86:20 ‑, 1:103:21‑, 1:106:13‑, 1:120:25‑, 1:123:8‑, 1:124:9 ‑, 1:125:14

sort [8]‑ - 1:46:22‑, 1:47:10‑, 1:81:10‑, 1:84:9‑, 1:100:22‑, 1:102:21‑, 1:119:7‑, 1:133:7

sought [3]‑ - 1:103:18‑, 1:105:4

sounds [2]‑ - 1:89:4‑, 1:130:12

Southern [6]‑ - 1:21:21‑, 1:22:2‑, 1:42:16‑, 1:106:22 ‑, 1:106:25‑, 1:112:10

Space [1]‑ - 1:21:24

speaking [7]‑ - 1:23:18‑, 1:32:2‑, 1:32:4‑, 1:32:7‑,

1:32:9‑, 1:33:6‑, 1:131:10

speaks [1]‑ - 1:58:5

special [2]‑ - 1:28:3‑, 1:111:6

SPECIAL [1] - 1:20:5

Special [9]‑ - 1:3:11‑, 1:4:15‑, 1:15:3‑, 1:19:13‑, 1:23:9‑, 1:31:7‑, 1:31:22‑, 1:35:2‑, 1:40:2

species [1]‑ - 1:59:2

specific [7]‑ - 1:25:14‑, 1:50:4‑, 1:50:16‑, 1:75:7‑, 1:75:13‑, 1:75:15‑, 1:86:6

specifically [19]‑ - 1:24:25 ‑, 1:25:3‑, 1:30:24‑, 1:45:10 ‑, 1:45:17‑, 1:74:8‑, 1:75:8‑, 1:76:14‑, 1:76:22‑, 1:77:2‑, 1:77:19‑, 1:81:12‑, 1:85:21 ‑, 1:93:6‑, 1:102:10‑, 1:104:17‑, 1:109:23‑, 1:111:1‑, 1:117:1

specificity [1]‑ - 1:89:1

specify [1]‑ - 1:60:4

spectrum [1]‑ - 1:108:12

speculation [1]‑ - 1:34:3

speed [2]‑ - 1:41:22‑, 1:53:19

spell [1]‑ - 1:34:22

split [1]‑ - 1:127:12

spotted [1]‑ - 1:50:24

squad [1]‑ - 1:54:20

squatting [1]‑ - 1:120:4

St [2]‑ - 1:132:22‑, 1:133:1

staff [1]‑ - 1:133:5

stamp [1]‑ - 1:5:9

stamped [1]‑ - 1:5:1

stand [3]‑ - 1:19:15‑, 1:25:8‑, 1:58:8

stand-alone [1]‑ - 1:58:8

standing [2]‑ - 1:25:10‑, 1:82:8

stands [2]‑ - 1:78:22‑, 1:119:23

start [12]‑ - 1:14:9‑, 1:14:14‑, 1:14:21‑, 1:15:24 ‑, 1:18:15‑, 1:39:24‑, 1:56:20‑, 1:78:19‑, 1:80:1‑, 1:93:9‑, 1:105:13‑, 1:133:11

start-stop [1]‑ - 1:15:24

started [6]‑ - 1:41:21‑, 1:59:23‑, 1:80:25‑, 1:82:5‑, 1:87:21‑, 1:100:23

starting [5]‑ - 1:3:7‑,

1:14:18‑, 1:39:11‑, 1:62:14 ‑, 1:80:6

starts [3]‑ - 1:10:16‑, 1:10:21‑, 1:83:13

state [7]‑ - 1:21:1‑, 1:33:1 ‑, 1:66:25‑, 1:74:3‑, 1:99:2‑, 1:109:14‑, 1:130:8

statement [17]‑ - 1:7:12‑, 1:46:15‑, 1:47:21‑, 1:57:5‑, 1:57:11‑, 1:69:12‑, 1:69:19 ‑, 1:73:15‑, 1:73:21‑, 1:73:25‑, 1:74:18‑, 1:75:5‑, 1:75:6‑, 1:76:3‑, 1:79:24‑, 1:84:25‑, 1:100:14

statements [12]‑ - 1:12:6 ‑, 1:57:2‑, 1:66:18‑, 1:69:7‑, 1:69:9‑, 1:69:12‑, 1:69:23‑, 1:73:13‑, 1:74:6‑, 1:78:16‑, 1:83:11‑, 1:85:8

States [20]‑ - 1:3:5‑, 1:3:10‑, 1:20:18‑, 1:47:9‑, 1:49:25‑, 1:50:11‑, 1:51:16 ‑, 1:52:8‑, 1:55:10‑, 1:58:10 ‑, 1:73:7‑, 1:74:16‑, 1:78:14 ‑, 1:85:24‑, 1:86:23‑, 1:105:25‑, 1:109:18‑, 1:112:1‑, 1:112:9‑, 1:117:2

stating [2]‑ - 1:51:20‑, 1:62:5

status [3]‑ - 1:88:1‑, 1:95:19‑, 1:125:17

statute [1]‑ - 1:109:12

staying [1]‑ - 1:43:6

stays [1]‑ - 1:94:25

stemming [1]‑ - 1:55:6

step [3]‑ - 1:71:5‑, 1:97:17 ‑, 1:124:13

steps [3]‑ - 1:33:1‑, 1:33:3 ‑, 1:33:4

stick [1]‑ - 1:45:25

still [13]‑ - 1:44:19‑, 1:52:4 ‑, 1:54:9‑, 1:64:21‑, 1:69:2‑, 1:71:2‑, 1:75:23‑, 1:77:9‑, 1:80:13‑, 1:94:3‑, 1:110:25 ‑, 1:121:17‑, 1:126:21

stipulate [4]‑ - 1:4:12‑, 1:8:10‑, 1:11:23‑, 1:95:22

stipulated [22]‑ - 1:4:19‑, 1:6:3‑, 1:6:11‑, 1:6:18‑, 1:6:24‑, 1:7:16‑, 1:9:2‑, 1:9:17‑, 1:11:1‑, 1:42:19‑, 1:42:22‑, 1:45:7‑, 1:45:14‑, 1:45:21‑, 1:45:25‑, 1:48:10 ‑, 1:49:18‑, 1:52:12‑, 1:53:23‑, 1:54:15‑, 1:54:25 ‑, 1:68:8

stipulating [1]‑ - 1:8:17

stop [4]‑ - 1:15:24‑, 1:73:4 ‑, 1:75:19‑, 1:82:15

stoplight [1]‑ - 1:57:22

stopped [9]‑ - 1:14:25‑, 1:18:19‑, 1:41:21‑, 1:41:23 ‑, 1:54:2‑, 1:67:1‑, 1:70:13‑, 1:79:18‑, 1:82:15

stopping [2]‑ - 1:53:21‑, 1:120:7

story [3]‑ - 1:105:22‑, 1:122:17‑, 1:123:1

street [1]‑ - 1:52:6

strike [1]‑ - 1:106:14

stroke [2]‑ - 1:32:16‑, 1:32:22

strong [2]‑ - 1:55:17‑, 1:56:5

stuff [5]‑ - 1:102:22‑, 1:102:25‑, 1:103:7‑, 1:116:20‑, 1:122:17

stuffed [4]‑ - 1:49:6‑, 1:49:7‑, 1:49:12‑, 1:66:22

subdued [3]‑ - 1:32:6‑, 1:32:8‑, 1:32:11

subheadings [1]‑ - 1:105:6

subject [6]‑ - 1:55:15‑, 1:64:1‑, 1:74:10‑, 1:111:6‑, 1:131:1

submission [2]‑ - 1:62:12 ‑, 1:131:5

submit [3]‑ - 1:35:23‑, 1:41:5‑, 1:42:9

submitted [3]‑ - 1:41:8‑, 1:62:18‑, 1:131:15

subsequent [1]‑ - 1:14:3

subset [1]‑ - 1:130:8

substantial [2]‑ - 1:103:4 ‑, 1:124:13

substantive [1]‑ - 1:94:14

successfully [1]‑ - 1:123:2

succinct [1]‑ - 1:83:8

sufficient [3]‑ - 1:50:23‑, 1:83:25‑, 1:113:19

suggest [4]‑ - 1:24:15‑, 1:64:17‑, 1:67:16‑, 1:69:12

suggesting [1]‑ - 1:40:19

suggestion [1]‑ - 1:84:22

suggests [1]‑ - 1:72:4

summaries [1]‑ - 1:88:9‑, 1:88:10‑, 1:88:16‑, 1:88:18

_, 1:89:13_, 1:92:12_, 1:92:16

summarize [1]_ - 1:88:23

summary [10]_ - 1:4:12_, 1:43:13_, 1:56:5_, 1:88:8_, 1:89:2_, 1:92:9_, 1:99:1_, 1:125:17_, 1:125:19_, 1:125:23

Superior [1]_ - 1:125:2

superseding [1]_ - 1:94:2

supplemental [1]_ - 1:87:15

supplying [1]_ - 1:39:2

support [7]_ - 1:47:20_, 1:54:15_, 1:61:23_, 1:62:4_, 1:91:1_, 1:96:2_, 1:122:11

supported [1]_ - 1:113:9

supporting [1]_ - 1:133:9

suppose [3]_ - 1:46:11_, 1:71:17_, 1:129:16

suppress [25]_ - 1:3:24_, 1:4:8_, 1:4:10_, 1:6:10_, 1:12:6_, 1:12:12_, 1:15:7_, 1:17:7_, 1:18:23_, 1:35:19_, 1:37:22_, 1:38:1_, 1:39:11_, 1:39:18_, 1:41:9_, 1:69:7_, 1:69:9_, 1:73:12_, 1:75:1_, 1:76:3_, 1:78:16_, 1:83:3_, 1:85:21_, 1:88:3_, 1:131:18

suppression [11]_ - 1:6:12_, 1:8:11_, 1:9:9_, 1:9:12_, 1:11:17_, 1:58:25_, 1:62:13_, 1:83:11_, 1:85:16 _, 1:87:19_, 1:130:18

suppressionable [1]_ - 1:5:23

Supreme [3]_ - 1:44:15_, 1:47:9_, 1:74:23

surrounding [1]_ - 1:63:23

surveillance [1]_ - 1:50:25

survey [1]_ - 1:101:21

suspect [6]_ - 1:44:12_, 1:55:16_, 1:55:17_, 1:55:18 _, 1:56:1_, 1:56:6

sustain [1]_ - 1:46:24

sustained [1]_ - 1:61:16

swallowing [1]_ - 1:127:19

swear [3]_ - 1:7:2_, 1:7:5_, 1:19:16

sworn [3]_ - 1:7:10_, 1:19:15, 1:20:6

## T

table [7]_ - 1:3:11_, 1:33:24_, 1:34:1_, 1:34:6_, 1:38:1_, 1:78:8_, 1:119:18

tag [2]_ - 1:100:13_, 1:101:15

talks [2]_ - 1:75:19_, 1:104:17

tampered [1]_ - 1:52:1

tape [4]_ - 1:15:16_, 1:18:8 _, 1:79:6_, 1:83:7

team [2]_ - 1:21:12_, 1:21:18

technician [3]_ - 1:54:20_, 1:56:10_, 1:56:14

teen [7]_ - 1:100:7_, 1:100:8_, 1:100:24_, 1:101:19_, 1:101:22_, 1:102:4_, 1:113:9

teenage [1]_ - 1:127:15

teenager [1]_ - 1:123:20

telegram [1]_ - 1:102:20

telephones [1]_ - 1:90:16

temporally [1]_ - 1:106:8

ten [1]_ - 1:22:12

tended [1]_ - 1:117:6

tends [2]_ - 1:114:2_, 1:122:20

tenor [1]_ - 1:27:10

Tenth [1]_ - 1:118:4

term [1]_ - 1:109:22

terminate [1]_ - 1:74:20

terms [8]_ - 1:88:22_, 1:90:18_, 1:96:25_, 1:103:24 _, 1:104:6_, 1:108:9_, 1:126:4_, 1:129:6

territory [1]_ - 1:120:24

test [4]_ - 1:98:17_, 1:98:19 _, 1:118:24_, 1:125:17

testified [8]_ - 1:20:6_, 1:20:25_, 1:21:7_, 1:30:15_, 1:31:24_, 1:40:1_, 1:40:2_, 1:40:12

testify [12]_ - 1:4:15_, 1:5:16_, 1:15:21_, 1:51:4_, 1:52:19_, 1:62:1_, 1:62:6_, 1:97:12_, 1:115:24_, 1:116:5 _, 1:126:5_, 1:133:22

testifying [2]_ - 1:93:17_, 1:118:11

testimony [8]_ - 1:7:5_, 1:19:7, 1:19:17_, 1:21:8_, 1:34:16_, 1:35:15_, 1:38:17

_, 1:132:5

Texas [2]_ - 1:126:8_, 1:126:16

text [2]_ - 1:58:2_, 1:99:18

THE [391]_ - 1:3:2_, 1:3:13 _, 1:3:19, 1:3:22_, 1:3:23_, 1:4:7_, 1:4:19_, 1:4:24_, 1:5:1_, 1:5:5_, 1:5:10_, 1:5:14_, 1:5:17_, 1:5:24_, 1:6:2_, 1:6:8_, 1:6:15_, 1:6:22_, 1:7:2_, 1:7:8_, 1:7:9 _, 1:7:13_, 1:7:14_, 1:7:17_, 1:7:18_, 1:7:20_, 1:7:21_, 1:8:1_, 1:8:2_, 1:8:9_, 1:8:10 _, 1:8:12_, 1:8:14_, 1:8:15_, 1:8:16_, 1:8:24_, 1:9:5_, 1:9:10_, 1:9:11_, 1:9:15_, 1:9:16_, 1:9:19_, 1:9:20_, 1:9:22_, 1:9:23_, 1:9:24_, 1:9:25_, 1:10:2_, 1:10:6_, 1:10:8_, 1:10:13_, 1:10:14_, 1:10:18_, 1:10:19_, 1:10:23 _, 1:10:25_, 1:11:1_, 1:11:3_, 1:11:4_, 1:11:8_, 1:11:10_, 1:11:15_, 1:11:19_, 1:11:20 _, 1:11:24_, 1:11:25_, 1:12:15_, 1:12:21_, 1:13:4_, 1:13:7_, 1:13:12_, 1:13:18_, 1:13:20_, 1:14:1_, 1:14:5_, 1:14:11_, 1:14:16_, 1:14:19 _, 1:14:23_, 1:15:14_, 1:15:22_, 1:16:8_, 1:16:14_, 1:16:16_, 1:16:22_, 1:17:8_, 1:17:12_, 1:17:17_, 1:17:21 _, 1:18:1_, 1:18:10_, 1:18:12 _, 1:18:15_, 1:18:20_, 1:18:24_, 1:19:6_, 1:19:11_, 1:19:14_, 1:19:19_, 1:19:20 _, 1:19:22_, 1:19:24_, 1:20:2 _, 1:26:24_, 1:27:4_, 1:29:8_, 1:29:10_, 1:29:25_, 1:30:3_, 1:30:5_, 1:30:7_, 1:30:10_, 1:30:12_, 1:30:14_, 1:30:19 _, 1:31:8_, 1:31:10_, 1:31:11 _, 1:31:13_, 1:31:14, 1:31:18 _, 1:32:17_, 1:34:4_, 1:34:5_, 1:34:20_, 1:34:22_, 1:34:24 _, 1:34:25_, 1:35:1_, 1:35:2_, 1:35:4_, 1:35:5_, 1:35:6_, 1:35:9_, 1:35:13_, 1:36:2_, 1:36:8_, 1:36:16_, 1:36:23_, 1:36:25_, 1:37:3_, 1:37:7_, 1:37:10_, 1:37:16_, 1:37:19 _, 1:37:24_, 1:38:7_, 1:38:11 _, 1:38:17_, 1:38:21_, 1:38:23_, 1:39:6_, 1:39:10_, 1:39:15_, 1:42:18_, 1:43:6_, 1:43:9_, 1:43:21_, 1:43:23_, 1:43:25_, 1:44:22_, 1:44:25 _, 1:45:2_, 1:45:4_, 1:45:7_,

_, 1:45:9_, 1:45:13_, 1:45:20_, 1:46:10_, 1:46:19_, 1:46:24 _, 1:47:6_, 1:47:13_, 1:47:20 _, 1:48:10_, 1:49:16_, 1:52:9 _, 1:52:11_, 1:52:23_, 1:52:25_, 1:53:2_, 1:53:6_, 1:53:9_, 1:54:7_, 1:54:11_, 1:54:14_, 1:54:24_, 1:55:2_, 1:55:6_, 1:55:8_, 1:57:12_, 1:58:5_, 1:58:17_, 1:58:23_, 1:59:2_, 1:59:6_, 1:59:18_, 1:59:21_, 1:60:4_, 1:60:12_, 1:60:15_, 1:60:18_, 1:60:22 _, 1:61:4_, 1:61:9_, 1:61:14_, 1:61:16_, 1:61:20_, 1:62:2_, 1:62:11_, 1:62:21_, 1:62:24 _, 1:63:3_, 1:63:17_, 1:64:6_, 1:64:16_, 1:65:4_, 1:65:8_, 1:65:18_, 1:65:21_, 1:66:3_, 1:66:7_, 1:66:14_, 1:67:5_, 1:67:11_, 1:67:19_, 1:67:22 _, 1:67:25_, 1:68:7_, 1:68:11 _, 1:68:14_, 1:68:23_, 1:69:1 _, 1:69:5_, 1:70:7_, 1:70:12_, 1:70:15_, 1:70:24_, 1:71:20 _, 1:76:6_, 1:76:9_, 1:76:12_, 1:76:25_, 1:77:15_, 1:78:3_, 1:78:9_, 1:78:12_, 1:79:1_, 1:79:6_, 1:79:12_, 1:79:22_, 1:80:5_, 1:80:8_, 1:80:11_, 1:80:13_, 1:80:21_, 1:81:4_, 1:81:9_, 1:81:22_, 1:82:3_, 1:82:7_, 1:82:12_, 1:82:16_, 1:82:22_, 1:82:24_, 1:83:4_, 1:83:10_, 1:83:15_, 1:83:21 _, 1:84:13_, 1:84:21_, 1:85:4 _, 1:85:7_, 1:85:10_, 1:85:15 _, 1:85:22_, 1:87:4_, 1:87:6_, 1:87:12_, 1:87:14_, 1:87:18 _, 1:88:15_, 1:88:18_, 1:88:22_, 1:89:12_, 1:89:19 _, 1:89:25_, 1:90:3_, 1:90:7_, 1:90:21_, 1:91:1_, 1:91:11_, 1:91:23_, 1:92:3_, 1:92:8_, 1:92:19_, 1:92:21_, 1:93:9_, 1:93:12_, 1:93:25_, 1:94:2_, 1:94:5_, 1:94:13_, 1:94:21_, 1:95:3_, 1:95:12_, 1:95:17_, 1:96:4_, 1:96:7_, 1:96:9_, 1:96:17_, 1:96:24_, 1:97:4_, 1:97:7_, 1:97:10_, 1:97:16_, 1:97:25_, 1:98:8_, 1:99:23_, 1:100:18_, 1:100:20_, 1:100:22_, 1:101:5_, 1:101:11_, 1:101:17_, 1:101:24_, 1:102:3_, 1:102:7 _, 1:102:12_, 1:102:15_, 1:102:18_, 1:102:21_, 1:103:1_, 1:103:9_, 1:103:15 _, 1:103:20_, 1:103:23_, 1:104:6_, 1:104:20_,

1:104:22_, 1:105:1_,
1:107:12_, 1:108:9_,
1:108:12_, 1:108:15_,
1:108:21_, 1:108:24_,
1:112:6_, 1:112:16_,
1:112:25_, 1:113:2_,
1:113:13_, 1:119:4_,
1:119:16_, 1:119:18_,
1:120:22_, 1:121:2_,
1:121:11_, 1:121:17_,
1:122:6_, 1:122:15_, 1:123:6
_, 1:123:9_, 1:123:13_,
1:124:25_, 1:125:4_,
1:125:12_, 1:125:15_,
1:125:17_, 1:125:19_,
1:125:23_, 1:126:1_, 1:126:4
_, 1:126:23_, 1:126:25_,
1:127:2_, 1:128:18_, 1:129:5
_, 1:129:23_, 1:130:12_,
1:130:18_, 1:131:12_,
1:131:14_, 1:131:17_,
1:133:7_, 1:133:17_, 1:134:4
_, 1:134:17_, 1:134:21_,
1:134:25_, 1:135:3

themselves [4]_ - 1:85:8
_, 1:91:2_, 1:92:13_,
1:100:21

theoretical [1]_ - 1:92:14

theory [1]_ - 1:106:7

therefore [1]_ - 1:59:14

thereof [2]_ - 1:23:17_,
1:114:9

Thereupon [1] - 1:20:4

they've [1]_ - 1:129:6

thinking [1] - 1:19:3

thinks [1] - 1:117:22

third [4]_ - 1:51:9_,
1:100:23_, 1:101:17_,
1:113:22

Thorton [1] - 1:47:8

thousands [10]_ - 1:89:7_,
1:89:8_, 1:107:22_, 1:108:9
_, 1:108:15_, 1:121:19_,
1:122:5_, 1:129:1_, 1:129:2
_, 1:129:12

threats [1] - 1:40:7

three [18]_ - 1:3:24_,
1:12:17_, 1:18:24_, 1:22:20
_, 1:27:18_, 1:82:3_, 1:90:12
_, 1:91:2_, 1:98:14_, 1:98:18
_, 1:98:21_, 1:100:4_,
1:100:16_, 1:100:18_,
1:103:3_, 1:116:7_, 1:121:5
_, 1:128:8

three-levels [1]_ - 1:98:18

threshold [1]_ - 1:77:25

throws [1]_ - 1:72:11

time-wise [1]_ - 1:116:7

timeline [2]_ - 1:52:24_,
1:77:23

timely [1]_ - 1:39:3

timestamp [2]_ - 1:53:23
_, 1:77:4

timestamps [1]_ -
1:76:15

tips [1]_ - 1:132:9

Title [1]_ - 1:109:18

today [16]_ - 1:3:18_, 1:4:1
_, 1:5:18_, 1:13:1_, 1:34:16_,
1:46:23_, 1:83:3_, 1:85:16_,
1:90:11_, 1:92:1_, 1:95:22_,
1:96:2_, 1:117:13_, 1:122:14
_, 1:130:23_, 1:131:11

today's [8]_ - 1:12:24_,
1:19:7_, 1:36:22_, 1:84:2_,
1:88:2_, 1:95:19_, 1:96:8_,
1:105:16

together [3]_ - 1:23:25_,
1:36:10_, 1:104:16

together.. [1]_ - 1:95:11

took [8]_ - 1:33:11_,
1:42:11_, 1:69:21_, 1:71:22
_, 1:86:13_, 1:99:3_, 1:112:9
_, 1:116:9

top [5]_ - 1:10:12_, 1:11:18
_, 1:27:11_, 1:48:20_, 1:49:8

topic [2]_ - 1:81:19_,
1:83:11

total [3]_ - 1:14:19_, 1:89:2
_, 1:121:20

totality [1]_ - 1:85:1

touch [1]_ - 1:69:25

towards [1]_ - 1:124:3

towering [1]_ - 1:25:8

toy [1]_ - 1:68:16

Toyota [7]_ - 1:25:14_,
1:29:15_, 1:29:21_, 1:39:20
_, 1:45:5_, 1:45:18_, 1:47:19

track [1]_ - 1:92:8

traffic [1]_ - 1:41:23

transaction [3]_ - 1:57:19
_, 1:57:21_, 1:105:21

transactions [2]_ -
1:105:21_, 1:106:12

transcript [4]_ - 1:12:21_,
1:81:24_, 1:82:25_, 1:83:1

transcripts [1]_ - 1:126:20

transmitted [1]_ -
1:107:13

transport [3]_ - 1:50:17_,
1:57:17_, 1:58:12

travel [3]_ - 1:62:1_,
1:133:23_, 1:134:3

treating [1]_ - 1:58:24

trial [21]_ - 1:75:1_, 1:89:11
_, 1:92:10_, 1:93:2_, 1:95:20
_, 1:95:25_, 1:97:4_,
1:110:21_, 1:115:12_,
1:116:8_, 1:118:12_, 1:119:1
_, 1:119:21_, 1:126:19_,
1:126:21_, 1:128:10_,
1:132:14_, 1:133:25_,
1:134:5_, 1:135:1

trials [1]_ - 1:126:21

tried [4]_ - 1:71:24_,
1:75:17_, 1:75:18_, 1:105:3

trouble [1]_ - 1:79:9

Troya [1]_ - 1:105:25

truck [5]_ - 1:86:2_,
1:86:10_, 1:86:11_, 1:87:1_,
1:87:3

true [6]_ - 1:6:11_, 1:8:5_,
1:8:18_, 1:9:12_, 1:25:25_,
1:75:8

trunk [15]_ - 1:44:23_,
1:45:4_, 1:45:6_, 1:45:16_,
1:45:24_, 1:46:1_, 1:47:15_,
1:68:4_, 1:68:6_, 1:68:11_,
1:68:21_, 1:85:21_, 1:86:16
_, 1:87:9

truth [7] - 1:7:6, 1:7:7,
1:19:17_, 1:19:18_, 1:21:8

try [5]_ - 1:30:19_, 1:69:22
_, 1:72:25_, 1:126:20_,
1:134:1

trying [6]_ - 1:107:9_,
1:120:18_, 1:124:19_,
1:125:4_, 1:126:21_,
1:127:16

turn [9]_ - 1:4:3_, 1:12:3_,
1:59:20_, 1:63:3_, 1:69:5_,
1:83:21_, 1:87:20_, 1:94:13
_, 1:95:5

turned [1]_ - 1:126:17

two [40]_ - 1:11:7_, 1:11:15
_, 1:12:16_, 1:13:15_,
1:16:25_, 1:22:25_, 1:23:1_,
1:23:6_, 1:23:17_, 1:23:25_,
1:24:5_, 1:24:10_, 1:30:2_,
1:30:7_, 1:40:23_, 1:40:25_,
1:41:4_, 1:48:16_, 1:48:18_,
1:48:23_, 1:49:22_, 1:58:13
_, 1:66:8_, 1:75:21_, 1:91:5_,
1:95:11_, 1:98:10_, 1:99:7_,
1:99:13_, 1:99:17_, 1:106:2

1:107:23_, 1:115:24_,
1:116:1_, 1:123:10_,
1:123:20_, 1:126:7_,
1:126:13_, 1:128:7_,
1:133:21

two-hour [1]_ - 1:16:25

two-page [1]_ - 1:91:5

two-piece [2]_ - 1:48:18_,
1:48:23

tying [1]_ - 1:50:4

type [3]_ - 1:65:10_, 1:91:7
_, 1:115:11

types [1]_ - 1:111:5

typically [3]_ - 1:89:8_,
1:109:2_, 1:111:9

## U

U.S [4]_ - 1:44:15_, 1:47:9
_, 1:78:25_, 1:118:9

U.S.C [2]_ - 1:109:15_,
1:109:19

UC [2]_ - 1:56:25_, 1:114:9

UCA [2]_ - 1:49:5_,
1:49:11

ultimately [2]_ - 1:128:19
_, 1:132:9

uncharged [5]_ - 1:98:14
_, 1:105:20_, 1:106:11_,
1:111:4_, 1:111:16

unclear [1]_ - 1:132:3

unconstrained [1]_ -
1:85:2

uncovered [2]_ - 1:106:4
_, 1:116:5

under [44]_ - 1:6:18_, 1:9:6
_, 1:36:9_, 1:36:14_, 1:36:18
_, 1:44:25_, 1:45:16_, 1:65:8
_, 1:68:5_, 1:71:18_, 1:78:23
_, 1:84:6_, 1:84:25_, 1:86:2_,
1:86:16_, 1:97:22_, 1:106:7
_, 1:108:5_, 1:109:13_,
1:109:14_, 1:109:17_,
1:110:9_, 1:110:15_,
1:110:22_, 1:112:3_,
1:112:13_, 1:112:16_,
1:113:4_, 1:113:8_, 1:113:10
_, 1:117:4_, 1:120:16_,
1:121:6_, 1:121:9_, 1:122:10
_, 1:122:11_, 1:123:24_,
1:127:11_, 1:128:22_,
1:129:9_, 1:131:18_,
1:131:24_, 1:132:9

undercover [23]_ -
1:48:12_, 1:48:22_, 1:49:2_,
1:49:5_, 1:49:15_, 1:67:12_,

1:86:8.., 1:93:7.., 1:93:15..,
1:93:17.., 1:99:16.., 1:99:20
.., 1:102:13.., 1:103:6..,
1:104:15.., 1:114:1.., 1:115:3
.., 1:116:10.., 1:117:18..,
1:123:3.., 1:126:8.., 1:126:17
.., 1:130:2

underlying [13].. - 1:92:12
.., 1:97:13.., 1:98:1.., 1:111:8
.., 1:112:7.., 1:119:11..,
1:123:17.., 1:123:19..,
1:126:5.., 1:128:14..,
1:128:24.., 1:132:8..,
1:133:20

understood [8].. - 1:33:5
.., 1:33:7.., 1:36:21.., 1:70:20
.., 1:70:21.., 1:70:22..,
1:84:10.., 1:84:11

unduly [2].. - 1:113:21..,
1:117:14

unequivocal [1].. -
1:72:10.., 1:81:5

unfair [1].. - 1:121:22

Unger [1].. - 1:116:3

unicorn [2].. - 1:49:7..,
1:49:12

unique [1].. - 1:109:1

unit [3].. - 1:35:5.., 1:35:7..,
1:35:8

United [20].. - 1:3:5..,
1:3:10.., 1:20:18.., 1:47:9..,
1:49:25.., 1:50:11.., 1:51:16
.., 1:52:8.., 1:55:10.., 1:58:10
.., 1:73:7.., 1:74:16.., 1:78:13
.., 1:85:24.., 1:86:23..,
1:105:25.., 1:109:18..,
1:112:1.., 1:112:9.., 1:117:2

universe [1].. - 1:102:22

unknown [1].. - 1:101:15

unless [4].. - 1:3:2..,
1:45:22.., 1:95:12.., 1:125:13

unmoored [1].. - 1:47:1

unnecessary [1].. -
1:128:5

up [34].. - 1:4:9.., 1:4:13..,
1:5:8.., 1:9:6.., 1:15:7..,
1:38:18.., 1:41:17.., 1:42:1..,
1:42:4.., 1:42:5.., 1:48:7..,
1:48:17.., 1:53:15.., 1:67:2..,
1:67:11.., 1:71:15.., 1:72:13
.., 1:74:5.., 1:74:23.., 1:79:13
.., 1:80:19.., 1:82:1.., 1:85:20
.., 1:85:23.., 1:89:25..,
1:103:12.., 1:108:22..,
1:116:16.., 1:117:19..,
1:117:23.., 1:118:20..,

1:119:23.., 1:124:12..,
1:126:5

upheld [3].. - 1:46:5..,
1:118:18.., 1:126:19

upholding [2].. - 1:98:25..,
1:111:25

upwards [1].. - 1:94:12

user [1].. - 1:50:22

usernames [1].. - 1:99:12

### V

vacuum [1].. - 1:128:4

Valdivia [4].. - 1:23:10..,
1:23:14.., 1:28:3.., 1:31:7

value [1].. - 1:111:10

vanish [1].. - 1:51:22

various [2].. - 1:19:7..,
1:131:24

vehicle [69].. - 1:4:11..,
1:4:14.., 1:25:15.., 1:25:18..,
1:25:20.., 1:25:21.., 1:25:22
.., 1:26:1.., 1:26:4.., 1:26:9..,
1:27:13.., 1:27:16.., 1:30:16
.., 1:30:19.., 1:30:20..,
1:30:21.., 1:30:24.., 1:31:1..,
1:39:12.., 1:39:18.., 1:40:10
.., 1:40:11.., 1:41:6.., 1:41:10
.., 1:41:15.., 1:41:17..,
1:44:23.., 1:46:18.., 1:47:11
.., 1:47:12.., 1:47:14..,
1:47:23.., 1:48:2.., 1:48:4..,
1:49:20.., 1:51:5.., 1:51:6..,
1:51:19.., 1:51:20.., 1:52:13
.., 1:54:1.., 1:54:12.., 1:54:22
.., 1:55:18.., 1:56:6.., 1:56:7..,
1:59:7.., 1:59:22.., 1:62:14..,
1:63:7.., 1:63:8.., 1:63:10..,
1:63:14.., 1:63:15.., 1:63:21
.., 1:63:25.., 1:64:3.., 1:64:4..,
1:65:1.., 1:65:10.., 1:65:17..,
1:66:8.., 1:66:10.., 1:66:20..,
1:66:21.., 1:67:22.., 1:69:3

venue [1].. - 1:106:24

verbal [2].. - 1:29:14..,
1:31:9

verbally [1].. - 1:84:15

verify [1].. - 1:10:9

Verizon [1].. - 1:88:20

versus [1].. - 1:124:23

via [2].. - 1:87:15.., 1:96:11

vibrator [1].. - 1:49:10

video [12].. - 1:14:24..,
1:18:7.., 1:18:18.., 1:24:3..,
1:48:22.., 1:70:11.., 1:79:17
.., 1:80:9.., 1:93:14.., 1:93:16

.., 1:94:10.., 1:104:8

videos [15].. - 1:89:2..,
1:94:4.., 1:94:5.., 1:94:6..,
1:94:7.., 1:94:9.., 1:94:11..,
1:94:24.., 1:100:7.., 1:103:5
.., 1:103:11.., 1:106:16..,
1:107:22.., 1:108:11..,
1:118:15

view [4].. - 1:54:15..,
1:58:17.., 1:120:23.., 1:121:2

violated [1].. - 1:41:22

violations [1].. - 1:41:23

virtual [1].. - 1:114:25

visit [1].. - 1:55:23

voice [2].. - 1:25:4.., 1:90:8

void [2].. - 1:69:11..,
1:69:20

volatile [1].. - 1:41:19

volume [1].. - 1:108:9

voluminous [3].. - 1:88:18
.., 1:91:21.., 1:92:16

voluntarily [2].. - 1:9:23..,
1:31:5

voluntariness [2].. -
1:76:21.., 1:84:23

voluntary [1].. - 1:84:25

### W

Wait [1].. - 1:72:15

wait [5].. - 1:76:25..,
1:90:21.., 1:114:19..,
1:120:13

waive [1].. - 1:70:19

waived [1].. - 1:15:20

waiver [15].. - 1:15:11..,
1:33:2.., 1:33:20.., 1:62:18..,
1:70:2.., 1:70:19.., 1:76:23..,
1:78:23.., 1:83:22.., 1:83:24
.., 1:84:3.., 1:84:7.., 1:84:9

waives [3].. - 1:15:17..,
1:15:18.., 1:84:19

wallet [1].. - 1:68:16

wants [8].. - 1:6:21..,
1:72:19.., 1:83:19.., 1:98:12
.., 1:116:13.., 1:116:20..,
1:117:15.., 1:118:19

warrant [34].. - 1:21:19..,
1:21:20.., 1:22:3.., 1:22:9..,
1:22:13.., 1:35:8.., 1:39:22..,
1:40:4.., 1:41:15.., 1:42:16..,
1:42:18.., 1:42:25.., 1:43:3..,
1:43:12.., 1:43:13.., 1:44:7..,
1:47:24.., 1:51:9.., 1:52:2..,
1:52:17.., 1:53:12.., 1:53:13

1:55:25.., 1:63:12..,
1:63:14.., 1:66:6.., 1:89:21..,
1:90:13.., 1:90:18.., 1:91:1..,
1:91:15.., 1:120:5.., 1:132:13

warrantless [2].. - 1:51:22
.., 1:86:3

warrants [8].. - 1:21:3..,
1:90:12.., 1:90:23.., 1:91:6..,
1:91:9.., 1:103:15.., 1:126:10
.., 1:134:14

ways [1].. - 1:41:10

weapon [1].. - 1:25:6

weapons [8].. - 1:44:10..,
1:44:12.., 1:44:20.., 1:51:12
.., 1:54:19.., 1:55:3.., 1:56:15
.., 1:64:8

weight [1].. - 1:119:9

welcome [1].. - 1:79:2

West [3].. - 1:21:24..,
1:53:16.., 1:132:23

Westlaw [1].. - 1:73:10

whatnot [1].. - 1:105:11

whatsoever [2].. - 1:64:15
.., 1:76:4

whereabouts [1].. -
1:24:12

whereby [1].. - 1:120:19

white [2].. - 1:48:20..,
1:58:10

whole [2].. - 1:7:6, 1:19:17

willing [4].. - 1:8:10..,
1:71:2.., 1:73:16.., 1:73:23

window [1].. - 1:50:20

windshield [1].. - 1:53:18

wise [1].. - 1:116:7

wish [6].. - 1:7:24.., 1:19:2
.., 1:71:16.., 1:87:14..,
1:89:19.., 1:98:9

wished [1].. - 1:74:3

wishes [1].. - 1:90:5

withdraw [1].. - 1:29:18

witness [14].. - 1:4:14..,
1:19:10.., 1:19:11.., 1:19:15
.., 1:27:3.., 1:28:22.., 1:28:24
.., 1:35:10.., 1:35:15..,
1:97:12.., 1:112:20.., 1:116:2
.., 1:126:4.., 1:132:5

WITNESS [13].. - 1:19:19
.., 1:19:22.., 1:30:3.., 1:30:7..,
1:30:12.., 1:30:19.., 1:31:10
.., 1:31:13.., 1:34:5.., 1:34:24
.., 1:35:1.., 1:35:4.., 1:35:6

witnessed [4].. - 1:29:4..,
1:34:17.., 1:40:12.., 1:40:13

witnesses [9] – 1:95:25 –,
1:96:2 –, 1:115:24 –, 1:116:7
–, 1:126:7 –, 1:128:7 –,
1:128:8 –, 1:128:9 –, 1:133:21

WL5491336 [1] –
1:73:10

woman [3] – 1:56:3 –,
1:65:11 –, 1:75:15

women [4] – 1:23:17 –,
1:30:2 –, 1:30:11 –, 1:52:20

word [10] – 1:42:1 –,
1:71:25 –, 1:72:1 –, 1:72:4 –,
1:72:11 –, 1:72:21 –, 1:74:13
–, 1:87:16 –, 1:98:24 –,
1:98:25

words [7] – 1:30:17 –,
1:48:11 –, 1:67:13 –, 1:71:4 –,
1:77:11 –, 1:101:19 –,
1:101:21

worth [1] – 1:12:13

write [1] – 1:56:22

writing [2] – 1:4:20 –,
1:30:16

written [13] – 1:12:21 –,
1:15:11 –, 1:26:14 –, 1:29:14
–, 1:31:9 –, 1:31:12 –, 1:38:4 –,
1:70:2 –, 1:76:23 –, 1:78:23 –,
1:83:24 –, 1:84:3 –, 1:133:9

wrote [5] – 1:8:13 –, 1:15:9
–, 1:28:14 –, 1:111:2 –,
1:111:13

Y

year [3] – 1:103:19 –,
1:104:3 –, 1:133:24

years [8] – 1:20:23 –,
1:40:23 –, 1:41:4 –, 1:103:25
–, 1:104:1 –, 1:118:12 –,
1:118:13 –, 1:128:1

yelling [2] – 1:56:4 –,
1:65:11

York [1] – 1:87:7

young [2] – 1:101:15 –,
1:101:22