UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  23-CR-80219-AMC(s)

UNITED STATES OF AMERICA

v.

MICHAEL GORDON DOUGLAS,

      Defendant.

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION**
**FOR RECONSIDERATION OF PRE-TRIAL DETENTION (ECF No. 127)**

The United States, by and through its undersigned Assistant United States Attorney, files this response to the Defendant's Motion for Reconsideration of Pre-Trial Detention (ECF No. 114). The United States objects to reopening the detention hearing and his release. The defendant's medical condition has already been considered and has not changed materially such that relief is appropriate. Rather, the defendant remains a danger to community, as well as a risk of flight, and there is no condition or combination of conditions that can be set to lessen those risks. The United States offers the following:

**<u>Background</u>**

1.    The defendant was charged by criminal complaint with distribution of child pornography in December 2023 (ECF No.1). According to the complaint affidavit, the defendant distributed child pornography via a social media application to what he believed was the mother of an eight-year-old child. The defendant was living in Southern California at the time and believed the mother lived in Florida. Unbeknownst to the defendant, the mother was an undercover federal agent and the child was fictional.

2.    The defendant was arrested on December 12, 2023, in the Southern District of

California. During his arrest, the defendant threatened to blow himself up, and others, with a fake grenade. He had his initial appearance in California the next day, on December 13, 2023. The United States moved for pretrial detention based upon danger to the community and risk of flight.

3.      Initially, the defendant was detained on December 19, 2023, following a pre-trial detention hearing (ECF No. 12). The detention order noted that there was clear and convincing evidence of danger and that no condition or combination of conditions would protect the community. The order also noted the defendant was a risk of flight by a preponderance of the evidence (ECF No. 12, see detention order).

4.      The defendant filed a motion for reconsideration of bond while still in California. *Id*. The motion relied in part on the defendant's medical conditions and claimed he suffered from a thinning of his spinal [cord] in the cervical region. The defendant claimed the thinning of his spinal cord would necessitate surgery to avoid paralysis or even death. He also argued that his condition was worsen by being in jail and that paralysis or death could result if he was jostled or assaulted by another inmate (ECF no. 12, see defendant's Memorandum of Points and Authorities in Support of Bond, *7). Further, the defendant argued that he would not receive sufficient medical care, whether that be in California or Florida, and his transfer to Florida would likely be too risky.

5.      On January 25, 2024, the defendant had a hearing in California concerning bond during which he raised his medical issues. He was granted bond, and the United States stayed the release order and appealed. Shortly thereafter, the defendant was removed to Florida.

6.      On March 18, 2024, this Court entered an Order granting the United States's appeal of the defendant's bond and detained the defendant (ECF No. 25). The order came after a hearing on March 5, 2024, and through a *de novo* review of the entire record – including his medical

history. The Court found strong support for detention based on danger and risk of flight. *Id.* The Court further noted that detention remained appropriate despite the defendant's cervical radiculitis condition, a condition the Defendant indicated he had suffered from for years, even if prone to worsening." *Id.*, *7.

7.      On July 18, 2024, a federal grand jury returned an eight-count superseding indictment against the defendant (ECF No. 55). The first seven counts of the Superseding Indictment charged distribution. The last count charged attempted enticement of a minor to engage in sexual criminal activity – a federal offense that is punishable by life in prison.

8.      On February 24, 2025, the defendant filed a renewed motion for reconsideration of bond or other relief concerning his medical condition (ECF No. 114). Under seal, the defendant provided the Court an expert report authored by Dr. Charles Howard. That report summarized the defendant's medical history and chief complaints, including spinal stenosis. Dr. Howard also reported other medical conditions which had been treated while in custody, including asthma, bronchitis, shoulder bursitis and pain, and a toe infection. More recently, as noted in Dr. Howard's report, the defendant was transferred to a local hospital whereupon he underwent an emergency appendectomy. This surgery occurred in December 2024 and the defendant was returned in stable condition to federal custody where he has remained ever since.

**Defendant's Spinal Condition**

9.      The defendant has a well-documented history of medical aliments, including spinal stenosis. According to the Cleveland Clinic, "spinal stenosis" is the narrowing of one or more spaces within your spinal canal.[1] The spinal canal is the tunnel that runs through each of the

---

[1] https://my.clevelandclinic.org/health/diseases/17499-spinal-stenosis

vertebrae in the spine and contains the spinal cord. Less space within the spinal canal cramps the spinal cord and the nerves that branch off. A tightened space can cause the spinal cord or nerves to become irritated, compressed or pinched. This can lead to back pain and other nerve issues, like sciatica. Several conditions and injuries can also lead to a narrowed spinal canal. Spinal stenosis can affect anyone, but it's most common in people over the age of 50. Spinal stenosis, whether that be in the lumbar or cervical area, can often be treated through medication, physical therapy, chiropractic care, and surgery.

10.     Here, the defendant came into the federal system with a history of spinal problems. Before the defendant was removed to Florida, the defendant was seen in San Diego, California for his back. More specifically, in early January 2024 medical staff noted that he had a herniated disc from a previous fall in 2022 ("Exhibit A," Health Services Clinical Encounter, 01/08/2024).[2]  On January 12, 2024, the defendant was evaluated by medical staff in San Diego. The associated records from Health Services stated in relevant part:

> Received Hospital records.
> Head CT- no [intacranial] pathology, no fractures.
> Cervical Spine CT- no acute abnormality, minimal cervical Spondylosis.
> Cervical Spine MRI w/o contrast: multilevel DJD changes of cervical spine. There is up to moderate spinal canal stenosis at C5-C6 level, where there is minimal contouring of ventral cord. No cord signal abnormality in this location or within the remainder of cervical cord. No high grade neuroforaminal stenosis.
>
> Will place medications for Pain, Neurosurgery evaluation however based on MRI above there is no urgent issues.

("Exhibit B," Health Services Clinical Encounter – Administrative Note, 01/12/2024).

---

[2]     All medical record exhibits will be filed separately under seal.

11.     The above administrative note followed an MRI of his cervical spine and CT Scan

of his head and neck taken at UC San Diego Health on January 10, 2024 (See "Exhibit C" UC

San Diego Health Records). Those records confirmed the defendant had a history of head, neck

and back injuries. The defendant appeared at UC San Diego after reportedly being assaulted by

another inmate. The medical records stated:

> Michael Gordon Douglas is a 47-year-old male with a history of C6-7 and L4-5-
> disc herniation after a traumatic fall in December of 2022 who complains of
> changes in his neurologic symptoms after his cellmate slapped and twisted his head
> and gave him a bear hug yesterday. Patient is overall well-appearing, afebrile, and
> ambulatory. There is no numbness, pain or weakness in the legs, urinary retention,
> or loss of continence. There are no red flags such as fever, history of malignancy,
> or previous IV drug use. *Id*.

UC San Diego's medical diagnosis was that his condition was "consistent with exacerbation of

underlying chronic degenerative changes in the cervical spine."

12.     On September 24, 2024, the defendant received chronic care services while at FDC

Miami ("Exhibit D," Miami Health Services Clinical Encounter, 09/24/2024). As relevant here,

the defendant reported chronic neck and lower back pain. On the pain scale, the defendant noted a

5 and reported it was intermittent. The defendant also reported that onset occurred one to five years

ago, and his condition was exacerbated when straining or turning his neck.

13.     During his exam, the defendant received several x-rays from Statrad, a remote

radiology provider that took x-rays of his spine while at FDC Miami ("Exhibit E," Statrad records).

The report findings were listed as normal with no acute fractures or listhesis within the cervical

spine. As for the lumbar spine, the report found "normal bone mineralization," but no acute

fractures or listhesis. There was mild disc space narrowing at L4-L5 and L5-S1. These findings

provided an overall impression of "minimal lumbar spine disc degeneration and mild disc space

narrowing. Using these x-rays, and after review of the defendant's prior medical records and history, there was "no indication for neurosurgery consult" and his "evaluation [did] not suggest cord compression.

14.     The defendant's most recent medical records available to the United States come from a clinical encounter that occurred on December 20, 2024, following his appendectomy ("Exhibit F," Health Services Clinical Encounter – Administrative Note, 12/20/2024). According to Health Services the defendant was discharged from the local community hospital and was feeling fine, other than moderate abdominal pain. He appeared alert, active, and in no apparent distress. His lungs were clear, and his heart rate was regular and rhythmic. In short, he was in stable condition and had "good postsurgical recovery."  The notes also reveal that he did not have a fever, that is oxygen stats were 99% and he was compliant with his treatment plan.

## Summary of Defense Argument

The defendant's motion asserts that the Court should revisit detention and infers there is a grave danger to the defendant's health and wellbeing. He also argues that his spinal "condition has neither improved nor been treated properly" (ECF No. 114, *3). He further states that he continues to have significant pain in his neck and lower back, that his hands no longer work, and he has lost feeling in his arms, legs and head. *Id*.  The defendant argues that he is in need of immediate medical attention, including emergency medical care. *Id*.  According to Dr. Howard's report, the defendant should be released from custody in order to have "immediate access" to spinal surgery services. Dr. Howard goes on to say "[t]here are no prisons that can offer this level of care" and the only option would be to transport an inmate on an emergency basis to a "major medical center."

## **Legal Standard**

As to the defendant's Motion, the last sentence of 18 U.S.C. § 3142(f) provides the legal requirements, and it states as follows:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

Accordingly, on a reconsideration motion, the defendant is required to establish that (1) information exists that was not known to him at the time of the initial detention hearing and (2) that such information has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance in court as required.

"Under the Bail Reform Act, of which 18 U.S.C. § 3142(f) is a part, a court has discretion to reopen a bail hearing if information comes to light that is both new and material to the detention question." *United States v. Zhang*, 55 F.4th 141, 147 (2d Cir. 2022). More specifically, a hearing "may be reopened" if: "the judicial officer ... finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "[T]he Bail Reform Act states only that a hearing 'may' be reopened if new and material information is presented[,] ... [and] therefore leaves the decision to reopen a hearing to the sound discretion of the district court." *Zhang*, 55 F.4th at 148. Relatedly, "the Court is not required to reopen the hearing or to conduct another hearing if it determines that any new information would not have a material bearing on the issue." *United States v. Maxwell*, 510 F. Supp. 3d 165, 169 (S.D.N.Y. 2020). Indeed, "[a] court's

prior detention determination is a natural reference point against which to measure the materiality of new information for the purpose of reopening the hearing—that is, revisiting its earlier decision." *Zhang*, 55 F.4th at 148 (finding that the government's official decision not to pursue the death penalty was not "material information" warranting reopening when the district court had expressly not factored the availability of the death penalty into its original detention decision).

Further, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. Sch. Bd. of Hillsborough Cnty.*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)). "There are three major grounds which justify reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id*. at 1369 (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F.Supp.2d 1316, 1331 (M.D. Fla. 1999)); see also *United States v. Edler*, No. 13–60168–CR, 2013 WL 4543695, at *1 (S.D. Fla. 2013) (applying the *Burger King* reconsideration factors to a motion for reconsideration/rehearing of a pretrial detention order). None of these grounds are applicable to this case.

## Argument

The defendant's motion should be denied for two reasons.  First, he has not presented any new information that was not already known to him or otherwise considered by the Court.  Second, the defendant's medical condition has not deteriorated to a point to make it material.

The defendant has had a history of medical issues, including spinal stenosis which is well documented. His medical history was recorded shortly after his arrest in 2023 in California. As referenced above, he was seen by medical professionals and doctors at UC San Diego Medical

Center in January 2024. He was then seen by medical staff and doctors at FDC Miami once he was transferred to our District. Since then, he has had constant and continuing care by medical staff while in custody. He has undergone a battery of exams, evaluations, clinicals, x-rays and even an emergency medical procedure. During that entire time, the defendant has been aware of his specific back problems and has brought those to the attention of the Courts.

Second, there has been no change in his condition such that it provides new information material to detention. The defendant argues, through the report of Dr. Howard, that he his present condition is grave and that he needs immediate emergency care. This argument, as stated above, was already made and there was insufficient evidence to support any immediacy. Instead, and as the defendant argues here, the risk is generalized to likelihoods, statistics and possibilities. Nothing has changed as evidenced through the medical records. And while his condition has not improved, and he has had other ailments, none of those are material to whether he remains a danger or flight risk. The medical records themselves contradict the alarm raised by the defendant by upon his own supposition. In fact, the defendant's own expert report acknowledged, "Mr. Douglas thankfully still functions independently." If he is still able to function independently, then there is no material change in his medical condition. As the Court already found, detention remains appropriate despite the defendant's cervical condition, a condition the defendant has suffered from for years, "even if prone to worsening."

**WHEREFORE**, the Court should deny the defendant's motion for reconsideration of detention (ECF No. 127).

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

s/Adam C. McMichael
ADAM C. McMICHAEL
Assistant United States Attorney
Court No. A5501637
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1040
Adam.McMichael@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Adam C. McMichael*
ADAM C. McMICHAEL
ASSISTANT UNITED STATES ATTORNEY

## SERVICE LIST

**Scott G. Berry**
Federal Public Defender
250 S Australian
Ste 400
West Palm Beach, FL 33463
561-833-6288
Fax: 561-833-0368
Email: scott_berry@fd.org
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Public Defender Appointment

10