UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 23-CR-80219-CANNON

UNITED STATES OF AMERICA,

 Plaintiff,

vs.

MICHAEL GORDON DOUGLAS.

 Defendant.
_____/

## SUPPLEMENTAL DEFENSE MOTION IN LIMINE

The defendant, Mr. Michael Douglas, through counsel, respectfully files this supplemental motion to address three issues that have arisen in the course of the parties' conferral about exhibits to be introduced at trial in this matter. He hereby seeks rulings from the Court, pursuant to Fed. R. Evid. 401, 402, 403, 404, 801, 802, and the Sixth Amendment's Confrontation Clause, that the Government be precluded from introducing three categories of evidence:

1. Any evidence of a replica hand grenade that was recovered from Mr. Douglas during his arrest.

2. As to Crystal Allen, the passenger Mr. Douglas was driving with at the time of his arrest, (i) any statements made by Ms. Allen in response to the replica grenade, and (ii) hearsay statements by Ms. Allen about Mr. Douglas having a date in Carlsbad (where he was supposed to meet the undercover agent).

3. Any mention of a party hosted by a Peter Nygard that Mr. Douglas attended, and of Nygard later being charged with sex trafficking based on other activities that Mr. Douglas did not see.

1

## **RELEVANT BACKGROUND**

Mr. Douglas was arrested on December 12, 2023, after law enforcement began pursuing him on the road as he was driving, and ultimately forced him to stop by pinning him in using their vehicles. According to reports of the arrest, after the stop, law enforcement initially "threw a pre-planned distraction device (flash bang)" before approaching the vehicle, and then used at least one other such "distraction device" as they approached. Law enforcement reports indicate that at some point during this approach, Mr. Douglas removed a replica hand-grenade (containing no explosives) from the car he had been driving. Reports also indicate that during this interaction, the passenger—Crystal Allen—began shouting statements to the effect of "he is going to kill us," "he is crazy," and "grenade." According to the reports, law enforcement initially thought Ms. Allen was referring to their distraction devices, but later concluded she was referring to Mr. Douglas's replica hand-grenade. Mr. Douglas is not charged with any offense based on any of these facts connected with his arrest.

After the arrest, agents interviewed Ms. Allen and Mr. Douglas. According to what Ms. Allen told agents in her interview, in the lead-up to the arrest, Mr. Douglas had made statements to her indicating that he had a date in Carlsbad (which is where the undercover agent was waiting to meet him). During the interview of Mr. Douglas, agents questioned him about these comments that Ms. Allen had made. Separately, Mr. Douglas told agents in his interview that he had attended an unrelated party at the home of a Peter Nygard, and that Mr. Douglas believed Nygard was later charged with sex trafficking based on conduct that Mr. Douglas did not himself witness.

2

## ARGUMENT

### I.   The Replica Hand Grenade Should Be Excluded

The Court should exclude the replica hand grenade for lack of relevance under Fed. R. Evid. 401 and 402. Mr. Douglas is charged here with the distribution of child pornography and attempted enticement of a minor based on conduct that took place over the internet over months leading to the date of his arrest. There is no question that the replica grenade is substantively entirely distinct from the elements of these charges, and Mr. Douglas is not charged with any separate crime that would necessitate the evidence. It is expected the Government will argue that the grenade is nonetheless relevant because it bears on consciousness of guilt. But factually, before the arrest, there was a law enforcement pursuit here: if the Government wishes to argue that Mr. Douglas tried to evade arrest and that this showed consciousness of guilt, they can introduce evidence of the pursuit of Mr. Douglas. The replica grenade that *followed* the pursuit does not have "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Further, even if the Court believes the replica grenade has *some* relevance, the Court should nonetheless exclude it under Fed. R. Evid. 403 and 404. As an initial matter, what the Government seeks to introduce is unnoticed evidence of "any other crime, wrong, or act" under Fed. R. Evid. 404(b). Again, the charged crimes here are based on facts that spanned a period of months, and while the replica grenade arose during Mr. Douglas's arrest for those crimes, this was after he was already identified, chased, and stopped by law enforcement for his crimes. Thus, the replica raises a new

issue that is substantively entirely unrelated to the charged offenses. *Cf. United States v. Fey*, 89 F.4th 903, 910-11 (11th Cir. 2023) (analyzing evidence that was being introduced for consciousness of guilt—in that case, threats against a witness made after the conclusion of the charged conspiracy—under 404(b)).

Rule 404(b) ultimately bakes in a Rule 403 prejudice analysis, and this Court should exclude the replica grenade because allowing the jury to hear of it would be unduly prejudicial, as follows. The Eleventh Circuit "use[s] a three-part test to [decide if] other bad acts are admissible under Rule 404(b): (1) 'the evidence must be relevant to an issue other than the defendant's character;' (2) 'the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act;' and (3) 'the probative value of the evidence must not be substantially outweighed by its undue prejudice.'" *United States v. Holt*, 777 F.3d 1234, 1266 (11th Cir. 2015) (citing *United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010)). When considering the Rule 403 analysis, the Court must consider the totality of the circumstances, including but not limited to prosecutorial need, overall similarity between the extrinsic act and the charged offense, and temporal remoteness. *United States v. Perez*, 443 F.3d 772, 780 (11th Cir. 2006).

As described above, the probative value of the replica grenade—over and above whatever probative value the pursuit and stop here have—is marginal at best. It is separated in time and substance from the charged offenses, and even insofar as it has *some* relevance to consciousness of guilt, there is other far-less-prejudicial evidence the Government can rely on to make that point, ie. the pursuit. On the other hand,

4

the prejudice is substantial and immediately apparent. *Cf. United States v. Gonzalez*, 703 F.2d 1222, (11th Cir. 1983) ("Because the potential prejudice from death threats may be great…the government must have an important purpose for introducing the evidence in order to satisfy the balancing test of Rule 403"). It would needlessly inflame a jury that is charged with assessing guilt on the child pornography offenses for them to hear that Mr. Douglas was escalating a police encounter with what appeared to be a grenade. Moreover, the implication to be drawn from the fact of a "replica" grenade is not immediately obvious, and thus confusing. It is undisputed that the grenade here *was not real*. Thus, raising the issue in front of the jury invites a mini-trial on what the meaning and implication of the replica grenade was, a question that is far afield of the elements of the charged offenses here.

## II. The Contested Statements by Crystal Allen Should Be Excluded

***First***, regarding Ms. Allen's statements at the time of arrest, apparently in response to seeing the replica grenade, there is no relevance whatsoever of these statements to the charged offenses. On the other hand, the substance—"he is going to kill us," "he is crazy," "grenade"—is obviously prejudicial, and the comments are inflaming on their face. Moreover, it bears emphasis that insofar as these comments reflect Ms. Allen's fear in the moment, they are particularly prejudicial and confusing because it is fairly clear she was reacting to many things at once: indeed, law enforcement reports indicate that they themselves initially thought she was referring to their distraction devices when she started shouting about a grenade. To put Ms.

Allen's reactions at the time of arrest before a jury serves no purpose at all, but would be both confusing and highly prejudicial.

*Second*, the Government has indicated that it intends to introduce portions of Mr. Douglas's statement in which agents make reference to *Ms. Allen's* comments—made by her during her statement—that Mr. Douglas had told her she was making him late for a date in Carlsbad. To the extent the Government intends to introduce these statements without calling Ms. Allen as a witness at trial, Mr. Douglas objects pursuant Fed. R. Evid. 801 and 802, and the Confrontation Clause.

As the Supreme Court has explained, under the Sixth Amendment's Confrontation Clause, "[t]estimonial statements of witnesses absent from trial have been admitted *only* where the declarant is unavailable, and *only* where the defendant has had a prior opportunity to cross-examine" the declarant. *United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). And it is well-established that "[s]tatements taken by police officers in the course of interrogations" are "testimonial," including witness statements given to investigating police officers. *Crawford*, 541 U.S. at 52, 53 n.4. Separately, "hearsay" refers to an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Here, to admit statements made by Ms. Allen during the agents' interview of her would violate both rules. Firstly, there would be no purpose to introducing Ms. Allen's statements here other than for their truth: the "truth" that Mr. Douglas had told her he had a date in Carlsbad. The rules of evidence squarely prohibit this hearsay statement. Secondly, her statements plainly constitute

6

testimony against Mr. Douglas, and he has an absolute right to confront his accuser on the point she makes. He has not had that opportunity. Thus, absent Ms. Allen's appearance at trial, her statements about a date in Carlsbad must be excluded.

### III.  Statements by Mr. Douglas About Peter Nygard

Finally, the Court should exclude any statements made by Mr. Douglas about a Peter Nygard, including statements about Mr. Douglas's attendance at a party hosted by Nygard and Nygard later being charged with sex trafficking based on his own separate activities. The facts underlying these statements are not part of the investigation or allegations in this case, and they have no relevance to the charged offenses here. Indeed, it is unknown when this party even occurred and when Nygard was charged. Moreover, there is no evidence to suggest that Mr. Douglas participated in any unlawful activity whatsoever with Nygard. Thus, if relevant at all, the statements squarely constitute improper character evidence that goes toward showing propensity, and they are thus inadmissible under Fed. R. Evid. 404(b).

Additionally, introduction of the statements would be substantially and unduly prejudicial under Fed. R. Evid. 403 and 404(b). Mr. Douglas's statements about the Nygard party and charges are necessarily short and incomplete, given they are based only on his knowledge and are not the subject of the agents' interview. To allow the jury to hear this summary discussion would be to unduly allow the suggestion—without proof—that Mr. Douglas possibly participated to an unknown extent in unrelated criminal activity with a separate person.

*   *   *

        Respectfully Submitted,

        **HECTOR A. DOPICO**
        **FEDERAL PUBLIC DEFENDER**

By:    */s/ Srilekha Jayanthi*
        Assistant Federal Public Defender
        Special A No. A5502728
        150 W. Flagler Street, Suite 1700
        Miami, Florida 33130-1556
        Tel: (305) 530-7000
        srilekha_jayanthi@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **April 28, 2025**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        */s/ Srilekha Jayanthi*