UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80219-CANNON

UNITED STATES OF AMERICA,

    Plaintiff,
vs.

MICHAEL DOUGLAS,

    Defendant.
_____/

## MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM

Though Michael Douglas never actually touched a child, the Sentencing Guidelines recommend he receive a life sentence. A life sentence for a sex offender would be served under constant threat of physical violence, extortion, and sexual exploitation by other inmates unless he decides "check in" to the special housing unit and spend the rest of his life in psychologically traumatizing isolation. A life sentence fails to recognize complications at birth and during adolescence that may have impacted Mr. Douglas's capacity to make decisions and control his impulses as well as the physical pain he will continue to endure from his myriad medical conditions, including his untreated spinal stenosis. And a life sentence fails to consider the sentences district courts, including this one, have meted out in similar cases. For each of these reasons, and those that will be presented at the sentencing hearing, this Court should consider a downward variance.

1

## A. A life sentence for a sex offender presents a Hobson's Choice.

A life sentence – or even a sentence of more than 30 years – presents Mr. Douglas with this Hobson's choice as to how he will live all or most of the rest of his life. In considering a fair sentence for Mr. Douglas's behavior outside of prison, this Court should also consider the harshness of his likely experience on the inside.

The Bureau of Prisons (BOP) classifies its 122 prison facilities into four security-levels: minimum, low, medium, and high. A high security prison – or United States Penitentiary (USP) – houses the most violent offenders in the federal system, including gang members and violent sex offenders. Many of these inmates serve sentences exceeding their natural life span and thus, have no incentive to change their behavior. Assaults and lockdowns are common, and programming is limited.

Nicole English is corrections consultant who worked for the Bureau of Prisons (BOP) for more than 30 years, including as the Regional Director in the Northeast Region where she managed 20 institutions and their respective wardens. *See* Ex. A. In her attached declaration, she explains that, if this Court sentences Mr. Douglas to more than 30 years in prison, he will serve that sentence in a USP, despite his otherwise low security risk. Ex. B at ¶ 10.

There, Mr. Douglas will experience "violence and volatility" that "can be difficult to grasp" as "assaults, extortion, and lockdowns [that] rarely reach the public eye . . . define daily life inside." Ex. B at ¶ 13. Ms. English explains that "USP inmates operate within a rigid and dangerous subculture, marked by manipulation, territorial control, and frequent armed altercations." *Id*. Moreover, Mr. Douglas, who has never been to prison and would enter as a sexual offender, "would face immediate

2

vulnerability to predatory intimidation and potential violent assault," and he would face pressure "to purchase protection or join a gang, with refusal carrying serious consequences." Ex. B at ¶ 14. Worse, gang members would subject him "to sexual assault or being 'owned' by one of the senior gang members for sexual favors." Ex. B at ¶ 16.

Rather than experience the violence, Mr. Douglas could choose to "check in" and spend his time in the isolation of a special housing unit (SHU). There, inmates are locked in a two-person cell, 23 hours per day, and shower only a few times per week under escort. Ex. B at ¶17. In the SHU, inmates receive only video visitation with no physical contact, assuming the prison permits visitation at all, and may only use the telephone once or twice per month and have no access to email. *Id*. This type of isolation often leads to "severe psychological and physical effects," including "depression, anxiety, paranoia, insomnia, hallucinations, and hypersensitivity to external stimuli." Ex. B at 18. This choice between physical violence and mental anguish is one that no human being – no matter their behavior – should ever be forced to make.

**B. This Court should consider Mr. Douglas's mental limitations and his ongoing physical conditions in determining an appropriate sentence.**

Dr. Martin Segel is a licensed psychologist with almost three decades of experience, *see* Ex. C, who conducted a neuropsychological evaluation of Mr. Douglas. In so doing, Dr. Segel found deficits in Mr. Douglas's executive function and capacity to sustain attention – deficits that impact decision-making and impulse control. Dr.

Segel believes these deficits likely resulted from complications at birth and during epileptic seizures he experienced during adolescence. *See* Ex. D (filed under seal).

In addition to his developmental deficits, Mr. Douglas also suffers significant physical conditions. Shortly after his arrest, his cellmate at the federal detention center in San Diego physically assaulted him by slapping him and twisting his neck. Only after he complained to BOP medical staff of weakness and tingling in his left arm and a doctor found he had decreased muscle tone and skin discoloration, he was sent to the University of San Diego Emergency department for further examination. After an MRI, doctors there diagnosed him with spinal stenosis and referred him for a consultation with a spinal surgeon – a consultation that never happened.

Instead, more than six months later, he saw a neurologist who learned his symptoms had worsened. At that time, he complained of tingling in his feet, thighs, and groin; that he was unable to sit or stand for long periods of time; that he felt muscle spasms and popping in his neck; and that he had trouble grasping and holding onto items. He had pain down the back of his legs, electric shocks in his back and feet, incontinence, and pain in his tailbone. Doctors noted his physical distress, decreased strength and fatigue, yet a consultation with a spinal surgeon remained out-of-reach. Three months later, during a chronic care visit, doctors again noted his spinal stenosis, chronic neck and back pain, and that there was a pending referral to a neurosurgeon. Still, that referral never materialized into an actual consultation.

Dr. Charles Howard is a retired BOP physician with almost five decades of experience and a former medical director at FDC-Miami. *See* Ex. E. After reviewing Mr. Douglas's medical records, particularly as they relate to the spinal stenosis

diagnosis and treatment, he has expressed serious concerns about the treatment – or lack thereof. He opines that Mr. Douglas's complaints and conditions required an emergency room visit, a neurosurgical consultation, and possible emergent neurosurgery. *See* Ex. F and Ex. G (filed under seal).

### C. Sentencing Mr. Douglas to life in prison would create an unwarranted sentencing disparity with similarly situated defendants.

At least twice, this Court has confronted similar fact patterns to the fact pattern here. In *United States v. Atha*, this Court sentenced the defendant to 180 months imprisonment – a downward variance – after he pled guilty to attempted enticement of a minor and transportation of child pornography. *United States v. Atha*, 24-CR-80102-AMC. Like Mr. Douglas, Atha chatted for several months with an undercover agent he believed to be the mother of an 8-year-old girl, describing in graphic detail the sexual acts he intended to commit with the child. He ultimately planned to meet the child and was arrested at the airport after traveling to Palm Beach County from another state. Though he did not distribute child pornography, he admitted to law enforcement he brought child pornography with him on his trip.

In *United States v. Lusk*, this Court sentenced the defendant to a mandatory minimum 240 months imprisonment following his guilty plea to one count of attempted enticement of a minor and one count of committing a felony offense involving a minor while required to register as a sex offender. *United States v. Lusk*, Case No.: 21-CR-14036-AMC. In that case, Mr. Lusk engaged in sexual conversations with an undercover agent he believed was a 15-year-old girl less than a month after

5

his release from a 48-month state prison sentence for attempting to meet a notional 12-year-old girl for sex.

Other district courts have also sentenced similarly situated defendants to less than the statutory maximum. *See United States v. Ray*, 23-CR-60214-BB (imposing 120-month sentence where defendant videorecorded himself molesting his own son and then distributed the video with the intent of obtaining additional child pornography in exchange); *United States v. Mezzoiuso*, 23-CR-80034-KAM (sentencing the defendant to 120 months after he lured a 16-year-old Bahamian child to the United States to have sex with her on multiple occasions, asked her to recruit another minor, and his phone contained additional conversations enticing other minors to have sex with him); *United States v. Lehner*, 21-CR-80094-DMM (imposing 120-month sentence for attempted enticement where defendant traveled from out-of-state to have sex with a notional 15-year-old girl after he spent two months her sending sexually explicit messages and images); *United States v. Spiegel*, 22-CR-14005-AMC (sentencing defendant to 120 months after a jury convicted him of attempted enticement where he chatted with a notional 14-year-old girl, sent her sexually explicit text messages, repeatedly requested she send him photographs, made plans to meet her, asked her to recruit a friend for a threesome, suggested she perform oral sex on him, and sent her photos of his erect penis); *United States v. Taylor*, 21-CR-60336-WPD (imposing 121-month sentence where defendant, a school crossing guard, attempted to entice a 13-year old girl to have sex with him).

D. **"Mercy bears richer fruits than strict justice."**
                                              **~ Abraham Lincoln**

While "[m]ercy is seldom included on the list of "traditional" rationales for sentencing," section 3553 evinces Congress' intent – this Court should impose the "lowest possible penalty consistent with the goals of sentencing." *United States v Blarek*, 7 F.Supp.2d 192, 210 (E.D.N.Y. 1998); *See also* 18 U.S.C. §3553(a). "The notion that undue harshness should be avoided by those sitting in judgment has long been a part of the human fabric and spirit. Lenity is often the desirable route." *Id*.

Imposing a sentence over 30 years on Mr. Douglas only provides more opportunity for the BOP to ignore his medical needs while exposing him to either physical danger or mental deterioration. He hopes this Court will show the same humanity it did for defendants Atha and Lusk and impose a sentence well-below the advisory guideline range.

WHEREFORE Defendant respectfully requests the Court to grant the above-styled motion.

                                              Respectfully submitted,

                                              HECTOR DOPICO
                                              FEDERAL PUBLIC DEFENDER

                                              s/ *Scott Berry*
                                              Scott Berry
                                              Assistant Federal Public Defender
                                              Attorney for the Defendant
                                              Florida Bar No. 0525561
                                              250 South Australian Avenue, Suite 400
                                              West Palm Beach, Florida 33401
                                              (561) 833-6288 - Telephone
                                              Scott_Berry@FD.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on August 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                             By: *s/Scott Berry*
                                                    Scott Berry